# IN UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## SOUTHERN DIVISION

**NIGHT BOX FILED**

~~OCT~~ 0 6 2000

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

### Case No. 99 –MDL-1317-SEITZ/GARBER

| | |
|---|---|
| IN RE: TERAZOSIN HYDROCHLORIDE ANTITRUST LITIGATION | MASTER FILE NO. 99-MDL-1317 MDL DOCKET NO. 1317 |
| THIS DOCUMENT RELATES TO: | Hon. Patricia A. Seitz Mag. Judge Barry L. Garber |
| *United Wisconsin Services, Inc., et al. v. Abbott Laboratories*, N.D. Ill. C.A. No. 99-C-7410 (JBZ) | |
| *Grosskrueger v. Abbott Laboratories, et al.*, N.D. Ill. C.A. No. 99-C-7883 (JBZ) | |
| *Reid v. Abbott Laboratories, et al.,* D.D.C. C.A. No. 00-323 | |
| *Scafani v. Abbott Laboratories, et al.*, N.D. Cal. C.A. No. 00-00508-SBA | |
| *Valentine v. Abbott Laboratories, et al.*, E.D. Tenn. C.A. No. 2:00-46 | |
| *Arkansas Carpenters Health v. Abbott Laboratories, et al.*, S.D. Fla. C.A. No. 00-1323 | |
| *O'Keefe v. Abbott Laboratories,* S.D. Fla. C.A. No. _____ | |
| *Bernstein v. Abbott Laboratories*, E.D. Mich. C.A. No. 2:00-CV-72974 | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS COUNTS I, III, V, VII AND CERTAIN STATE COUNTS OF THE THE INDIRECT PURCHASER PLAINTIFFS' SECOND AMENDED CONSOLIDATED COMPLAINT

[673500.3]

# TABLE OF CONTENTS

**PAGE(S)**

I.   INTRODUCTION ................................................................................................ 2

II.  ALLEGATIONS OF THE COMPLAINT .......................................................... 4

   A.   Plaintiffs. ................................................................................................... 4

      1.   The Purported Class Representatives. ............................................. 4

      2.   The Proposed Classes and Subclasses. .......................................... 6

   B.   The Indirect Purchasers' Claims Are Based On Substantially Similar
      Allegations To Those In The Direct Purchasers' Actions. ......................... 6

   C.   The Indirect Purchasers' Federal and State Antitrust Claims. ................... 7

III. ARGUMENT ...................................................................................................... 9

   A.   The Indirect Purchasers Lack Standing Under The Sherman Act. ............ 10

   B.   The Complaint Fails To State A Claim Under The Laws Of Certain States. ...... 12

      1.   Arizona, New Jersey And West Virginia Preclude Indirect
         Purchaser Claims. ............................................................................ 12

         a.   Indirect Purchasers Lack Standing Under Arizona Law. ............. 14

         b.   Indirect Purchasers Lack Standing Under New Jersey Law. ........ 15

         c.   Indirect Purchasers Lack Standing Under West Virginia
            Law. ........................................................................................ 16

      2.   Plaintiffs' Tennessee and Wisconsin Antitrust Claims Must Be
         Dismissed. ........................................................................................ 17

         a.   Plaintiffs Do Not State a Claim Under Tennessee Law. ............. 17

         b.   Plaintiffs Do Not State a Claim Under Wisconsin Law. ............. 19

      3.   Plaintiff's Unilateral Monopolization Claims Under New York
         And California Law Must Be Dismissed . ........................................ 21

         a.   New York Law Bars Claims Based On Unilateral Conduct. ........ 21

         b.   California Law Bars Claims Based On Unilateral Conduct. ........ 22

      4.   No Plaintiff Has Standing Under The Laws Of Minnesota,
         Mississippi, New Mexico, New Jersey, North Carolina, North
         Dakota, South Dakota and West Virginia. ...................................... 22

   C.   The Federal Common Law Claim For Unjust Enrichment Is Subject To
      Dismissal Because There Is No Such Cause Of Action. ........................... 26

IV.  CONCLUSION .................................................................................................. 28

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Albertville v. Alabama Power Co.*
934 F.2d 1493 (11th Cir. 1991); ................................................................. 9

*Associated Gen. Contractors v. California State Council of Contractors*
459 U.S. 519 (1983) ................................................................. 12

*Austin v. Blue Cross & Blue Shield of Ala.*
903 F.2d 1385 (11th Cir. 1990). ................................................................. 9

*Blake v. Abbott Lab.*
C.A. No. 03A01-9509-CV-00307, 1996 WL 134947 (Tenn. App. Ct. Mar.
27, 1996) ................................................................. 18

*Blum v. Yaretsky*
457 U.S. 991 999 (1982) ................................................................. 24

*Brown v. Sibley*
650 F.2d 760 (5th Cir. 1981) ................................................................. 24

*California v. ARC America*
490 U.S. 93 (1989) ................................................................. 12

*City of Milwaukee v. Illinois & Michigan*
451 U.S. 304 (1981) ................................................................. 26

*Conley v. Gibson*
355 U.S. 41 (1957) ................................................................. 9

*Dimidowich v. Bell & Howell*
803 F.2d 1473 (9th Cir. 1995). ................................................................. 22

*Duke v. Browning-Ferris Indus., Inc.*
No. 96-2859-TUA, 1996 U.S. Dist. LEXIS 20769 (W.D. Tenn., Oct. 23,
1996) ................................................................. 18

*Dzik & Dzik, P.C. v. Vision Serv. Plan*
1989-1 Trade Cas. (CCH) ¶ 68,415, 1989 WL 3082 (Tenn. Ct. App.
1989). ................................................................. 17

*Emergency One, Inc. v. Waterous, Inc.*
23 F. Supp. 2d 959 (E.D. Wis. 1998) ................................................................. 20

*Erie R. Co. v. Tompkins*
304 U.S. 64 (1938) ................................................................. 26

*FMC Corp. v. Boesky*
852 F.2d 981 (7th Cir. 1988) ................................................................. 23

*Free v. Abbott Labs.*
176 F.3d 298 (5th Cir. 1999) ................................................................. 13

*FTC v. Mylan Lab., Inc.*
99 F. Supp.2d 1 (D.D.C. 1999), ................................................................. 17

*Griffin v. Dugger*
823 F.2d 1476 (11th Cir. 1987) ................................................................. 24

*Hanover Shoe, Inc. v. United Shoe Machinery Corp.*
392 U.S. 481 (1968) ................................................................. 2, 10, 11, 15

*Illinois Brick v. Illinois*

[673500.3]

## TABLE OF AUTHORITIES
### (continued)

PAGE(S)

431 U.S. 720 (1976)..................................................................... 2, 3, 9, 10, 11, 13, 27

*In re Cardizem CD Antitrust Litig.*
105 F. Supp.2d 618 (E.D. Mich. 2000)........................................................ 18, 20

*In re Terazosin Hydrochloride Antitrust Litig.*
MDL No. 1317......................................................................................... 6

*In re Wiring Device Antitrust Litig.*
498 F. Supp. 79 (E.D.N.Y. 1980) ................................................................ 13

*Kansas v. Utilicorp United, Inc.*
497 U.S. 199 (1990)......................................................................... 2, 10, 11

*Lewis v. Casey*, 518 U.S. 343 (1996) ........................................................ 24

*Linder v. Portocarro*
963 F.2d 332 (11th Cir. 1992). ..................................................................... 9

*Lowell v. American Cyanamid Co.*
177 F.3d 1228 (11th Cir. 1999). .................................................................. 11

*Lujan v. Defenders of Wildlife*
504 U.S. 555 (1992)................................................................................. 23

*Maryland Staffing Servs. Inc. v. Manpower Inc.*
936 F. Supp. 1494 (E.D. Wis. 1996)............................................................. 20

*Metropolitan Express Serv., Inc. v. Kansas City*
23 F.3d 1367 (8th Cir. 1994) ...................................................................... 23

*Miccosukee Tribe of Indians of Florida v. Florida State Athletic Comm.*
No. 99-13559, 2000 WL 1288675, at *1 ...................................................... 23

*Provau v. State Farm Mut. Auto. Ins. Co.*
772 F.2d 817 (11th Cir. 1985) .................................................................... 15

*Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp.*
*S.A.*, 711 F.2d 989 (11th Cir. 1983). ............................................................ 9

*Sanner v. Board of Trade*
62 F.3d 918 (7th Cir. 1995) .................................................................. 24, 25

*See Keiffer v. Mylan Labs.*
1999-2 Trade Cas. (CCH) ¶ 72,673, 1999 WL 1567726 ................................... 16

*Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*
710 F.2d 678 (11th Cir. 1983) .................................................................... 15

*Standard Oil Co. v. Tennessee*
217 U.S. 413 (1910);................................................................................. 17

*Va. Elec. & Power Co. v. Int'l Bhd. of Boilermakers*
No. 75-212-E, 1980 WL 2062 (N.D. W. Va. Mar. 3, 1980)................................. 16

*Valley Drug Co. v. Abbott Laboratories, et al., et al.*
S.D. Fla. No. 99-7134 ................................................................................. 2

*Valley Prods. Co. v. Landmark*
877 F. Supp. 1087 (W.D. Tenn. 1994).......................................................... 18

### TABLE OF AUTHORITIES
#### (continued)

**PAGE(S)**

*Walgreen, et al. v. Abbott Laboratories, et al.*
    S.D. Fla. No. 99-1938 ............................................................................................................. 2

