

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 99-MDL-1317-SEITZ/KLEIN

IN RE TERAZOSIN HYDROCHLORIDE
ANTITRUST LITIGATION
_____/

**This Document Relates to:**

Louisiana Wholesale Drug Co., Inc.                    Case No. (S.D. Fla.) 98-3125
v. Abbott Laboratories, et al.

Valley Drug Company v. Abbott                         Case No. (S.D. Fla.) 99-7143
Laboratories, et al.
_____/

**SHERMAN ACT CLASS PLAINTIFFS' MOTION FOR:**

    **(A)**    **CERTIFICATION OF THE PROPOSED DIRECT PURCHASER ("SHERMAN ACT") CLASS IN LIGHT OF SETTLEMENT AND RE-APPOINTMENT OF CLASS COUNSEL;**

    **(B)**    **PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT WITH DEFENDANTS ABBOTT LABORATORIES AND GENEVA PHARMACEUTICALS, INC.;**

    **(C)**    **APPROVAL OF THE FORM AND MANNER OF NOTICE TO THE CLASS; AND**

    **(D)**    **SETTING OF CERTAIN DEADLINES**

Louisiana Wholesale Drug Company, Inc. and Valley Drug Company (the "Sherman Act Class Plaintiffs") hereby respectfully move the Court for an Order: (A) certifying the proposed Sherman Act Class in light of settlement and re-appointing Class Counsel; (B) granting preliminary approval of the proposed Settlement between the Sherman Act Class Plaintiffs and defendants

1

**BERGER SINGERMAN**          Boca Raton   Fort Lauderdale   Miami   Tallahassee
attorneys at law
200 South Biscayne Boulevard  Suite 1000  Miami, Florida 33131-5308  Telephone 305·755·9500  Facsimile 305·714·4340

Abbott Laboratories ("Abbott") and Geneva Pharmaceuticals, Inc. ("Geneva"); (C) approving the form and manner of notice to the Class; and (D) setting certain deadlines. A proposed form of Order is attached as Exhibit 1 to the proposed Settlement Agreement (defined below), which Settlement Agreement is attached to this Motion as Exhibit "A." In its rulings, the Court should also set a schedule for the events that will follow, including deadlines for (a) mailing the Class Notice, (b) opting out of the Class, (c) filing of an application for Class Counsel's reimbursement of costs and expenses and award of attorneys' fees, (d) filing of an application for the Representative Plaintiffs' incentive awards, (e) objecting to the proposed Settlement, and (f) a later hearing on whether the Court should give its final approval to the Settlement (the "Fairness Hearing"). In support hereof, Sherman Act Class Plaintiffs aver as follows:

1.      The Sherman Act Class Plaintiffs and defendants Abbott and Geneva (collectively, "Defendants") have entered into an Agreement of Settlement ("Settlement Agreement"), subject to Rule 23(e) of the Federal Rules of Civil Procedure and Court approval, whereby, in exchange for a cash payment totaling $72.5 million from Abbott and Geneva combined (with Abbott contributing $43.5 million and Geneva contributing $29 million to the total), the Sherman Act Class Plaintiffs and the members of the proposed Sherman Act Class (as defined in the Settlement Agreement, ¶ 1) have agreed to release all claims that were or could have been asserted against Defendants in the above-captioned actions before this Court, subject to certain specified limitations. *See* Settlement Agreement, Exhibit "A" hereto.

2.      The proposed Settlement Agreement is in full settlement of the above captioned cases. As the proposed class definition provides, the proposed Settlement Agreement does not apply to the cases brought by any of the individual direct purchaser plaintiffs (who previously opted out of the

BERGER SINGERMAN                    Boca Raton    Fort Lauderdale    Miami    Tallahassee
attorneys at law
200 South Biscayne Boulevard  Suite 1000  Miami, Florida 33131-5308  Telephone 305 755 9500  Facsimile 305 714 4340

former Sherman Act Class and separately brought suit), nor does it apply to cases brought by indirect purchasers or third party payors.

3.    Preliminary approval is the first step of a two-step process for approval of proposed class action settlements under Rule 23 of the Federal Rules of Civil Procedure. In the first step, the Court determines whether the proposed settlement falls within the range of possible approval, *i.e.,* whether probable cause exists to certify the class and issue notification to proposed class members of the settlement's terms. *See Manual for Complex Litigation Third* (1995), § 30.41. In the second step, after notice to the class and an opportunity of absent class members to exclude themselves from the class, object, or otherwise be heard, the Court will determine whether to grant final approval of the settlement as fair and reasonable under Fed. R. Civ. P. 23(e).

4.    Preliminary approval of a proposed class action settlement does not involve a determination of the merits of the proposed settlement or affect the substantive rights of any class member. The purpose of preliminary approval is solely to communicate the proposed settlement to the class, to review and approve the proposed form of notice to the class, and to authorize the manner and form of dissemination of the notice.

5.    As is set forth more fully in the accompanying Memorandum of Law, the proposed settlement satisfies all of the factors required for preliminary approval of a class action settlement under Rule 23 of the Federal Rules of Civil Procedure, in that it falls within the range of possible approval, and thus the settlement should be preliminarily approved and notification of the settlement's terms should be provided to the class.

6.    The proposed Sherman Act Class is defined in the Settlement Agreement as follows:

All persons who purchased Hytrin, also known by the chemical name terazosin hydrochloride, directly from Abbott Laboratories at any time during the period

BERGER SINGERMAN     *Boca Raton   Fort Lauderdale   Miami   Tallahassee*
attorneys at law

200 South Biscayne Boulevard  Suite 1000  Miami, Florida 33131-5308  Telephone 305·755·9500  Facsimile 305·714·4340

commencing March 31, 1998, through and including June 30, 2001. *Excluded from the Class are*: (1) Defendants Abbott Laboratories, Geneva Pharmaceuticals, Inc. (now known as Sandoz, Inc.), Zenith Goldline Pharmaceuticals, Inc. (now known as Ivax Pharmaceuticals, Inc.), their officers, directors, management, employees, subsidiaries, and affiliates; (2) each of the following entities, and any and all claims of each said entity that have been asserted, or could have been asserted, in *In re Terazosin Hydrochloride*, Case No. 99 MDL 1317 arising out of Hytrin or generic terazosin hydrochloride purchases by said entity: CVS Meridian, Inc., Rite Aid Corp., Walgreen Co., Eckerd Corp., The Kroger Co., Albertson's, Inc., the Stop & Shop Supermarket Co., and Hy-Vee, Inc.; and (3) Kaiser Foundation Health Plan, Inc. and the Kaiser entities on whose behalf it has asserted claims in paragraph 8 of its complaint in 99 MDL 1317.

This proposed Class is composed similarly to the class certified by this Court in September of 2001. The previously certified class period began on March 31, 1998 (the date of the Zenith Agreement) and ended on August 13, 1999 (the date Geneva began selling its generic terazosin hydrochloride product). The Sherman Act Class proposed herein would begin on the same date, but end later (*i.e.*, on June 30, 2001).

7.     The Class has been extended past August 13, 1999 to capture any new direct Hytrin purchasers through and including June 30, 2001. This "end date" was chosen because that is the date through which the computerized generic manufacturer sales data produced to Plaintiffs in this litigation runs (data that was unavailable in 2001 when the Court previously certified the class). Computerized generic sales data is necessary for accurate and efficient administration of any plan of allocation of the net Settlement funds to Class members. Extending the Class for these extra months adds approximately 100 new entities to the Class, accounting for a relatively small amount of terazosin hydrochloride purchases.

8.     The newly proposed Sherman Act Class satisfies the requirements of Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, and therefore should be certified as a Class as part of the settlement process. As explained more fully in the supporting Memorandum of Law: (a) in its

118054-1                                      4

September 2001 Class opinion, certifying the Class, the Court previously found that the Class had met all of the requirements of Rules 23(a) and 23(b)(3) for class certification; (b) the Eleventh Circuit vacated this Court's prior class certification opinion and remanded for a determination as to whether the named Plaintiffs were adequate class representatives under Rule 23(a)(4) due solely to the possibility of conflicts between the named Plaintiffs and certain absent class members; (c) the Court in its most recent class opinion found that no such conflicts presently existed, but denied the renewed class certification motion because of the potential for unforeseen conflicts in the future. Given that the law provides that class determinations can and should be reviewed depending upon changed circumstances, and because the fact of settlement moots the only impediment to class certification – namely, the possibility of currently unforeseen class conflicts arising in the future – this Court should certify the proposed Sherman Act Class.

9.      The Court should also re-appoint, pursuant to Rule 23(g), as Co-Lead Counsel and members of the Executive Committee for the Sherman Act Class, the same counsel in the same roles as identified in ¶ 2 of this Court's August 25, 2000 Second Amended Case Management Order. Co-Lead Counsel are Garwin, Gerstein & Fisher LLP and Boies Schiller & Flexner LLP. The Executive Committee also includes: Berger & Montague, P.C. and The Calvin Law Firm, P.C. (all four firms collectively referred to as "Class Counsel").

10.     Plaintiffs also draw the Court's attention to the previously finally approved settlement of the Sherman Act Class with defendant Ivax Pharmaceuticals, Inc. (formerly known as "Zenith Goldline Pharmaceuticals, Inc." ("Zenith")).  The Zenith settlement was executed on or about February 19, 2002 ("Zenith Settlement") (attached hereto as Exhibit "B"), and, after duly authorized notice, was finally approved by this Court by Order dated June 13, 2002 ("Zenith Approval Order")

118054-1                                  5

(attached hereto as Exhibit "C"). The Zenith Approval Order provides that "The Court reserves exclusive jurisdiction of the settlement and the [Zenith] Settlement Agreement, including the administration and consummation of the settlement." Zenith Approval Order at 2.

11.     The Zenith Settlement further provided, *inter alia*, for Zenith to pay $2,072,327.00 into an escrow account for benefit of the Sherman Act Class, which Zenith promptly did. Those funds, according to the notice to the Sherman Act Class relating to the Zenith Settlement, were to be used for purposes of paying litigation expenses ("costs and expenses related to this litigation will be paid out of the proceeds of the [Zenith] Settlement Fund" (p. 9)). Sherman Act Class Counsel have not to date sought to use for any purpose any of the cash in the Zenith Settlement Fund, which monies continue to earn interest in a dedicated escrow account.

12.     Counsel for Zenith claims to have effectuated a termination of the Zenith Settlement in light of the Eleventh Circuit's vacating of this Court's September 2001 class certification opinion. Class Counsel believe, however, that the termination was never effective given the June 13, 2002 Zenith Approval Order, and in any event, counsel for Zenith has agreed to revoke its prior termination, to the extent it was ever effective provided that: (a) the Court certifies the Class substantially in the form requested herein; (b) the Settlement Agreement with Abbott and Geneva becomes final and the time for appeal expires; (c) and the Court reaffirms, in its order finally approving the proposed Settlement Agreement with Abbott and Geneva, that the Zenith Settlement and all of its terms, including class-wide releases and other provisions of agreement and final judgment (except for any obligation for Zenith to pay any notice costs, which obligation has been excused by Plaintiffs, and except as provided in a side letter between Plaintiffs and Zenith) remains in full force and effect. Class Counsel intend to seek an Order from the Court in conjunction with

118054-1                                                 6

BERGER SINGERMAN          *Boca Raton   Fort Lauderdale   Miami   Tallahassee*
       attorneys at law
200 South Biscayne Boulevard  Suite 1000  Miami, Florida 33131-5308  Telephone 305·755·9500  Facsimile 305·714·4340

final approval of the Settlement Agreement with Abbott and Geneva (a) reaffirming the enforceability of the June 13, 2002 final judgment entered regarding the Zenith Settlement, and (b) permitting Class Counsel to use the Zenith Settlement Fund as originally intended, *i.e.*, for reimbursement of litigation costs and expenses.

13.     Sherman Act Class Plaintiffs also submit for the Court's approval the proposed form of notice attached as Exhibit "2" to the attached Settlement Agreement, to be mailed by First Class Mail to all members of the proposed class. For reasons more fully set forth in the accompanying Memorandum of Law, this form and the manner of notice specified satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. The Sherman Act Class Plaintiffs also request the Court's approval of their continued use of Heffler Radetich & Saitta, L.L.P., 1515 Market Street, Suite 1700, Philadelphia, PA 19102, as the Claims Administrator for, among other purposes, disseminating the Class Notice.

14.     Sherman Act Class Plaintiffs propose the following schedule for adjudication of issues relating to the class settlement and approval:

> (a)     Preliminary Approval of the Settlement, certification of the proposed Class, and approval of the forms of notice on February 24, 2005;
>
> (b)     Dissemination of Notice to the Class via First Class Mail on or before March 1, 2005;
>
> (c)     Deadline for opting out of the class shall be March 31, 2005 (date *received* by the Claims Administrator provided in the Class Notice);

BERGER SINGERMAN          *Boca Raton    Fort Lauderdale    Miami    Tallahassee*
        attorneys at law
200 South Biscayne Boulevard  Suite 1000  Miami, Florida 33131-5308  Telephone 305·755·9500  Facsimile 305·714·4340

(d)     On April 5, 2005, Sherman Act Class Plaintiffs shall file their application for attorneys' fees, expenses and costs, specifying and documenting the total amount of costs and expenses to be reimbursed, and the total amount of attorneys' fees sought (not to exceed 33 1/3 % of the gross settlement proceeds, plus interest, but before deduction of costs and expenses to the extent not satisfied by the Zenith Settlement Fund) from the settlement fund (but no attorneys' fees shall be sought out of the Zenith Settlement Fund, which shall be used solely to reimburse litigation costs and expenses). Sherman Act Class Plaintiffs shall also file their application for incentive awards for each Representative Plaintiff on this date.

(e)     On April 5, 2005, Sherman Act Class Plaintiffs shall also file their plan of allocation, and motion for final approval with supporting brief.

