FILED by _____ D.C.
INTAKE

FEB 24 2005

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 99-MDL-1317-SEITZ/KLEIN

IN RE TERAZOSIN HYDROCHLORIDE
ANTITRUST LITIGATION
_____/

**This Document Relates to:**

Louisiana Wholesale Drug Co., Inc.          Case No. (S.D. Fla.) 98-3125
v. Abbott Laboratories, et al.

Valley Drug Company v. Abbott               Case No. (S.D. Fla.) 99-7143
Laboratories, et al.
_____/

## MEMORANDUM OF LAW IN SUPPORT OF
## SHERMAN ACT CLASS PLAINTIFFS' MOTION FOR:

**(A)**    **CERTIFICATION OF THE PROPOSED DIRECT PURCHASER ("SHERMAN ACT") CLASS IN LIGHT OF SETTLEMENT AND RE-APPOINTMENT OF CLASS COUNSEL;**

**(B)**    **PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT WITH DEFENDANTS ABBOTT LABORATORIES AND GENEVA PHARMACEUTICALS, INC.;**

**(C)**    **APPROVAL OF THE FORM AND MANNER OF NOTICE TO THE CLASS;  AND,**

**(D)**    **SETTING OF CERTAIN DEADLINES**

## INTRODUCTION

Named plaintiffs, Louisiana Wholesale Drug Co., Inc. and Valley Drug Company ("Sherman

Act Class Plaintiffs"), respectfully submit this Memorandum of Law in support of their Motion for



BERGER SINGERMAN
attorneys at law



Boca Raton   Fort Lauderdale   Miami   Tallahassee

200 South Biscayne Boulevard  Suite 1000  Miami, Florida 33131-5308  Telephone 305-755-9500  Facsimile 305-714-4340

(A) Certification of the Proposed Direct Purchaser ("Sherman Act") Class in Light of Settlement and Appointment of Class Counsel; (B) Preliminary Approval of the Proposed Settlement with Defendants Abbott Laboratories ("Abbott") and Geneva Pharmaceuticals, Inc. ("Geneva");[1] (C) Approval of the Form and Manner of Notice to the Class (the "Class Notice"); and (D) Setting of Certain Deadlines.

Sherman Act Class Plaintiffs, and defendants Abbott and Geneva have entered into a proposed settlement providing for the payment totaling $72.5 million in cash to the Sherman Act Class Plaintiffs and members of the proposed Sherman Act Class (the "Settlement"). This class action litigation -- which was brought by direct purchasers of the drug Hytrin from defendant Abbott,[2] relating to, among other things, an April 1, 1998 Agreement between Abbott and Geneva that was alleged to have unreasonably restrained trade -- is being resolved as to both remaining defendants.

By the present motion, the Sherman Act Class Plaintiffs seek four (4) rulings from the Court:

- Certification of the proposed Sherman Act Class in light of settlement and appointment of class counsel;

- Preliminary approval of the proposed Settlement;

---

[1] Geneva is now known as Sandoz, Inc.

[2] The proposed Sherman Act Class is defined as:

All persons who purchased Hytrin, also known by the chemical name terazosin hydrochloride, directly from Abbott Laboratories, at any time during the period commencing March 31, 1998, through and including, June 30, 2001. *Excluded from the Class are*: (1) Defendants Abbott Laboratories, Geneva Pharmaceuticals, Inc. (now known as Sandoz, Inc.), Zenith Goldline Pharmaceuticals, Inc. (now known as Ivax Pharmaceuticals, Inc.), their respective officers, directors, management, employees, subsidiaries, and affiliates; (2) each of the following entities, and any and all claims of each said entity that have been asserted or could have been asserted, in *In re Terazosin Hydrochloride*, Case No. 99 MDL 1317 arising out of Hytrin or generic terazosin hydrochloride purchases by said entity: CVS Meridian, Inc., Rite Aid Corp., Walgreen Co., Eckerd Corp., The Kroger Co., Albertson's, Inc., the Stop & Shop Supermarket Co., and Hy-Vee, Inc.; and (3) Kaiser Foundation Health Plan, Inc. and the Kaiser entities on whose behalf it has asserted claims in paragraph 8 of its complaint in 99 MDL 1317.

- Approval of the form and manner of Class Notice; and

- Setting of certain deadlines.

Regarding deadlines, the Court needs to set a schedule for the events that will follow, including deadlines for (a) mailing the Class Notice, (b) opting out of the Class, (c) filing of an application for Class Counsel's reimbursement of costs and award of attorneys' fees, (d) filing of an application for the Representative Plaintiffs' incentive awards,  (f) objecting to the proposed Settlement, and (g) a later hearing on whether the Court should give its final approval to the Settlement (the "Fairness Hearing").[3]

This Motion is supported by defendants Abbott and Geneva.[4]  A proposed Order effectuating the aforementioned rulings and deadlines is attached as Exhibit "1" to the Settlement Agreement, which is attached to the accompanying Motion as Exhibit "A".

## BACKGROUND

On December 18, 1998, plaintiff Louisiana Wholesale filed an action in the United States District Court for the Southern District of Florida, alleging violations of the federal antitrust laws, specifically the Sherman Act and the Clayton Act, against defendants Abbott, Geneva, and Zenith. Louisiana Wholesale alleged, among other things, that Abbott entered into an agreement with Geneva, pursuant to which Abbott agreed to pay Geneva millions of dollars in exchange for Geneva's agreement to refrain from marketing its generic version of Hytrin until Abbott's then-pending patent infringement suit against Geneva was resolved.  Louisiana Wholesale alleged that the

---

[3]As detailed below, preliminary approvals of proposed class action settlements are procedural in nature and do not involve determinations on the merits of the proposed settlement, as long as the settlement falls within the range of possible approval. *In the Matter of Skinner Group, Inc.*, 206 B.R. 252, 261 (N.D. Ga. 1997).

[4]Although Defendants support the Court granting the relief requested in Plaintiffs' underlying Motion, this Memorandum is submitted **solely** by and on behalf of the Plaintiffs.