*Wallis v. Pan American Petroleum Corp.*
    384 U.S. 63 (1966)). ............................................................................................................. 26

*Warth v. Seldin*
    422 U.S. 490 (1975)............................................................................................................... 23

### STATE CASES

*Alaska Sales & Serv., Inc. v. Millet*
    735 P.2d 743 (Alaska 1987)................................................................................................. 27

*All Am. Sch. Supply Co. v. Slavens*
    625 P.2d 324 (Ariz. 1981).................................................................................................... 14

*Bello v. Cablevision Sys. Corp.*
    264, 587 N.Y.S.2d 1 (N.Y. App. Div. 1992) ..................................................................... 21

*Blake v. Abbott Lab.*
    C.A. No. 03A01-9509-CV-00307, 1996 WL 134947 (Tenn. App. Ct. Mar.
    27, 1996) ............................................................................................................................. 18

*Blewett v. Abbott Labs.*
    938 P.2d 842 (Wash. Ct. App. 1997)................................................................................... 13

*Bondi v. Jewels by Edwar, Ltd.*
    267 Cal. App.2d 672 (Cal. Ct. App. 1968); ........................................................................ 22

*CVS Meridian, Inc., et al. v. Abbott Laboratories, et al.*, S.D. Fla. No. 99-3512........................... 2

*First Nat'l Bank v. Ramier*
    311 N.W.2d 502 (Minn. 1981).............................................................................................. 27

*Freeman v. San Diego Ass'n of Realtors*
    77 Cal. App.4th 171 (Cal. Ct. App. 1999); ......................................................................... 22

*G.H.I.I. v. MTS, Inc.*
    147 Cal. App.3d 256 (Cal. Ct. App. 1983); ........................................................................ 22

*Grams v. Boss*
    294 N.W.2d 473 (Wis. 1980)................................................................................................ 19

*Hall Heating Co. v. New York State Elec. & Gas*
    580 N.Y.S.2d 528 (N.Y. App. Div. 1992) .......................................................................... 21

*Hancock-Hazlett Gen. Constr. Co. v. Trane Co.*
    499 So.2d 1385 (Ala. 1986).................................................................................................. 27

*Hyde v. Abbott Labs.*
    473 S.E.2d 680 (N.C. Ct. App. 1996) .................................................................................. 13

*Jackson Nat'l Life Ins. Co. v. Kennedy*
    741 A.2d 377 (Del. Ch. 1999)............................................................................................... 27

*John Mohr & Sons, Inc. v. Jahnke*
    198 N.W.2d 363 (Wis. 1972)................................................................................................ 19

TABLE OF AUTHORITIES
(continued)

PAGE(S)

*Kimmelman v. Henkels & McCoy, Inc.*
    506 A.2d 381 (N.J. Super. Ct. App. Div. 1986), *rev'd in part*, 527 A.2d
    1368 (N.J. 1987) ................................................................................................................... 16

*Louisiana Wholesale v. Abbott Laboratories, et al.*
    S.D. Fla. No. 98-3125 ............................................................................................................. 2

*Lynch Display Corp. v. Nat'l Souvenir Ctr.*
    640 S.W.2d 837 (Tenn. Ct. App. 1982)................................................................................. 17

*New Jersey v. Lawn King, Inc.*
    417 A.2d 1025 (N.J. 1980)...................................................................................................... 15

*Northern Ariz. Gas Serv., Inc. v. Petrolane Transp., Inc.*
    702 P.2d 696 (Ariz. Ct. App. 1984)...................................................................................... 15

*Pharmacists' Ass'n of W. N.Y., Inc. v. Blue Cross of W. N.Y., Inc.*
    492 N.Y.S.2d 221 (N.Y. App. Div. 1985) ............................................................................ 21

*Pulp Wood Co. v. Green Bay Paper & Fiber Co.*
    147 N.W. 1058 (Wis. 1914)................................................................................................... 19

*Reese v. Associated Hosp. Serv., Inc.*
    173 N.W.2d 661 (Wis. 1970);................................................................................................ 19

*Salzman v. Bachrach*
    996 P.2d 1263 (Colo. 2000)................................................................................................... 27

*Standard Oil Co. v. State*
    100 S.W. 705 (Tenn. 1907)................................................................................................... 17

*Stapley v. American Bathtub Liners Inc.*
    785 P.2d 84 (Ariz. Ct. App. 1989)....................................................................................... 27

*State ex rel. Van de Kamp v. Texaco, Inc.*
    762 P.2d 385 (Cal. 1988) ...................................................................................................... 22

*State ex. rel Cates v. Standard Oil Co.*
    110 S.W. 565 (Tenn. 1908).................................................................................................... 17

*State v. Allied Chemical & Dye Corp.*
    101 N.W.2d 133 (Wis. 1960)................................................................................................. 20

*State v. Lewis & Leidersdorf Co.*
    230 N.W. 692 (Wis. 1930);.................................................................................................... 19

*State v. Mobil Oil Corp.*
    344 N.E.2d 357 (N.Y. 1976).................................................................................................. 21

*State v. Waste Mgmt., Inc.*
    261 N.W.2d 147 (Wis. 1978);................................................................................................ 19

*Stifflear v. Bristol-Myers Squibb Co.*
    931 P.2d 471 (Colo. Ct. App. 1996) ..................................................................................... 13

*Wedgewood Inv. Corp. v. Int'l Harvester Co.*
    613 P.2d 620 (Ariz. Ct. App. 1980)...................................................................................... 14

TABLE OF AUTHORITIES
(continued)

**PAGE(S)**

## FEDERAL STATUTES AND REGULATIONS

15 U.S.C. § 1 ................................................................................................................ 8, 26

15 U.S.C. § 15(a). .......................................................................................................... 14

15 U.S.C. § 15(a). .......................................................................................................... 15

15 U.S.C. § 2 .................................................................................................................... 8

15 U.S.C. §§ 1 and 2, ..................................................................................................... 19

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 2, 9

## STATE STATUTES AND REGULATIONS

Ariz. Rev. Stat. § 44-1408(B) ...................................................................................... 15

Ariz. Rev. Stat. § 44-1412 (2000) ................................................................................ 14

Ariz. Rev. Stat. §§ 44-1401 .......................................................................................... 23

Me. Rev. Stat. Ann. §§ 1101 ......................................................................................... 23

Mich. Comp. Laws. Ann. § 445.778(2) (2000) ............................................................ 15

Minn. Stat. §§ 325D.54-57 ............................................................................................ 23

Miss. Code Ann. §§ 75-21-1 .......................................................................................... 23

N.C.G.S.A. § 75-1 .......................................................................................................... 24

N.D. Century Code §§ 51-08.1-01 ................................................................................ 24

N.J. Stat. Ann. § 56:9-12 ............................................................................................... 16

N.J. Stat. Ann. § 56:9-18 (2000) ................................................................................... 15

N.J. Stat. Ann. §§ 56:9-1 ............................................................................................... 23

N.M. Stat. Ann. §§ 57-1-1 ............................................................................................. 24

N.Y. Gen. Bus. Law § 340(1). ....................................................................................... 21

S.D. Codified L. Ann. §§ 37-1-3.1 ................................................................................ 24

W. Va. Code § 47-18-16 (2000). ................................................................................... 16

W. Va. Code § 47-18-9 ................................................................................................... 16

W.V. Code §§ 47-18-1 ................................................................................................... 24

Wis. Stat. §§ 133.01 to 133.18 ...................................................................................... 19

## TREATISES

7B Charles Alan Wright
    *Federal Practice and Procedure* § 1785.1, at 142 (2d ed. 1986) ...................... 25

## I.    INTRODUCTION

Defendants Abbott Laboratories ("Abbott"), Geneva Pharmaceuticals, Inc.

("Geneva"), and Zenith Goldline Pharmaceuticals, Inc. ("Zenith"), respectfully submit this

memorandum of law in support of their motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6),

certain claims in the Second Amended Consolidated Complaint (the "Complaint") filed in the

Southern District of Florida on behalf of the plaintiffs in the following cases: *Bernstein, United*

*Wisconsin, Grosskrueger, Reid, Scafani, Valentine, Arkansas Carpenters* and *O'Keefe* (the

"Indirect Purchasers").[1]

The Complaint includes three federal Sherman Act claims (Counts I, III and V).

However, a series of Supreme Court decisions bars Sherman Act claims by indirect purchasers

like the plaintiffs in these actions. *See Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392

U.S. 481 (1968); *Illinois Brick v. Illinois*, 431 U.S. 720 (1976); *Kansas v. Utilicorp United, Inc.*,

497 U.S. 199 (1990). Indeed, the reasons for applying the direct purchaser rule are particularly

strong here, because the relief sought by the Indirect Purchasers is completely duplicative of that

being sought by the direct purchasers in *Louisiana Wholesale v. Abbott Laboratories, et al.*, S.D.