(f)     Objections to the proposed Settlement and requests to appear and speak at the Fairness Hearing must be filed with the Clerk of this Court no later than April 8, 2005, and received by Class Counsel no later than April 8, 2005.

(g)     Hearing on final approval (the "Fairness Hearing") shall take place on April 15, 2005.

WHEREFORE, Sherman Act Class Plaintiffs respectfully move the Court to enter the Order proposed, and:

1)     Certify the proposed Sherman Act Class pursuant to Rule 23 of the Federal Rules of Civil Procedure in light of settlement and appoint as Class Counsel those identified in ¶ 2 of the Court's August 25, 2000 Second Amended Case Management Order, who

118054-1                                        8

BERGER SINGERMAN                    *Boca Raton   Fort Lauderdale   Miami   Tallahassee*
attorneys at law

200 South Biscayne Boulevard  Suite 1000  Miami, Florida 33131-5308  Telephone 305-755-9500  Facsimile 305-714-4340

are the undersigned: Garwin, Gerstein & Fisher LLP; Boies Schiller & Flexner LLP; Berger & Montague, P.C.; and The Calvin Law Firm, P.C.;

2)  Preliminarily approve the proposed settlement with Abbott and Geneva in the form attached hereto as Exhibit "A";

3)  Approve the form of Notice attached as Exhibit "2" to the attached Settlement Agreement, and the manner of Notice as detailed in the Memorandum of Law; and

4)  Approve the proposed schedule providing for, among other things, dissemination of notice, objections to the settlement and opting-out of the Class, and setting April 15, 2005 as the date of the hearing on final approval.

For the Court's convenience, a proposed form of Order is provided as Exhibit "1" to the Settlement Agreement.

Dated: February ___, 2005          Respectfully submitted,

                                   BERGER SINGERMAN
                                   350 East Las Olas Boulevard, Suite 1000
                                   Fort Lauderdale, FL 33301
                                   Phone: (954) 525-9900
                                   Fax: (954) 523-2872

                                   By: _____
                                       Mitchell W. Berger, Florida Bar No. 311340
                                       mberger@bergersingerman.com
                                       René D. Harrod, Florida Bar No. 627666
                                       rharrod@bergersingerman.com

**Executed with the Consent of:**

Bruce E. Gerstein, Esq.
Barry Taus, Esq.
Co-Lead Counsel
Garwin Gerstein & Fisher, LLP
1501 Broadway
New York, New York 10036
Telephone: (212) 398-0055
Facsimile: (212) 764-6620
E-Mail: btaus@garwingerstein.com

Richard B. Drubel, Esq.
Co-Lead Counsel
Boies, Schiller & Flexner LLP
26 South Main Street
Hanover, New Hampshire 03755
Telephone: (603) 643-9090
Facsimile: (603) 643-9010
E-mail: rdrubel@boies-schiller.com

Daniel Berger, Esq.
David Sorensen, Esq.
Eric Cramer, Esq.
Executive Committee
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, Pennsylvania 19103-6365
Telephone: (215) 875-3000
Facsimile: (215) 875-4671
E-mail: danberger@bm.net

Aubrey Calvin, Esq.
Executive Committee
Neils Esperson Building
Suite 2300
808 Travis Street
P.O. Box 61586
Houston, TX 77002-1586
Telephone: (713) 224-5771
Facsimile: (713) 225-0038
E-mail: acalvin@crvlaw.com

J. Gregory Odom, Esq.
Stuart Des Roches, Esq.
Odom & Des Roches, LLP
Suite 2020, Poydras Center
650 Poydras Street
New Orleans, LA 70130
Tel: (504) 522-0077
Fax: (504) 522-0078
E-mail: Stuart@ordlaw.com

David P. Smith, Esq.
Percy, Smith & Foote LLP
P.O. Box 1632
720 Murray Street
Alexandria, Louisiana  71309-1632
Tel: (318) 445-4480
Fax: (318) 487-1741
E-mail: DPSmith@PSFG-law.com

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished via U.S. Mail and Electronic Mail to all Counsel of Record on the ___ day of _____, 2005.

By: _____
Rene D. Harrod, Esquire
Florida Bar No. 627666

118054-1

10

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 99-MDL-1317 - SEITZ/KLEIN

IN RE TERAZOSIN HYDROCHLORIDE
ANTITRUST LITIGATION

_____/

THIS DOCUMENT RELATES TO:

| | |
|---|---|
| *Louisiana Wholesale Drug Co., Inc. v. Abbott Laboratories, et al.* | S.D. Fla. Case No. 98-3125 |
| *Valley Drug Co. v. Abbott Laboratories, et al.* | S.D. Fla. Case No. 99-7143 |

_____

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (the "Settlement Agreement") is made and entered into on February __, 2005, by and between (a) defendants Abbott Laboratories ("Abbott") and Geneva Pharmaceuticals, Inc., now known as Sandoz Inc. ("Geneva") (collectively "Defendants") and (b) plaintiffs  Louisiana Wholesale Drug Co., Inc. ("LWD") and Valley Drug Co. ("Valley Drug") (collectively "Plaintiffs") in the putative class actions *Louisiana Wholesale Drug Co., Inc. v. Abbott Laboratories, et al.*, S.D. Fla. Case No. 98-3125 and *Valley Drug Co. v. Abbott Laboratories, et al.*,  S.D. Fla. Case No. 99-7143 (collectively, the "Actions").

WHEREAS, Plaintiffs have alleged, among other things, that Abbott's written agreement with Geneva, dated April 1, 1998, was illegal under Section 1 of the Sherman Act, 15 U.S.C. §1 and Plaintiffs allege that this written agreement caused Plaintiffs and the Class (as defined in paragraph 1 herein) to incur significant damages;

WHEREAS, Defendants deny each and every one of Plaintiffs' allegations of unlawful or wrongful conduct, and deny that any conduct challenged by Plaintiffs caused any damage whatsoever, and have asserted a number of defenses to Plaintiffs' claims;

**ATTACHMENT / EXHIBIT _____**

118049-3

WHEREAS, Plaintiffs and Defendants agree that this Settlement Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Defendants or of the truth of any claim or allegation or a waiver of any defenses thereto;

WHEREAS, arm's-length settlement negotiations have taken place between counsel for Plaintiffs and Defendants, and this Settlement Agreement, which embodies all of the terms and conditions of the settlement ("Settlement") between Defendants and Plaintiffs, both individually and on behalf of the Class, has been reached, subject to final approval of the United States District Court for the Southern District of Florida (the "Court");

WHEREAS, Plaintiffs' counsel have concluded, after extensive discovery and investigation of the facts, and after carefully considering the circumstances of the Actions, including the claims asserted in the complaints filed in the Actions, the possible legal and factual defenses thereto, that it would be in the best interests of the Class to enter into this Settlement Agreement in order to avoid the uncertainties of litigation, particularly complex litigation such as this, and to assure a benefit to the Class and further, that Plaintiffs' counsel consider the Settlement to be fair, reasonable, and adequate and in the best interests of the Class; and

WHEREAS, Defendants have concluded, despite their belief that they are not liable for the claims asserted and that they have good defenses thereto, that it would be in their best interests to enter into this Settlement Agreement to avoid further expense, inconvenience, uncertainties of litigation, and the distraction of burdensome and protracted litigation and thereby to resolve this controversy;

NOW THEREFORE, it is agreed by the undersigned, on behalf of Defendants, Plaintiffs and the Class, that the Actions and all claims made or that could have been made against

- 2 -

Defendants by Plaintiffs and the Class that are Released Claims (as defined in paragraph 11

herein) be settled, compromised and dismissed with prejudice, and without the award of costs,

subject to the approval of the Court, on the following terms and conditions:

       1.    Class.  The parties stipulate to Court approval, in the form set out in the proposed

order attached hereto as Exhibit "1", of the certification of a class in light of the fact of

settlement (the "Class"), defined as follows:

> **All persons who purchased Hytrin, also known by the chemical
> name terazosin hydrochloride, directly from Abbott
> Laboratories at any time during the period commencing
> March 31, 1998 through and including June 30, 2001.**
>
> ***Excluded from the Class are*: (1) Defendants Abbott
> Laboratories, Geneva Pharmaceuticals, Inc. (now known as
> Sandoz Inc.), Zenith Goldline Pharmaceuticals, Inc. (now
> known as Ivax Pharmaceuticals, Inc.), their officers, directors,
> management, employees, subsidiaries, and affiliates; (2) each of
> the following entities, and any and all claims of each said entity
> that have been asserted, or could have been asserted, in *In re
> Terazosin Hydrochloride*, Case No. 99 MDL 1317 arising out of
> Hytrin or generic terazosin hydrochloride purchases by said
> entity: CVS Meridian, Inc., Rite Aid Corp., Walgreen Co.,
> Eckerd Corp., The Kroger Co., Albertson's, Inc., The Stop &
> Shop Supermarket Co., and Hy-Vee, Inc.; and (3) Kaiser
> Foundation Health Plan, Inc.  and the Kaiser entities on whose
> behalf it has asserted claims in paragraph 8 of its complaint in
> 99 MDL 1317.**

The parties' stipulation to Court approval of certification of the Class is only for purposes of

effectuating the Settlement, and for no other purpose.  The parties retain all of their respective

objections, arguments and/or defenses with respect to class certification should there be no

settlement of the Actions.  The parties acknowledge that there has been no stipulation to a class

for any purposes other than effectuating the Settlement, and that if the Settlement does not

- 3 -

118049-3

become final pursuant to the terms of paragraphs 4 and 5 below, the stipulation as to Class becomes null and void.

2.      Reasonable Best Efforts to Effectuate This Settlement.  Counsel for the undersigned agree to recommend approval of this Settlement Agreement by the Court and to undertake their best efforts, including all steps and efforts contemplated by this Settlement Agreement and any other steps and efforts that may be necessary or appropriate, by order of the Court or otherwise, to carry out the terms of this Settlement Agreement.

3.      Motion for Preliminary Approval.  Plaintiffs shall file with the Court a motion for preliminary approval of the Settlement, which contains a proposed preliminary approval order in the form attached hereto as Exhibit "1".  In the event that the Court preliminarily approves the Settlement, Plaintiffs shall, in accordance with the order of preliminary approval, provide Class members with notice of the Settlement pursuant to Rule 23 of the Federal Rules of Civil Procedure and such notice may be given substantially in the form attached hereto as Exhibit "2". Plaintiffs' counsel will recommend to the Court notice to the Class by means of first class mail.

4.      Motion for Final Approval and Entry of Final Judgment.  If the Court preliminarily approves the Settlement, Plaintiffs shall submit a motion for final approval by the Court, after appropriate notice to the Class, and shall seek entry of an order and final judgment:

    a.  finding the Settlement and its terms to be a fair, reasonable and adequate settlement as to Plaintiffs and the Class within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation pursuant to its terms;

    b.  providing for incentive payments from the Settlement Fund (as defined in paragraph 6 herein) to the two Class representatives totaling $75,000 in addition to whatever monies each will receive from the Settlement Fund pursuant to a Court-approved plan of allocation;

- 4 -

c.     directing that the Actions be dismissed with prejudice;

d.     reserving exclusive jurisdiction over the Settlement and this Settlement Agreement, including the administration and consummation of this Settlement;

e.     directing that the judgment of dismissal shall be final and appealable; and

f.     directing that, for a period of five years, the Clerk of the Court shall maintain the record of those members of the Class who have timely excluded themselves from the Class and that a certified copy of such records shall be provided to Defendants.

5.    <u>Finality of Settlement</u>.  The Settlement shall become final upon the occurrence of all of the following:

(i)    Plaintiffs or Defendants have not availed themselves of any right to withdraw from the Settlement pursuant to paragraphs 13 or 14 hereof;

(ii)    the Class is certified as contemplated by the stipulation in paragraph 1 herein;

(iii)    the Settlement is approved by the Court as required by Rule 23(e) of the Federal Rules of Civil Procedure;

(iv)    entry, as provided for in paragraph 4 herein, is made of the order and final judgment with prejudice against Plaintiffs and the members of the Class who have not timely excluded themselves from the Actions; and

(v)    the time for appeal from the Court's approval of the Settlement as described in (iii) hereof and entry of a final judgment as described in (iv) hereof has expired or, if appealed, either such appeal shall have been dismissed prior to resolution or approval of the Settlement and the final judgment has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review, by certiorari or otherwise.

6.    <u>Settlement Consideration: Cash</u>.  Subject to the provisions hereof, and in full, complete and final settlement of the Actions, Abbott shall pay forty-three million five hundred thousand dollars ($43,500,000) and Geneva shall pay twenty-nine million dollars ($29,000,000), in cash, within 5 business days of preliminary approval by the Court, into an escrow account (the

"Settlement Fund"), held and administered by an escrow agent to be selected by Plaintiffs'

undersigned counsel with agreement from counsel for Defendants. The Settlement Fund is the

total amount that Defendants will pay under this Settlement Agreement or for the benefit of the

Released Claims (as defined in paragraph 11 herein), including without limitation funds to

satisfy claims by Class members, attorneys' fees and costs, any Court-approved incentive awards

to the named Plaintiffs for acting as Class representatives, and payment of any and all

administrative and notice expenses associated with the Actions or this Settlement. The escrow

account shall be established and administered pursuant to an escrow agreement in a form

satisfactory to the parties. Defendants shall have no liability, obligation or responsibility with

respect to the investment, disbursement, or other administration or oversight of the Settlement

Fund. It is intended that the escrow account be treated as a "qualified settlement fund" for

federal income tax purposes pursuant to Treas. Reg. § 1.468B-1, and to that end the parties

hereto shall cooperate with each other and shall not take a position, including a position in any

filing or before any tax authority, that is inconsistent with such treatment. Whether or not final

approval of this Settlement Agreement occurs and whether or not the Settlement Fund qualifies

as a qualified settlement fund within the meaning of Treas. Reg. § 1.468B-1, any taxes or

estimated taxes due as a result of income earned by the Settlement Fund, and all related costs and

expenses, will be paid from the Settlement Fund. The parties elect that the Settlement Fund

should be treated as a qualified settlement fund from the earliest possible date and agree to make

any "relation back" election that may be available. Interest earned by the Settlement Fund shall

become part of the Settlement Fund.