BERGER SINGERMAN        Boca Raton   Fort Lauderdale   Miami   Tallahassee
        attorneys at law

200 South Biscayne Boulevard  Suite 1000  Miami, Florida 33131-5308  Telephone 305·755·9500  Facsimile 305·714·4340

Abbott/Geneva Agreement, as well as a similar agreement between Abbott and Zenith (collectively "the Agreements"), were illegal under Section 1 of the Sherman Act, and caused direct purchasers of Hytrin to be overcharged for terazosin hydrochloride because the Agreements kept less expensive generic versions of Hytrin off the market.

On August 30, 1999, plaintiff Valley Drug filed a similar complaint challenging the Abbott/Geneva Agreement, alleging similar antitrust violations against Abbott and Geneva. The Louisiana Wholesale and Valley Drug cases were consolidated by the Court on October 22, 1999. Louisiana Wholesale and Valley Drug are hereafter referred to as the "Sherman Act Class Plaintiffs," the "Sherman Act Class Representatives," or "Class Plaintiffs."

Defendants Abbott and Geneva vigorously dispute Class Plaintiffs' claims that the Agreements were illegal. They also deny Class Plaintiffs' claims that the Agreements caused Class Plaintiffs and members of the proposed Sherman Act Class any harm. For example, Defendants assert, among other defenses, that Geneva would not have come to market earlier with its cheaper generic product, even without the Abbott/Geneva Agreement, because of the risk of liability if Abbott won its then-pending patent suit against Geneva relating to Geneva's proposed generic terazosin hydrochloride product. Defendants also assert that technical problems in manufacturing Geneva's terazosin hydrochloride product prevented Geneva from bringing its product to market any earlier than August 1999, when it actually launched its product.

On December 13, 2000, this Court found that the Abbott/Geneva Agreement was *per se* illegal under Section 1 of the Sherman Act. Defendants appealed the Court's decision. On September 15, 2003, the Court of Appeals for the Eleventh Circuit reversed this Court's December 13, 2000 order, and remanded for further proceedings. On January 5, 2005, upon consideration of additional argument and evidence, this Court again held that the Abbott/Geneva Agreement was *per*

1180532
BERGER SINGERMAN
attorneys at law
Boca Raton   Fort Lauderdale   Miami   Tallahassee
200 South Biscayne Boulevard  Suite 1000  Miami, Florida 33131-5308  Telephone 305·755·9500  Facsimile 305·714·4340

*se* illegal. On January 21, 2005, the Court denied defendants' request for permission to immediately appeal the Court's "*per se*" ruling to the Eleventh Circuit Court of Appeals. On February 9, 2005, Defendants filed a Writ of Mandamus, asking the Eleventh Circuit to review and vacate the Court's January 21, 2005 "*per se*" ruling or the Jan. 21, 2005 denial of permission to seek an immediate appeal. That Writ of Mandamus is currently pending. Whether or not the Writ is granted, Defendants would have the right to appeal the Court's "*per se*" ruling after a final judgment in this case should it not be fully settled, or otherwise resolved, before that point.

Although the Court has ruled (subject to Defendants' right to appeal) that the Abbott/Geneva Agreement is a *per se* violation of Section 1 of the Sherman Act, in order to recover monetary damages in this case Plaintiffs still would have been required to prove that the Agreement caused damage, in a quantifiable amount, to Plaintiffs. As described above, Defendants vigorously contend that the Agreement did not delay Geneva's (or any generic manufacturer's) entry into the market with a generic version of Hytrin, and thus assert that the Agreement did not cause Plaintiffs to incur any damages.

At the time that the proposed Settlement was reached, discovery in the case, which included Class Counsel's review of hundreds of thousands of pages of documents, and the depositions of dozens of fact and expert witnesses, had been completed. Thus, Class Counsel conducted an intensive investigation, and obtained significant knowledge regarding the strengths and weaknesses of the claims and defenses in this case before entering into settlement negotiations with Defendants.

The trial of the claims of Louisiana Wholesale and Valley Drug was scheduled to begin in April 2005, and has been continued until May 2005 in the event Abbott or Geneva elects to terminate this Settlement if the exclusion threshold has been exceeded. In that event, Defendants may elect to

1189531-2   BERGER SINGERMAN   *Boca Raton   Fort Lauderdale   Miami   Tallahassee*
attorneys at law
200 South Biscayne Boulevard   Suite 1000   Miami, Florida 33131-5308   Telephone 305-755-9500   Facsimile 305-714-4340

seek decertification of the proposed Sherman Act Class, and the trial would proceed on behalf of only Louisiana Wholesale and Valley Drug.

This case settled virtually on the eve of trial. Only after (a) intensive arm's-length negotiations with a highly respected and nationally renowned mediator, Professor Eric Green, (b) substantial fact and expert discovery (including, among other things, the production and inspection of hundreds of thousands of pages of documents and depositions of dozens of witnesses), and (c) decision on all outstanding dispositive and *Daubert* motions, was the Settlement reached.

The proposed settlement agreement, which is attached to the accompanying motion as Exhibit "A," provides for a cash payment totaling $72.5 million to the Sherman Act Class Plaintiffs and the proposed Class in exchange for a full and complete settlement and release of all claims that the Sherman Act Class Plaintiffs and the Class have asserted or could have asserted based on the allegations in their consolidated actions pending before this Court.

If the Court grants this Motion, certifies the proposed Class in light of the Settlement, and signs the Order preliminarily approving the proposed Settlement, the terms of the settlement will then be communicated to the Class through the Class Notice, which will be sent directly to class members via first class United States mail. The proposed form of Class Notice is attached to the Settlement Agreement as Exhibit "2."

## ARGUMENT

**I.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT**

Rule 23(e) of the Federal Rules of Civil Procedure provides:

> The court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable and adequate.

B 8 0 5 1 2
B E R G E R   S I N G E R M A N
attorneys at law                     Boca Raton   Fort Lauderdale   Miami   Tallahassee

200 South Biscayne Boulevard   Suite 1000   Miami, Florida 33131-5308   Telephone 305-755-9500   Facsimile 305-714-4340

*See* Fed. R. Civ. P. 23(e)(1)(C).  Approval of class action settlements involves a two step process.  In step one, the Court considers whether to approve the settlement preliminarily for purposes of communicating the terms of the settlement to the proposed class.  In the second step, after notice to the class, provision of an opportunity for each class member to opt out of the class or to object to the proposed settlement or otherwise to be heard, the Court will determine whether the settlement is fair, reasonable, and adequate and whether the settlement should be finally approved under Fed. R. Civ. P. 23(e).  *In the Matter of Skinner Group, Inc.*, 206 B.R. at 261; *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997); *Grice v. PNC Mortgage Corp. of America*, 1998 WL 350581, at *2 n.1 (D. Md. May 21, 1998); *In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494, 496 (D. D.C. 1981); *In re Corrugated Container Antitrust Litig.*, 1979 WL 1637, at *1 (S.D. Tex. May 30, 1979).