Fla. No. 98-3125, *Valley Drug Co. v. Abbott Laboratories, et al., et al.*, S.D. Fla. No. 99-7134,

*Walgreen, et al. v. Abbott Laboratories, et al.*, S.D. Fla. No. 99-1938, and *CVS Meridian, Inc., et*

*al. v. Abbott Laboratories, et al.*, S.D. Fla. No. 99-3512 (the "Direct Purchaser Actions.") As the

Court is aware, the plaintiffs in the Direct Purchaser Actions are seeking to recover all of the

"overcharges" that allegedly resulted from the conduct at issue in these proceedings – whether or

not those "overcharges" were passed on to indirect purchasers. If the Direct Purchasers' claims

---

[1] Defendants' motion to dismiss is directed to Counts I, III, V and VI of the Complaint, as well as those allegations of Counts II, IV and VI which purport to state claims under the laws of Arizona, Maine, Minnesota, Mississippi, New Mexico, New Jersey, North Carolina, North Dakota, South Dakota, Tennessee, West Virginia and Wisconsin, those allegations in Count II which purport to state claims under the laws of California and New York, and those allegations of Counts II, IV and VI which purport to state claims based on generic purchases in California, Kansas, and the District of Columbia.

are going to proceed on an "overcharge" basis, then allowing the Indirect Purchasers' claims to proceed would violate the Supreme Court's policy to "avoid multiple liability for defendants" in antitrust cases. *Illinois Brick*, 431 U.S. at 730.[2]

Additionally, several of the state law claims are subject to dismissal because those claims are not permitted by the state laws identified in the Complaint. Some of the state laws identified in the Complaint – including Arizona, West Virginia and New Jersey – follow the direct purchaser rule of *Illinois Brick* and *Hanover Shoe* in barring state law antitrust claims by indirect purchasers altogether. Tennessee and Wisconsin, whose antitrust laws also are included in the Complaint, limit the reach of those laws to conduct that is predominantly intrastate in character, whereas the conduct at issue here is predominantly interstate. Finally, California and New York do not allow claims for unilateral conduct such as the monopolization claims included in Count II. Accordingly, the Court should dismiss the Indirect Purchasers' claims under the laws of Arizona, West Virginia, New Jersey, Tennessee and Wisconsin, as well as the allegations of Count II which purport to assert claims under the laws of California and New York.

Moreover, no named plaintiff has standing to pursue some of the state law claims in the Complaint. None of the named plaintiffs hails from Arizona, Maine, Minnesota, Mississippi, New Mexico, New Jersey, North Carolina, North Dakota, South Dakota or West Virginia. None of those states has created a right of action for out-of-state plaintiffs challenging out-of-state conduct, and no principle of law allows an out-of-state plaintiff to pursue a claim on

---

[2] Defendants disagree with the Direct Purchasers' position that they may recover on an "overcharge" basis. Rather, because these cases involve an alleged refusal to sell a distinct generic product that was not previously marketed, antitrust impact and damages in the Direct Purchasers' claims must be assessed based upon net lost profits, if any, that the Direct Purchasers suffered. Defendants' opposition to the motion for class certification in the Direct Purchaser actions is based, in part, on this distinction. That opposition also is based on the applicability of the "cost-plus" exception to national wholesaler members of the proposed class in the Direct Purchaser Actions. Because the insurance company and consumer plaintiffs in this action have not alleged any basis for an exception to that rule that might apply to them, the Indirect Purchasers' claims are subject to dismissal regardless how this Court rules on the class certification motion in the Direct Purchaser Actions.

behalf of the citizens of another state and under the laws of that other state. Accordingly, the Court should dismiss Counts II, IV, and VI to the extent that those counts purport to state claims under the laws of Arizona, Maine, Minnesota, Mississippi, New Mexico, New Jersey, North Carolina, North Dakota, South Dakota and West Virginia. Because no named plaintiff is alleged to have produced generic terazosin products in any state other than New York, Florida, Wisconsin, and Michigan, Counts II, IV and VI also should be dismissed to the extent they are based on purchases of generic products in any other state.

Finally, this Court should dismiss Count VII – which purports to state a federal common law "unjust enrichment" claim on behalf of a nationwide class of indirect purchasers. No such claim exists. For this Court to create such a claim would undermine the federal policy articulated by the Supreme Court in adopting the direct purchaser rule, as well as the policies of the many states that bar indirect purchasers from pursuing claims based on allegations of anticompetitive conduct.

## II.    ALLEGATIONS OF THE COMPLAINT

### A.    Plaintiffs.

#### 1.    The Purported Class Representatives.

Each of the named plaintiffs in the Complaint falls into one of two groups of "co-payors" for Hytrin® – consumers who purchased the drug from retail pharmacies or insurance companies who provided reimbursement, in whole or in part, for such purchases. *See* Complaint ¶¶ 33-35. Once a pharmaceutical drug has passed through the distribution chain from the manufacturer to the wholesaler, from the wholesaler to the pharmacist, and from the pharmacist to the consumer, the ultimate cost of the drug is borne by some combination of the consumer and his insurance company. *Id.* Although the consumer and/or the insurer ultimately may pay some of the cost of a pharmaceutical product like Hytrin® – and although the complaint alleges that

these indirect purchasers are the principal "beneficiaries" of lower prices upon the launch of a generic drug, *see* Complaint ¶ 37 – neither of them purchases the product directly from the manufacturer.

Although the Complaint includes claims under the laws of Arizona, Maine, Minnesota, Mississippi, New Mexico, New Jersey, North Carolina, North Dakota, South Dakota and West Virginia, no named plaintiff is alleged to live in or to have purchased Hytrin® in any of those States. *Id.* ¶¶ 3-14, 20. The consumer plaintiffs – Reid, Meyer, Latona, Latona, Lopez-Souto, Grosskrueger, Scafani, Valentine, O'Keefe and Bernstein – are residents of Maryland, New York, Florida, Wisconsin, California, Tennessee, Kansas and Michigan, respectively. *Id.* ¶¶ 3-14. They allege that they purchased Hytrin® only in their states of residence – with the exception of the Maryland plaintiff who allegedly bought his Hytrin® in the District of Columbia. *Id.*[3]

As for the insurance company plaintiffs, they are United Wisconsin Services, Inc. ("USWI"), a Wisconsin insurance company that reimbursed drug stores for dispensing Hytrin® to its plan members, and Arkansas Carpenters Health and Welfare Fund ("Arkansas Carpenters"), an Arkansas employee welfare benefit plan that did the same. *Id.* The Complaint alleges that UWSI and its affiliated entities have members in all 50 states. *Id.* However, it does not allege that any UWSI and/or Arkansas Carpenters member in Arizona, Maine, Minnesota, Mississippi, New Mexico, New Jersey, North Carolina, North Dakota, South Dakota or West Virginia purchased Hytrin® during the relevant time period, that any purchases allegedly made by UWSI and/or Arkansas Carpenters is governed by the laws of any of those states, or that

---

[3] Moreover, the Complaint purports to include claims based on purchases of *generic* terazosin hydrochloride, *see* Complaint ¶¶ 4-7, 9, 14, but none of the named plaintiffs is alleged to have purchased generic terazosin hydrochloride in any states other than New York, Florida, Wisconsin and Michigan.

UWSI and/or Arkansas Carpenters have standing to pursue claims under the laws of any of those states.

### 2.    The Proposed Classes and Subclasses.

Plaintiffs purport to bring each of their claims on behalf of one or more of the classes and subclasses defined in paragraph 20 of the Complaint. Those classes and subclasses include:

> 1.    The "Nationwide Hytrin End-Payor Class" – all persons and entities in the United States who purchased Hytrin® between October 15, 1995 and August 12, 1999;
>
> 2.    The "18-State Hytrin End-Payor Subclass" – all persons and entities in the United States who purchased Hytrin® between October 15, 1999 and August 12, 1999, in any of seventeen specified States and the District of Columbia; and,
>
> 3.    The "18-State Generic End-Payor Subclass" – all persons and entities in the United States who purchased generic terazosin hydrochloride between August 13, 1999 and the present in any of seventeen specified States and the District of Columbia.

*See* Complaint ¶ 20. The proposed class and subclasses are limited to persons who purchased Hytrin® "other than for resale," *id.*, and thus exclude direct purchasers such as the plaintiffs in the Direct Purchaser Actions.[4]

### B.    The Indirect Purchasers' Claims Are Based On Substantially Similar Allegations To Those In The Direct Purchasers' Actions.

The Complaint's substantive allegations will be familiar to the Court. Like the other Complaints in *In re Terazosin Hydrochloride Antitrust Litig.*, MDL No. 1317, the

---

[4] Defendants note that, while the insurance company plaintiffs and members of the proposed class purport to be "purchasers" of drug products, many do not purchase drug products at all, but rather provide reimbursement services to consumers and pharmacists.

Complaint alleges that Abbott, Geneva and Zenith engaged in various conduct that allegedly delayed the introduction of generic competition to Hytrin®, a brand-name drug distributed by Abbott.

The Indirect Purchasers first allege that Abbott unilaterally "misused" four Hytrin® patents by instituting patent litigation and making filings with governmental agencies that had the effect of delaying generic competition. *See* Complaint ¶ 65.[5] The Indirect Purchasers concede that each of Abbott's patents was issued by the United States Patent and Trademark Office, and do not allege that any generic terazosin product could have come to market any earlier than it did (in August 1999) without being subject to an infringement claim based on at least one of those patents. *See* Complaint ¶¶ 49-55. Nonetheless, the Indirect Purchasers maintain that various aspects of Abbott's conduct is actionable because it was purportedly "baseless" and designed to delay generic entry. *See* Complaint ¶¶ 64-88.

The Indirect Purchasers further allege that Geneva's agreement with Abbott and Zenith's agreement with Abbott (the "Agreements") – which, of course, settled disputes relating to Abbott's Hytrin® patents in the context of the litigation of disputes relating to those patents – also were part of an improper strategy to delay generic competition. *See* Complaint ¶¶ 89-104.