   7. <u>Full Satisfaction; Limitation of Interest and Liability</u>. Members of the Class who

have not timely excluded themselves from the Actions shall look solely to the Settlement Fund

for settlement and satisfaction against Defendants of all claims that are released hereunder. Certain members of the Class have purported to assign all or a portion of their claims (the "Assigned Claims"). Members of the Class shall not under any circumstances be entitled to any further compensation from Defendants with respect to any Assigned Claims. In the event that the Settlement becomes final pursuant to paragraph 5 herein, the Settlement Fund will fully satisfy any and all Released Claims as defined in paragraph 11 herein. Except as provided by order of the Court, no Class member shall have any interest in the Settlement Fund or any portion thereof. Defendants shall have no liability with respect to disbursements from the Settlement Fund pursuant to any Court-approved plan of allocation.

8.      Reimbursement of Costs, Fees and Expenses. Plaintiffs and their counsel will be reimbursed and indemnified solely out of the Settlement Fund for all costs, fees and expenses including, but not limited to, the costs of notice of this Settlement to Class members and administration of the Settlement Fund. Defendants shall not be liable for any costs, fees or expenses of any Class members or Plaintiffs, or of any Class members' or Plaintiffs' attorneys, experts, consultants, advisors, agents and representatives. Any such costs, fees and expenses as approved by the Court shall be paid out of the Settlement Fund.

9.      Disbursement of the Settlement Fund. If the Settlement becomes final pursuant to the provisions of paragraph 5 herein, the Settlement Fund shall be distributed to Class members and Class counsel as ordered by the Court. Prior to the Settlement's becoming final pursuant to the provisions of paragraph 5 herein, disbursements for the costs and expenses of Class notice and administration of the Settlement Fund may be made from the Settlement Fund, but only as provided herein or in the escrow agreement specified in paragraph 6 herein. Defendants shall have no liability or responsibility with respect to disbursements from or administration of the

- 7 -

Settlement Fund. To the extent that there is any ambiguity or inconsistency concerning

disbursements when this Settlement Agreement and the escrow agreement specified in paragraph

6 herein are read together, the terms of this Settlement Agreement shall control.

      10.     <u>Attorneys' Fees, Expenses and Costs</u>. Class counsel intend to seek, solely from

the Settlement Fund, attorneys' fees of up to 33 1/3% of the Settlement Fund (plus interest

thereon) before deduction of any costs, expenses, or incentive awards. In addition, Class counsel

intend to seek, from the Settlement Fund, reimbursement of reasonable costs and expenses

incurred in the prosecution of the Actions. Defendants agree to take no position with respect to

the application by Class counsel for the attorneys' fees and expense payments set forth above.

Defendants agree not to oppose any request by Class counsel that the Court order that any

attorneys' fees and expenses awarded by the Court shall be disbursed only to Garwin Gerstein &

Fisher LLP, and Boies, Schiller & Flexner LLP, for allocation among the various counsel to the

Class that have participated in this litigation.

      11.     <u>Releases</u>.

      (a)     Upon the Settlement's becoming final in accord with paragraph 5 herein,

Defendants and their past, present and future parents, subsidiaries, divisions, affiliates,

stockholders, officers, directors, insurers, general or limited partners, employees, agents,

attorneys and any of their legal representatives (and the predecessors, heirs, executors,

administrators, successors and assigns of each of the foregoing) (the "Released Parties") are and

shall be released and forever discharged from all manner of claims, demands, actions, suits,

causes of action, damages whenever incurred, liabilities of any nature whatsoever, including

costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, in

law or equity, that Plaintiffs or any member or members of the Class who has (have) not timely

- 8 -

excluded itself (themselves) from the Class (including any of their past, present or future

officers, directors, insurers, general or limited partners, divisions, stockholders, agents, attorneys,

employees, legal representatives, trustees, parents, associates, affiliates, subsidiaries, partners,

heirs, executors, administrators, purchasers, predecessors, successors and assigns, acting in their

capacity as such), whether or not they object to the Settlement and whether or not they make a

claim upon or participate in the Settlement Fund, ever had, now has, or hereafter can, shall or

may have, directly, representatively, derivatively or in any other capacity, arising out of any

conduct alleged in the Actions or in any other complaint filed in any action consolidated or

coordinated in 99 MDL 1317, or otherwise relating to any alleged delay in marketing or selling

of generic equivalents of Hytrin, prior to the date hereof except as provided for in paragraph 12

herein (the "Released Claims"). Plaintiffs and each member of the Class hereby covenant and

agree that each shall not sue or otherwise seek to establish or impose liability against any

Released Party based, in whole or in part, on any of the Released Claims.

      (b)    In addition, each Class member hereby expressly waives and releases,

upon the Settlement Agreement becoming final, any and all provisions, rights, benefits conferred

by § 1542 of the California Civil Code, which reads:

> **Section 1542.  General Release; extent.  A general release does not
> extent to claims which the creditor does not know or suspect to exist
> in his or her favor at the time of executing the release, which if known
> by him or her must have materially affected his settlement with the
> debtor;**

or by any law of any state or territory of the United States or other jurisdiction, or principle of

common law, which is similar, comparable or equivalent to § 1542 of the California Civil Code.

Each Class member may hereafter discover facts other than or different from those which he, she

or it knows or believes to be true with respect to the claims which are the subject matter of this

paragraph 11, but each Class member hereby expressly waives and fully, finally and forever settles and releases, upon this Settlement Agreement's becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that would otherwise fall within the definition of Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.  Each Class member also hereby expressly waives and fully, finally and forever settles and releases any and all claims it may have against any Released Party under § 17200, *et seq.*, of the California Business and Professions Code or any similar, comparable or equivalent provision of the law of any other state or territory of the United States or other jurisdiction, which claims are hereby expressly incorporated into the definition of Released Claims.

        (c)      Plaintiffs and their counsel will ensure that each claim form contains a copy of the release set forth in paragraph 11(a) and (b) herein, which shall be signed by each member of the Class or its authorized representative as a precondition to receiving any portion of the Settlement Fund.

        12.     <u>Reservation of Claims</u>.  Released Claims shall not include claims arising in the ordinary course of business between Class members and the Released Parties concerning product liability, breach of warranty, breach of contract (other than breach of contract based in whole or in part on any conduct challenged by any plaintiff in 99 MDL 1317), personal or bodily injury, or any claim of any sort that does not relate to Hytrin or terazosin hydrochloride.  Released Claims also shall not include any claim asserted in 99 MDL 1317 by any of the following entities based upon an assignment to said entity arising out of Hytrin or generic terazosin hydrochloride purchases of said entity:  CVS Meridian, Inc., Rite Aid Corp., Walgreen Co., Eckerd Corp., The

- 10 -

Kroger Co., Albertson's, Inc., The Stop & Shop Supermarket Co., and Hy-Vee, Inc.; this settlement shall not be construed to disturb or affect any such assigned claim.

      13.    <u>Withdrawal From Settlement; Requests To Be Excluded From Class</u>. If, after notice of the Settlement is sent to the Class, Class members with aggregate alleged damages exceeding a certain amount by a certain measure (as specified in a confidential letter agreement between the parties) ("exclusion threshold") request to exclude themselves from the Class, then Defendants may, under certain circumstances provided in the letter agreement, be entitled to withdraw from this Settlement. To be effective, any request by a Class member to be excluded from the Class must be received by Plaintiffs' counsel or the claims administrator on or before March 31, 2005. Plaintiffs agree to provide Defendants with all requests for exclusion within 2 business days of receipt by Plaintiffs' counsel, but in no event later than 4:00 p.m. Eastern time on April 1, 2005. Defendants may withdraw from this Settlement on the basis that the above-referenced exclusion threshold has been exceeded by providing written notice (which may be by facsimile or electronic mail) to Plaintiffs' counsel by 5:00 p.m. Pacific time on April 7, 2005.

      In addition, Defendants anticipate entering into a multi-class settlement agreement with respect to the Indirect Purchaser actions that are part of 99 MDL 1317 (the "Indirect Purchaser Litigation"),[1] which agreement would allow Defendants to withdraw in circumstances relating

---

[1] These actions include *United Wisconsin Services, Inc., et al. v. Abbott Laboratories*, N.D. Ill. C.A. No. 99-C-7410(JBZ); *Grosskrueger v. Abbott Laboratories, et al.*, N.D. Ill. C.A. No. 99C-7883(JBZ); *Reid v. Abbott Laboratories, et al.*, D.D.C. C.A. No. 00-323; *Scafani v. Abbott Laboratories, et al.*, N.D. Cal. C.A. No. 00-00508-SBA; *Mednick v. Abbott Laboratories, et al.*, No. 2:00-3468; *O'Neal v. Abbott Laboratories, et al.*, No. 00-J-1504-S; *Grund v. Abbott Laboratories, et al.*; *Blue Cross and Blue Shield of Alabama, Inc. v. Abbott Laboratories, et al.*, No. 00-1303-Civ.-Lenard; *Bernstein v. Abbott Laboratories*, E.D. Mich. C.A. No. 2:00-CV-72974; and *Blue Cross and Blue Shield of Michigan v. Abbott Laboratories, et al.*, No. 5:01-CV-95, and *States of Florida, Colorado and Kansas v. Abbott Laboratories, et al.*, S.D. Fla., No. 01-4006.

- 11 -

to, *inter alia*, requests for exclusion from the indirect settlement classes by third party payers.
Defendants will use their best efforts to enter into such a settlement agreement of the Indirect
Purchaser Litigation by March 1, 2005. If Defendants do not enter into such a settlement
agreement of the Indirect Purchaser Litigation by March 1, 2005, Defendants will inform
Plaintiffs' counsel by written notice no later than 5:00 p.m. Pacific time on March 15, 2005
(including by facsimile or electronic mail) if Defendants' elect to withdraw from this Settlement
because they failed to enter a settlement agreement of the Indirect Purchaser Litigation by March
1, 2005. Further, if Defendants' right to withdraw from any settlement agreement in the Indirect
Purchaser Litigation is triggered by requests for exclusion from the indirect settlement classes by
third party payers, Defendants likewise may withdraw from this Settlement. Should Defendants
elect to withdraw from this Settlement on the ground that their right to withdraw was triggered
by requests for exclusion from the indirect settlement classes by third party payors, Defendants
will provide written notice (which may be by facsimile or electronic mail) to Plaintiffs' counsel
by 5:00 p.m. Pacific time on April 11, 2005.

Defendants also anticipate entering into settlement agreements with respect to (1) the
actions in 99 MDL 1317 brought by CVS Meridian, Inc., Rite Aid Corp., Walgreen Co., Eckerd
Corp., The Kroger Co. Albertson's, Inc., The Stop & Shop Supermarket Co., and Hy-Vee, Inc.,
and (2) the action under the caption *State of West Virginia, ex rel. Darrel v. McGraw, Jr. v.
Abbott Labs.*, No. 01-C-180 (Cir. Ct. Wyoming Co.). Defendants will use their best efforts to
enter into such settlement agreements of these actions by March 15, 2005. Defendants may
withdraw from this Settlement if Defendants do not enter into one or both of such settlement
agreements by March 15, 2005. Defendants will promptly inform Plaintiffs' counsel if
Defendants' right to withdraw from this Settlement has been so triggered. Defendants may

- 12 -

withdraw from this Settlement on the basis just specified by providing written notice (which may be by facsimile or electronic mail) to Plaintiffs' counsel by 5:00 p.m. Pacific time on March 22, 2005.

If Defendants withdraw from this Settlement, the Settlement Agreement shall be cancelled and terminated.

14.   Effect of Disapproval.   If the Court declines to finally approve the Settlement, or if such approval is reversed, vacated, or otherwise materially modified on appeal, or if the Court does not enter the final judgment in substantially the form provided for in paragraph 4, or if the Court enters the final judgment and appellate review is sought, and on such review, such final judgment is reversed, vacated or materially modified, then this Settlement Agreement shall be terminated upon the election of any of Defendants or Plaintiffs, acting through their undersigned counsel; provided however that any reversal, vacating or modification on appeal of any amount of Class counsel's fees and expenses awarded by the Court from the Settlement Fund, or any amount of incentive payments to any Class representative, or any determination by the Court to award less than the amount requested in attorneys' fees or costs to Plaintiffs' counsel or incentive payments to Plaintiffs, shall not give rise to any right of termination or otherwise serve as a basis for termination of this Settlement Agreement.

15.   Termination.   In the event that the Settlement is terminated pursuant to paragraph 13 or 14, or for any other reason does not become final in accordance with the terms of paragraph 5 herein, then (a) this Settlement Agreement (including the stipulation relating to the certification of the Class in accordance with paragraph 1 hereto) shall be of no force or effect, except for payment of Class notice and administrative fees and costs from the Settlement Fund, (b) the Settlement Fund, including any and all interest earned thereon and less only the amount

- 13 -

validly disbursed for the costs incurred in giving notice to the Class, shall be returned to Defendants, 60 percent to Abbott and 40 percent to Geneva, and (c) any release pursuant to paragraph 11 above shall be of no force or effect.

16.     Preservation of Rights. The parties hereto agree that this Settlement Agreement, whether or not it shall become final pursuant to paragraph 5 herein, and any and all negotiations, documents and discussions associated with it shall not be deemed or construed to be an admission or evidence of any violation of any statute or law, of any liability or wrongdoing by Defendants, or of the truth of any of the claims or allegations contained in any complaint or any other pleading or document, and evidence thereof shall not be discoverable, admissible or otherwise used directly or indirectly, in any way by Plaintiffs or Defendants, whether in the Actions or in any other action or proceeding. The parties expressly reserve all of their rights and defenses if the Settlement Agreement does not become final pursuant to paragraph 5 herein.