Accordingly, given this bifurcated process, in considering whether to grant preliminary approval, the Court is *not* required at this point to make a final determination as to the adequacy of the settlement or to delve extensively into the merits of the settlement.  Both of these inquiries are reserved for the final approval stage of the class settlement approval process.  Nor will any class member's substantive rights be prejudiced by preliminary approval, since the proposed preliminary approval is solely to obtain authority for notifying the class of the terms of the settlement and to set the stage for the Fairness Hearing.  *See Armstrong v. Board of School Directors*, 616 F.2d 305, 314 (7th Cir. 1980); *Berry v. School Dist.*, 184 F.R.D. 93, 97 (W.D. Mich. 1998); *Alaniz v. California Processors, Inc.*, 73 F.R.D. 269, 273 (N.D. Cal. 1976); 2 *Newberg* § 11.25 at 11-36 - 11-37.  "If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies . . . and [the settlement] appears to fall within the range of possible

approval," the court should direct that notice issue and should schedule a final approval hearing. *See Manual for Complex Litigation (Third)* § 30.41 at 237. Thus, if a proposed settlement could possibly be approved and it appears to be the product of informed, arm's length negotiations, it should be approved for purposes of setting the Fairness Hearing and notifying the class. *In the Matter of Skinner Group, Inc.*, 206 B.R. at 261.

Courts generally follow a multi-pronged test to determine whether a proposed settlement falls within the range of possible approval and thus should be preliminarily approved. The leading case authority is the Third Circuit decision, *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liability Litig*, 55 F.3d 768 (3d Cir.), *cert. denied*, 516 U.S. 824 (1995). As articulated by the Third Circuit, a court will approve a class action settlement *preliminarily* if it appears capable of possible approval and finds that: (1) the negotiations leading to the proposed settlement occurred at arm's length; (2) there was sufficient discovery in the litigation for the plaintiffs to make an informed judgment on the merits of their claims; and (3) the proponents of the settlement are experienced in similar litigation. *Id.* at 785; *see* Newberg, *supra,* § 11.41 at 11-91; *see also Linney*, 151 F.3d at 1238; *Hanlon*, 150 F.3d at 1026-28; *Armstrong v. Board of School Directors*, 616 F.2d 305, 314 (7th Cir. 1980); *Berry v. School Dist.*, 184 F.R.D. 93, 97 (W.D. Mich. 1998); *Livingston v. Toyota Motor Sales USA Inc.*, No. C-94-1377 MHP, 1995 U.S. Dist. LEXIS 21757 (N.D. Cal. May 30, 1995).

The proposed Settlement easily satisfies this test.

## A.     The Proposed Settlement Is Substantial And Capable Of Approval

The proposed $72.5 million settlement is substantial in both absolute terms and in light of the circumstances of this litigation. The Settlement represents a substantial portion of class-wide damages, especially given the risks inherent in taking such a complex action to trial. Moreover, none of the proposed $72.5 million in cash payments to the Class will be required to be shared with, for

BERGER SINGERMAN
attorneys at law
*Boca Raton   Fort Lauderdale   Miami   Tallahassee*
200 South Biscayne Boulevard  Suite 1000  Miami, Florida 33131-5308  Telephone 305·755·9500  Facsimile 305·714·4340

instance, any of the direct purchaser plaintiffs that have brought their own separate actions, who combined, account for roughly one-third of the direct purchases of Hytrin during the Class Period. Further, the settlement payments are all in cash.

Moreover, the plan for allocating the Settlement proceeds on a fair and equitable *pro rata* basis to Class members (the full plan will be filed along with the Final Settlement Approval papers and is summarized here and in the proposed Class Notice). In the event the proposed Settlement is approved by the Court and becomes final, the Settlement Fund, net of attorneys' fees, incentive awards, costs and expenses as approved by the Court, will be distributed to eligible members of the Class in accordance with a plan of allocation that will be presented to for approval by the Court at the final Fairness Hearing. The plan of allocation will be based upon proofs of claim to be filed by Class members at a later time,[5] and will be based upon calculations of "overcharge" damages Class members allegedly suffered.[6] More specifically, the Settlement Fund, net of attorneys' fees, Plaintiff incentive awards, costs and expenses as approved by the Court, will be allocated to class members based upon a plan of allocation that will generally provide the Class member with a *pro rata* share of the actual overcharges that it allegedly incurred as a result of the alleged unlawful conduct.[7]

---

[5]Class members may be required as a condition of participation in the recovery to present evidence of their purchases of brand-name Hytrin and generic terazosin hydrochloride during certain time periods, for example, the period March 31, 1998 to June 30, 2001.

[6]Plaintiffs claimed that their damages and those of the Class members are measured by an "overcharge," *i.e.*, the amount by which class members overpaid for terazosin hydrochloride as a result of the Defendants' conduct, which allegedly caused a delay of the entry into the market of less expensive generic versions of terazosin hydrochloride, resulting in an alleged delay in the price benefits resulting from generic competition. Plaintiffs' damages claims are based on the proposition that if generic entry had occurred earlier, Class members would have realized significant cost savings by: (1) substituting purchases of the more expensive branded Hytrin with less expensive generic versions of terazosin hydrochloride at an earlier time; (2) purchasing generic versions of terazosin hydrochloride at lower prices at an earlier time; and/or (3) for those units of Hytrin that class members would have continued to buy after generic entry, obtaining the benefits of lower brand-name Hytrin prices at an earlier time, or to the extent applicable, additional discounts or rebates on Hytrin, at an earlier time.

[7]The overcharges incurred by individual Class members will be calculated by evaluating the following: (1) the quantity of generic terazosin hydrochloride that each Class member purchased from any source from August 13, 1999

The above showing is clearly more than sufficient to "establish an initial presumption of fairness" of the proposed consideration of the settlement. *GM Pick-Up Truck*, 55 F.3d at 785.