C.      **The Indirect Purchasers' Federal and State Antitrust Claims.**

The Complaint includes seven Counts. Counts I, III and V are based on federal antitrust laws and are brought on behalf of what the Indirect Purchasers refer to as the "Nationwide End-Payor Class." Count I, which names Abbott alone, alleges that Abbott's litigation and regulatory activities relating to its Hytrin® patents, as well as the Geneva and

---

[5] The Indirect Purchasers allege that the relevant product market for analyzing their claims is the United States market for "terazosin-based products." *See* Complaint ¶¶ 106-109. The Indirect Purchasers contend that Abbott's share of that "market" was 100% prior to August 13, 1999. Although Defendants must treat the Indirect Purchasers' relevant market allegations as true for purposes of this motion to dismiss, Defendants note that Hytrin® was subject to vigorous competition from other drug products throughout the relevant time period.

Zenith agreements, constituted an "unlawful monopoly" in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. *See* Complaint ¶¶ 112-17.

Counts III and V name Abbott, Geneva and Zenith; they are based on the Agreements. *See* Complaint ¶¶ 141-46, 154-57. Count III asserts that the Agreements constituted a "conspiracy to monopolize" in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. *Id.* ¶¶ 141-46. Count V asserts that the Agreements were unlawful restraints of trade under Section 1 of the Sherman Act, 15 U.S.C. § 1. *Id.* ¶¶ 154-57.

Counts II, IV, and VI assert analogous claims under the laws of seventeen states and the District of Columbia and are brought in the name of the 18-State End Payor Classes. Specifically, Count II – the state law analogue to Count I – alleges that Abbott's conduct constituted an unlawful exercise of monopoly power under state antitrust laws. *See* Complaint ¶¶ 118-40. Count IV, which names all three defendants and is the state law analogue to Count III, alleges that the Agreements were a conspiracy to monopolize in violation of state law. *Id.* ¶¶ 147-53. Count VI, which also is asserted against the three defendants and is the analogue to Count V, alleges that the Agreements were unlawful under state laws prohibiting contracts in restraint of trade. *Id.* ¶¶ 121-40, 151-53, 160-62.

Count VII alleges that Abbott, Zenith and Geneva "benefited" from the alleged delay in the entry of generic competition to Hytrin®, and that it would be "inequitable" to allow any defendant to retain the monies allegedly received as a result of the purported delay. *Id.* ¶¶ 163-67. On behalf of the Nationwide End-Payor Class, Count VII seeks to impose "a constructive trust consisting of all excessive amounts [ ] paid for terazosin" by all members of the proposed nationwide class. *Id.* ¶ 167. This unjust enrichment claim does not purport to be

grounded in any statute or in the common law of any state or states, but rather is apparently alleged to arise under federal common law.

## III.   ARGUMENT

Under Fed. R. Civ. P. 12(b)(6), the Court must dismiss any claim that fails to state facts upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *Linder v. Portocarrero*, 963 F.2d 332 (11th Cir. 1992). Of course, the Court must assess the factual allegations of the Complaint as true, and must resolve any doubts with respect to the sufficiency of the factual allegations of the Complaint in favor of the plaintiff. *See, e.g., Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983). However, the legal foundations for a claim do not benefit from any presumption. *Austin v. Blue Cross & Blue Shield of Ala.*, 903 F.2d 1385, 1387 (11th Cir. 1990). If a claim is legally inadequate, it must be dismissed. *Id.*

The current motion raises the fundamental issue of whether indirect purchasers have standing to pursue federal antitrust claims. The Eleventh Circuit has held that the issue of antitrust standing may be resolved by a motion to dismiss. *Municipal Utilities Bd. v. Alabama Power Co.*, 934 F.2d 1493, 1498 (11th Cir. 1991); *Austin*, 903 F.2d at 1387. Because the direct purchaser rule of *Hanover Shoe* and *Illinois Brick* prohibits indirect purchasers from bringing federal claims, the Indirect Purchasers do not have standing under federal law, and Counts I, III, and V must be dismissed.

Counts II, IV, and VI fail as a matter of law to the extent that they purport to arise under the laws of Arizona, Maine, Minnesota, Mississippi, New Mexico, New Jersey, North Carolina, North Dakota, South Dakota, Tennessee, West Virginia and Wisconsin. As a matter of law, plaintiffs do not meet the substantive requirements of the laws of those states and/or are not residents of those states, and thus lack standing to pursue those claims. Count II also fails under

the laws of California and New York, because those states do not allow antitrust claims based on unilateral conduct. Finally, Count VII fails because there is no federal common law claim for unjust enrichment.[6]

### A.    The Indirect Purchasers Lack Standing Under The Sherman Act.

Direct purchasers – and *only* direct purchasers – have standing to pursue most federal antitrust claims. *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968); *Illinois Brick v. Illinois*, 431 U.S. 720 (1976); *Kansas v. Utilicorp*, 497 U.S. 199, 206-18 (1990). A direct purchaser is a person who purchased the product or service at issue directly from one of the alleged wrongdoers. *Utilicorp*, 497 U.S. at 206-18. An indirect purchaser, by contrast, is a person who purchased the product or service from anyone other than the alleged wrongdoer. *Id.* Thus, for example, a wholesaler who purchased Hytrin® from Abbott is a direct purchaser, whereas retail pharmacies, consumers, and insurance companies who subsequently purchase Hytrin® are indirect purchasers. None of the named plaintiffs here is a direct purchaser. *See* Complaint ¶¶ 3-14. Because indirect purchasers lack standing to pursue federal antitrust claims, the Indirect Purchasers' federal antitrust claims fail as a matter of law. *Utilicorp*, 497 U.S. at 206-18.

It does not matter that direct purchasers may have passed on the economic effect of the alleged wrongdoing to indirect purchasers. *Hanover Shoe* held that a person generally may not defend against an antitrust claim on the ground that any injuries caused by the alleged violation were passed on by direct purchaser plaintiffs to indirect purchasers. *Illinois Brick* is the flip-side of *Hanover Shoe*, in that it held that indirect purchasers generally may not sue even if injuries were passed on to them. As the Eleventh Circuit recently explained, the "direct

---

[6] Additionally, to the extent that any of the named plaintiffs' state law claims are based on purchases of generic terazosin hydrochloride products in any state other than New York, Florida, Wisconsin and Michigan, those claims under fail for lack of standing. *See* note 3, *supra.*

purchaser rule" was enacted precisely to prohibit recovery in such circumstances. *Lowell v. American Cyanamid Co.*, 177 F.3d 1228, 1229 (11th Cir. 1999). The rule was meant to avoid the "serious risk of multiple liability for defendants'" that would exist if plaintiffs were subject to claims from both direct and indirect purchasers, and to avoid the complications that would arise from tracing damage claims through multiple levels of distribution. *Id.* (quoting *Illinois Brick*, 431 U.S. at 731-32). [7]

The Indirect Purchasers' claims are additionally barred by the fact that the Direct Purchasers in these consolidated cases have maintained that they – the direct purchasers – are entitled to recover the full amount of any illegal "overcharge" they may prove regardless of whether they actually suffered any economic loss. *See, e.g.,* Pls. Resp. to Defs.' Mot. to Compel Discovery Relating to Class Certification Issues, Feb. 8, 2000, at 5-6 ("Where, as a result of defendants' illegal conduct, a plaintiff has paid more than it would have otherwise, the [direct purchaser] plaintiff may recover the amount of the overcharge . . . ."). Defendants disagree with that position, and maintain that the Direct Purchasers' claims may not proceed on an "overcharge" theory. Nonetheless, if the Direct Purchasers are permitted to proceed on their "overcharge" theory, then allowing the Indirect Purchasers to pursue their claims would create the additional problem of an impermissible risk of multiple recoveries from Defendants. The Supreme Court and the Eleventh Circuit consistently have emphasized a policy against "multiple

---

[7] As noted in Defendants' opposition to the motion for class certification filed in the Direct Purchaser Actions, there is an exception to the direct purchaser rule which applies to purchases made pursuant to "pre-existing cost-plus contracts." *See* Defendants' Memorandum in Opposition to Plaintiffs' Motion for Class Certification, filed Sept. 29, 2000, at 38-45 (citing *Utilicorp*, 497 U.S. at 217-18; *Hanover Shoe*, 392 U.S. at 494; *Illinois Brick*, 431 U.S. at 736). Defendants believe that substantial sales to retail pharmacies by the national wholesaler members of the direct class may be eligible for this exception, and have urged the Court to deny the motion for class certification (or, alternatively, exclude the wholesalers from the class) partially on that basis. Nonetheless, the "cost-plus" exception is not relevant to the current motion, as the plaintiffs in the Indirect Purchaser Actions (*i.e.,* consumers and insurance companies who purchase from retail pharmacies) do not allege even that they purchased terazosin from the national wholesaler members of the direct class.

recoveries" in explaining the rationale for the direct purchaser rule. *Lowell*, 177 F.3d at 1229; *see also Associated Gen. Contractors v. California State Council of Contractors*, 459 U.S. 519, 545 (1983) (noting avoidance of duplicative recoveries as a factor to consider in assessing antitrust standing). Accordingly, in the event that the Court does not accept defendants' position that the direct purchasers may not pursue their claims on an "overcharge" basis, then the Indirect Purchasers' federal claims must be dismissed on the additional basis that dismissal is necessary to avoid an impermissible double recovery. On the other hand, if the Court concludes that the Indirect Purchasers' claims may proceed, then these cases require that the Court also conclude that the Direct Purchaser Actions may not proceed on an "overcharge" basis.