17.     Binding Effect. This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto, including the members of the Class who do not timely request to be excluded, and of the Released Parties. Without limiting the generality of the foregoing, each and every covenant and agreement herein by the Plaintiffs and their counsel (other than those in paragraph 19 herein) shall be binding upon all members of the Class.

18.     Integrated Agreement. This Settlement Agreement (including all exhibits hereto and other documents explicitly referenced herein) contains the entire, complete, and integrated statement of each and every term and provision of the Settlement. This Settlement Agreement shall not be modified in any respect except by a writing executed by the undersigned in the

- 14 -

representative capacities specified, or others who are authorized to act in such representative capacities.

19.    <u>Limitations On Public Comment</u>.  Until October 15, 2005, neither Plaintiffs nor Defendants nor any counsel or other agent for or representative of Plaintiffs or a Defendant will make or cause to be made any public statement or comment regarding the Settlement – other than, (1) press releases approved by all undersigned counsel, (2) straightforward statements (without elaboration) in substantially the form "the actions have settled," (3) neutral statements of the terms of the Settlement, or (4) statements repeating or paraphrasing, in a non-misleading form, all or a portion of any Court-approved notice to the Class of the Settlement; provided that each Defendant and each member of the Class shall be entitled to make such disclosures as it, in its discretion, shall determine are appropriate under the securities laws.

20.    <u>Headings</u>.  The headings used in this Settlement Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

21.    <u>No Party is the Drafter</u>.  Counsel to all parties hereto have materially participated in the drafting of this Settlement Agreement.  None of the parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

22.    <u>Choice of Law</u>.  All terms of this Settlement Agreement shall be governed by and interpreted according to the substantive laws of the State of Florida without regard to its choice of law or conflict of laws principles.

- 15 -

118049-3

23.    Consent to Jurisdiction. Defendants and each member of the Class hereby irrevocably submit to the exclusive jurisdiction of the Court for any suit, action, proceeding or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement, including, without limitation any suit, action, proceeding or dispute relating to the release provisions herein, except that this paragraph 23 shall not prohibit (a) the assertion in the forum in which a claim is brought that the release herein is a defense, in whole or in part, to such claim or, (b) in the event that such a defense is asserted in that forum, the determination of its merits in that forum.

24.    Enforcement of Settlement. Nothing in this Settlement Agreement prevents Defendants from enforcing or asserting any release herein, subject to the provisions of paragraph 15 herein. Notwithstanding any other provision of this Settlement Agreement, this Settlement Agreement and the releases contained herein may be pleaded as a full and complete defense to any action, suit or other proceeding that has been or may be instituted, prosecuted or attempted with respect to any Released Claims and may be filed, offered and received into evidence and otherwise used for such defense.

25.    Authorization To Act On Behalf Of Plaintiffs And Class. The undersigned counsel to Plaintiffs represent that they have been and are fully authorized to conduct settlement negotiations with Defendants' counsel on behalf of Plaintiffs and the Class and to enter into, and execute, this Settlement Agreement on behalf of Plaintiffs and the Class, subject to Court approval pursuant to Fed. R. Civ. P. 23(e).

26.    Severability. In the event any one or more of the provisions of this Settlement Agreement shall for any reason be held to be illegal, invalid or unenforceable in any respect, such illegality, invalidity or unenforceability shall not affect any other provision if Defendants'

- 16 -

118049-3

and Plaintiffs' counsel mutually agree to proceed as if such illegal, invalid, or unenforceable provision had never been included in the Settlement Agreement.

27.   No Admission.  Nothing in this Settlement Agreement shall be construed as an admission in any action or proceeding of any kind whatsoever, civil, criminal or otherwise, before any court, administrative agency, regulatory body or any other body or authority, present or future, by Defendants or Plaintiffs, or any of them, including without limitation that Defendants have, either individually or jointly, engaged in any conduct or practices that violate any antitrust statute or other law.

28.   Work Product From This Litigation.  Plaintiffs and their counsel agree not to:

(a)    share any of their work product from the Actions,

(b)    consent to any of their experts, advisors or consultants in the Actions sharing work product from the Actions, or

(c)    consent to any of their experts or consultants in the Actions working,

with or for the benefit of others (including counsel, experts, advisors or consultants of others, but except as Plaintiffs' counsel has already agreed with counsel to CVS Meridian, Inc., Rite Aid Corp., Walgreen Co., Eckerd Corp., The Kroger Co., Albertson's, Inc., The Stop & Shop Supermarket Co., and Hy-Vee, Inc.) that are asserting or contemplating asserting claims against any Released Parties relating to or arising out of any conduct challenged by any plaintiff in 99 MDL 1317.

29.   Execution in Counterparts.  This agreement may be executed in counterparts. Facsimile signatures shall be considered as valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this agreement and filed with the Court.

- 17 -

IN WITNESS WHEREOF, the parties hereto through their fully authorized

representatives have agreed to this Settlement Agreement of the date first herein above written.


By: _____

   Bruce E. Gerstein, Esq.
   Barry S. Taus, Esq.
   GARWIN GERSTEIN & FISHER LLP
   1501 Broadway, Suite 1416
   New York, NY 10036
   Tel:   (212) 398-0055
   *Co-Lead Counsel for the Class*
   *and Louisiana Wholesale Drug Co., Inc.*


By: _____

   Richard B. Drubel, Esq.
   Kimberly H. Schultz, Esq.
   BOIES, SCHILLER & FLEXNER, L.L.P.
   26 South Main Street
   Hanover, NH 03755
   Tel:   (603) 643-9090
   *Co-Lead Counsel for the Class and*
   *Valley Drug Co.*


Dated: February 24, 2005


By: _____

   Jeffrey I. Weinberger, Esq.
   Stuart N. Senator, Esq.
   MUNGER, TOLLES & OLSON LLP
   355 South Grand Avenue - 35th Floor
   Los Angeles, CA 90071
   Tel:   (213) 683-9100
   *Counsel for Abbott Laboratories*


By: _____

   Wayne A. Cross, Esq.
   WHITE & CASE
   1155 Avenue of the Americas
   New York, NY 10036
   Tel:   (212) 819-8200
   *Counsel for Geneva Pharmaceuticals, Inc*

- 18 -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 99-MDL-1317-SEITZ/KLEIN

IN RE TERAZOSIN HYDROCHLORIDE
ANTITRUST LITIGATION
_____/

**This Document Relates to:**

| | |
|---|---|
| *Louisiana Wholesale Drug Co., Inc.*<br>*v. Abbott Laboratories, et al.* | *Case No. (S.D. Fla.) 98-3125* |
| *Valley Drug Company v. Abbott*<br>*Laboratories, et al.* | *Case No. (S.D. Fla.) 99-7143* |

_____/

## ORDER OF COURT:

**(A)    CERTIFYING THE PROPOSED DIRECT PURCHASER ("SHERMAN ACT") CLASS IN LIGHT OF SETTLEMENT AND APPOINTING CLASS COUNSEL;**

**(B)    GRANTING PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT WITH DEFENDANTS ABBOTT LABORATORIES AND GENEVA PHARMACEUTICALS, INC.;**

**(C)    GRANTING APPROVAL OF THE FORM AND MANNER OF NOTICE TO THE CLASS; AND**

**(D)    SETTING CERTAIN DEADLINES.**

THE COURT having considered the Sherman Act Class Plaintiffs' Motion for (A) Certification of the Proposed Sherman Act Class in Light of Settlement and Appointment of Class Counsel; (B) Preliminary Approval of the Proposed Settlement with Defendants Abbott Laboratories and Geneva Pharmaceuticals, Inc. (now known as Sandoz, Inc.); (C) Approval of the Form and

ATTACHMENT / EXHIBIT

Manner of Notice to the Class, dated February 24, 2004 (the "Preliminary Approval Motion"), together with the attachments thereto, including the parties' Settlement Agreement and proposed form of Notice to the class; and

THE COURT having held a hearing on February ____, 2005 to consider the Preliminary Approval Motion;

IT IS, this _____ day of February, 2005, ORDERED and DECREED as follows:

1.      In light of the changed circumstances of the proposed settlement (the "Settlement") between the Sherman Act Class Plaintiffs and members of the proposed class (the "Sherman Act Class" or the "Class") and defendants Abbott Laboratories ("Abbott") and Geneva Pharmaceuticals, Inc. (now known as Sandoz, Inc.) ("Geneva"), the Court finds it appropriate to certify a class. The Court will set forth its reasoning regarding class certification in light of the fact of settlement in a separate opinion. The certified class is defined as follows:  All persons who purchased Hytrin, also known by the chemical name terazosin hydrochloride, directly from Abbott Laboratories, at any time during the period commencing March 31, 1998, through and including, June 30, 2001. *Excluded from the Class are*: (1) Defendants Abbott Laboratories, Geneva Pharmaceuticals, Inc. (now known as Sandoz, Inc.), Zenith Goldline Pharmaceuticals, Inc. (now known as Ivax Pharmaceuticals, Inc.), their officers, directors, management, employees, subsidiaries, and affiliates; (2) each of the following entities, and any and all claims of each said entity that have been asserted or could have been asserted, in *In re Terazosin Hydrochloride*, Case No. 99 MDL 1317 arising out of Hytrin or generic terazosin hydrochloride purchases by said entity: CVS Meridian, Inc., Rite Aid Corp., Walgreen Co., Eckerd Corp., The Kroger Co., Albertson's, Inc., the Stop & Shop Supermarket Co., and Hy-Vee, Inc.; and (3) Kaiser Foundation Health Plan, Inc. and the Kaiser entities *on whose behalf* it has asserted claims in paragraph 8 of its complaint in 99 MDL 1317.

2.     The Court has also appointed as class counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure those firms named in ¶ 2 of this Court's August 25, 2000 Second Amended Case Management Order, namely Garwin Gerstein & Fisher, LLP; Boies Schiller & Flexner LLP; Berger & Montague, P.C.; and The Calvin Law Firm, P.C.

3.     The Court finds that the proposed Settlement was the result of arm's length negotiation by highly experienced counsel, with the assistance and support of a highly competent mediator. The Court also finds that the proposed Settlement falls within the reasonable range of approvable settlements. Therefore, the Court hereby PRELIMINARILY APPROVES the proposed Settlement.

4.     The Court finds that the form of Notice to the Class (Exhibit 2 to the Settlement Agreement which is attached as Exhibit A to plaintiffs' Preliminary Approval Motion), which is to be mailed first class to all Class members who can be reasonably identified and located, is the best notice practicable under the circumstances under Rule 23(c)(2)(B), otherwise satisfies Rule 23(c)(2), satisfies the requirements of Rule 23(e) and constitutional due process, and is otherwise fair and reasonable. Thus, the form of Notice to the Class is hereby APPROVED for dissemination to the Class. On or before March 1, 2005, Sherman Act Class Plaintiffs shall disseminate the Notice to the Class via first class mail to all Class members. Dissemination shall be considered complete upon mailing.

5.     The Court approves the continued use of Heffler Radetich & Saitta, L.L.P., 1515 Market Street, Suite 1700, Philadelphia, PA 19102, as the Claims Administrator. Responsibilities of the Claims Administrator shall include: disseminating the Notice to the Class; accepting and maintaining documents sent from Class members, including opt-out forms, claim forms, and other

documents relating to claims administration; and administering claims for allocating damages to Class members.

6.     As described in the Notice to the Class, any proposed Class member may opt out of the Class by making a written request and causing same to be *received* on or before March 31, 2005 by the Claims Administrator. Requests for exclusion from the Class must include the sender's name and address and clearly state that the sender wishes to opt out or be excluded from the Class. Persons or entities that request exclusion from the Class will not be entitled to share in the benefits of the settlement, nor be bound by any judgment, whether favorable or adverse.

7.     On or before April 5, 2005, counsel for Sherman Act Class Plaintiffs shall file: (a) their application for attorneys' fees and costs, specifying the total amount of costs and expenses to be reimbursed, and the total amount of attorneys' fees sought from the settlement fund; (b) request for incentive awards for representative plaintiffs; (c) plan of allocation; and (d) motion for final approval of the Settlement Agreement and brief in support.

8.     Class members who have not availed themselves of the opportunity to opt out of the Class, but who wish to object to the proposed settlement and/or be heard at the Fairness Hearing (see below), shall cause to be filed with the Clerk of this Court no later than April 8, 2005, and cause to be received by Class Counsel no later than April 8, 2005, a Notice of Intention to Appear and Statement of the position to be asserted and the ground therefor, together with copies of any supporting papers or briefs. Except as herein provided, no person shall be entitled to contest the terms and conditions of the Settlement, and persons who fail to object as provided herein shall be deemed to have waived and shall forever be foreclosed from raising any such objections.

9.     A hearing shall be held in this Court at _____ __.m. on April 15, *2005* ("Fairness Hearing") for the purpose of considering: (a) whether the proposed settlement between Sherman Act

Class Plaintiffs, members of the Sherman Act Class, and defendants Abbott and Geneva is fair, reasonable, and adequate and should be finally approved by the Court; and, (b) whether Sherman Act Class Counsel's application for attorneys' fees, expenses and costs, and for incentive awards for the Representative Plaintiffs should be granted.

IT IS SO ORDERED.

_____
HON. PATRICIA A. SEITZ
United States District Judge

DATED: February _____, 2005

391497

## EXHIBIT 2

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## SOUTHERN DIVISION

### CASE NO. 99-MDL-1317-SEITZ/KLEIN

**In re TERAZOSIN HYDROCHLORIDE
ANTITRUST LITIGATION**

_____/

**This Notice pertains to:**

*Louisiana Wholesale Drug Co.,*　　*Valley Drug Co., et al. v. Abbott*
*Inc., et al. v. Abbott Labs., et al.,*　*Labs., et al.,* Civ. No. 99-7143-S/G
Civ. No. 98-3125-S/G (S.D. Fla.)　　(S.D. Fla.)