**B.     The Proposed Settlement Was The Product Of Good Faith, Extensive Arm's-Length Negotiations**

The Settlement resulted from extensive arm's-length negotiations undertaken in good faith between Class Counsel and Defendants. The settlement negotiations spanned several years, occurred with the active assistance of a nationally renown and widely respected mediator of complex antitrust disputes, Professor Eric Green, and actively involved Class Counsel, and counsel for Defendants. The parties were in an excellent position to scrutinize the strengths and weaknesses of the pending claims, including direct consideration of, among other issues, causation and damages, since pretrial preparation was nearly complete and the Court had decided all of the pending dispositive and *Daubert* motions. The parties engaged in vigorous and sharp bargaining over the merits and the value of Plaintiffs' claims, and the merits of available defenses. Because of the extensive, arm's-length bargaining involved, there is no issue or even a suggestion of any collusive aspects to the proposed settlement.

---

through June 30, 2001 as a substitute for buying brand-name Hytrin from Abbott, multiplied by the average differential in price between the brand and generic forms of terazosin hydrochloride (*i.e.*, the price savings due to the ability to substitute with cheaper generics); (2) the quantity of generic terazosin hydrochloride that each Class member purchased from October 1, 1999 (the date Plaintiffs believe that a second generic competitor would have come to market in the absence of Defendants' conduct) through June 30, 2001, multiplied by the price differential between the actual price paid for the generic and the price that would have been paid had there been no alleged delay in generic entry; and/or (3) the combined savings from lower prices for Hytrin and, where applicable, certain discounts and rebates Abbott allegedly implemented with respect to brand-name Hytrin purchased directly from Abbott subsequent to generic entry (August 13, 1999). Class members who purchased Hytrin only during an early part of the class period, from March 31, 1998 through September 30, 1998, and who did not subsequently purchase any Hytrin or generic terazosin during the class period, will receive nominal damages of a few pennies per capsule, in recognition of the evidence developed in the litigation regarding the likelihood that absent its agreement with Abbott, Geneva actually would have launched its competing generic product before October 1, 1998.

BERGER SINGERMAN    *Boca Raton    Fort Lauderdale    Miami    Tallahassee*
attorneys at law

200 South Biscayne Boulevard  Suite 1000  Miami, Florida 33131-5308  Telephone 305·755·9500  Facsimile 305·714·4340

**C.**     **There Was More Than Sufficient Discovery And Investigation**

Extensive discovery was conducted in this case.  Plaintiffs have taken dozens of depositions, including those of several current and former executives and employees of Abbott, Geneva, Zenith, and many non-parties.  Plaintiffs also scoured  hundreds of  thousands of pages of documents produced in discovery by Abbott, Geneva, Zenith, and non-parties.  Sherman Act Class Plaintiffs answered extensive interrogatories and collected and produced voluminous records, and many members of the proposed Class produced voluminous amounts of data and documents.  Both Class Representatives and some of the parties' experts have been extensively deposed.  In sum, the facts concerning Defendants' potential liability are well-developed and well-understood by Class Counsel.

**D.**     **The Proponents Of The Settlement Are Highly Experienced In Antitrust Litigation**

The proposed Class has been represented by lawyers who have extensive antitrust class action experience.  Co-Lead Counsel and the firms comprising the Executive Committee (as well as the other firms representing Sherman Act Class Plaintiffs in this case) are on the forefront of antitrust litigation and complex litigation generally, as well as litigation pertaining to the pharmaceutical industry specifically.  Thus, counsel are well versed in both prosecution and settlement of this type of litigation.

Accordingly, counsel's recommendations are entitled to great weight, especially in light of the involvement of Professor Green in settling this matter.  Indeed, courts have repeatedly and explicitly deferred to the judgment of experienced counsel who have conducted arm's-length negotiations in approving proposed class settlements.  *See, e.g., Blank v. Talley Industries, Inc.*, 64 F.R.D. 125, 132 (S.D. N.Y. 1974) (a factor "entitled to substantial weight is that the settlement bears the imprimatur of seasoned and experienced counsel"); *Fisher Brothers v. Phelps Dodge Industries*

BERGER SINGERMAN
attorneys at law
*Boca Raton   Fort Lauderdale   Miami   Tallahassee*
200 South Biscayne Boulevard  Suite 1000  Miami, Florida 33131-5308  Telephone 305·755·9500  Facsimile 305·714·4340

*Inc.*, 604 F. Supp. 446, 452 (E.D. Pa. 1985) ("the professional judgment of counsel involved in the litigation is entitled to significant weight"); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659, 667 (D. Minn. 1974) ("[t]he recommendation of experienced antitrust counsel is entitled to great weight").[8]   The presumption in favor of such settlements reflects courts' understanding that vigorous expert negotiation protects against collusion and advances the fairness interests of Rule 23(e).

> **E.** **Initial Reaction Of Class Members Was Fully Supportive Of The Settlement**

Although formal notice has not yet been sent, counsel for Sherman Act Class Plaintiffs have been in contact with the representative Plaintiffs and certain members of the proposed Class specifically to describe the Settlement.  The named Plaintiffs strongly support the Settlement as a fair, reasonable, and adequate resolution, as have several of the most significant members of the proposed Class, and no member of the proposed Class has voiced an objection to date.  Furthermore, each Class member will have an opportunity to make any objections to the settlement prior to or at the final approval hearing, and/or to opt out of the settlement class.

Accordingly, based on the above factors, this Court should grant preliminary approval of the proposed settlement.

## II.   THE COURT SHOULD CERTIFY THE PROPOSED SHERMAN ACT CLASS IN LIGHT OF THE PROPOSED SETTLEMENT

### *Background*

Plaintiffs Valley Drug and Louisiana Wholesale purchased Hytrin directly from Abbott during the period of time the Agreements at issue were in effect.  The Plaintiffs characterize the

---

[8] *See also Stewart v. Rubin*, 948 F. Supp. 1077, 1099 (D. D.C. 1996), *aff'd*, 124 F.3d 1309 (D.C. Cir. 1997); *In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 424-425 (S.D. Tex. 1999); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 312-13 (N.D. Ga. 1993); *Manual* § 30.42, at 240; 2 *Newberg on Class Actions* § 11.41 at 11-88, 11-91.