## B.    The Complaint Fails To State A Claim Under The Laws Of Certain States.

Counts II, IV and VI are alleged to arise under various state antitrust laws. Because the substantive requirements of the laws of Arizona, New Jersey, Tennessee, West Virginia and Wisconsin bar indirect purchaser claims such as those alleged here, and because the laws of California and New York bar unilateral monopolization claims such as those included in Count II, those claims are subject to dismissal in part. Moreover, because no named plaintiff has standing to pursue a claim under the laws of *ten* of the states included in the proposed subclasses, Counts II, IV, and VI must be dismissed to the extent they allege claims under the laws of those states.

### 1.    Arizona, New Jersey And West Virginia Preclude Indirect Purchaser Claims.

The Supreme Court has held that state laws which provide indirect purchasers standing to pursue state law antitrust claims are not preempted by the "direct purchaser rule" of the federal antitrust laws. *See California v. ARC America*, 490 U.S. 93, 105-06 (1989). Nonetheless, most states do not permit indirect purchaser claims under state law, but instead

have concluded that the public policy interests in administrative fairness, judicial economy and avoiding multiple liability recognized by *Hanover Shoe* and *Illinois Brick* have equal force under their state laws. Accordingly, the states have been virtually unanimous in barring indirect purchaser actions absent a specific statute authorizing such claims. *See, e.g., Stifflear v. Bristol-Myers Squibb Co.*, 931 P.2d 471, 475-76 (Colo. Ct. App. 1996) ("In view of the similarity in text between the federal and Colorado antitrust statutes, we decline to depart from the basic analytical framework developed by federal courts with respect to the standing requirements for claims alleging state antitrust violations."); *see also Blewett v. Abbott Labs.*, 938 P.2d 842, 845-46 (Wash. Ct. App. 1997)[8] Moreover, federal courts in the same position as this Court – asked to determine whether a state would adopt the "direct purchaser rule" – also have concluded that indirect purchaser lack standing absent a specific statute authorizing such claims. *See Free v. Abbott Labs.*, 176 F.3d 298 (5th Cir. 1999) (Louisiana would follow *Illinois Brick*), *aff'd by an equally divided court*, 120 S. Ct. 1578 (2000); *In re Wiring Device Antitrust Litig.*, 498 F. Supp. 79, 85-86 (E.D.N.Y. 1980) (South Carolina would follow *Illinois Brick*).

Arizona, New Jersey and West Virginia are among the states that have not adopted legislation authorizing indirect purchaser actions. Not surprisingly, the relevant authorities strongly suggest that the laws of Arizona, New Jersey and West Virginia, like federal laws, bar antitrust claims by indirect purchasers. Specifically:

- Each state adheres to the rule that federal law guides the interpretation of state antitrust law absent clear statutory authority to the contrary;

---

[8] Defendants are aware of only one state appellate court decision which rejected *Illinois Brick* in the absence of a state legislative repealer. *See Hyde v. Abbott Labs.*, 473 S.E.2d 680 (N.C. Ct. App. 1996). Nonetheless, for several reasons the *Hyde* decision is of little value here. Among other things, it rests on a rule that North Carolina courts, unlike those in Arizona, New Jersey and West Virginia, need not give federal antitrust law great deference. *See id.* at 581.

- Each state's antitrust statutes contain no language remotely suggesting that indirect purchasers may sue for damages; and,

- Lower court rulings in each state support application of the direct purchaser rule.

Because Arizona, New Jersey and West Virginia do not permit antitrust claims by indirect purchasers, Counts II, IV, and VI must be dismissed to the extent they are alleged to arise under the antitrust laws of these states.

### a.    Indirect Purchasers Lack Standing Under Arizona Law.

The Arizona Antitrust Act directs Arizona courts to look to federal antitrust precedent as a guide in resolving issues that have a federal counterpart:

> It is the intent of the legislature that in construing this article, the courts may use as a guide interpretations given by the federal courts to comparable antitrust statues."

Ariz. Rev. Stat. § 44-1412 (2000).  In enacting this provision, "[t]he Arizona legislature clearly intended to strive for uniformity between federal and state antitrust laws." *Wedgewood Inv. Corp. v. Int'l Harvester Co.*, 613 P.2d 620, 623 (Ariz. Ct. App. 1979).  Indeed, in past circumstances, the Arizona Supreme Court has held that federal antitrust precedent was "dispositive" of the issues raised. *All Am. Sch. Supply Co. v. Slavens*, 625 P.2d 324, 325 (Ariz. 1981).

The direct purchaser rule is grounded in the antitrust standing provision found in Section 4 of the Clayton Act, 15 U.S.C. § 15(a).  Arizona's counterpart to Section 4 of the Clayton Act is nearly identical.  The Arizona statute provides that "[a] person threatened with injury or injured in his business or property by a violation of this article may bring an

action . . ..," Ariz. Rev. Stat. § 44-1408(B).[9] Section 4 of the Clayton Act similarly provides "[a]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor . . . ." 15 U.S.C. § 15(a). Indeed, the United States Supreme Court has noted the similarity between Arizona and federal antitrust law. *See ARC Am.*, 490 U.S at 98 n.3 (1987) (Section 1408 "generally follows the language" of § 4 of the Clayton Act").[10]

Moreover, the Arizona Court of Appeals has specifically endorsed application of *Hanover Shoe,* under Arizona antitrust law. *See Northern Ariz. Gas Serv., Inc. v. Petrolane Transp., Inc.*, 702 P.2d 696 (Ariz. Ct. App. 1984). As noted above, *Hanover Shoe* is the flip-side of *Illinois Brick*, because the bar against indirect purchaser suits recognized in *Illinois Brick* follows logically from the bar against the pass-on defense recognized by *Hanover Shoe*. As such, it is clear that Arizona law does not permit antitrust suits by indirect purchasers. *See Provau v. State Farm Mut. Auto. Ins. Co.*, 772 F.2d 817, 820 (11th Cir. 1985) (federal court bound by state appellate interpretation of state law "absent some persuasive indication that the state's highest court would decide the issue otherwise") (quoting *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 690 (11th Cir. 1983)).

b.   **Indirect Purchasers Lack Standing Under New Jersey Law.**

A similar analysis shows that indirect purchasers lack standing under New Jersey law. First, as in Arizona, federal precedent guides the analysis of New Jersey antitrust law. *See* N.J. Stat. Ann. § 56:9-18 (2000) (act "shall be construed in harmony with ruling judicial interpretations of comparable Federal antitrust statutes. . . ."); *see also New Jersey v. Lawn King, Inc.*, 417 A.2d 1025 (N.J. 1980).

---

[9] *Compare, e.g.,* Mich. Comp. Laws. Ann. § 445.778(2) (2000) ("Any other person threatened with injury or *injured directly or indirectly* in his or her business or property by a violation of this act . . ..") (emphasis added).

[10] In *ARC America*, the Court did not address whether § 1408 should be construed as authorizing or prohibiting indirect purchasers to recover, noting that this was a "question of Arizona law." *ARC Am. Corp.*, 490 U.S. at 98 n.3.

Second, as in Arizona, New Jersey's analogue to Section 4 of the Clayton Act has no material differences. N.J. Stat. Ann. § 56:9-12 ("Any person who shall be injured in his business or property by reason of a violation of the provisions of this act may sue therefor . . . .").

Third, a New Jersey appellate court has cited *Illinois Brick* with approval, and noted the similarities between New Jersey's injury provision and the Clayton Act. *See Kimmelman v. Henkels & McCoy, Inc.*, 506 A.2d 381, 386 (N.J. Super. Ct. App. Div. 1986), *rev'd in part*, 527 A.2d 1368 (N.J. 1987). Indeed, a New Jersey Superior Court opined recently that "the New Jersey Antitrust Act unequivocally bars indirect purchaser suits, pursuant to the *Illinois Brick* doctrine." *See Keiffer v. Mylan Labs.*, 1999-2 Trade Cas. (CCH) ¶ 72,673, 1999 WL 1567726, at *4 (N.J. Super Law Div. 1999). Accordingly, there is no basis for concluding that New Jersey law would permit the Indirect Purchasers' claims to proceed.

### c.     Indirect Purchasers Lack Standing Under West Virginia Law.

The situation in West Virginia is the same. The West Virginia legislature has directed that its antitrust law be construed "liberally and in harmony with ruling judicial interpretations of comparable federal antitrust statutes." W. Va. Code § 47-18-16 (2000). The West Virginia antitrust standing provision does not materially differ from Section 4 of the Clayton Act: "Any person who shall be *injured in his business or property* by reason of a violation of the provisions of this article may bring an action . . . ." W. Va. Code § 47-18-9 (emphasis added). Further, West Virginia case law supports application of the direct purchaser rule. *See Va. Elec. & Power Co. v. Int'l Bhd. of Boilermakers*, No. 75-212-E, 1980 WL 2062 (N.D. W. Va. Mar. 3, 1980). This Court likewise should conclude that the Indirect Purchasers' claims are barred under West Virginia law.