### NOTICE OF PROPOSED CLASS ACTION
### SETTLEMENT AND HEARING REGARDING SETTLEMENT

*PLEASE READ THIS NOTICE FULLY AND CAREFULLY. A SETTLEMENT
HAS BEEN PROPOSED IN PENDING CLASS ACTION LITIGATION THAT
MAY AFFECT YOUR RIGHTS. IF YOU ARE A MEMBER OF THE CLASS
DESCRIBED BELOW, YOU MAY BE ENTITLED TO SHARE IN THE
SETTLEMENT FUND.*

TO:　**All persons who purchased Hytrin, also known by the chemical name terazosin
hydrochloride, directly from Abbott Laboratories at any time during the period
commencing March 31, 1998 through and including June 30, 2001.**

**EXCLUDED FROM THE CLASS ARE: (1) Defendants Abbott Laboratories, Geneva
Pharmaceuticals, Inc. (now known as Sandoz Inc.), Zenith Goldline Pharmaceuticals,
Inc. (now known as Ivax Pharmaceuticals, Inc.), their officers, directors, management,
employees, subsidiaries, and affiliates; (2) each of the following entities, and any and all
claims of each said entity that have been asserted, or could have been asserted, in *In re
Terazosin Hydrochloride*, Case No. 99 MDL 1317 arising out of Hytrin or generic
terazosin hydrochloride purchases by said entity: CVS Meridian, Inc., Rite Aid Corp.,
Walgreen Co., Eckerd Corp., The Kroger Co., Albertson's, Inc., The Stop & Shop
Supermarket Co., and Hy-Vee, Inc.; and (3) Kaiser Foundation Health Plan, *Inc.* and
the Kaiser entities on whose behalf it has asserted claims in paragraph 8 of its
complaint in 99 MDL 1317.**

ATTACHMENT / EXHIBIT ____

## I.  **PURPOSE OF NOTICE**

Pending in this Court are cases brought by Louisiana Wholesale Drug Co., Inc. ("Louisiana Wholesale") and Valley Drug Co. ("Valley Drug") (collectively, "Class Plaintiffs" or "Class Representatives") under the federal antitrust laws on behalf of themselves and a class of similarly situated persons, against defendants Abbott Laboratories ("Abbott"), and Geneva Pharmaceuticals, Inc. ("Geneva") (now known as Sandoz, Inc.), alleging a conspiracy to violate the federal antitrust laws. Abbott and Geneva will be referred to below collectively as "Defendants." Previously, notice (dated March 13, 2002) had been given of a settlement with another defendant, Zenith Goldline Pharmaceuticals, Inc. ("Zenith"), now known as Ivax Pharmaceuticals, Inc. ("Ivax"). That settlement was finally approved by the Court on June 13, 2002.[1]

This Notice is given pursuant to Federal Rule of Civil Procedure 23 and by Order of the United States District Court for the Southern District of Florida (the "Court") for the purpose of informing you of your rights with regard to:

> (a) the Court's ruling that this lawsuit may be settled as a class action, with Louisiana Wholesale and Valley Drug as class representatives, on behalf of all persons who purchased Hytrin, also known by the chemical name terazosin hydrochloride, directly from Abbott Laboratories at any time during the period commencing March 31, 1998 through and

---

[1] Under that settlement ("Zenith Settlement"), Zenith paid $2,072,327 into an escrow account. The payments by Zenith, plus all interest earned on such payments, will be used to reimburse costs and expenses of this litigation, thereby effectively increasing the amount of the Net Settlement Fund available to distribute to members of the Class (defined below). The Zenith Settlement provided Zenith with the right to terminate the settlement if certain specified conditions occurred. Should the settlement between the Class *and Abbott and Geneva* described in *this notice* become final, and provided that the Court in its final order of approval of the Abbott and Geneva settlement re-affirms that all of the terms of the Zenith Settlement, including class-wide releases and the other provisions of the Zenith Settlement incorporated into the June 13, 2002 final judgment remain in full force and effect (except for any obligation for Zenith to pay any notice costs, which obligation has been excused by Plaintiffs). In that event, to the extent Zenith has retained any enforceable rights to terminate the Zenith Settlement (which Plaintiffs dispute), those rights are forever expunged, the Zenith Settlement funds may be used for the benefit of the Class as the Court may direct, and the Zenith Settlement and all of its terms, including releases given by members of the Class, remain in full force and effect.

including June 30, 2001. Excluded from the Class are: (1) defendants Abbott Laboratories, Geneva Pharmaceuticals, Inc. (now known as Sandoz Inc.), Zenith Goldline Pharmaceuticals, Inc. (now known as Ivax Pharmaceuticals, Inc.), their officers, directors, management, employees, subsidiaries, and affiliates; (2) each of the following entities, and any and all claims of each said entity that have been asserted, or could have been asserted, in *In re Terazosin Hydrochloride*, Case No. 99 MDL 1317 arising out of Hytrin or generic terazosin hydrochloride purchases by said entity: CVS Meridian, Inc., Rite Aid Corp., Walgreen Co., Eckerd Corp., The Kroger Co., Albertson's, Inc., The Stop & Shop Supermarket Co., and Hy-Vee, Inc.; (3) Kaiser Foundation Health Plan, Inc. and the Kaiser entities on whose behalf it has asserted claims in paragraph 8 of its complaint in 99 MDL 1317 ("the Class" or "the Sherman Act Class");[2]

    (b)    a proposed settlement (the "Settlement") as described below of the above-referenced litigation on behalf of the Sherman Act Class in exchange for a cash payment by defendant Abbott of $43.5 million and a cash payment by defendant Geneva of $29 million, for a total amount paid by these Defendants combined of $72.5 million in cash (the "Settlement Fund"); and,

    (c)    a hearing scheduled to be held on April 15, 2005 at __ p.m., before The Honorable Patricia A. Seitz, United States District Judge for the United States District Court for the Southern District of Florida, in the Fifth Floor Courtroom, United States Courthouse, 301 North Miami Avenue, Miami, Florida (the "Fairness Hearing").

---

[2]Other cases challenging the same conduct by Abbott, Geneva, and Zenith were filed on behalf of consumers and other persons who purchased Hytrin indirectly, *i.e.*, from sources other than Abbott, and on behalf of persons that paid for all or part of such indirect purchases, including third-party payors such as insurance companies or health care plans. **The proposed settlement described in this Notice relates** *only* **to the Class of direct purchasers of Hytrin from Abbott as defined above. NEITHER CONSUMERS NOR THIRD-PARTY PAYORS ARE PART OF THE CLASS TO WHOM THIS NOTICE IS DIRECTED.**

The purpose of the Fairness Hearing will be to consider whether to approve: (1) the proposed settlement between the Sherman Act Class and defendants Abbott and Geneva as fair, reasonable, adequate, and in the best interests of the Sherman Act Class; (2) a proposed Plan of Allocation to allocate the settlement proceeds among Sherman Act Class members; and (3) the application by Class Counsel for an award of attorneys' fees and costs, and the application for incentive awards for the Class Representatives, as described below. The Court may continue or reschedule the hearing; if the Court does so, the Class Counsel will advise the Sherman Act Class by posting a conspicuous notice at the internet web sites www.bsfllp.com and www.garwingerstein.com.

Sherman Act Class members also are hereby advised of their right to object (by filing with the Clerk of the Court no later than April 8, 2005) and/or appear at the Fairness Hearing; or to elect to exclude themselves from the Sherman Act Class (by written notice received by the claims administrator no later than March 31, 2005), as explained further below. This Settlement is contingent upon Defendants not electing to terminate the Settlement in the event that the confidential threshold for exclusions from the Class is exceeded, or in the event other triggering events occur that are referenced in the Settlement Agreement. In the event any triggering event occurs that would permit Defendants to terminate the Settlement, Defendants must decide whether to terminate the Settlement at a date certain prior to the Fairness Hearing as provided for by the Settlement Agreement.

## II.   **THE LITIGATION**

**A.   Class Representatives' Claims**        On December 18, 1998, plaintiff Louisiana Wholesale filed an action in the United States District Court for the Southern District of Florida alleging violations of the federal antitrust laws, specifically the Sherman Act and the Clayton Act, against defendants Abbott, Geneva and Zenith. Louisiana Wholesale alleged, among other things,

that Abbott entered into an agreement with Geneva, pursuant to which Abbott agreed to pay Geneva millions of dollars in exchange for Geneva's agreement to refrain from marketing its generic version of Hytrin until Abbott's then-pending patent infringement suit against Geneva was resolved. Louisiana Wholesale alleged that the Abbott/Geneva Agreement, as well as a similar agreement between Abbott and Zenith (collectively "the Agreements"), were illegal under Section 1 of the Sherman Act, and caused direct purchasers of Hytrin to be overcharged for terazosin hydrochloride ("terazosin") because the agreements kept less expensive generic versions of Hytrin off the market.

On August 30, 1999, plaintiff Valley Drug filed a similar complaint challenging the Abbott/Geneva Agreement, alleging similar antitrust violations against Abbott and Geneva. The Louisiana Wholesale and Valley Drug cases were consolidated by the Court on October 22, 1999. Louisiana Wholesale and Valley Drug are hereafter referred to as the "Class Representatives" or "Class Plaintiffs."

### B.  Defendants' Denial Of Liability

Defendants Abbott and Geneva vigorously dispute Class Plaintiffs' claims that the Agreements were illegal. Defendants also deny Class Plaintiffs' claims that the Agreements caused Class Plaintiffs and members of the Sherman Act Class any harm. For example, defendants assert, among other defenses, that Geneva would not have come to market earlier with its cheaper generic product, even without the Abbott/Geneva Agreement, because of the risk of liability if Abbott won its then pending patent suit against Geneva relating to Geneva's proposed generic terazosin product. Defendants also assert that technical problems in manufacturing Geneva's terazosin product prevented it from bringing its product to market any earlier than August 1999, when it actually launched its product.

### C.    Status of the Litigation

On February 11, 2000, the Court appointed the law firms of Garwin Gerstein & Fisher LLP and Boies, Schiller & Flexner LLP as Co-Lead Counsel for the Sherman Act Class cases. Since that time, Co-Lead Counsel and lawyers working at their direction (collectively "Class Counsel") have prosecuted this lawsuit on behalf of the Sherman Act Class.

### 1.    Class Certification

On November 30, 1999, Class Counsel and the Class Plaintiffs moved for certification of the Sherman Act Class. On September 20, 2001, the Court certified the Sherman Act Class with Louisiana Wholesale and Valley Drug as Class Representatives. Defendants appealed the Court's order certifying the Sherman Act Class.

On November 14, 2003, the Eleventh Circuit Court of Appeals vacated the Court's order certifying the Sherman Act Class, and remanded the case for further proceedings to determine, among other things, whether there were conflicts of interest between the Class Representatives and members of the Sherman Act Class in connection with the prosecution of this litigation.

In March 2004, the Class Representatives filed a renewed motion for class certification. On June 23, 2004, the Court denied that motion, holding that, although "...the evidence indicates there is no class antagonism or conflict," the Sherman Act Class could not be certified at that time because of the possibility of potential unforeseen conflict in the future with regard to this litigation.[3]

On February 24, 2005, this Court certified the Sherman Act Class, holding, among other things, that because the proposed settlement would end the litigation, there was no longer any possibility of a future conflict of interest with regard to this litigation. Moreover, if any member of

---

[3]If this proposed settlement is terminated for any reason or is not approved by the Court, the Class Representatives have the right to appeal the Court's June 2004 Order denying their renewed motion for class certification at the conclusion of the litigation.

the Sherman Act Class does not believe that this Settlement is in its best interests, or for any other reason, such class member may exclude itself from the Sherman Act Class. *See* Section VII below. If for any reason any Class member, who does not timely exclude itself from the Class, believes that the Settlement is unfair, unreasonable, or inadequate, such Class member may submit an objection to the Settlement and be heard at the Fairness Hearing. *See* Section IX below.

### 2. Class Plaintiffs' Substantive Claims

On December 13, 2000, the Court found that the Abbott/Geneva Agreement was *per se* illegal under Section 1 of the Sherman Act. Defendants appealed the Court's decision. On September 15, 2003, the Eleventh Circuit Court of Appeals reversed the Court's December 13, 2000 order, and remanded for further proceedings. On January 5, 2005, upon consideration of additional briefing by the parties, the Court again held that the Abbott/Geneva Agreement was *per se* illegal. On January 21, 2005, the Court denied Defendants' request for permission to immediately appeal the Court's *per se* ruling to the Eleventh Circuit Court of Appeals. On February 9, 2005, Defendants filed a Writ of Mandamus, asking the Eleventh Circuit to review and vacate the Court's January 5, 2005 *per se* ruling or the Court's January 21, 2005 refusal to permit an immediate appeal of the *per se* ruling. That Writ of Mandamus is currently pending. Whether or not the Writ is granted, Defendants will have the right to appeal the Court's *per se* ruling after a final judgment in this case.

Although the Court has ruled (subject to Defendants' right to appeal) that the Abbott/Geneva Agreement is a *per se* violation of Section 1 of the Sherman Act, in order to recover monetary damages in this case, Class Plaintiffs still would have been required to prove that the Agreement caused them damage in a quantifiable amount. As described above, defendants vigorously contend that the Agreement did not delay Geneva's (or any generic manufacturer's) entry into the market

with a generic version of Hytrin, and thus did not cause plaintiffs or members of the Class to incur any damages.

At the time that the proposed settlement was reached, discovery in the case, which included the review of hundreds of thousands of pages of documents, and the depositions of dozens of fact and expert witnesses, had been completed. As a result, Class Counsel had conducted an intensive investigation, and obtained significant knowledge regarding the strengths and weaknesses of the claims and defenses in this case before entering into settlement negotiations with Defendants.