Defendants agreements as an illegal "market-allocation," which allegedly caused class members to be overcharged by: "(i) keeping interchangeable, but less expensive, generic versions of Hytrin off the market; and (2) causing direct purchasers to lose discounts on Hytrin that they might have received if the settlement agreements had not shielded Abbott from generic competition." *Valley Drug*, 350 F.3d at 1186.

### September 20, 2001 Order Certifying Sherman Act Class

On November 30, 1999, Valley Drug and Louisiana Wholesale moved to certify a class of entities who directly purchased terazosin hydrochloride from Abbott during the period of March 31, 1998, through the time the allegedly-illegal Agreements terminated. On September 20, 2001, this Court granted that motion and certified a class defined in relevant part as: "all purchasers of both brand name and generic drugs who also purchased terazosin hydrochloride directly from Abbott at any time during the period commencing March 31, 1998, through the time when the illegal agreements terminated." *In re Terazosin Hydrochloride Antitrust Litig.*, 203 F.R.D. 551, 560-61 (S.D. Fla. 2001). The Court subsequently amended the definition of the direct purchaser class as, in relevant part: "all entities who purchased Hytrin, also known by the chemical name terazosin hydrochloride, directly from Abbott at any time during the period commencing March 31, 1998 through August 13, 1999." *Id.* at 561. On January 10, 2002, the Eleventh Circuit granted an interlocutory appeal of the certification decision under Federal Rule of Civil Procedure 23(f).

### Order of Remand

On November 14, 2003, the Eleventh Circuit vacated this Court's order granting class certification and remanded the case "to permit the parties to conduct further discovery on the important issue of whether some class members have separate, antagonistic interests from the named representatives." *Valley Drug*, 350 F.3d at 1187. The Eleventh Circuit authorized this Court to

permit "downstream discovery" to determine if a conflict existed between the named class representatives and other members of the class.

### Renewed Motion for Class Certification

On March 19, 2004, the Sherman Act Class Plaintiffs filed their renewed motion for class certification. In their Motion, Plaintiffs argued that: (1) the national wholesalers and other putative class members all significantly benefit when any generic equivalent drug enters the marketplace; (2) some of the putative class members affirmatively state through affidavits that they have no actual or potential conflict with the named class representatives, and to the extent there is a conflict, they waive the conflict; and (3) even assuming that some class members did benefit from delayed entry, the Eleventh Circuit instructed this Court to weigh any alleged net benefit from delayed entry against the potential recovery for overcharge damages for the class members. In short, Plaintiffs argued that the potential antitrust recovery eclipsed any alleged net benefit from delayed entry.

In addition, Plaintiffs argued that, as a matter of logic, there could not be any conflict because generic terazosin entered the market in 1999, and nothing about this litigation could change that fact. Hence, even if, hypothetically, a few class members may have benefited in the past from later generic entry, these same class members would nevertheless share the same interest – and have the same right under Supreme Court precedent – as other class members in recovering overcharge damages, if such damages were available. Put another way, nothing about this litigation could change the actual date of generic entry, and so all class members shared the same interest in recovering overcharge damages.

In response, Defendants asserted that class certification was inappropriate because: (1) Plaintiffs failed to ensure compliance with the downstream discovery Subpoenas to determine if any putative class members benefited from delayed entry of generic terazosin; (2) assuming that there

had been compliance with the Subpoenas and the necessary data had been gathered, the Plaintiffs had come forward with no formula or analysis to determine which entities may have benefited from delayed entry; (3) with the limited data the Subpoena targets did produce, at least one of the major national wholesalers purportedly received a net benefit from delayed entry; and (4) the Plaintiffs cannot waive potential or actual conflicts through Affidavits because the Court must conduct its own independent inquiry. Thus, Defendants argued, Plaintiffs had failed to satisfy the Eleventh Circuit's opinion regarding the adequacy of the class representatives' representation of the absent class members' interests and, therefore, class certification was inappropriate.

On June 23, 2004, this Court issued an Order denying Plaintiffs' renewed motion for class certification. *In re Terazosin Hydrochloride Antitrust Litig.*, 223 F.R.D. 666 (S.D. Fla. 2001). *Significantly, this Court found that there was no evidence of any existing conflict or antagonism and no "realistic possibility" for such a conflict or antagonism to develop. Id.* at 679. The Court nevertheless denied the motion, stating: "[e]xcept for the Plaintiffs' failure to comply with the Eleventh Circuit's directions to determine net 'winners' and 'losers' to ensure a homogenous class to avoid any potential unforeseen conflict, the Court does not find a realistic possibility for fundamental antagonism. The economic realities, factual circumstances, and superior efficiency seem to support the certification of the class, but the clear mandate of the Eleventh Circuit requires denial of the renewed motion." 223 F.R.D. at 680.

### *The Court May Revisit Its Class Certification Orders*

The Federal Rules of Civil Procedure, and the Advisory Committee notes thereto, expressly contemplate that a Court may revisit its rulings on class certification. Orders regarding class certification are not beyond reconsideration until final judgment. *See* Fed. R. Civ. P. 23(c)(1) ("[a]n order under Rule 23(c)(1) may be altered or amended before final judgment"); *id.* at Advisory

BERGER SINGERMAN
attorneys at law                          *Boca Raton   Fort Lauderdale   Miami   Tallahassee*

200 South Biscayne Boulevard  Suite 1000  Miami, Florida 33131-5308  Telephone 305·755·9500  Facsimile 305·714·4340

Committee Note (advising that "[a] court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met. The provision [Fed. R. Civ. P. 23(c)(1)] that permits alteration or amendment of an order granting or denying class certification is amended to set the cut-off point at final judgment rather than 'a decision on the merits'").

The Eleventh Circuit has also affirmed a district court's ability to revisit its class certification orders under Rule 23(c). In *Prado-Steiman v. Bush*, 221 F.3d 1266, 1273-74 (11th Cir. 2000), the Eleventh Circuit noted that "class certification decisions are so fluid and fact-sensitive that district courts should be encouraged rather than discouraged from reassessing whether the prerequisites of Rule 23 exist and whether a class action is the most efficacious way to resolve the dispute."