2.    **Plaintiffs' Tennessee and Wisconsin Antitrust Claims Must Be Dismissed.**

Plaintiffs' claims under Tennessee and Wisconsin law fail because these states have chosen to limit the reach of their antitrust statutes to conduct that is predominantly intrastate in character. The conduct at issue here – the alleged abuse of monopoly power in a nationwide market for terazosin products by defendants from three different states – is overwhelmingly interstate in nature.

a.    **Plaintiffs Do Not State a Claim Under Tennessee Law.**

The Tennessee Supreme Court has long held its antitrust statutes apply only to conduct that is predominantly *intrastate* in character. *See Standard Oil Co. v. State*, 100 S.W. 705, 710-12 (Tenn. 1907) (although merely incidental effect on interstate commerce does not render Tennessee statutes unenforceable, those statutes prohibit only conduct affecting intrastate commerce); *State ex. rel Cates v. Standard Oil Co.*, 110 S.W. 565, 580-81 (Tenn. 1907) (same), *aff'd sub nom. Standard Oil Co. v. Tennessee*, 217 U.S. 413 (1910); *Lynch Display Corp. v. Nat'l Souvenir Ctr.*, 640 S.W.2d 837, 840 (Tenn. Ct. App. 1982) ("The Tennessee antitrust law applies to transactions which are predominantly intrastate in character. The transaction does not have to be exclusively intrastate to be affected."); *Dzik & Dzik, P.C. v. Vision Serv. Plan*, 1989-1 Trade Cas. (CCH) ¶ 68,415, 1989 WL 3082 (Tenn. Ct. App. 1989).

In *FTC v. Mylan Lab., Inc.*, 99 F. Supp.2d 1 (D.D.C. 1999), the United States District Court for the District of Columbia dismissed a claim under the Tennessee statute that a pharmaceutical manufacturer and its active ingredient suppliers had entered into agreements designed to raise prices, while upholding similar claims under several other states' antitrust laws. The court noted that the Complaint "allege[d] a price-fixing conspiracy that operated on a national level and affected at least 32 states." 99 F. Supp.2d at 9. Accordingly, the court

concluded that the Complaint involved "conduct that was predominantly interstate, and outside the ambit of Tennessee's antitrust laws." *Id.; see also Valley Prods. Co. v. Landmark*, 877 F. Supp. 1087, 1095 (W.D. Tenn. 1994) (dismissing claim because alleged restraint of trade in hotel amenities implicated many geographic regions in the United States); *compare Blake v. Abbott Lab.*, C.A. No. 03A01-9509-CV-00307, 1996 WL 134947 (Tenn. Ct. App. Mar. 27, 1996) (reversing dismissal where predominantly interstate character of conduct was unclear from the pleadings); *Duke v. Browning-Ferris Indus., Inc.*, No. 96-2859-TUA, 1996 U.S. Dist. LEXIS 20769 (W.D. Tenn., Oct. 23, 1996) (denying motion to dismiss where Complaint alleged predominantly intrastate conduct).[11]

There can be no dispute that the conduct alleged in the Complaint here is predominantly interstate in character. The Complaint alleges that the agreements had the effect of delaying entry of generic terazosin into a nationwide market for terazosin products, not simply an effect upon Tennessee. *See* Complaint ¶¶ 106-109. The purported classes comprise either end-purchasers of certain pharmaceutical products nationwide or all end-purchasers in 17 states and the District of Columbia. *Id.* ¶ 20. The named plaintiffs comprise ten natural persons, allegedly resident in eight different states, and two corporate entities, one organized pursuant to a federal statute and the other allegedly doing business in all 50 states. *Id.* ¶¶ 3-14. Defendants Abbott, Geneva, and Zenith are alleged to have their principal places of business in Illinois, Colorado and Florida, respectively, and to be transacting business nationwide. *Id.* ¶¶ 15-17, 48, 107. The Complaint alleges that all plaintiffs "sustained damages in the same way as a result of

---

[11] Defendants are aware of only one case that cuts against this essentially unanimous Tennessee and federal authority, *In re Cardizem CD Antitrust Litig.*, 105 F. Supp.2d 618 (E.D. Mich. 2000). That case explicitly rejected the holdings of the *three* Tennessee appellate courts and one federal court that have examined the issue, and declared that the Tennessee statute covers any conduct that "more than incidentally affects Tennessee's intrastate commerce." *Id.* at 667-68. This federal case, running so counter to all of the Tennessee (and federal) authority discussed herein, is entitled to no weight.

Defendants' wrongful conduct" and that all plaintiffs' claims "arise out of the same nucleus of operative facts and are based on the same legal theories." *Id.* ¶ 24.

Even if the Court interprets the Complaint here to implicate "intrastate commerce," this is incidental to the predominantly interstate character of the conduct at issue. *See Mylan Lab., Inc.*, 99 F. Supp.2d at 9 (alleged price-fixing conspiracy that operated on a national level and affected at least 32 states was predominantly interstate in character). Accordingly, the Indirect Purchasers' Tennessee claims must be dismissed.

**b.    Plaintiffs Do Not State a Claim Under Wisconsin Law.**

For similar reasons, Plaintiffs do not state a claim under the Wisconsin antitrust statute, Wis. Stat. §§ 133.01 to 133.18. The Wisconsin Supreme Court has long held that anticompetitive conduct pertaining to interstate rather than intrastate commerce is beyond the reach of this statute. *See, e.g., Pulp Wood Co. v. Green Bay Paper & Fiber Co.*, 147 N.W. 1058, 1062 (Wis. 1914); *State v. Lewis & Leidersdorf Co.*, 230 N.W. 692, 694 (Wis. 1930); *Reese v. Associated Hosp. Serv., Inc.*, 173 N.W.2d 661, 664 (Wis. 1970); *John Mohr & Sons, Inc. v. Jahnke*, 198 N.W.2d 363, 367 (Wis. 1972); *State v. Waste Mgmt., Inc.*, 261 N.W.2d 147, 155 (Wis. 1978); *Grams v. Boss*, 294 N.W.2d 473, 480 (Wis. 1980). In *Grams*, the most recent Wisconsin Supreme Court case to speak to the issue, the court described the scope of the antitrust statute thusly: "We have repeatedly stated that § 133.01, Stats., was intended as a reenactment of the first two sections of the federal Sherman Antitrust Act of 1890, 15 U.S.C. §§ 1 and 2, with application to intrastate as distinguished from interstate transactions and that the question of what acts constitute a combination or conspiracy in restraint of trade is controlled by federal court decisions under the Sherman Act." 294 N.W.2d at 480.

Courts in Wisconsin do permit claims implicating some interstate element to be brought under the antitrust statute, but only when the conduct alleged is preponderantly intrastate

in character. *See State v. Allied Chemical & Dye Corp.*, 101 N.W.2d 133 (Wis. 1960).  Where,

as here, the conduct at issue is predominantly interstate, it is not regulated by the Wisconsin

statute.  *Maryland Staffing Servs. Inc. v. Manpower, Inc.*, 936 F. Supp. 1494, 1505 (E.D. Wis.

1996) (Wisconsin franchisor and an out-of-state franchisee "in all likelihood negotiated the

franchise agreement across state lines. ... Payments to and from either party must have been sent

via mail; any necessary communications via phone, mail or fax across state lines."); *see also*

*Emergency One, Inc. v. Waterous, Inc.*, 23 F. Supp. 2d 959, 970-71 (E.D. Wis. 1998) (dismissing

claim by Wisconsin plaintiff where alleged conduct involved nationwide market and thus was

"almost entirely interstate in nature" without "significant adverse effects" in Wisconsin).

The mere fact that United Wisconsin Services ("UWSI") and its affiliate

Wisconsin Blue Cross are based in Wisconsin does not provide any basis for concluding that

these actions are preponderantly intrastate in character.  By plaintiffs' own admission, "UWSI

and Wisconsin Blue Cross had members in all 50 states" and allegedly purchased Hytrin® and

generic terazosin in the context of providing health care coverage for those members.  *See*

Complaint ¶ 8.  Plaintiffs have not grounded their claims in some activity that had some

"significant adverse effect" in Wisconsin, but rather have asserted federal and state claims on

behalf of a proposed nationwide class, and have claimed that the alleged antitrust violations had

a significant nationwide impact upon the alleged nationwide market for terazosin products.  *See*

Complaint ¶¶ 106-11.  In sum, the Complaint simply contains no basis for concluding that this

case predominantly concerns Wisconsin. [12]

---

[12] In *In re Cardizem CD Antitrust Litig.*, the district court found that generalized allegations of delayed generic entry were sufficient to trigger the Wisconsin statute.  *See* 105 F. Supp.2d at 666.  The *Cardizem* court clearly erred.  The decision is flatly at odds with the authority discussed above and, although the court purported to rely heavily on the *Emergency One* decision, its conclusion that an allegation of generalized nationwide harm is sufficient to trigger the statute is inconsistent with the holding of *Emergency One* (which held just such allegations to be *insufficient*).

### 3.    Plaintiff's Unilateral Monopolization Claims Under New York And California Law Must Be Dismissed.

Count II, also brought on behalf of the purported 18-state subclasses, alleges unilateral monopolistic conduct by Abbott prior to the Agreements. *See* Complaint ¶¶ 20, 113, 118-140. The antitrust statutes of New York and California do not address unilateral conduct. Thus, Count II fails to the extent it purports to arise under the laws of those states.