In the event Defendants elect to terminate this Settlement under the terms of the Settlement Agreement, or if the Settlement is otherwise not consummated, the parties' stipulation as to class certification would become null and void. In that event, the Court could order the trial scheduled for May 2005 to proceed on behalf of the Representative Plaintiffs only, and not on behalf of any other member of the Class.

OTHER THAN AS SPECIFICALLY INDICATED ABOVE REGARDING THE *PER SE* ILLEGALITY OF THE ABBOTT/GENEVA AGREEMENT, THE COURT HAS NOT RULED ON THE MERITS OF ANY OF THE CLAIMS OR DEFENSES ASSERTED BY THE PARTIES. THIS NOTICE IS NOT TO BE UNDERSTOOD AS AN EXPRESSION OF ANY OPINION BY THIS COURT AS TO THE MERITS OF ANY OF THE CLAIMS OR DEFENSES ASSERTED BY EITHER SIDE.

## III.    **SUMMARY OF THE PROPOSED SETTLEMENT**

Subject to the terms and conditions of the settlement agreement with Abbott and Geneva ("the Settlement Agreement"), which is on file with the Court as Exhibit "A" to the Sherman Act Class Plaintiffs' February 24, 2005 Motion for Preliminary Approval, a copy of which is also available at www.bsfllp.com or www.garwingerstein.com, Abbott has paid $43.5 million, and Geneva has paid $29 million (for a combined total of $72.5 million in cash) into an escrow account for the benefit of the Sherman Act Class. Defendants do not admit any wrongdoing or liability. The

118055-2                                                    –8–

proposed settlement is a compromise of disputed claims and does not mean that any defendant in this action has been found liable for the claims made by the Class Plaintiffs.

The Settlement Agreement also provides that if Class members who validly exclude themselves from the Class pursuant to Section VII below collectively have aggregate potential damages (as calculated by Class Plaintiffs' expert economist, based on the amount of their purchases of Hytrin and/or generic versions of Hytrin reflected in the sales records of Abbott, Geneva, and non-party, Mylan Pharmaceuticals, Inc.) that exceed a confidential number agreed upon with Abbott and Geneva, then Abbott and Geneva may exercise their right to terminate the Settlement as provided for under the Settlement Agreement.[4]

If the Settlement is finally approved by the Court, Abbott and Geneva, and their past, present and future parents, subsidiaries, divisions, affiliates, stockholders, officers, directors, insurers, general or limited partners, employees, agents, attorneys and any of their legal representatives (and the predecessors, heirs, executors, administrators, successors and assigns of each of the foregoing) (the "Released Parties") are and shall be released and forever discharged from all manner of claims, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, that Plaintiffs or any member or members of the Class who has (have) not timely excluded itself (themselves) from the Class, whether or not they object to the Settlement and whether or not they make a claim upon or participate in the Settlement Fund, ever had, now has, or hereafter can, shall or may have, arising out of any conduct alleged in the Actions or in any other complaint filed in any action consolidated or coordinated in 99 MDL 1317, or otherwise relating to any alleged delay in marketing or selling of generic equivalents of Hytrin, prior to the date

of the Settlement Agreement (the "Released Claims").[5] Plaintiffs and each member of the Class covenant and agree that each shall not sue or otherwise seek to establish or impose liability against any Released Party based, in whole or in part, on any of the Released Claims.

Any disputes arising under or relating to the Settlement Agreement, including, but not limited to, the releases in the Settlement Agreement, will be resolved in the United States District Court for the Southern District of Florida.

The foregoing text is only a summary of the Settlement with Abbott and Geneva. A full copy of the Settlement Agreement, including the release, is attached as Exhibit "A" to Sherman Act Class Plaintiffs' February 24, 2005 Motion for Preliminary Approval on public file with the United States District Court for the Southern District of Florida, 301 North Miami Avenue, Miami, Florida. Class counsel have made copies of the settlement agreement readily available at www.bsfllp.com or www.garwingerstein.com.

Certain individual direct purchasers (or purchasers suing based upon an assignment of rights from members of the Class) have brought their own lawsuits against Abbott and Geneva. These individual plaintiffs will not share in the proposed Settlement with the Sherman Act Class.

---

[4]Under the Settlement Agreement, Abbott and Geneva may also have the right to terminate this Settlement prior to the Fairness Hearing (described below) if certain other conditions set out in the Settlement Agreement are satisfied.

[5]The Settlement Agreement expressly provides that: "Released Claims shall not include claims arising in the ordinary course of business between Class members and the Released Parties concerning product liability, breach of warranty, breach of contract (other than breach of contract based in whole or in part on any conduct challenged by any plaintiff in 99 MDL 1317), personal or bodily injury, or any claim of any sort that does not relate to Hytrin or terazosin hydrochloride. Released Claims also shall not include any claim asserted in 99 MDL 1317 by any of the following entities based upon an assignment to said entity arising out of Hytrin or generic terazosin hydrochloride purchases of said entity: CVS Meridian, Inc., Rite Aid Corp., Walgreen Co., Eckerd Corp., The Kroger Co., Albertson's, Inc., The Stop & Shop Supermarket Co., and Hy-Vee, Inc.; this settlement shall not be construed to disturb or affect any such assigned claim."

The Court preliminarily approved the proposed Settlement with Abbott and Geneva after a hearing on February 24, 2005. The Court found the proposed settlement, upon preliminary review, to be within the range of reasonableness.

Accordingly, the Court has set a Fairness Hearing in order to determine whether the proposed settlement with Defendants should finally be approved as described in Section VIII, below.

## IV.    PLAN OF ALLOCATION

In the event the proposed settlement is approved by the Court and becomes final, the Settlement Fund will be distributed in accordance with a proposed Plan of Allocation approved by the Court. Plaintiffs will file the Plan of Allocation with the Court on or before April 5, 2005. The Plan of Allocation will be based upon proofs of claim to be filed by class members at a later time. You may be required as a condition of participating in the recovery to present evidence of your purchases of brand name Hytrin and generic terazosin during the period **March 31, 1998 through and including June 30, 2001** (the "Class Period"). In summary, the Settlement Fund totaling $72.5 million plus interest, less administrative expenses, taxes, attorneys' fees and expenses, and incentive payments to the two Class Representatives as may be allowed by the Court (the "Net Settlement Fund"),[6] will be allocated to Class members who choose not to exclude themselves from the Class (*see* Section VII below for an explanation of how to exclude yourself from the Class) as follows: The Net Settlement Fund will be allocated based on a *pro rata* share of the total estimated actual overcharge damages of all class members making valid claims (at a later date after the Settlement becomes final) allegedly incurred as a result of the Defendants' alleged restraint of trade. Class

---

[6] If the proposed Settlement with Abbott and Geneva is finally approved, the proceeds of the Zenith Settlement ($2,072,327), plus interest, upon authorization from the Court, will be applied to the costs and expenses incurred in this litigation, thereby reducing the amount that will be deducted from the settlement fund to reimburse class counsel for the outlay of such costs and expenses. Class counsel will not seek any attorneys' fees from the proceeds of the Zenith Settlement.

Representatives claim their damages are measured by an "overcharge," *i.e.*, the amount by which Class members overpaid for terazosin as a result of the Defendants' conduct, which allegedly caused a delay in the entry into the market of less expensive generic versions of terazosin.

According to Class Plaintiffs, if generic entry had occurred earlier, direct purchasers would have realized significant savings by: (a) substituting Hytrin with less expensive generic versions of terazosin for some or all of their terazosin requirements; and/or (b) obtaining increased discounts, rebates, or lower prices on purchases of the brand name Hytrin after generic terazosin had entered the market; and/or (c) paying less for generic terazosin on or after October 1, 1999 (the date Plaintiffs believe that a second generic terazosin manufacturer would have entered the market had the alleged conduct in restraint of trade not occurred).

For purposes of allocation of the Net Settlement Fund, it is anticipated that damages will be estimated based on the following formulas (class members have damages under any one or all of the formulas as may be applicable):

(1)    the quantity of generic terazosin that each Class member purchased from any source from August 13, 1999 through June 30, 2001 as a substitute for buying brand-name Hytrin from Abbott, multiplied by the average differential in price between the brand and generic forms of terazosin (*i.e.*, the price savings due to the ability to substitute with cheaper generics);

(2)    the quantity of generic terazosin that each Class member purchased from October 1, 1999 through June 30, 2001, multiplied by the price differential between the actual price paid for the generic and the price that allegedly would have been paid had there been no alleged delay in generic entry; and

(3)    the quantity of brand-name Hytrin that each Class member purchased from October 1, 1998 through June 30, 2001, multiplied by the price differential between the actual price paid and the price that allegedly would have been paid for Hytrin had there been no alleged delay in generic entry.

Based upon substantial analysis and investigation, Plaintiffs believe that in the absence of Defendants' alleged restraint of trade, it is unlikely that generic versions of terazosin would have been on the market prior to October 1, 1998. Thus, it is also very unlikely that more than nominal overcharge damages were incurred with respect to Hytrin purchases made *before* that date. Accordingly, for those Class members who, during the Class Period (a) purchased Hytrin directly from Abbott *only* from March 31, 1998 through September 30, 1998, *and* (b) who also did *not* purchase any generic terazosin directly from any generic manufacturer from October 1, 1999 through June 30, 2001, nominal damages of a few cents per capsule will be awarded for each Hytrin capsule purchased.[7]

## V.    FEES, EXPENSES, AND INCENTIVE AWARDS

All costs and fees related to this litigation will be paid out of the proceeds of the Settlement Fund as the Court may order. Class Counsel intend to apply to the Court for attorneys' fees of up to thirty-three and one-third percent (33 1/3 %) of the gross Settlement Fund, including interest. In addition, Class Counsel intend to seek, from the Settlement Fund, reimbursement for any costs and expenses incurred in this litigation not otherwise reimbursed by the funds procured from the Zenith Settlement. Moreover, applications will also be made to the Court for incentive awards of $75,000, in total, for the two Class Representatives, to compensate them for their efforts in prosecuting this

---

[7]Combined Hytrin purchases by Class members who purchased only during this early part of the Class Period amount to only approximately 0.025% of the total terazosin purchases by all Class members during the entire Class Period.

case on behalf of the Sherman Act Class, which efforts have included, among other things, submitting to depositions, producing hundreds of pages of documents, producing electronic purchase data, and providing written discovery.  Class Counsel will file their Motion in Support of Final Approval of this Settlement, the Plan of Allocation, application for an award of attorneys' fees, reimbursement of costs and expenses, and request for incentive awards to the Class Representatives with the Clerk of the U.S. District Court for the Southern District of Florida, 301 North Miami Avenue, Miami, Florida on or before April 5, 2005.  The application and other documents will be available for inspection during normal business hours at the office of the Clerk or on the website of www.bsfllp.com or www.garwingerstein.com.

## VI.   **HOW TO PARTICIPATE IN THIS CLASS ACTION AND SETTLEMENT**

**If you wish to remain a member of the Class, you need not do anything at this time.**  All members of the Class will be entitled to share in the proceeds of this Settlement as described above and according to the terms of the Settlement Agreement if it is finally approved by the Court, and all members of the Class will be bound by the final judgment and release of claims against Abbott and Geneva entered by the Court. Class Counsel that have been appointed by the Court to represent the you as a member of the Class.  All fees and expenses of Class Counsel will be paid out of any recovery by the Class. You will not have to pay Class Counsel any additional amounts, and in no event will you be obliged to pay any judgment, court costs, or lawyers' fees for participating in this class action. In addition, any Class member who does not request exclusion from the Class may also enter an appearance through their own counsel at their own expense. The pleadings and other public records in this litigation may be examined and copied at the cost of 50 cents per page at any time during regular business hours at the Office of the Clerk of Court, 301 North Miami Avenue, Miami, Florida.

118055-2                                    —14—

## VII.   HOW TO BE EXCLUDED FROM THE CLASS

If you wish to be excluded from the Sherman Act Class you may do so by mailing a written request for exclusion which must be **received** by the Claims Administrator on or before **March 31, 2005** at the following address: Terazosin Hydrochloride Antitrust Litigation, c/o Heffler, Radetich & Saitta L.L.P., P.O. Box 150, Philadelphia, PA 19105-0150.  The request for exclusion must: (1) clearly state your name, address, and the name of the case (*In re Terazosin Hydrochloride Litigation*), and (2) clearly state that you wish to be excluded from the Sherman Act Class.  You do not have to state the reason for this request.

If you exclude yourself from the Sherman Act Class in this way, you will NOT be entitled to appear at the Fairness Hearing, OR to share in the benefits of the Settlement, and you will NOT be bound by the release of Defendants summarized in this notice.

## VIII.   FAIRNESS HEARING

Pursuant to an Order of the Court, a hearing will be held on April 15, 2005 at ____p.m., in the courtroom of the Honorable Patricia A. Seitz, Fifth Floor, United States District Court for the Southern District of Florida, 301 North Miami Avenue, Miami, Florida, for the purpose of determining whether the Court should approve: (1) the proposed settlement between the Sherman Act Class and defendants Abbott and Geneva as fair, reasonable, adequate, and in the best interests of the Sherman Act Class; (2) a proposed Plan of Allocation for distributing the net settlement proceeds to the members of the Sherman Act Class; and (3) the application of Class Counsel for an award of attorneys' fees and costs, and the application for incentive awards for the Sherman Act Class Representatives.  You are entitled to appear and be heard at this hearing.  The time and date of the hearing may be continued or rescheduled without further notice.  If you have no objection to the

Settlement with Abbott and Geneva, it is not necessary to appear at the hearing or to take any action at this time.