The leading treatise on class actions is in accord. "[T]he ability of a court to reconsider its initial class rulings . . . is a vital ingredient in the flexibility of courts to realize the full potential benefits flowing from the judicious use of the class action device." 3 H. Newberg and A. Conte, *Newberg on Class Actions* § 7:47, at 159 (4th ed. 2002).

Therefore, it is entirely appropriate for this Court to revisit the issue of class certification in light of the proposed settlement between the parties. The settlement completely moots the one factor upon which the Court based its decision not to recertify the Class, namely the possibility of *future*, but currently "unforeseen" potential conflicts.

### The Court Should Certify the Class

The proposed Settlement contemplates the certification of the Class defined above. For purposes of class certification, the court should not engage in a determination of the merits. *See e.g.*, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974) (determination of class certification should not become a trial on the merits); *In re Fine Paper Antitrust Litig.*, 82 F.R.D. 143, 149 (E.D. Pa. 1979). A proposed class at the time of settlement alleviates the need for the Court to inquire into

the issue of whether the case, if tried, would present intractable management problems. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The proposed class must still meet the other requirements of Rule 23. *Id.* The fact of the proposed settlement is, however, a relevant factor to be considered in assessing the Rule 23 requirements for class certification. *Id.* ("[s]ettlement is relevant to class certification"). The proposed Class satisfies each requirement of Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation), as well as the requirements of Rule 23(b)(3).

A.     **The Requirements of Rule 23(a) Are Satisfied**

In its Order Denying Sherman Act Class Plaintiffs Renewed Motion for Class Certification, this Court found that all elements of Fed. R. Civ. P. 23 were satisfied except Rule 23(a)(4):

> The Eleventh Circuit's Opinion and the parties' briefs on Remand focus exclusively on the adequacy of representation requirement of Rule 23(a)(4). Therefore, the Court's ruling addresses solely this prong of Rule 23, and its conclusions on the remaining Rule 23 elements set forth in *In re Terazosin Hydrochloride Antitrust Litigation*, 203 F.R.D. 551 (S.D. Fla. 2001) remain standing.

*In re Terazosin Antitrust Litig.*, 223 F.R.D. 666, 673 n.11 (S.D. Fla. 2004) ("*Valley Drug II*").

Therefore, in light of the Court's previous ruling, Plaintiffs shall simply refer to this Court's prior decision in *In re Terzsosin Hydrochloride Antitrust Litigation*, 203 F.R.D. 551 (S.D. Fla. 2001) ("*Valley Drug I*") to analyze the all elements of Rule 23 except Rule 23(a)(4).

1.     **Numerosity**

This Court previously found this element satisfied. *Valley Drug I*, 203 F.R.D. at 553. The proposed Class differs slightly from that proposed in Sherman Act Class Plaintiffs' initial motion for class certification, but the change adds a few class members, so the numerosity requirement remains satisfied.

H8053-2
BERGER SINGERMAN
attorneys at law
*Boca Raton   Fort Lauderdale   Miami   Tallahassee*
200 South Biscayne Boulevard  Suite 1000  Miami, Florida 33131-5308  Telephone 305·755·9500  Facsimile 305·714·4340

### 2.   **Commonality**

In *Valley Drug I* this court ruled that Fed. Rule Civ. P. 23(a)(2) was satisfied. *Valley Drug I*,

203 F.R.D. at 554.

### 3.   **Typicality**

In *Valley Drug I* this Court found that:

> In the case at hand all proposed class members are pursuing the same
> legal remedy based on the same conduct–the defendants' agreements
> or acts to forestall competition in the domestic market for terazosin
> hydrochloride drugs. Where[] the plaintiffs seek to prove the
> defendants "committed the same unlawful acts in the same method
> against an entire class" the typicality requirement is satisfied.

*Valley Drug I*, 203 F.R.D. at 554 (quoting *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

### 4.   **Adequacy of Representation**

The final prerequisite for class certification under Federal Rule 23(a) is that the

"representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P.

23(a)(4). Rule 23(a)(4) requires that the representative party in a class action "must adequately

protect the interests of those he purports to represent." *Valley Drug*, 350 F.3d at 1189 (citing

*Phillips v. Klassen*, 502 F.2d 362, 365 (D.C. Cir. 1974)). This requirement applies to both the

named Plaintiffs and to Class Counsel. *See London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1253

(11th Cir. 2003) (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997)).

Because this Court has observed the prosecution of this case over the course of more than

four years it should be satisfied that Class Counsel meet the adequacy requirement.

The remaining issue is whether the class representatives adequately protect the interests of

those they purport to represent. The sole issue that precluded a finding of adequate representation in

the Court's June 23, 2004 Order was the "potential" for future "unforeseen conflicts" or antagonism

BERGER SINGERMAN          *Boca Raton   Fort Lauderdale   Miami   Tallahassee*
          attorneys at law

200 South Biscayne Boulevard  Suite 1000  Miami, Florida 33131-5308  Telephone 305·755·9500  Facsimile 305·714·4340

between net "winners" and "losers" among members of the class. As previously noted, the Court found no evidence of any actual, existing disagreement or conflict, nor did it even find that a realistic possibility of fundamental antagonism existed. 223 F.R.D. at 678-80. Moreover, no putative class member in this action has opposed the class, no member has articulated any possibility for conflict or antagonism, and the class members constituting over 90% of the alleged overcharge damages affirmatively stated in affidavits that they want to be part of the class. 223 F.R.D. at 677. Defendants have been unable to show any disagreement or conflict that would sacrifice the interests of some class members for those of others, and Defendants have not identified any harm to any putative class member that would, or could, result from pursuing this lawsuit. *Id.* at 679-80. To establish a fundamental conflict, there must be more than speculation. *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir. 1981).

The current status of the litigation -- *i.e.*, the impossibility of any currently unforeseen conflict arising, given the proposed settlement of the parties' dispute -- does not implicate the issue of whether the class members were net "winners" or net "losers" under the allegedly-unlawful Agreement, because all class members will receive a similar or equal benefit from the settlement relative to their respective purchases of Hytrin and generic versions of Hytrin during the class period.