### a.    New York Law Bars Claims Based On Unilateral Conduct.

The New York antitrust statute, the Donnelly Act, prohibits only a "contract, agreement, arrangement or combination" that establishes or maintains a monopoly (or "may" do so). N.Y. Gen. Bus. Law § 340(1). The statute does not contain an analogue to Section 2 of the Sherman Act, 15 U.S.C. § 2, and does not reach unilateral conduct, as New York's highest court, the Court of Appeals, has expressly held. *State v. Mobil Oil Corp.*, 344 N.E.2d 357, 359 (N.Y. 1976) (statute requires a "reciprocal relationship of commitment between two or more legal or economic entities" before liability may be found); *accord, e.g., Bello v. Cablevision Sys. Corp.*, 587 N.Y.S.2d 1, 2-3 (N.Y. App. Div. 1992) (failure to allege concerted action required dismissal); *Hall Heating Co. v. New York State Elec. & Gas,* 580 N.Y.S.2d 528, 529 (N.Y. App. Div. 1992) ("Unilateral action is insufficient to support a claimed violation of [the Donnelly Act]"); *Pharmacists' Ass'n of W. N.Y., Inc. v. Blue Cross of W. N.Y., Inc.*, 492 N.Y.S.2d 221, 223 (N.Y. App. Div. 1985) (same).

In support of Count II, plaintiffs alleged that between October 15, 1995 (the date from which, they claim, Abbott's legal, patent-based monopoly was at an end) and April 30, 1998 (the date of the Zenith agreement), Abbott engaged in a series of unilateral acts. There is no allegation of *any* concerted conduct during this time period. Accordingly, Count II does not state a claim under the Donnelly Act.

### b.    California Law Bars Claims Based On Unilateral Conduct.

Like New York's Donnelly Act, the California Cartwright Act does not contain any analogue to Section 2 of the Sherman Act. On this basis, the California Court of Appeal and the Ninth Circuit have expressly held that the Cartwright Act does not prohibit unilateral conduct. *See, e.g., Freeman v. San Diego Ass'n of Realtors*, 77 Cal. App.4th 171, 202 (Cal. Ct. App. 1999); *G.H.I.I. v. MTS, Inc.*, 147 Cal. App.3d 256, 266-68 (Cal. Ct. App. 1983); *Bondi v. Jewels by Edwar, Ltd.*, 267 Cal. App.2d 672, 678 (Cal. Ct. App. 1968); *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1478 (9th Cir. 1995). Likewise, although the California Supreme Court has not addressed the issue, it has held that the Cartwright Act does not regulate certain other conduct covered by the federal antitrust laws when the Cartwright Act omits the analogous federal statutory provisions. *State ex rel. Van de Kamp v. Texaco, Inc.*, 762 P.2d 385, 386 (Cal. 1988) (Cartwright Act does not regulate mergers because no analogue to Clayton Act Section 7).[13] Accordingly, Count II fails to state a claim under California law.

### 4.    No Plaintiff Has Standing Under The Laws Of Minnesota, Mississippi, New Jersey, North Carolina, North Dakota, South Dakota and West Virginia.

The named plaintiffs allege that they are residents of or purchased Hytrin® in only seven states and the District of Columbia. No named plaintiff is alleged to be a resident of or to have purchased Hytrin® in Arizona, Maine, Minnesota, Mississippi, New Mexico, New Jersey, North Carolina, North Dakota, South Dakota, and West Virginia, and none of those states provides a right of action to out-of-state plaintiffs to pursue claims based on out-of-state conduct. Nevertheless, the Complaint asserts claims under the laws of all ten of these jurisdictions in addition to the seven jurisdictions in which the named plaintiffs reside and/or are alleged to have purchased Hytrin®. *See* Complaint ¶¶ 121-38, 151, 160. Because the named plaintiffs cannot

---

[13] The court noted that it did not have to reach a contention by the attorney general that the Cartwright Act reaches unilateral monopolistic practices. 762 P.2d at 395 n.17.

pursue claims for which they lack standing, the claims asserted under the antitrust laws of these ten jurisdictions must fail.

In order to satisfy the irreducible minimum requirements for standing a plaintiff must have suffered "an invasion of a legally protected interest." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *accord Miccosukee Tribe of Indians of Florida v. Florida State Athletic Comm'n.*, No. 99-13559, 2000 WL 1288675, at *1 (11th Cir. Sept. 13, 2000). Where, as here, a claim is based on an alleged right of action under state law, the named plaintiff must satisfy the standing requirements of the laws of the state which created the right of action to satisfy the federal standing requirements of Article III of the Constitution. *See FMC Corp. v. Boesky*, 852 F.2d 981, 993 (7th Cir. 1988) (noting that "in such a case, the actual or threatened injury required by Article III exists solely by virtue of the recognized state-law right, the invasion of which creates standing") (citing *Warth v. Seldin*, 422 U.S. 490, 500 (1975)); *Metropolitan Express Serv., Inc. v. Kansas City*, 23 F.3d 1367, 1370-71 (8th Cir. 1994) (holding that plaintiff must establish standing under state law where state law creates right of action).

The named plaintiffs do not – and cannot – claim that they have suffered an invasion of legally protected interests under laws of states where they do not live and where they do not reside and did not purchase Hytrin®. None of the named plaintiffs can do so, because each of these ten states plainly requires a substantial connection to the state before any claim may proceed under its antitrust laws. *See, e.g.,* Ariz. Rev. Stat. §§ 44-1401, *et seq.* (providing right of action to claims arising "within this state"); Me. Rev. Stat. Ann. §§ 1101, *et seq.* (providing right of action to claims arising "in this state"); Minn. Stat. §§ 325D.54-57 (same); Miss. Code Ann. §§ 75-21-1, *et seq.* (providing right of action for claims arising in Mississippi); N.J. Stat. Ann. §§ 56:9-1, *et seq.* (providing right of action for claims arising "in this state");

N.M. Stat. Ann. §§ 57-1-1 (providing right of action for claims arising "within this state");

N.C.G.S.A. § 75-1, *et seq.* (providing right of action for claims arising "in the State of North

Carolina"); N.D. Century Code §§ 51-08.1-01, *et seq.* (providing right of action for claims

arising "within this state"); S.D. Codified L. Ann. §§ 37-1-3.1, *et seq.* (same); W.V. Code §§ 47-

18-1, *et seq.* (same).

        The named plaintiffs cannot use their proposed class definitions to salvage the

claims they purport to assert on behalf of plaintiffs from these ten states. The Supreme Court has

repeatedly made clear that class allegations "add [] nothing to the question of standing." *Lewis v.

Casey*, 518 U.S. 343, 357 (1996); *see also Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) ("Nor

does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that

injury the necessary stake in litigating conduct of another kind, although similar, to which he has

not been subject."). The Eleventh Circuit has held similarly. *See Griffin v. Dugger*, 823 F.2d

1476, 1483 (11th Cir. 1987) ("individual injury requirement is not met by alleging 'that injury

has been suffered by other, unidentified members of the class to which [the plaintiff] belong[s]

and which [he] purport[s] to represent.'") (citations omitted, brackets in original); *see also

Sanner v. Board of Trade*, 62 F.3d 918, 922 (7th Cir. 1995) ("[A]n injured party is ordinarily

required to assert his own legal rights and interests; he cannot ordinarily rest his claim for relief

upon the rights of third parties."); *Brown v. Sibley*, 650 F.2d 760, 771 (5th Cir. 1981) ("Inclusion

of class action allegations in a complaint does not relieve a plaintiff of himself meeting the

requirements for constitutional standing, even if the persons described in the class definition

would have standing themselves to sue. If the plaintiff has no standing individually, no case or

controversy arises.").

[673500.3]

It is no answer that one plaintiff insurance company, UWSI, alleges that it has "members" in all fifty states. *See* Complaint ¶ 8. UWSI does not allege that it – or any of its members – purchased Hytrin® in any of the ten states for which there is no named plaintiff. Indeed, UWSI makes no allegation that it is pursuing its claims on behalf of its members.[14] Rather than asserting that its members purchased Hytrin® and suffered cognizable antitrust injury, UWSI plainly asserts that it purchased Hytrin® itself and that it suffered injury based on those purchases. *Id.* UWSI makes no allegation that could possibly lead to the conclusion that its alleged injuries would be assessed under the laws of any of the ten states for which there is no named plaintiff.

Accordingly, the Court should dismiss the Complaint to the extent it includes claims under the laws of states in the ten states in which no plaintiff resides. *See Brown*, 650 F.2d at 771 (when court concludes that proposed class representatives lack individual standing, proper procedure is to dismiss Complaint); *see also* 7B Charles Alan Wright, et al. *Federal Practice and Procedure* § 1785.1, at 142 (2d ed. 1986) ("[T]o avoid a dismissal based on a lack of standing, the court must be able to find that both the class and the representatives have suffered some injury requiring court intervention.").[15]

---

[14] UWSI would lack associational standing to pursue any claim on behalf of its members in federal court. Associations must meet a strict test to establish Constitutional standing under Article III to pursue claims on behalf of their members, and generally do not have standing to pursue damage claims on behalf of their members. *See Sanner*, 62 F.3d at 923 ("We are not aware of any cases allowing associations to proceed on behalf of their members when claims for monetary, as opposed to prospective relief are involved.").

[15] The Court also should dismiss the claims based on generic purchases to the extent that they are brought under the laws of the four *additional* states (California, Kansas, Tennessee and the District of Columbia) in which no generic-purchasing named plaintiff resides.

## C.    The Federal Common Law Claim For Unjust Enrichment Is Subject To Dismissal Because There Is No Such Cause Of Action.