## IX.     OBJECTIONS TO THE PROPOSED SETTLEMENT

Any member of the Sherman Act Class who does not exclude itself from the Class may appear at the Fairness Hearing in person or by duly authorized attorney and show cause why the Settlement should not be approved as fair, reasonable and adequate, or to oppose or comment on any other subject of the hearing (including, for example, the Plan of Allocation, and request for attorneys' fees), *provided* that the class member files with the Office of the Clerk, Southern District of Florida, 301 North Miami Avenue, Miami, Florida, a Notice of Intention to Appear and a Summary Statement of the position asserted and the grounds therefor, together with copies of any supporting papers or briefs, on or before **April 8, 2005, and causes a copy to be received by Co-Lead Counsel for the Class on the same day**.[8]  The Court will not consider any paper or brief submitted after April 8, 2005.  Unless a Class member files the *Notice* and *Summary* described above, it shall not be entitled to contest the terms and conditions of the proposed Settlement or to appear in person at the hearing, and may be deemed to have waived any such objections.

## X.      ADDITIONAL INFORMATION

The pleadings and other records in this litigation may be examined and copied during regular hours at the Office of the Clerk, United States District Court for the Southern District of Florida, 301 North Miami Avenue, Miami, Florida.  Copies of the Motion for Preliminary Approval of the Settlement, this Notice, and (when filed on April 5, 2005) the Proposed Plan of Allocation, Motion

---

[8]You need not appear at the hearing in order to object.  The Notice of Intention to Appear and Summary Statement, and any accompanying papers, must include in a prominent location the name of the case, "*In re Terazosin Hydrochloride Litigation*," the "MDL" case number (99-MDL-1317), and the Judge's name (the Honorable Patricia A. Seitz).

for Final Approval and Application for Attorneys' Fees and Incentive Awards for the Representative

Plaintiffs will also be available at www.bsfllp.com or www.garwingerstein.com.

Any questions that you have concerning the matters contained in this Notice may be directed

in writing to the Co-Lead Counsel for Sherman Act Class:

Richard B. Drubel
Kimberly Schultz
**BOIES, SCHILLER
& FLEXNER, L.L.P.**
26 South Main Street
Hanover, NH 03755
Telephone: (603) 643-9090
Email: rdrubel@bsfllp.com

Bruce E. Gerstein
Barry S. Taus
**GARWIN GERSTEIN & FISHER LLP**
1501 Broadway, Suite 1416
New York, NY 10036
Telephone: (212) 398-0055
Email: btaus@garwingerstein.com

## PLEASE DO NOT ADDRESS ANY INQUIRIES TO THE COURT.

Dated: March __, 2005  in Miami, Florida.

_____ /s/ _____
PATRICIA A. SEITZ
United States District Judge

391618

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 99-MDL-1317-SEITZ/GARBER

IN RE TERAZOSIN HYDROCHLORIDE
ANTITRUST LITIGATION

This Document Relates to:

*Louisiana Wholesale Drug Co., Inc.*
*v. Abbott Laboratories*                          *Case No. (S.D. Fla.) 98-3125*

*Valley Drug Company v. Abbott*                   *Case No. (S.D. Fla.) 99-7143*
*Laboratories, et al.*

*Sherman Act Class Direct Purchaser Cases*

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT is made and entered into as of the 19th day of

February, 2002 by and between Defendant IVAX Pharmaceuticals, Inc. ("IVAX") (formerly

known as Zenith Goldline Pharmaceuticals, Inc.) and Plaintiffs in the class actions Louisiana

Wholesale Drug Co., Inc. v. Abbott Laboratories, et al., S.D. Fla. Case No. 98-3125; and Valley

Drug Co. v. Abbott Laboratories, et al., S.D. Fla. Case No. 99-7143 (the parties are collectively

referred to as the "Sherman Act Class Plaintiffs" or "Plaintiffs", and the matters are collectively

referred to as the "Class Action"), which were consolidated under Case No. 99-MDL-1317

Seitz/Garber;

WHEREAS, Plaintiffs have alleged, among other things, that IVAX's agreement with

Defendant Abbott Laboratories ("Abbott") dated March 31, 1998 was illegal under Section 1 of



ATTACHMENT / EXHIBIT _____

the Sherman Act, 15 U.S.C. § 1, and caused Plaintiffs and other members of the proposed Class to incur significant damages;

WHEREAS, IVAX denies each and every one of Plaintiffs' allegations of unlawful conduct and has asserted a number of defenses to Plaintiffs' claims;

WHEREAS, Plaintiffs and IVAX agree that this Settlement Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by IVAX or of the truth of any of the claims or allegations alleged in the Class Action;

WHEREAS, arm's-length settlement negotiations have taken place between counsel for Plaintiffs and IVAX, and this Settlement Agreement, including its exhibits, which embodies all of the terms and conditions of the settlement between IVAX and the Sherman Act Class Plaintiffs, both individually and on behalf of the Class, has been reached, subject to the final approval of the Court;

WHEREAS, Plaintiffs' counsel have concluded, after extensive discovery and investigation of the facts and after carefully considering the circumstances of the Class Action and the applicable law, that it would be in the best interests of the Class to enter into this Settlement Agreement in order to avoid the uncertainties of litigation, particularly complex litigation such as this, and to assure a benefit to the Class and further, that Plaintiffs' counsel consider the settlement set forth herein to be fair, reasonable, and adequate;

WHEREAS, IVAX has concluded, despite the belief of IVAX that it is not liable for the claims asserted and has good defenses thereto, that it will enter into this Settlement Agreement solely to avoid the further expense, inconvenience and burden of this protracted litigation, and the distraction and diversion of its personnel and resources, and thereby to put to rest this

- 2 -

controversy with valued business customers, and to avoid the risks inherent in uncertain complex litigation;

WHEREAS, IVAX and Plaintiffs have each had the full opportunity to examine the facts and circumstances surrounding their respective decisions to accept the terms of the Agreement and have not relied upon any representations (or the lack thereof) made by the other concerning the circumstances leading to this agreement; and

WHEREAS, the Court certified a Class consisting of the following members on September 20, 2001, as amended by the Court's order on September 28, 2001: "all entities who purchased Hytrin, also known by the chemical name terazosin hydrochloride, directly from Abbott at any time during the period commencing March 31, 1998, through August 15, 1999."

NOW THEREFORE, it is agreed by and among the undersigned, on behalf of IVAX and the Sherman Act Class Plaintiffs, that the Class Action and all actions consolidated therein and all claims of the Sherman Act Class Plaintiffs be settled, compromised and dismissed on the merits and with prejudice as to IVAX and, except as hereinafter provided, without costs as to Plaintiffs or IVAX, subject to the approval of the Court, on the following terms and conditions:

1.    Reasonable Best Efforts to Effectuate This Settlement. Counsel for the undersigned agree to recommend approval of this Settlement Agreement by the Court and to undertake their best efforts, including all steps and efforts contemplated by this Settlement Agreement and any other steps and efforts that may be necessary or appropriate, by order of the Court or otherwise, to carry out the terms of this Settlement Agreement.

2.    Motion for Preliminary Approval. Promptly following execution of this Settlement Agreement, Sherman Act Class Plaintiffs shall file with the Court a motion for preliminary approval of the settlement.

- 3 -

In the event that the Court preliminarily approves the settlement, Sherman Act Class Plaintiffs shall, in accord with the order of preliminary approval, provide Class members with notice of the settlement pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs' counsel will recommend notice to the Class by means of (i) direct mail and (ii) publication in not more than two trade publications.

3. **Motion for Final Approval and Entry of Final Judgment.** If the Court preliminarily approves this Settlement Agreement, counsel for the Sherman Act Class Plaintiffs shall submit a motion for final approval of this Settlement Agreement by the Court, after appropriate notice to the Class, and shall seek entry of an order and final judgment:

a. finally approving this Settlement Agreement and its terms as being a fair, reasonable and adequate settlement as to Plaintiffs and the Class within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation pursuant to its terms; .

b. directing that, as to IVAX, the Class Action be dismissed with prejudice and, except as provided for herein, without costs;

c. reserving exclusive jurisdiction over the settlement and this Settlement Agreement, including the administration and consummation of this settlement; and

d. determining pursuant to Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the judgment of dismissal shall be final and appealable.

4. This Settlement Agreement shall become final upon the occurrence of all of the following:

a. neither IVAX nor the Class has availed itself of the right to withdraw from the Settlement Agreement pursuant to paragraph 15 hereof;

b. it is approved by the Court as required by Rule 23(e) of the Federal Rules of Civil Procedure;

c. entry, as provided for in paragraph 3 herein, is made of the final judgment of dismissal with prejudice as to IVAX against all Class Plaintiffs and

- 4 -

members of the Class who have not timely excluded themselves from the Class Action; and

        d.    the time for appeal from the Court's approval of this Settlement Agreement as described in 4.a. hereof and entry of a final judgment as described in 4.b. hereof has expired or, if appealed, approval of this Settlement Agreement and the final judgment have been affirmed in their entirety by the Court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review.

5.    **Settlement Consideration: Cash.** Subject to the provisions hereof, and in full, complete and final settlement of the Class Action, within ten (10) days following the entry of Final Judgment pursuant to paragraph 4 of this Settlement Agreement, IVAX shall pay $2,072,327, plus simple interest at the rate of 1.715% per annum from the date of execution of this Agreement to the date of Final Judgment, to an account administered on behalf of the Class (the "Settlement Fund"). IVAX shall also pay up to an additional $25,000 for administration and notice expenses, whether incurred prior to the Settlement Agreement becoming final pursuant to the provisions of paragraph 4 herein or whether incurred thereafter. All other administration and notice expenses will be funded from the Settlement amount.

6.    All monies deposited into the Settlement Fund shall, subject only to the provisions of this Settlement Agreement, be the property of the beneficiaries thereof upon deposit and shall not revert to IVAX or any of the Released Parties, as defined herein. It is intended that the Settlement Fund be treated as a "qualified settlement fund" for federal income tax purposes pursuant to Treas. Reg. § 1.46B-1 and that any taxes due as a result of income earned by the Settlement Fund will be paid from the Settlement Fund.

7.    In the event that this Settlement Agreement does not become final as required by paragraph 4, IVAX shall be responsible only to pay the costs incurred of providing notice to the

- 5 -

Class, and any release or covenant not to sue pursuant to paragraphs 12 and 13 below shall be of no force or effect.

    8.    **Disbursements from Settlement Fund.**  Members of the Class who have not timely excluded themselves from the Class Action shall look solely to the Settlement Fund for settlement and satisfaction against IVAX of all claims that are released hereunder. Except as provided by order of the Court, no Class member shall have any interest in the Settlement Fund or any portion thereof.

    9.    The Sherman Act Class Plaintiffs and their counsel will be reimbursed and indemnified solely out of the Settlement Fund for all expenses including, but not limited to, the costs of notice of this settlement to Class members,. IVAX shall not be liable for any costs, or fees or expenses of any of Plaintiffs' respective attorneys, experts, advisors, and representatives, but all such costs and expenses as approved by the Court shall be paid out of the Settlement Fund, except for the additional $25,000 of administration and notice costs to be paid by IVAX.

    10.    If this Settlement Agreement becomes final pursuant to the provisions of paragraph 4 herein, the Sherman Act Class Plaintiffs may seek to use the Settlement Fund to pay expenses for the prosecution of this Action. In addition, disbursements for the costs and expenses of Class notice, distribution and administration of the Settlement Fund, together with other reasonable expenses awarded by the Court, shall be made from the Settlement Fund. IVAX will not oppose such use or disbursements of the settlement proceeds.

    11.    **Expenses and Costs.**  Sherman Act Class Plaintiffs' counsel intend to seek reasonable costs and expenses incurred in the prosecution of this action. IVAX agrees to take no position with respect to the application by Sherman Act Class Plaintiffs' counsel for the expense payments set forth above. IVAX agrees that any expenses awarded by the Court shall be

- 6 -

disbursed only to Sherman Act Class Plaintiffs' Co-Lead Counsel, Boies, Schiller & Flexner,

LLP and Garwin, Bronzaft, Gerstein & Fisher, L.L.P., for allocation among the various

Sherman Act Class Plaintiffs' counsel who have participated in this litigation.

12.    Releases.  Upon this Settlement Agreement becoming final in accord with

paragraph 4 hereof, IVAX and its present and former parents, subsidiaries, divisions, affiliates,

stockholders, officers, directors, employees, agents and any of their legal representatives (and the

predecessors, heirs, executors, administrators, successors and assigns of each of the foregoing)

(the "Released Parties") shall be released and forever discharged from liability for all claims that

were or could have been brought by Class Plaintiffs and members of the Class in the Class

Action and for any claim of fraudulent inducement to enter into this Settlement Agreement (the

"Released Claims"). Nothing in this Settlement Agreement is intended to release any non-

settling Defendant. Each member of the Class hereby covenants and agrees that it shall not,

hereafter, seek to establish liability against any Released Party based, in whole or in part, upon

any of the Released Claims.

13.    In addition to the provisions of paragraph 12 of this Agreement, the Class

members hereby expressly waive and release, upon this Agreement becoming final, any and all

provisions, rights and benefits conferred by § 1542 of the California Civil Code, which states:

> Section 1542. Certain Claims Not Affected by General Release.  A
> general release does not extend to claims which the creditor does
> not know or suspect to exist in his favor at the time of executing
> the release, which if known by him must have materially affected
> his settlement with the debtor;

or by any law of any state or territory of the United States, or principle of common law, which is

similar, comparable or equivalent to § 1542 of the California Civil Code. Each Class member

may hereafter discover facts other than or different from those which he, she or it knows or

- 7 -

believes to be true with respect to the claims which are the subject matter of the provisions of paragraph 12 of this Agreement, but each Class member hereby expressly waives and fully, finally and forever settles and releases, upon this Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim as provided in paragraph 12 of this Agreement, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

14. **Reservation of Claims.** The Class members intend by this Settlement Agreement to settle with and release only the Released Parties that such Class members have released pursuant to paragraph 12 hereof, and the parties do not intend this Settlement Agreement, any part hereof or any other aspect of the proposed settlement or release, to release or otherwise affect in any way any rights a Class member has or may have against any other party or entity whatsoever other than the Released Parties pursuant to paragraph 12 hereof. In addition, the releases set forth in paragraph 12 and 13 hereof shall not release any claims arising in the ordinary course of business between Class members and the Released Parties (e.g., product liability, breach of contract, breach of warranty, common law personal injury tort, etc.)