The Settlement (if approved) puts an end to the litigation and eliminates even the possibility that any "potential unforeseen conflict" could arise in the future in connection with the prosecution of this litigation. The only remaining issue in controversy in this action is whether the proposed Settlement is fair, reasonable, adequate, and in the best interests of the members of the class. Therefore, any potential unforeseen antagonism that may have existed at the time of the June 23, 2004 Opinion in connection with the future litigation of this action does not exist any more in light of the proposed Settlement of this action. The remaining issues in this action pertain solely to the

1180512

BERGER SINGERMAN
attorneys at law

*Boca Raton   Fort Lauderdale   Miami   Tallahassee*

200 South Biscayne Boulevard  Suite 1000  Miami, Florida 33131-5308  Telephone 305-755-9500  Facsimile 305-714-4340

fairness of the Settlement, and therefore there is no longer any potential unforeseen antagonism in the prosecution of the litigation. For these reasons, Louisiana Wholesale and Valley Drug should be found to be adequate representatives of the proposed class, and Rule 23(a)(4) should be found to be satisfied.[9]

### B.    The Requirements of Rule 23(b)(3) Are Satisfied

In *Valley Drug I*, this Court found that "Plaintiffs' proposed class action provide[d] a superior mechanism for adjudicating integral common questions of fact and law." *Valley Drug I*, 203 F.R.D. at 555. The Court "scrutiniz[ed] the evidence the plaintiffs propose[d] to use in proving their claims without delving into the merits of those claims, . . . [and was] satisfied that plaintiffs have met [Rule 23(b)(3)]."

### C.    Class Counsel Should Be Reappointed

Pursuant to Rule 23(g), the Court should appoint as Class Counsel the same attorneys it appointed previously. *See In re Terazosin Hydrochloride Antitrust Litig.*, 203 F.R.D. 551 (S.D. Fla. 2001). The identity of those attorneys is contained in ¶ 2 of this Court's Second Amended Case Management Order, dated August 25, 2000: the firms of Garwin, Gerstein & Fisher, LLP; Boies, Schiller & Flexner, LLP; Berger & Montague, P.C.; and The Calvin Law Firm, P.C. It should be without dispute that the work counsel has done in identifying, investigating, and prosecuting the claims in this action, counsel's experience, counsel's knowledge of the case and applicable law, and

---

[9] *See Eastland v. Tennessee Valley Authority*, 704 F.2d 613, 618 (11th Cir. 1983) ("The determination that a party would adequately protect the interests of a class is factual and depends on the circumstances of each case"). An analysis of adequacy of representation depends upon the factual circumstances, including the purpose of the class. *See Eastland*, 704 F.2d at 618; *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 110 (2d Cir. 2005) (stating that consideration of adequacy of representation in the settlement context is an "examination of the interests of the settling plaintiffs and of the Settlement's effect on those who would be bound by it").

180513-2
BERGER SINGERMAN
attorneys at law
Boca Raton   Fort Lauderdale   Miami   Tallahassee

200 South Biscayne Boulevard  Suite 1000  Miami, Florida 33131-5308  Telephone 305-755-9500  Facsimile 305-714-4340

the resources counsel have already committed to representing the proposed Sherman Act Class warrant such appointment. *See* Fed. R. Civ. P. 23(g)(1)(C).

## III.   THE COURT SHOULD APPROVE THE PROPOSED FORM AND MANNER OF CLASS NOTICE

Rule 23(e) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(1)(B). The purpose of the notice is to "afford members of the class due process which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters v. National Railroad Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974)). *See Gottlieb v. Wiles*, 11 F.3d 1004, 1012-13 (10th Cir. 1993) (notice must fairly inform class members of the settlement and their options). The proposed Class Notice clearly meets this standard.

Annexed to the Settlement Agreement as Exhibit "2," is a proposed form of Class Notice. Sherman Act Class Plaintiffs propose to mail the Class Notice to each entity that purchased Hytrin directly from Abbott at any time during the period March 31, 1998, through and including June 30, 2001, at its last known address (for whom such address is known).[10] Given that Abbott has produced its computerized Hytrin sales database in this case covering the entire proposed Class Period (October 1, 1998 through June 30, 2001), which identifies customers and addresses, and given Plaintiffs' experience in communicating with the members of the proposed Class (having sent class

---

[10]The Sherman Act Class Plaintiffs respectfully request that the Court approve the continued use of Heffler Radetich & Saitta, L.L.P., 1515 Market Street, Suite 1700, Philadelphia, PA 19102, as the Claims Administrator. The responsibilities of the Claims Administrator shall include disseminating the Notice to the Class; accepting and maintaining documents sent from Class members, including opt-out forms, claim forms, and other documents relating to claims administration; and administering claims for allocating damages to Class members. An appropriate provision has been included in the proposed Order to effectuate same.

notices twice before in this case), Plaintiffs are highly confident that the direct mail method will be sufficient to reach all members of the Proposed Class.

Accordingly, the form and manner of notice Plaintiffs have proposed will satisfy both the notice requirements of Rule 23(e), and constitutional due process requirements which must be met in order to bind each member of the class (who does not opt out). *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950); *Twigg v. Sears Roebuck & Co.*, 153 F.3d 1222,1226 (11th Cir. 1998).

In addition, the contents of the notice satisfy the requirements of Rule 23(c)(2)(B). The proposed notice provides a description of the nature of the action, the definition of the class certified, the class claims, the procedural status of the litigation, a description of the proposed Settlement, a summary of the plan of allocation, and advises class members of their rights under Rule 23(b)(3), including the right to be heard as to the reasonableness and fairness of the Settlement and to opt-out of the class, and the binding effect of a final class judgment. The notice also sets forth the total amount of money Defendants have agreed to pay to the class of direct purchasers. Finally, it outlines the process by which the proposed Settlement, counsel's request for fees and reimbursement of expenses,[11] and the proposed incentive awards of $75,000 combined for the Representative Plaintiffs will approved by the Court,[12] and explains the consequences of inclusion and exclusion from the Class.

---

[11]Sherman Act Class Counsel will, on or before April 8, 2005, submit an application for expenses and costs accrued in the litigation to be reimbursed out of the Settlement proceeds to the extent those costs and expenses are not fully satisfied by the Zenith Settlement Fund, as well as an application for attorneys' fees (not to exceed 33 1/3% of the proceeds of the Settlement before deducting costs and expenses, including interest).