The "unjust enrichment" claim asserted by the Indirect Purchasers appears to be based on a federal common law theory. *See* Complaint ¶¶ 163-67. In asserting this claim – a claim that the Indirect Purchasers seek to pursue on behalf of a nationwide class – the Indirect Purchasers have not pointed to any statute or precedent authorizing such a claim. In fact, no such claim exists. Nor should the Court create such a claim. The Supreme Court has recognized that the authority of federal courts to make federal common law is strictly limited. *See City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304 (1981); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Federal courts may develop federal common law only in those "few and restricted instances" where, despite the absence of an applicable federal statute, "there exists a 'significant conflict between some federal policy or interest and the use of state law' . . . ." *City of Milwaukee*, 451 U.S. at 313 (quoting *Wallis v. Pan American Petroleum Corp.*, 384 U.S. 63, 68 (1966)). This is not one of those instances.

First, Congress *has* spoken to the subject matter of the Indirect Purchasers' Complaint. The Sherman Act and the Clayton Act, 15 U.S.C. § 1, *et seq.*, both address that subject matter – as the Indirect Purchasers obviously concede inasmuch as the Complaint purports to plead claims under the Sherman Act. Moreover, as noted above, federal law bars suits by indirect purchasers. *See, e.g., Utilicorp*, 497 U.S. at 206-08. The Indirect Purchasers' implicit request that this Court create an "unjust enrichment" claim is an improper attempt to evade this well-established rule.

Second, a federal common law cause of action for unjust enrichment would undermine the rights of the various states to develop common law as they see fit. The prerequisites to pursuing an unjust enrichment claim vary significantly from one State to another.

For instance, some states confine unjust enrichment claims to situations where the defendant received money "illegally or unlawfully" or through the use of "mistake or fraud." *Hancock-Hazlett Gen. Constr. Co. v. Trane Co.*, 499 So.2d 1385, 1387 (Ala. 1986); *First Nat'l Bank v. Ramier*, 311 N.W.2d 502, 504 (Minn. 1981). Other states allow recovery on an unjust enrichment theory wherever the plaintiff can show an "absence of justification" for the retention of money received from the plaintiff or that it would be "unjust" for the defendant to retain the funds at issue. *See, e.g., Stapley v. American Bathtub Liners Inc.*, 785 P.2d 84, 88 (Ariz. Ct. App. 1989); *Salzman v. Bachrach*, 996 P.2d 1263, 1265-66 (Colo. 2000). Still others allow claims to proceed only where it can be shown that there is no remedy at law for the conduct at issue. *See, e.g., Jackson Nat'l Life Ins. Co. v. Kennedy*, 741 A.2d 377, 393 (Del. Ch. 1999) (holding that absence of remedy at law is element of claim); *Stapley*, 785 P.2d at 88 (same). At least one state does not recognize any stand-alone claim for unjust enrichment under any circumstances. *See Alaska Sales & Serv., Inc. v. Millet*, 735 P.2d 743, 746 (Alaska 1987) ("[U]njust enrichment is not in and of itself a theory of recovery.").

In addition, in the many states where indirect purchaser actions are not available under the relevant state antitrust laws, allowing indirect purchasers to pursue a common law claim for unjust enrichment would be contrary to the public policies reflected in the direct purchaser rule as applied in those states. *See, e.g., Free,* 176 F.3d at 301 & n.7 (noting that majority of states "have decided to follow the *Illinois Brick* road"). Thus, rather than eliminating conflicts between state and federal law, allowing a federal common law claim for unjust enrichment on behalf of plaintiffs from these states would create a new conflict between state and federal antitrust laws.

Allowing the Indirect Purchasers' nationwide federal common law unjust enrichment claim to proceed thus would undermine both the federal policy reflected in the indirect purchaser rule and the States' interests in regulating claims by indirect purchasers pursuant to the particular requirements of their respective laws. There is no basis for applying federal common law in these circumstances. The Indirect Purchasers' "unjust enrichment" claim lacks any basis whatsoever and should be dismissed.

## IV.   CONCLUSION

For each of the foregoing reasons, Counts I, IV, V and VII of the Second Amended Consolidated Complaint, as well as those allegations of Counts II, IV, and VI which purport to state claims under the laws of Arizona, Maine, Minnesota, Mississippi, New Mexico, New Jersey, North Carolina, North Dakota, South Dakota, Tennessee and West Virginia, the allegations of Count II which purport to state claims under the laws of California and New York, and the allegations of Counts II, IV and VI based on generic purchases in California, Kansas, and the District of Columbia, should be dismissed.

Dated:  October 6, 2000                    Respectfully submitted,


By: _____
MUNGER, TOLLES & OLSON LLP
Jeffrey I. Weinberger
Stuart N. Senator
Stephen E. Morrissey
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071
(213) 683-9100

*Attorneys for Abbott Laboratories*

Jon W. Zeder (Fla. Bar No. 98432)
Wes R. Parsons
ADORNO & ZEDER
2601 S. Bayshore Drive, Suite 1600
Miami, Florida  33133
(305) 858-5555

Case No. 99-MDL-1317

*Of Counsel:*
Laura J. Schumacher
Legal Division
Department 324, Building AP6D
ABBOTT LABORATORIES
100 Abbott Park Road
Abbott Park, IL 60064
(847) 937-5726
Attorneys for Defendant
ABBOTT LABORATORIES

DEWEY BALLANTINE LLP

By: _____
Wayne A. Cross
Robert A. Milne
Eamon O'Kelly
1301 Avenue of the Americas
New York, NY 10019
(212) 259-8000

AKERMAN, SENTERFITT & ELDSON, P.A.
Paul A. Shelowitz
One Southeast Third Avenue, 28th Floor
Miami, FL 33131
(305) 358-7605

*Attorneys for Geneva*
*Pharmaceuticals Inc.*

WILLIAMS & CONNOLLY

By: _____
Gerson A. Zweifach
Kevin M. Downey
725 Twelfth Street, N.W.
Washington, DC 20005-5901
(202) 434-5000

[673500.3]                                29

STERNS WEAVER MILLER
WEISSLER ALHADEFF &
SITTERSON, P.A.
Jay B. Shapiro
150 West Flagler Street
Museum Tower, Suite 2200
Miami, FL  33130
(305) 789-3229

*Attorneys for Zenith Goldline
Pharmaceuticals, Inc.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by facsimile and overnight mail this 6th day of October, 2000 to all liaison counsel on the attached Service List.

_____
STEPHEN E. MORRISSEY

[657727.1]

**SERVICE LIST**
[08-01-00]
**Case No. 99-MDL- 1317 (ALL CASES) SEITZ/GARBER**

## LIAISON COUNSEL

Barry S. Taus, Esq.
Garwin, Bronzaft, Gerstein & Fisher L.L.P.
1501 Broadway, Suite 1416
New York, NY 10036
Tel:       (212) 398-0055
Fax:      (212) 764-6620

Daniel Berger, Esq.
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel:       (215) 875-3026
Fax:      (215) 875-4671

Richard B. Drubel, Esq.
Boies Schiller & Flexner L.L.P.
26 South Main Street
Hanover, NH 03755
Tel:       (603) 643-9090
Fax:      (603) 643-9010

Steve D. Shadowen, Esq.
30 North Third Street, Suite 700
Harrisburg, PA 17101-1713
Tel:       (717) 231-4000
Fax:      (717) 231-4012

Steven Lowey, Esq.
Richard W. Cohen, Esq.
Geoffrey M. Horn, Esq.
Lowey Dannenberg Bemporad & Selinger, P.C.
The Gateway, 11th Floor
One North Lexington Avenue
White Plains, NY 10601
Tel:       (914) 997-0500
Fax:      (914) 997-0035

Gerson A. Zweifach, Esq.
Kevin M. Downey, Esq.
Williams & Connolly LLP
725 Twelfth Street, NW.
Washington, DC 20005-590 1
Tel:       (202) 434-5000
Fax:      (202) 434-5029

Mitchell W. Berger, Esq.
Berger, Davis & Singerman, P.A.
350 East Las Olas Boulevard. Suite 350
Fort Lauderdale, FL 33301
Tel:       (954) 525-9900
Fax:      (954) 523-2872

Scott E. Perwin, Esq.
Kenny Nachwalter Seymour Arnold Critclilow &
Spector, P.A.
1100 Miami Center
201 South Biscayne Boulevard
Miami, FL 33131-4327
Tel:       (305) 373-1000
Fax:      (305) 372-1861

Robert C. Gilbert, Esq.
Robert C. Gilbert, P.A.
Commerce Bank Center
220 Alhambra Circle, Suite 400
Coral Gables, FL 33134
Tel:       (305) 529-9100
Fax:      (305) 529-1612

Jason L. Solotaroft, Esq.
Stammell & Schager, LLP
One Liberty Plaza, 35th Floor
New York, NY 10006-1404
Tel:       (212) 566-4047
Fax:      (212) 566-4061

Daniel Small, Esq.
Cohen, Milstein, Hausfeld & Toll P.L.L.C.
1100 New York Avenue, NW.
West Tower, Suite 500
Washington, DC 20005-3934
Tel:       (202) 408-4600
Fax:      (202) 408-4699

Wayne Cross, Esq.
Robert A. Mime, Esq.
Dewey Ballantine, LLP
1301 Avenue of the Americas
New York, NY 10019
Tel:       (212) 259-8000
Fax:      (212) 259-6333

[672299.1]