15. **Effect of Court Action.** If the Court declines to finally approve this Settlement Agreement, or if such approval is set aside on appeal, or if the Court does not enter the final judgment in substantially the form provided for in paragraph 4, or if the Court permits additional opt outs from the current Class as described in the confidential letter agreement of February 19, 2002, or if the Court enters the final judgment and appellate review is sought, and on such review, such final judgment is not affirmed, or if the terms of this Settlement Agreement are materially changed except by mutual consent of the parties, then this Settlement Agreement may be cancelled and terminated, and shall become null and void, upon the election of IVAX or

- 8 -

Plaintiffs' Co-Lead Counsel. A modification or reversal on appeal of any amount of Plaintiffs' counsels' expenses awarded by the Court from the Settlement Fund shall not be deemed a modification of all or a part of the terms of this Settlement Agreement or such final judgment.

16.  If the Class, as certified by the Court on September 20, 2001, and as amended by the Court on September 28, 2001, is de-certified following a decision by the United States Court of Appeals for the Eleventh Circuit or the United States Supreme Court, and no new direct purchaser class is certified by the Court, this Agreement may be cancelled and terminated, and shall become null and void, upon the election of IVAX or Plaintiffs' Co-Lead Counsel.

If the Class, as certified by the Court on September 20, 2001, and as amended by the Court on September 28, 2001, is modified or altered following a decision by the United States Court of Appeals for the Eleventh Circuit or the United States Supreme Court, or if upon remand following a decision by the Eleventh Circuit Court of Appeals or the United States Supreme Court, a class is certified that is different than the Class certified by the Court on September 20, 2001, and as amended by the Court on September 28, 2001, the Settlement amount set forth herein shall be reduced proportionately based on a percentage, the numerator of which is the total amount of Class members' direct purchases of terazosin hydrochloride for Class members who are no longer members of the Class (excluding members who have already timely opted out of the Class, either by submitting a request for exclusion or by filing a Hytrin lawsuit on or before November 19, 2001), and the denominator of which is the total amount of current Class members' direct purchases of terazosin hydrochloride during the same time period. The amount by which the Settlement amount is to be reduced shall be refunded to IVAX within 10 business days. If the total percentage of direct purchaser plaintiffs originally part of the Class certified by the Court on September 20, 2001, and as amended by the Court on September 28, 2001

- 9 -

(excluding members who have already timely opted out of the Class, either by submitting a request for exclusion or by filing a Hyzin lawsuit on or before November 19, 2001), but not part of an amended, modified, or re-certified direct purchaser Class exceeds the percentage described in the confidential letter agreement of February 19, 2002 (unless the Court concludes that these particular members have no cause of action to proceed against IVAX or are entitled to recover no monetary damages from IVAX), this Agreement may be cancelled and terminated, and shall become null and void, upon the election of IVAX or Plaintiffs' Co-Lead Counsel.

17.    In the event that the settlement does not become final in accordance with the terms of paragraph 4 and 16 hereof, then this Settlement Agreement shall be of no force or effect, except for payment of notice, and administration fees and costs from the Settlement Fund, and IVAX shall be entitled to the return of the amount held in the Settlement Fund less such notice and Settlement Fund administration fees and costs. The parties hereto agree that this Settlement Agreement, whether or not it shall become final, and any and all negotiations, documents and discussions associated with it shall be without prejudice to the rights of any party, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or any liability or wrongdoing by IVAX or of the truth of any of the claims or allegations contained in the complaint or any other pleading, and evidence thereof shall not be discoverable or used directly or indirectly, in any way, whether in the Class Action or in any other action or proceeding. The parties expressly reserve all of their rights if the settlement does not become final in accordance with the terms of this Settlement Agreement.

18.    Settlement Consideration: Cooperation. IVAX agrees that it will cooperate with the Sherman Act Class Plaintiffs' continued prosecution of their remaining claims in this Action to the extent that such cooperation does not reasonably adversely affect IVAX's defenses

- 10 -

in any continuing litigation involving Hytrin or terazosin hydrochloride. As a part of this cooperation, IVAX agrees to the following:

    a.   witnesses under its control will not testify, unless pursuant to Court order or a subpoena, at any trial covering antitrust matters relating to terazosin hydrochloride in which IVAX is not a defendant and the Sherman Act Class Plaintiffs are plaintiffs;

    b.   upon request, to produce witnesses under its control to appear at a trial in which IVAX is not a defendant but the Sherman Act Class Plaintiffs are plaintiffs; and

    c.   to provide truthful information to assist plaintiffs in prosecuting their claims in this Action.

19.   **Binding Effect.** This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto and to the Released Parties. Without limiting the generality of the foregoing, each and every covenant and agreement herein by the Sherman Act Class Plaintiffs and their counsel shall be binding upon all members of the Class.

20.   **Integrated Agreement.** This Settlement Agreement contains an entire, complete, and integrated statement of each and every term and provision agreed to by and among the parties. This Settlement Agreement shall not be modified in any respect except by a writing executed by all the parties hereto.

21.   **Headings.** The headings used in this Settlement Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

22.   **No Party is the Drafter.** None of the parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case

- 11 -

law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

    23.    **Choice of Law**. All terms of this Settlement Agreement shall be governed by and interpreted according to the substantive laws of the state of Florida without regard to its choice of law or conflict of laws principles.

    24.    **Consent to Jurisdiction**. IVAX and each member of the Class hereby irrevocably submit to the exclusive jurisdiction of the United States District Court for the Southern District of Florida, for any suit, action, proceeding or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement.

    25.    **No Admission**. Nothing in this Settlement Agreement shall be construed as an admission in any action or proceeding of any kind whatsoever, civil, criminal or otherwise, before any court, administrative agency, regulatory body or any other body or authority, present or future, by IVAX including, without limitation, that IVAX has engaged in any conduct or practices that violate any antitrust statute or other law.

    26.    **Intended Beneficiaries**. Nothing in this Settlement Agreement shall be deemed to confer any rights or benefits, or impose any obligations, on any person other than the members of the Class and the Released Parties.

    27.    **Execution in Counterparts**. This agreement may be executed in counterparts. Facsimile signatures shall be considered as valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this agreement and filed with the Court.

IN WITNESS WHEREOF, the parties hereto, through their fully authorized

representatives, have agreed to this Settlement Agreement on the date first herein above written.

By: _____

Barry S. Taus, Esq.
Bruce E. Gerstein, Esq.
Jan Bartelli, Esq.

GARWIN, BRONZAFT, GERSTEIN
& FISHER, L.L.P.
1501 Broadway, Suite 1416
New York, NY 10036
Tel: (212) 398-0055
Fax: (212) 764-6620
E-Mail: btaus@gbgf-law.com

By: _____

Richard B. Drubel, Esq.
Kimberly H. Schultz, Esq.

BOIES, SCHILLER & FLEXNER LLP
26 South Main Street
Hanover, NH 03755
Tel: (603) 643-9090
Fax: (603) 643-9010
E-Mail: rdrubel@bsfllp.com

*Co-Lead Counsel for Sherman Act Class Plaintiffs*

By: _____

Gerson A. Zweifach, Esq.
Kevin M. Downey, Esq.

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005-5901
Tel: (202) 434-5000
Fax: (202) 434-5029
E-Mail: gzweifach@wc.com

*Counsel for Defendant IVAX Pharmaceuticals, Inc.*

- 13 -



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 99-MDL-1317-SEITZ/BANDSTRA

IN RE TERAZOSIN HYDROCHLORIDE
ANTITRUST LITIGATION

This Order Relates to:

*Louisiana Wholesale Drug Co., Inc.*                    Case No. (S.D. Fla.) 98-3125
*v. Abbott Laboratories, et al.*

*Valley Drug Company v. Abbott*                          Case No. (S.D. Fla.) 99-7143
*Laboratories, et al.*

Hytrin Circulation:
DxB
DFS
ELC
NWC
JCook
PFowler
A. Liggins/File

## ORDER APPROVING SETTLEMENT BETWEEN
## SHERMAN ACT CLASS PLAINTIFFS AND IVAX PHARMACEUTICALS, INC.

THIS CAUSE is before the Court on the Recommendation of the Honorable Ted E. Bandstra that

the Court grant Sherman Act Class Plaintiffs' Motion for Final Approval of Settlement with Defendant

IVAX Pharmaceuticals, Inc. [D.E. No. 773]. The Court has considered the motion, the submissions of the

parties, and reviewed the transcript of the fairness hearing held on May 31, 2002 before Judge Bandstra.

Upon review of this record, the Court finds that the settlement is a fair, reasonable and adequate

settlement for the Sherman Act Class Plaintiffs' claims against IVAX in this case. The settlement was arrived

at by arm's-length negotiations by highly experienced counsel, and notice of the settlement was provided

to members of the Sherman Act Class in an adequate and sufficient manner, constituting the best notice

practicable pursuant to Federal Rule of Civil Procedure 23(e) and complying with due process. Therefore,

it is

ORDERED as follows:

(1)      Sherman Act Class Plaintiffs' Motion for Final Approval of Settlement with

Defendant IVAX Pharmaceuticals, Inc. is GRANTED. The settlement is approved.

(2)      The Sherman Act Class Plaintiffs' class action, as to IVAX, is DISMISSED WITH

PREJUDICE and, except as provided for under the Settlement Agreement, without costs. This dismissal

ATTACHMENT / EXHIBIT

shall become effective upon the date the Settlement Agreement becomes final according to the provisions

of paragraph 4 of the Settlement Agreement.

      (3)    The parties are directed to consummate the settlement pursuant to the terms and

conditions of the Settlement Agreement dated February 19, 2002.

      (4)    The Court reserves exclusive jurisdiction of the settlement and the Settlement

Agreement, including the administration and consummation of the settlement.

      (5)    Pursuant to FED. R. CIV. P. 54(b), the Court determines that there is no just reason

for delay and shall enter, by separate order of this same date, a final judgment which shall be appealable.

      DONE and ORDERED in Miami, Florida, this 13th day of June, 2002.

                               PATRICIA A. SEITZ
                               UNITED STATES DISTRICT JUDGE

Copies to:

Magistrate Judge Bandstra

All Counsel on Attached Service List

In re TERAZOSIN HYDROCHLORIDE
ANTITRUST LITIGATION

Case No. 99-MDL-13.    SEITZ/BANDSTRA

## SERVICE LIST

Richard B. Drubel, Esq.
BOIES, SCHILLER & FLEXNER, L.L.P.
26 South Main Street
Hanover, NH 03755
Fax:    (603) 643-9010
Counsel for Sherman Act Class Plaintiffs

Barry S. Taus, Esq.
GARWIN, BRONZAFT et al.
1501 Broadway, Suite 1416
New York, NY 10036
Fax:    (212) 764-6620
Counsel for Sherman Act Class Plaintiffs

Scott E. Perwin, Esq.
KENNY NACHWALTER SEYMOUR et al.
201 South Biscayne Boulevard
Miami, FL 33131-4327
Fax:    (305) 372-1861
Counsel for Walgreen Co.

David S. Mandel, Esq.
MANDEL & McALILEY
169 East Flagler Street, Suite 1200
Miami, FL 33131
Fax:    (305) 374-7776
Local Counsel for Char-Mar Pharm., Inc.

Daniel Small, Esq.
COHEN, MILSTEIN, HAUSFELD et al.
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005-3934
Fax:    (202) 408-4699
Counsel for Indirect Purchaser Plaintiffs

Jeffrey I. Weinberger, Esq.
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071
Fax:    (213) 687-3702
Counsel for Abbott Labs.

Gerson A. Zweifach, Esq.
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005-5901
Fax:    (202) 434-5029
Counsel for Zenith Goldline Pharms.

Barbara B. Smithers, Esq.
Fla. Atty. General Office
135 W. Central Blvd.
Century Plaza
Orlando, FL 32801
Fax:    (407) 245-0365
Counsel for State of Florida

Daniel Berger, Esq.
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Fax:    (215) 875-4671
Counsel for Valley Drug Co.

Aubrey B. Calvin, Esq.
THE CALVIN LAW FIRM, P.C.
808 Travis St., Ste. 2300
Houston, TX 77002
Fax:    (713) 225-0038
Counsel for Louisiana Wholesale Drug Co.

Steve D. Shadowen, Esq.
SCHNADER HARRISON et al.
30 North Third Street, Suite 700
Harrisburg, PA 17101-1713
Fax:    (717) 231-4012
Counsel for Rite Aid Corp. & CVS Meridian, Inc.

Robert C. Gilbert, Esq.
ROBERT C. GILBERT, P.A
220 Alhambra Circle, Suite 400
Coral Gables, FL 33134
Fax:    (305) 529-1612
Counsel for Indirect Purchaser Plaintiffs

Stephen Lowey, Esq.
LOWEY DANNENBERG BEMPORAD et al.
The Gateway, 11th Floor
One North Lexington Avenue
White Plains, NY 10601
Fax:    (914) 997-0035
Counsel for Indirect Purchaser Plaintiffs

Wayne A. Cross, Esq.
DEWEY BALLANTINE, LLP
1301 Avenue of the Americas
New York, NY 10019
Fax:    (212) 259-6333
Counsel for Geneva Pharms.

Mitchell W. Berger, Esq.
BERGER DAVIS & SINGERMAN
350 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, FL 33301
Fax:    (954) 523-2872
Counsel for Sherman Act Class Plaintiffs