[12]Courts routinely grant incentive awards to class representatives. *See, e.g.*, *In Re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997) ("Courts routinely approve incentive awards to compensate the name plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."). *See also In re Domestic Air Transportation Antitrust Litig.*, 148 F.R.D. 297, 357 (N.D. Ga. 1993)("The Court finds that

BERGER SINGERMAN            *Boca Raton   Fort Lauderdale   Miami   Tallahassee*
        attorneys at law

200 South Biscayne Boulevard  Suite 1000  Miami, Florida 33131-5308  Telephone 305-755-9500  Facsimile 305-714-4340

Under the circumstances, the Class Notice fairly describes the proposed settlement and its legal significance as well as that of the proposed class action, thereby satisfying the notice requirements of Rule 23(e) and 23(c)(2). *See, e.g., Twigg,* 153 F.3d at 1227 ("[The notice] must also contain an adequate description of the proceedings written in objective, neutral terms, that, in so far as possible, may be understood by the average absentee class member") (quoting *In re Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088 (5th Cir. 1977)); *Bennett v. Behring Corp.,* 96 F.R.D. 343, 353 (S.D. Fla. 1982), *aff'd,* 737 F.2d 982 (11th Cir. 1984) ("It is not the function of the settlement notice to fully inform the class of all the details of the settlement, but merely to put class members on notice of the general parameters of the settlement and to inform them of where information as to specifics may be obtained").

## IV.   **OTHER SCHEDULING MATTERS**

Moreover, and as set forth in the accompanying Motion, the Sherman Act Class Plaintiffs propose the following schedule for completing the approval process:

(a)   Deadline for disseminating Class Notice by first class United States mail: March 1, 2005;

(b)   Deadline for opting out of the proposed Class: March 31, 2005 (date of *receipt* of notice of opt-out by Claims Administrator);

(c)   Deadline for Sherman Act Class Plaintiffs to file their application for attorneys' fees and costs, specifying and documenting the total amount of costs and expenses to be

---

incentive awards are appropriate to recognize the efforts of the representative plaintiffs to obtain recovery for the class."); *In re Lease Oil Antitrust Litig.,* 186 F.R.D. 403, 449 (S.D. Tex. 1999) (recognizing that class representatives were entitled to additional compensation for their time and effort); *In re Plastic Tableware Antitrust Litig.* 1995 WL 723175 *2 (E.D. Pa. Dec. 4, 1998) ("Payments to class representatives may be considered a form of restitutionary relief within the discretion of the trial court. . . . They may also be treated as a reward for public service and for the conferring of a benefit on the entire class."); *In re Residential Doors Antitrust Litig.* 1998 WL 151804 * 8 (E.D. Pa. April 2, 1998) ("Moreover, the Court will grant each named class representative an incentive award in the amount of $10,000.").

BERGER SINGERMAN
attorneys at law
Boca Raton   Fort Lauderdale   Miami   Tallahassee

200 South Biscayne Boulevard   Suite 1000   Miami, Florida 33131-5308   Telephone 305·755·9500   Facsimile 305·714·4340

reimbursed, and the total amount of attorneys' fees sought (not to exceed 33 1/3 % of the settlement proceeds, plus interest) from the Settlement Fund: April 5, 2005;

(d) Deadline for Sherman Act Class Plaintiffs to file their application for incentive awards for each Representative Plaintiff: April 5, 2005;

(e) Deadline for Sherman Act Class Plaintiffs to file their plan of allocation, and motion for final approval with supporting brief: April 5, 2005;

(f) Deadline for filing objections to the proposed settlement: April 8, 2005, with copies received by Class Counsel by April 8, 2005;

(f) Final Fairness Hearing: April 15, 2005.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant its Motion and enter the proposed form of Order.

Respectfully submitted,

BERGER SINGERMAN
350 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, FL 33301
Phone: (954) 525-9900
Fax: (954) 523-2872

By: _____
    Mitchell W. Berger, Florida Bar No. 311340
    mberger@bergersingerman.com
    René D. Harrod, Florida Bar No. 627666
    rharrod@bergersingerman.com

**Executed with the Consent of:**

Bruce E. Gerstein, Esq.
Barry Taus, Esq.
Co-Lead Counsel
Garwin Gerstein & Fisher, LLP
1501 Broadway
New York, New York 10036
Telephone: (212) 398-0055
Facsimile: (212) 764-6620
E-Mail: btaus@garwingerstein.com

Richard B. Drubel, Esq.
Co-Lead Counsel
Boies, Schiller & Flexner LLP
26 South Main Street
Hanover, New Hampshire 03755
Telephone: (603) 643-9090
Facsimile: (603) 643-9010
E-mail: rdrubel@boies-schiller.com

Daniel Berger, Esq.
David Sorensen, Esq.
Eric Cramer, Esq.
Executive Committee
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, Pennsylvania 19103-6365
Telephone: (215) 875-3000
Facsimile: (215) 875-4671
E-mail: danberger@bm.net

Aubrey Calvin, Esq.
Executive Committee
Neils Esperson Building
Suite 2300
808 Travis Street
P.O. Box 61586
Houston, TX 77002-1586
Telephone: (713) 224-5771
Facsimile: (713) 225-0038
E-mail: acalvin@crvlaw.com

J. Gregory Odom, Esq.
Stuart Des Roches, Esq.
Odom & Des Roches, LLP
Suite 2020, Poydras Center
650 Poydras Street
New Orleans, LA 70130
Tel: (504) 522-0077
Fax: (504) 522-0078
E-mail: Stuart@ordlaw.com

David P. Smith, Esq.
Percy, Smith & Foote LLP
P.O. Box 1632
720 Murray Street
Alexandria, Louisiana 71309-1632
Tel: (318) 445-4480
Fax: (318) 487-1741
E-mail: DPSmith@PSFG-law.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished via U.S. Mail and Electronic Mail to all Counsel of Record on the _2/_ day of _Fecruary_, 2005.

By:_____
René D. Harrod, Esquire
Florida Bar No. 627666

BERGER SINGERMAN
attorneys at law          *Boca Raton   Fort Lauderdale   Miami   Tallahassee*

200 South Biscayne Boulevard   Suite 1000   Miami, Florida 33131-5308   Telephone 305·755·9500   Facsimile 305·714·4340