UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 99-MDL-1317-SEITZ/KLEIN

IN RE: TERAZOSIN HYDROCHLORIDE
ANTITRUST LITIGATION

THIS DOCUMENT RELATES TO:

*United Wisconsin Services, Inc., et al. v. Abbott
Laboratories*, N.D. Ill. C.A. No. 99-C-7410(JBZ)

*Grosskruege, et al. v. Abbott Laboratories, et al.*, N.D. Ill.
C.A. No. 99C-7883(JBZ)

*Reid, et al. v. Abbott Laboratories, et al.*. D.D.C.
C.A. No. 00-323

*Scafani v. Abbott Laboratories, et al.*, N.D. Cal.
C.A. No. 00-00508-SBA

*Mednick v. Abbott Laboratories, et al.*, No. 2:00-3468

*O'Neal v. Abbott Laboratories, et al.*. No. 00-J-1504-S

*Grund v. Abbott Laboratories, et al.*, No. _____

*Blue Cross and Blue Shield of Alabama, Inc. v. Abbott
Laboratories, et al.*, No. 00-1303-Civ.-Lenard

*Bernstein v. Abbott Laboratories*, E.D. Mich.
C.A. No. 2:00-CV-72974

*Blue Cross and Blue Shield of Michigan v. Abbott
Laboratories, et al.*, No. 5:01-CV-95

*State of Florida, et al. v. Abbott Laboratories, et al.*,
S.D. Fla. No. 01-4006-Civ-Gold

NIGHT BOX
FILED

MAR 03 2005

CLARENCE MADDOX
CLERK USDC/SDFL/MIA

## INDIRECT PURCHASER PLAINTIFF CLASSES' AND PLAINTIFF STATES' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, CERTIFICATION OF THE PROPOSED TENNESSEE INDIRECT PURCHASER SETTLEMENT CLASS FOR PURPOSES OF SETTLEMENT AND REVISING END DATE IN DEFINITION OF PREVIOUSLY CERTIFIED CLASSES AND APPROVAL OF THE FORM AND MANNER OF NOTICE TO THE TPP AND CONSUMER MEMBERS OF THE IPP CLASSES



The Indirect Purchaser Plaintiff Classes (the "IPP Classes")[1] and the States of Florida, Kansas, and Colorado (the "Plaintiff States"), as defined in the Settlement Agreement (collectively, the "Plaintiffs"), respectfully move the Court for an order, attached as Exhibit 2 hereto, (1) preliminarily approving a settlement between the Plaintiffs and Defendants Abbott Laboratories ("Abbott") and Geneva Pharmaceuticals, Inc. (now known as Sandoz, Inc.) ("Geneva"), dated March 3, 2005, and attached hereto as Exhibit 1; (2) certifying the proposed Tennessee Indirect Purchaser Class for purposes of settlement and extending the end date of the previously certified classes to March 7, 2005, (3) approving and ordering the implementation of the Notice Plan, Attachment C to the Settlement Agreement, which includes the Consumer Notice of Settlement (including Consumer Claim Form) (Exhibit 3 hereto), the Consumer Summary Notice of Settlement (Exhibit 4 hereto), the TPP Notice of Settlement (including TPP Notice of Exclusion and Claim Form) (Exhibit 5 hereto), and the TPP Summary Notice of Settlement (Exhibit 6 hereto); and (3) approving and ordering the implementation of the Consumer Distribution Plan (Exhibit 7 hereto), the TPP Distribution Plan (Exhibit 8 hereto), and the Government Compensation Plan (Exhibit 9 hereto), in accordance with the Settlement Agreement. In support of the Motion, Plaintiffs respectfully show the Court as follows:

1.     The Plaintiffs and the Defendants have entered into a Settlement Agreement (the "Proposed Settlement," attached hereto as Exhibit 1), subject to Rule 23(e) of the Federal Rules of Civil Procedure and Court approval, whereby, in exchange for a total cash payment of $30,700,000, $18,420,000 from Abbott and $12,280,000 from Geneva, the Plaintiffs release all Claims that were or could have been asserted against the Defendants in the Complaints in MDL 1317, and the Defendants have agreed to dismiss their Rule 23(f) appeal now pending in the

---

[1] All capitalized terms have the meanings agreed to in the Settlement Agreement unless otherwise specified herein.

Eleventh Circuit Court of Appeals of the IPP Classes' Certification Order.  For settlement purposes only, the parties have agreed, subject to approval by the Court, that the class period certified by the Court on April 8, 2004, be extended to run from October 15, 1995, to the date of preliminary approval of the Proposed Settlement, which is currently anticipated to be March 7, 2005.

2.      The proposed Tennessee Indirect Purchaser Class should be certified in light of settlement and the end date for the previously certified classes should be extended to March 7, 2005. In support of this motion, Plaintiffs submit the Declaration of Geoffrey M. Horn (Exhibit 7 hereto) and a memorandum of law being filed contemporaneously herewith.

3.      The Proposed Settlement was achieved as a result of vigorous arm's-length negotiations between counsel for the Plaintiffs and counsel for the Defendants, with the assistance of a highly experienced mediator.

4.      The Proposed Settlement will confer substantial benefits on the IPP Classes and the Plaintiff States, including: (1) a substantial financial recovery, and (2) the elimination of litigation risks against the Defendants.  The Proposed Settlement is well within the range of possible approval by the Court.

5.      Preliminary approval is the first step of a two-step process for approval of proposed class action settlements under Rule 23 of the Federal Rules of Civil Procedure.  In the first step, the Court determines whether the Proposed Settlement falls within the range of possible approval. *See Manual for Complex Litigation, Third* (1995), §30.41.  In the second step, after notice of the Proposed Settlement to the Class and an opportunity for Class members to object or otherwise be heard, the Court will determine whether to grant final approval of the Proposed Settlement as fair and reasonable under Rule 23.

6.    The Proposed Settlement satisfies all of the factors required for preliminary approval under Rule 23, in that it falls within the range of possible approval, and thus the Settlement's terms should be provided to the IPP Classes as requested by this Motion.

7.    Plaintiffs request that this Court appoint Complete Claims Solution, Inc. ("CCS") as the Settlement Administrator.  CCS has administered numerous similar class settlements, including the previous settlement in this action with Defendant Ivax Pharmaceuticals, Inc. CCS's duties shall be those specified in the Settlement Agreement and related documents.

8.    Plaintiffs request that the Court enter an order approving the Consumer Distribution Plan, TPP Distribution Plan, and Government Compensation Plan, attached hereto as Exhibits 7, 8, and 9, respectively, which set forth the allocation payment of the Settlement Funds in this case.

9.    Plaintiffs request that the Court enter an Order directing that the Notice Plan (Attachment C to the Settlement Agreement) be implemented for TPP members of the IPP Classes by direct mailing of the TPP Notice of Settlement (including the Notice of Exclusion and Claim Form, Exhibit 5 hereto) to TPPs in the Settlement Administrator's database.  The Notice Plan will notify all reasonably ascertainable TPP members of the IPP Classes of their rights with respect to the Proposed Settlement and comply with the requirements of due process.

10.    Plaintiffs request that the Court enter an Order directing that the Notice Plan be further  implemented for TPP members of the IPP Classes by publication of the TPP Summary Notice of Settlement (Exhibit 6 hereto), as set forth in the Notice Plan, by the Settlement Administrator.

11.    Plaintiffs request that the Court enter an Order directing that the Notice Plan be implemented for Consumer members of the IPP Classes by direct mailing of the Consumer

Notice of Settlement (including the Consumer Claim Form) (Exhibit 3 hereto) to all Consumers identifiable in the Settlement Administrator's database from the Ivax Settlement Agreement. The Notice Plan will notify all reasonably ascertainable potential Consumer members of the IPP Classes, and all potential Consumer members of the IPP Classes who request a copy of the Consumer Notice, of their rights with respect to the Proposed Settlement and comply with the requirements of due process.

12. Plaintiffs request that the Court enter an Order directing that the Notice Plan be implemented by publication of the Consumer Summary Notice of Settlement (Exhibit 4 hereto), as set forth in the Notice Plan, by the Settlement Administrator.

13. Plaintiffs seek the Court's approval for the following proposed schedule for proceedings on the Proposed Settlement:

> (a) Notice of Settlement mailed to TPP members of the IPP Classes starting March 10, 2005 and completed by March 11, 2005;
>
> (b) Summary Notice of Settlement to TPP members of the IPP Classes to be published on March 11, 2005;
>
> (c) TPP members of the IPP Classes submit any Notices of Exclusion for receipt on or before April 11, 2005;
>
> (d) TPP members of the IPP Classes to submit any objections or notices of intent to appear at the Final Fairness Hearing on or before April 11, 2005;
>
> (e) Notice Plan for Consumer members of the IPP Classes to be implemented beginning March 11, 2005, and completed by May 15, 2005;
>
> (f) Consumer members of the IPP Classes to submit any Notices of Exclusion and objections on or before June 15, 2005;

     (g)    Plaintiffs' Memorandum in Support of Final Approval of the Settlement, the State Plaintiffs' Motion for Attorneys Fees and Costs, and any IPPs' application for attorneys' fees, expenses, and incentive awards to be filed on or before June 20, 2005;

     (h)    Hearing before the Court in final approval of the Settlement on June 27, 2005, subject to the Court's convenience; and

     (i)    Claim Forms Submitted by TPPs and Consumers to the Settlement Administrator to be postmarked no later than July 15, 2005.

14.    IPPs and Defendants have agreed that Defendants may terminate this settlement under certain circumstances related to requests for exclusion by members of the IPP classes. The terms are set forth in Rider A to the Settlement Agreement, which the Parties request be filed under seal. Knowledge of the terms of Rider A is not necessary for any member of the IPP classes to consider options available to it.

15.    Submitted contemporaneously herewith is the Plaintiffs' memorandum of law supporting this Motion.

16.    A proposed Order is attached as Exhibit 2 hereto.

WHEREFORE, Plaintiffs respectfully move the Court to enter an Order:

A    Granting preliminary approval of the Settlement with the Defendants in the form of the Proposed Order attached hereto as Exhibit 2;

B    Certifying a Tennessee Indirect Purchaser Class for purposes of settlement and extending the end date of the previously certified classes through and including March 7, 2005;

C    Approving the Notice Plan for TPP members of the IPP Classes (Attachment C to the Settlement Agreement), and ordering the mailing of the TPP Notice of Settlement (including

the Notice of Exclusion and Claim Forms) (Exhibit 5 hereto) and the publication of the TPP

Summary Notice of Settlement (Exhibit 6 hereto) as provided therein;

      D      Approving the Notice Plan for Consumer members of the IPP Classes

(Attachment C to the Settlement Agreement) and ordering the mailing of the Consumer Notice of

Settlement (including the Consumer Claim Form) (Exhibit 3 hereto) and the publication of the

Consumer Summary Notice of Settlement (Exhibit 4 hereto) as provided therein;

      E      Approving the Consumer Distribution, TPP Distribution, and that portion of the

Government Compensation Plan, allocating amounts specified for the Designated Governmental

Entities and civil penalties to Colorado; attached hereto as Exhibits 7, 8, and 9;

      F      Approving the appointment of CCS as the Settlement Administrator;

      G      Approving the schedule as set forth above;

      H      Approving the filing of Rider A to the Settlement Agreement under seal until

thirty (30) days after the Effective Date; and

      H.      Pending the effective date of the Settlement Agreement, enjoining all members of

the IPP Classes from instituting, commencing or prosecuting any action against the Defendants

based upon or relating to the claims released as set forth in the Settlement Agreement.

      Respectfully submitted this 3rd day of March, 2005.

                    **ROBERT C. GILBERT, P.A.**
                    220 Alhambra Circle
                    Coral Gables, FL 33134
                    Tel.:   (305) 529-9100
                    Fax:   (305) 529-1612

              By:   *Robert C. Gilbert by Richard Cohen*
                    Robert C. Gilbert   *w/ permission*
                    Florida Bar No. 561861

**LOWEY DANNENBERG BEMPORAD
    & SELINGER, P.C.**
Stephen Lowey
Richard W. Cohen
Geoffrey M. Horn
The Gateway, 11th Floor
One North Lexington Avenue
White Plains, NY 10601-1714
Tel:    (914) 997-0500
Fax:    (914) 997-0035

**WALLACE, JORDAN, RATLIFF &
    BRANDT, LLC.**
Kimberly R. West
Matthew D. Fridy
Post Office Box 530910
Birmingham, AL 35253
Tel:    (205) 874-0352
Fax:    (205) 871-7534


**COHEN, MILSTEIN, HAUSFELD &
    TOLL, P.L.L.C.**
Michael D. Hausfeld
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005-3964
Tel:    (202) 408-4600
Fax:    (202) 408-4699

*Co-Lead Counsel for Indirect Purchaser
    Plaintiff Classes*


**SLATE KENNEDY LLC**
Pamela B. Slate
2001 Park Place North
Suite 450
Birmingham, Alabama 35203
Tel: (205) 328-7700
Fax: (205) 328-7701

*Executive Committee for Indirect Purchaser
    Plaintiff Classes*

*STATE LIAISON COUNSEL*

**OFFICE OF THE ATTORNEY GENERAL, FLORIDA**

By: _____

Patricia Conners, Esq.
PL-01, The Capitol
Tallahassee, FL 32399
Tel:   850-414-3600
Fax:   850-488-9134

**OFFICE OF THE ATTORNEY GENERAL, KANSAS**

By: _____

Karl Hansen, Esq.
120 S.W. 10th Ave., 2nd Floor
Topeka, KS 66612-1597
Tel:   785-368-8447
Fax:   785-296-3131

**OFFICE OF THE ATTORNEY GENERAL, COLORADO**

By: _____

Devin Laiho, Esq.
1525 Sherman Street, 5th Floor
Denver, CO 80203
Tel:   303-866-4500
Fax:   303-866-5691

## CERTIFICATE OF SERVICE

I hereby certify that on this the 3rd day of March, 2005, a true and correct copy of the foregoing has been furnished by facsimile and electronic mail to the attorneys of record appearing on the attached MDL 1317 Service List.

**Of Counsel**

# Exhibit 1

## SETTLEMENT AGREEMENT BY AND AMONG PLAINTIFF STATES, INDIRECT PURCHASER PLAINTIFFS AND DEFENDANTS

This Settlement Agreement is made and entered into this 3rd day of March 2005 by and among the undersigned States, by and through their respective Attorneys General, (collectively, the "**Plaintiff States**"); the Indirect Purchaser Plaintiffs ("IPPs") (as defined in Section I below), on behalf of themselves and in their respective capacities as representatives of the IPP Classes (as defined in Section I below) (collectively with the Plaintiff States, "**Plaintiffs**"); and Abbott Laboratories and Geneva Pharmaceuticals, Inc. (now known as Sandoz Inc.) (collectively, "Defendants") by and through their undersigned counsel.

WHEREAS, beginning in 1999, certain Consumers and Third Party Payers (as defined below) filed lawsuits in various state and federal courts asserting claims under federal law and under the laws of Alabama, Arizona, California, the District of Columbia, Florida, Illinois, Kansas, Maine, Michigan, Minnesota, Mississippi, Nevada, New Mexico, New Jersey, New York, North Carolina, North Dakota, South Dakota, Tennessee, West Virginia and Wisconsin ("Relevant Jurisdictions"), alleging that Defendants monopolized, attempted to monopolize, conspired to monopolize, and entered into agreements that unreasonably restrained trade in the United States market for the prescription drug Hytrin® and its generic bioequivalents. Plaintiffs alleged in these actions that Defendants' conduct violated antitrust, unfair competition and/or consumer protection statutes and the common law. Beginning in 2000, the Judicial Panel on Multidistrict Litigation transferred many of these actions to the United States District Court for the Southern District of Florida for centralized pretrial proceedings under the caption *In Re Terazosin Hydrochloride Antitrust Litigation*, MDL No. 99-1317; and

1

WHEREAS, in 2002 the IPPs filed their "Fourth Amended Coordinated Class Action Complaints" as a single document (the "IPP Complaints") in the United States District Court for the Southern District of Florida, alleging that Defendants monopolized, attempted to monopolize, conspired to monopolize, and entered into an agreement that unreasonably restrained trade in the market for Hytrin and its generic bioequivalents in violation of the antitrust, unfair competition and/or consumer protection statutes and the common law of the Relevant Jurisdictions, seeking declaratory judgments, restitution for unjust enrichment, damages, and other equitable relief; and

WHEREAS, on September 27, 2001, the Plaintiff States filed a complaint against Defendants in the United States District Court for the Southern District of Florida on their own behalf, on behalf of certain state agencies, and through their statutory, equitable or common law authorities or as representatives of or *parens patriae* on behalf of natural person citizens of those states, alleging monopolization, attempted monopolization, and agreement in restraint of trade in the market for Hytrin and its generic bioequivalents, in violation of antitrust, unfair competition and/or consumer protection laws and seeking injunctive relief, civil penalties, damages, disgorgement, restitution and other equitable relief ("the Plaintiff States' Complaint"); and

WHEREAS, Plaintiffs have conducted extensive economic and factual investigation relating to the claims, underlying events, and transactions alleged in the Plaintiff States' Complaint and the IPP Complaints (collectively, the "Complaints"), in addition to conducting extensive legal research, and, as a result, the Plaintiffs are thoroughly familiar with the liability and damages aspects of the claims they have asserted in the Complaints; and

WHEREAS, following motion practice and pretrial preparation, class and merits discovery, the Court's April 8, 2004 Order granting class certification of 17 state classes of

2

1078629.5

Consumers and Third Party Payers (**"Class Certification Order"**), full submission of the parties' briefing of an interlocutory appeal of such Class Certification Order pursuant to Fed. R. Civ. P. 23(f), and trial preparation, extensive arm's-length negotiations have taken place between counsel for Plaintiffs and counsel for Defendants in reaching the terms of this Settlement Agreement with the assistance of a Court-appointed mediator; and

WHEREAS, Plaintiffs' counsel have concluded, after extensive discovery and investigation of the facts and after carefully considering the circumstances of this litigation, including the claims asserted in the Complaints and the possible legal and factual defenses thereto, that it would be in the best interests of the Plaintiffs and the members of the IPP Classes to enter into this Settlement Agreement to avoid the uncertainties of this particularly complex litigation and to assure a benefit to the members of the IPP Classes, and further, that Plaintiffs' counsel consider the settlement set forth herein to be fair, reasonable, and adequate and in the best interests of the Plaintiffs and the members of the IPP Classes; and

WHEREAS, Defendants deny each and every one of Plaintiffs' allegations of unlawful and inequitable conduct and Plaintiffs' entitlement to damages, restitution or any other legal or equitable relief in connection with Plaintiffs' claims arising therefrom and have asserted a number of defenses to Plaintiffs' claims which Defendants believe to be meritorious; and

WHEREAS, Defendants, while continuing to deny the allegations, any violation of law or wrongdoing, and any liability with respect to any and all claims asserted in the Complaints, have concluded that they will enter into this Settlement Agreement to avoid the further expense, inconvenience, and burden of this protracted litigation, and the distraction and diversion of their personnel and resources, and thereby to resolve this controversy; and

3

WHEREAS, those whom the undersigned represent have each determined it to be in their respective best interests to resolve this dispute and to enter into this Settlement Agreement;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the Parties agree as follows:

## I.  DEFINITIONS

All terms defined in the preamble to this Settlement Agreement shall be so defined when used anywhere in this Settlement Agreement.  Additionally, when capitalized in this Settlement Agreement:

A.    **"Aggregate Settlement Fund"** means the sum of Thirty Million Seven Hundred Thousand Dollars ($30,700,000.00), of which Abbott will pay Eighteen Million Four Hundred Twenty Thousand Dollars ($18,420,000.00) and Geneva will pay Twelve Million Two Hundred Eighty Thousand Dollars ($12,280,000.00).

B.    **"Consumer"** means a natural person.

C.    **"Consumer Notice of Settlement"** means the Court-approved consumer notice of settlement, including the **"Consumer Claim and Exclusion Form."**

D.    **"Consumer Opt-Out Deadline"** means the date set by the Court as the deadline for Consumer members of the IPP Classes to file Notices of Exclusion from the IPP Classes.

E.    **"Consumer Plaintiffs"** means Martin Bernstein, Lavera Grosskrueger, David Grund, William Mednick, Albert Meyer, Willie O'Neal, Victor Scafani.

F.    **"Consumer Settlement Fund"** means that portion of the Net Settlement Fund that will be set aside to pay any incentive awards to Consumer Plaintiffs, and the claims of Consumers who are members of the IPP Classes and who file timely and valid proofs of claim

4

and do not exclude themselves from the IPP Classes, as well as related notice and administrative costs.

      G.    **"Consumer Summary Notice of Settlement"** means the Court-approved consumer summary notice of settlement.

      H.    **"Court"** means the United States District Court for the Southern District of Florida.

      I.    **"Defendant"** means either Abbott Laboratories ("Abbott") or Geneva Pharmaceuticals, Inc. (now known as Sandoz, Inc.) ("Geneva"). **"Defendants"** means both Abbott and Geneva.

      J.    **"Designated Governmental Entities"** means the governmental entities listed in Attachment D annexed hereto.

      K.    **"Effective Date"** means the date on which all of the following conditions shall have been satisfied, at which time this Settlement Agreement will be deemed to have become **"Effective"**:

          1.    Entry by the Court of the Preliminary Approval Order;

          2.    Receipt by the Escrow Agent of the Aggregate Settlement Fund from Defendants pursuant to Section III.A. of this Settlement Agreement;

          3.    Expiration of the Opt-Out Deadlines;

          4.    Expiration of any time provided herein or in Rider A referenced in Section IV of this Settlement Agreement for Defendants to terminate the Settlement Agreement, without Defendants having exercised any such right;

5

5.     Final approval by the Court of this Settlement Agreement without any material change;

6.     Entry by the Court of the Final Judgment and Order; and

7.     The dismissal with prejudice of the complaint in the action entitled *Hopper v. Abbott Laboratories, et al.*, No. 01-CVS-2499 (N.C. Superior Court for County of Pitt);

8.     Either:

    a.     the expiration of the time to file a notice of appeal from either the entry by the Court of the Final Judgment and Order or the approval by the Court of the Settlement Agreement, without any such notice of appeal having been timely filed; or

    b.     if one or more notices of appeal are timely filed, dismissal of all such appeals or affirmance of the Final Judgment and Order in all material respects, subject to no further right of review; provided however that any reversal, vacatur or modification on appeal of the award or allocation of any amount of Plaintiffs' attorney's fees and expenses awarded by the Court from the Settlement Fund, or any amount of incentive payments to any Plaintiffs, or any determination by the Court to award less than the amount requested in attorneys' fees or costs to Plaintiffs' counsel or incentive payments to Plaintiffs, or any determination of the Court with respect to the allocation of any amounts of Plaintiffs' attorneys' fees and expenses, shall not prevent the Settlement Agreement from becoming

6

effective or give rise to any right of termination or otherwise serve as a

basis for termination of this Settlement Agreement; and

9. Dismissal of Defendants' Rule 23(f) appeal of the Class Certification

Order.

L. **"Escrow Agent"** means Citibank N.A. or such other escrow agent as agreed upon

the parties.

M. **"Escrow Agreement"** means the escrow agreement, pursuant to which the

Aggregate Settlement Fund shall be administered.

N. **"Final Judgment and Order"** means the Court's final, appealable order, without

any material change to the form of <u>Attachment B</u> annexed hereto.

O. **"Indirect Purchaser Plaintiffs"** or **"IPPs"** means all plaintiffs in the following

actions and complaints, all of which were coordinated in MDL No. 1317: *United Wisconsin*

*Services, Inc., et al. v. Abbott Laboratories*, N.D. Ill. C.A. No. 99-C-7410(JBZ); *Grosskrueger v.*

*Abbott Laboratories, et al.*, N.D. Ill. C.A. No. 99C-7883(JBZ); *Reid v. Abbott Laboratories, et*

*al.*, D.D.C. C.A. No. 00-323; *Scafani v. Abbott Laboratories, et al.*, N.D. Cal. C.A. No. 00-

00508-SBA; *Mednick v. Abbott Laboratories, et al.*, No. 2:00-3468; *O'Neal v. Abbott*

*Laboratories, et al.*, No. 00-J-1504-S; *Grund v. Abbott Laboratories, et al.*; *Blue Cross and Blue*

*Shield of Alabama, Inc. v. Abbott Laboratories, et al.*, No. 00-1303-Civ.-Lenard; *Bernstein v.*

*Abbott Laboratories*, E.D. Mich. C.A. No. 2:00-CV-72974; *O'Keefe v. Abbott Laboratories, et*

*al.; Blue Cross and Blue Shield of Michigan v. Abbott Laboratories, et al.*, No. 5:01-CV-95;

Coordinated Fourth Amended Class Action Complaints, MDL No. 1317, filed on or about Nov.

22, 2002.

7

P.    **"IPP Classes"** means:

> All persons and entities who or which have at any time from October 15, 1995 to the date of Preliminary Approval of this Settlement Agreement, paid all or part of the purchase price of Hytrin or its AB-rated generic bioequivalents other than for resale, in Alabama, California, Florida, Illinois, Kansas, Maine, Michigan, Minnesota, Mississippi, Nevada, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee West Virginia and Wisconsin, or via mail order for residents of such states. Excluded from the IPP Classes are the Defendants, their officers and directors, their direct and indirect parent and subsidiary corporations and their officers and directors; government entities; entities that purchased Hytrin and its generic bioequivalents for resale, to the extent of such purchases for resale; direct purchasers of Hytrin and its generic bioequivalents from Defendants, to the extent of such direct purchases; and indirect purchasers who suffered no economic injury as a result of Defendants' allegedly unlawful conduct.

Q.    **"IPPs' Co-Lead Counsel"** means Lowey, Dannenberg, Bemporad & Selinger, P.C.; Wallace Jordan Ratliff & Brandt; and Cohen Milstein Hausfeld & Toll.

R.    **"IPPs' Designated Counsel"** means Lowey Dannenberg Bemporad & Selinger, P.C.

S.    **"Legal Public Holiday"** means any day on which the offices of the Escrow Agent are closed for the transaction of public business or designated as a "legal holiday" pursuant to Fed. R. Civ. P. 6(a), as amended, or any successor to that rule.

T.    **"MDL No. 1317"** means the litigation captioned *In Re: Terazosin Hydrochloride Antitrust Litigation,* Master File No. 99-MDL-1317 (S.D. Fla.), and any and all related cases and actions consolidated or coordinated within that litigation for discovery or other purposes.

U.    **"Net Settlement Fund"** means the Aggregate Settlement Fund less: (1) the State Settlement Fund; (2) IPPs' attorneys' fees and expenses awarded by the Court; and (3) certain Escrow Agent fees associated with the Aggregate Settlement Fund.

8

1078629.5

V.    **"Notice Plan"** means the Court-approved process, a summary of which is annexed hereto as <u>Attachment C,</u> by which the Plaintiffs will publish the Consumer Summary Notice of Settlement and TPP Summary Notice of Settlement, mail the Consumer Notice of Settlement and TPP Notice of Settlement, and otherwise disseminate notice to the IPP Classes of this Settlement Agreement.

W.    **"Opt-Out Deadlines"** means both the Consumer Opt-Out Deadline and the Third Party Payer Opt-Out Deadline as defined below.

X.    **"Parties"** means the IPPs, the Plaintiff States and the Defendants; and **"Party"** means any of them individually.

Y.    **"Plaintiff States"** means the States of Colorado, Florida, and Kansas.

Z.    **"Preliminary Approval Order"** means the Court's order preliminarily approving this Settlement Agreement, adopted and entered without any material change to <u>Attachment A</u> annexed hereto.

AA.    **"Released Claims"** means all claims, demands, debts, obligations, damages, civil penalties, whenever and wherever incurred, liabilities of any nature whatsoever (including costs, expenses, penalties and attorneys' fees), actions, suits, proceedings, assertions, and causes of action (**"Claims"**), known or unknown, suspected or unsuspected, in law or in equity of any jurisdiction, including but not limited to Claims arising under any federal or state antitrust, unfair methods of competition, or consumer protection laws, under any state or federal deceptive practices acts, or under the common laws (including any theory of unjust enrichment) of any jurisdictions, whether accrued in whole or in part of any kind whatsoever, from the beginning of time through the date this Settlement Agreement is preliminarily approved by the Court, which

9

any Releasor had, has, or may have in the future, directly, representatively, derivatively, or in any other capacity against any Releasee (i) arising out of or concerning the allegations, or the facts and circumstances giving rise to the allegations in the Complaints or in any other complaint filed, consolidated or coordinated in MDL No. 1317, or (ii) otherwise relating to any alleged delay in marketing or selling of generic equivalents of Terazosin Products, regardless of whether such claim was raised in the Complaints. Released Claims shall not be construed to include: (1) claims arising solely from and asserting damages based solely on an alleged physical injury; or (2) claims that may be asserted by any Releasor relating to the "best price" or "average wholesale price" reporting practices or to health care or Medicaid fraud or abuse, except to the extent that such claims arise from the facts, matters, transactions, events, occurrences, acts, disclosures, statements, omissions, or failures to act set forth in the Complaints, or in any other complaint filed in any action that has been filed, consolidated or coordinated in MDL No. 1317.

BB.     **"Releasees"** means the Defendants and their respective past, present and future directors, officers, employees, agents, attorneys, shareholders, affiliates, divisions, agents, representatives, parents, subsidiaries, general or limited partners, insurers, and the predecessors, heirs, executors, administrators, successors, and assigns of each of the foregoing.

CC.     **"Releasors"** means:

      1.      The Plaintiff States, on behalf of themselves and, including without limitation:

            a.      Departments, bureaus, and agencies of Plaintiff States as actual or alleged purchasers or reimbursers;

10

        b.      The Plaintiff States' quasi-sovereign interests in fair competition and the health of their citizenry, and/or in the Plaintiff States' sovereign capacities;

        c.      Designated Governmental Entities; and

        d.      Plaintiff States either in their *parens patriae* or functionally equivalent capacity, on behalf of natural persons who reside in their respective states, or as class representatives or in a functionally equivalent capacity, on behalf of natural persons who reside in their respective states, or as both;

2. The IPPs and members of the IPP Classes, whether or not they object to the Settlement Agreement and whether or not they make a claim upon or participate in any Settlement Fund (including both TPPs and Consumers, whether IPPs or not); and

3. The respective past, present and future directors, officers, insurers, employees, shareholders, agents, attorneys, trustees, associates, general or limited partners, affiliates, divisions, agents, representatives, predecessors, parents, subsidiaries, agencies, departments, institutions, successors and assigns, of each of the Releasors listed in sub-paragraphs 1 and 2, except that Releasors shall not include any person or entity that validly opts out of the IPP Classes.

DD.   **"Settlement Administrator"** means Complete Claim Solutions, Inc. of West Palm Beach, Florida, which has administered numerous similar class settlements, which

11

administered the previous settlement in this action with Defendant Ivax Pharmaceuticals, Inc., and whose duties shall be to (1) after the Court enters the Final Judgment and Order, review, process, and approve the timely filed proofs of claim of Consumers and Third Party Payers, (2) after the Effective Date, direct the Escrow Agent to pay those claims which are approved *pro rata* to Consumers and Third Party Payers entitled to participate in the Consumer Settlement Fund and the Third Party Payer Settlement Fund, (3) after the Court enters the Preliminary Approval Order, administer the Notice Plan with respect to the IPP Classes, (4) provide to IPPs' Co-Lead Counsel and Defendants, within 48 hours of receipt, but in no event later than 10:00 a.m., Eastern time on April 12, 2005, copies of any requests by TPP members of the IPP Classes to be excluded from the IPP Classes, and (5) provide to IPPs' Co-Lead Counsel and Defendants, within 48 hours of receipt, but in no event later than 4 p.m. Eastern time on the calendar day following the Consumer Opt-Out Deadline, copies of any requests by Consumer members of the IPP Classes to be excluded from the IPP Classes.

EE.   **"Settlement Fund"** means each of the Aggregate Settlement Fund, the Consumer Settlement Fund, the State Settlement Fund, and the Third Party Payer Settlement Fund; and **"Settlement Funds"** means all of these funds collectively.

FF.   **"State Liaison Counsel"** means the Attorney General of the State of Florida.

GG.   **"State Settlement Fund"** means that portion of the Aggregate Settlement Fund that will be set aside to reimburse, subject to Court approval, fees and costs of the Plaintiff States, the claims of the Plaintiff States, and other remedies as allowed by state law.  The amount set aside for the State Settlement Fund shall be $2,000,000.00 (Two Million), plus interest earned on that amount.

HH.    **"Terazosin Products"** means Hytrin® and/or its AB-rated equivalents, including without limitation generic versions of terazosin hydrochloride.

II.    **"Third Party Payer"** or **"TPP"** means any entity that is (1) a party to a contract, issuer of a policy or sponsor of a plan, and is also (2) at risk, pursuant to such contract, policy or plan, to provide prescription drug benefits, or to pay or reimburse all or part of the purchase price of Terazosin Products dispensed to Consumers covered by such contract, policy or plan.

JJ.    **"Third Party Payer Opt-Out Deadline"** or **"TPP Opt-Out Deadline"** means the date set by the Court as the deadline for Third Party Payer members of the IPP Classes to file Notices of Exclusion from the IPP Classes, which shall not be later than April 11, 2005.

KK.    **"Third Party Payer Settlement Fund"** or **"TPP Settlement Fund"** means that portion of the Net Settlement Fund that will be set aside to pay any incentive awards to TPP Plaintiffs, and the claims of TPP members of the IPP Classes which file timely and valid proofs of claim and do not exclude themselves from the IPP Classes, as well as related notice and administrative costs.

LL.    **"TPP Notice of Settlement"** means the Court-approved TPP notice of settlement, which includes the **"TPP Proof of Claim Form"** and **"TPP Notice of Exclusion Form."**

MM.    **"TPP Plaintiffs"** means Blue Cross and Blue Shield of Alabama, Blue Cross and Blue Shield of Michigan, and Crossroads Acquisition Corp. (f/k/a Cobalt Corporation).

NN.    **"TPP Summary Notice of Settlement"** means the Court-approved TPP summary notice of settlement.

13

## II.  RELEASES AND COVENANTS

A.    **Releases.**  Upon the Effective Date of this Settlement Agreement, the Releasors

shall and hereby do unconditionally, fully and finally release and discharge forever the Releasees

from the Released Claims and any liability arising therefrom.

B.    **Covenant Not to Sue.**  Each of the Releasors hereby covenants and agrees that

he, she or it shall not hereafter seek to establish liability or assert Released Claims, on behalf of

himself, herself, itself or any other person or entity, against any of the Releasees, in whole or in

part, for any of the Released Claims.

C.    **Additional Release.**

1.    Releasors shall also be deemed to have expressly waived, released and forever

discharged any and all provisions, rights and benefits that may be available under Section 1542

of the California Civil Code (**"Section 1542"**), which provides:

> **A general release does not extend to claims which the creditor
> does not know or suspect to exist in his or her favor at the time
> of executing the release, which if known by him or her must
> have materially affected his settlement with the debtor;**

or under  any law of any state or territory of the United States or other jurisdiction, or principle

of common law, which is similar, comparable or equivalent to Section 1542 (each a

**"Comparable Law"**).  Each Releasor may hereafter discover facts other than or different from

those which he, she or it knows or believes to be true, but each Releasor hereby expressly waives

and fully, finally and forever settles and releases, upon the Effective Date, any known or

unknown, suspected or unsuspected, contingent or non-contingent claim that would otherwise

fall within the definition of Released Claims, whether or not concealed or hidden, without regard

to the subsequent discovery or existence of such different or additional facts.  Each Releasor also

14

hereby expressly waives and fully, finally and forever settles and releases any and all claims it may have against any Released Party under § 17200, *et seq.*, of the California Business and Professions Code or any similar, comparable or equivalent provision of the law of any other state or territory of the United States or other jurisdiction, which claims are hereby expressly incorporated into the definition of Released Claims.

2.      IPP Plaintiffs' Co-Lead Counsel will ensure that each claim form contains a copy of the release set forth in this Section II, together with the applicable definitions, which shall be signed by each member of the IPP Classes or its authorized representative as a precondition to receiving any portion of the Settlement Fund.

D.      **Effect of Releases**.  This Settlement Agreement may be pleaded as a full and complete defense to any action that may be instituted, prosecuted, or attempted with respect to any of the Released Claims.  The Parties agree that for any such action, the Court or any court of competent jurisdiction may enter an injunction restraining prosecution of such proceeding.

### III.  SETTLEMENT PAYMENTS

A.      **Aggregate Settlement Fund; Payment Date**.  In full, complete and final settlement of the Complaints, within five (5) business days of the preliminary approval of this Settlement Agreement (and receipt of wire transfer instructions), Abbott will pay Eighteen Million Four Hundred Twenty Thousand Dollars ($18,420,000.00) and Geneva will pay Twelve Million Two Hundred Eighty Thousand Dollars ($12,280,000.00), into an escrow account specified by the Escrow Agent (the **"Escrow Account"**), to be distributed by the Escrow Agent as set forth in this Settlement Agreement.

B.      **Full Satisfaction**.  The Aggregate Settlement Fund is the total amount that Defendants will pay under this Settlement Agreement, or in connection with the Complaints, or

15

1078629.5

in connection with any Released Claim, including, without limitation, attorneys' fees and costs of the IPPs and the Plaintiff States, any Court-approved incentive awards to named Plaintiffs, and payment of any and all administrative and notice expenses associated with this litigation or settlement.

C.    **Attorneys' Fees and Expenses.**

1.    <u>IPPs</u>.  IPPs' Co-Lead Counsel, on behalf of all IPPs and counsel for IPPs, agree that any application to the Court for an award of attorneys' fees shall not exceed 30% of the Aggregate Settlement Fund less the State Settlement Fund, and that any application to the Court for reimbursement of their itemized out-of-pocket expenses not previously reimbursed shall not exceed Two Million Dollars ($2,000,000.00).

2.    <u>Plaintiff States</u>.  State Liaison Counsel, on behalf of all counsel for the Plaintiff States, has designated an amount not exceeding One Million Six Hundred Twenty-Five Thousand Dollars ($1,625,000.00), to be paid exclusively out of the State Settlement Fund to reimburse the Plaintiff States' attorneys' fees and expenses, subject to court approval.

3.    <u>Full Satisfaction of Claims for Attorneys' Fees</u>.  Neither IPPs, the Plaintiff States, members of the IPP Classes, any of their respective counsel, nor any other Releasor shall seek or demand payment of fees and/or costs beyond those provided for in Sections III.C.1 and III.C.2 herein, nor shall they seek payment of such fees and/or costs from any source other than the Aggregate Settlement Fund. Sections III.C.1 and III.C.2 herein specify all payments of attorneys' fees, costs and expenses contemplated by this Settlement Agreement. All such payments of attorney's fees, costs and expenses shall be subject to approval by the Court. The Parties expressly acknowledge that, regardless of whether and the extent to which the Court

16

awards attorney's fees, costs and expenses (and regardless of whether and the extent to which any such award is upheld on appeal), Released Claims include (but are not limited to) all claims for attorney's fees, costs and expenses, and there shall be no further claim for attorney's fees, costs or expenses.

D.     **Incentive Payments**.  IPPs' Co-Lead Counsel, on behalf of IPPs, may seek an award of incentive payments not to exceed Thirty Thousand Dollars ($30,000.00) in the aggregate, to be paid solely from the Consumer Settlement Fund, for Consumer Plaintiffs, and One Hundred Twenty Thousand Dollars ($120,000.00) in the aggregate, to be paid solely from the TPP Settlement Fund, for TPP Plaintiffs, to compensate IPPs for the time and expense they incurred pursuing these actions on behalf of all the IPP Classes. All incentive payments shall be subject to Court approval.  The Parties expressly acknowledge that, regardless of whether and the extent to which the Court awards incentive payments (and regardless of whether and the extent to which any such award is upheld on appeal), Released Claims include (but are not limited to) all claims for incentive payments, and there shall be no further claim for incentive payments.

E.     **Allocation of Net Settlement Fund**.  Plaintiffs represent that, following arm's-length negotiation between representatives of Consumers and representatives of TPPs, they have agreed among themselves to divide the Net Settlement Fund as follows.  Defendants shall have no liability of any kind with respect to such division of the Net Settlement Fund.

1.     Consumer Settlement Fund.  Of the Net Settlement Fund, 25% shall be allocated to the Consumer Settlement Fund to pay valid and timely claims of Consumer members of the IPP Classes, all costs associated with providing notice to Consumer class members and the

17

administration of the Consumer Settlement Fund, and any incentive payments awarded to the Consumer Plaintiffs.

2.   TPP Settlement Fund. Of the Net Settlement Fund, 75% shall be allocated to the TPP Settlement Fund to pay valid and timely claims of TPP members of the IPP Classes, all costs associated with providing notice to TPP class members and the administration of the TPP Settlement Fund, and any incentive payments awarded to the TPP Plaintiffs.

3.   Disposition of Surplus Funds in the Consumer Settlement Fund. If, after payment of (a) Court-approved costs of notice and administration, (b) any incentive payments awarded to Consumer Plaintiffs, and (c) 100% of valid and timely filed claims, monies remain in the Consumer Settlement Fund, any such remaining amount shall be paid to the TPP Settlement Fund, to the extent any valid and timely filed claims by TPP members of the IPP Classes remain unpaid.

4.   Disposition of Surplus Funds in the TPP Settlement Fund. If, after payment of (a) Court-approved costs of notice and administration, (b) any incentive payments awarded to TPP Plaintiffs, and (c) 100% of valid and timely filed claims, monies remain in the TPP Settlement Fund, any such remaining amount shall be paid to the Consumer Settlement Fund, to the extent any valid and timely filed claims by Consumer members of the IPP Classes remain unpaid.

5.   Disposition of Surplus Funds in the Net Settlement Fund. If, after payment of all items listed in III.E.3.(a)-(c) and III.E.4.(a)-(c), monies remain in either the Consumer Settlement Fund or the TPP Settlement Fund, the remaining amounts in either or both

18

Settlement Funds shall be distributed as ordered by the Court, except that it is understood that no such remaining amounts shall be returned to either Defendant or paid to Plaintiffs.

F.    **Allocation of IPPs' Attorneys' Fees and Expenses.**  IPPs' attorneys' fees and expenses awarded by the Court shall be allocated as IPPs' Co-Lead Counsel may agree or as approved by the Court.  Defendants shall have no liability of any kind with respect to the allocation or distribution of attorney's fees and expenses awarded by the Court.

## IV.  DEFENDANTS' TERMINATION OPTIONS

A.    In the event that the IPP Threshold Amounts (as that term is defined in Rider A to this Settlement Agreement, which is to be filed under seal) are exceeded, then Defendants may terminate this Settlement Agreement pursuant to the terms of Rider A.  To be timely, any requests for exclusion by TPP members of the IPP Classes must be received by the Settlement Administrator by the TPP Opt-Out Deadline, and any requests for exclusion by Consumer members of the IPP Classes must be postmarked by the Consumer Opt-Out Deadline.  The IPPs' Co-Lead Counsel shall provide, or ensure that, as set forth in Section I.DD(4)-(5) of this Settlement Agreement the Settlement Administrator provides, Defendants' counsel with any requests for exclusion within the time periods set forth in Section I.DD(4)-(5).

To terminate this Settlement Agreement on the basis that the Third Party Payer Threshold Amount (as that term is defined in Rider A) has been exceeded, Defendants shall provide written notice (which may be by facsimile or electronic mail) to IPPs' Co-Lead Counsel by 5:00 p.m. Pacific time on May 9, 2005.  To terminate this Settlement Agreement on the basis that the Consumer Threshold Amount (as that term is defined in Rider A) has been exceeded, Defendants shall provide written notice (which may be by facsimile or electronic mail) to IPPs' Co-Lead

19

Counsel on the date that is ten (10) business days following the Consumer Opt-Out Deadline, but not later than 5:00 p.m. Pacific time on the date that is five (5) business days prior to the hearing to determine the fairness and reasonableness of this Settlement Agreement.

B.      Defendants have entered into a settlement agreement with a class of direct purchasers of Hytrin, which agreement was preliminarily approved by the Court on February 24, 2005 (the "Direct Purchaser Settlement Agreement"). The Direct Purchaser Settlement Agreement would allow Defendants to withdraw in circumstances relating to, *inter alia*, requests for exclusion from members of the direct purchaser class. If Defendants' right to withdraw from the direct purchaser class settlement agreement is triggered by requests for exclusion from the direct purchaser class, Defendants may terminate this Settlement Agreement by providing written notice (which may be by facsimile or electronic mail) to IPPs' Co-Lead Counsel by 5:00 p.m. Pacific time on April 7, 2005. If the direct purchaser class settlement agreement is not finally approved by the Court, Defendants may terminate this Settlement Agreement by providing written notice (which may be by facsimile or electronic mail) to IPPs' Co-Lead Counsel by 5:00 p.m. Pacific time the date that is five (5) business days after the Court's final determination not to finally approve the direct purchaser class settlement agreement.

C.      Defendants anticipate entering into settlement agreements with respect to (1) the actions in MDL No. 1317 brought by CVS Meridian, Inc., Rite Aid Corp., Walgreen Co., Eckerd Corp., The Kroger Co. Albertson's, Inc., The Stop & Shop Supermarket Co., and Hy-Vee, Inc. (collectively, the "Direct Opt-Out Settlement"), and (2) the action under the caption *State of West Virginia, ex rel. Darrel v. McGraw, Jr. v. Abbott Labs.*, No. 01-C-180 (W. Va. Cir. Ct. Wyoming Co.) ("*West Virginia*"). Defendants will use their best efforts to enter into such settlement

20

agreements of these actions by March 15, 2005. Defendants may terminate this Settlement Agreement if Defendants do not enter into one or both of such settlement agreements by March 15, 2005. Defendants will promptly inform IPPs' Co-Lead Counsel if Defendants' right to terminate this Settlement Agreement has been so triggered. Defendants may terminate this Settlement Agreement on the basis just specified by providing written notice (which may be by facsimile or electronic mail) to IPPs' Co-Lead Counsel by 5:00 p.m. Pacific time on March 22, 2005. Defendants may also terminate this Settlement Agreement at any time prior to the fifth (5th) business day to the hearing to determine the fairness and reasonableness of the settlement (currently expected to occur on June 27, 2005), if the *West Virginia* court does not finally approve the settlement of that action, or if the Direct Opt-Out Settlement is terminated by Defendants in accordance with any termination right therein, by providing written notice (which may be by facsimile or electronic mail) to IPPs' Co-Lead Counsel by 5:00 p.m. Pacific time the date that is five (5) business days after, respectively, the *West Virginia* court's final determination not to approve that settlement or Defendants' termination of the Direct Opt-Out Settlement.

### V. CLASS CERTIFICATION, NOTICE AND SETTLEMENT HEARING

A. **Motion for Preliminary Approval**. On or about March 1, 2005, the Parties shall apply to the Court for preliminary approval of this Settlement Agreement and entry of the Preliminary Approval Order.

B. **Implementation of Notice Plans**. Within three (3) business days after entry of the Preliminary Approval Order, IPPs' Co-Lead Counsel shall, through the Settlement Administrator, effectuate the Notice Plan as to the mailing of the TPP Notice of Settlement and

21

the reserving of publication space in the publications listed in the Notice Plan for Consumer

Summary Notice of Settlement and TPP Summary Notice of Settlement, subject to availability of

Settlement Funds necessary for such purposes. All other provisions of the Notice Plan shall be

effectuated as soon as practicable thereafter, but not later than the deadlines contained in the

Notice Plan.

        C.     **Settlement Hearing**. At or before the time set by the Court for a hearing to

consider the fairness and reasonableness of this Settlement Agreement and the terms of

settlement embodied herein, Plaintiffs shall submit papers in support of the fairness and

reasonableness of this Settlement Agreement, and shall seek entry by the Court of the Final

Judgment and Order. Defendants in their discretion may also submit such papers, but are not

required to do so. Each Party shall have a reasonable opportunity to review and comment on the

other Parties' papers in advance of filing.

## VI. SETTLEMENT ADMINISTRATION

        A.     **Administration of Escrow Account.** The Escrow Account shall be administered

as specified in the Escrow Agreement.

        B.     **Court Jurisdiction Over Settlement Funds**. All funds held in the Aggregate

Settlement Fund, the Consumer Settlement Fund, the TPP Settlement Fund and the State

Settlement Fund shall be deemed to be *in custodia legis*, and shall remain subject to the

jurisdiction of the Court, until such Settlement Funds are fully distributed or returned to

Defendants pursuant to an Event of Termination, or until the Court orders otherwise.

        C.     **Tax Treatment of Settlement Funds.**

22

        1.      The Settlement Funds shall be treated as being at all times "qualified settlement funds" within the meaning of Treas. Reg. § 1.468B-1. The Parties shall timely make or cause the Escrow Agent to make such elections as necessary or advisable to carry out the provisions of this Section VI.D., including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1), back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulation.

        2.      For the purpose of Section 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent.

        3.      Whether or not final approval of this Settlement Agreement occurs and whether or not the Settlement Fund qualifies as a qualified settlement fund within the meaning of Treas. Reg. § 1.468B-1, all (a) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by a Settlement Fund, including any taxes or tax detriments that may be imposed upon Defendants with respect to any income earned by a Settlement Fund for any period during which such Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes (**"Taxes"**), and (b) expenses and costs incurred in connection with Taxes, the administration of such Settlement Fund or the operation and implementation of this Section VI.C. (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Section VI.C.) (**"Tax Expenses"**), shall be paid out of the affected Settlement Fund.

4.      Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the settlement and shall be timely paid by the Escrow Agent out of the appropriate Settlement Fund with respect to which such Taxes and/or Tax Expenses have accrued, without prior order from the Court.  The Escrow Agreement shall obligate the Escrow Agent (notwithstanding anything herein to the contrary) to withhold from distribution out of the appropriate Settlement Fund any funds necessary to pay such amounts including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(l)(2)).

5.      The Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Section VI.C.  The parties hereto shall not take a position, including a position in any filing or before any tax authority, that is inconsistent with such treatment.  For purposes of this Section VI.C., references to a Settlement Fund shall include such Settlement Fund and any earnings thereon.

6.      Nothing in this Section shall be construed to mean that there are any Taxes or Tax Expenses which will be incurred by the State Settlement Fund.

D.      **No Defendants' Liability for Settlement Funds**.  The Parties expressly agree that Defendants shall have no responsibility, obligation or liability whatsoever for any distributions, investments, administration or other oversight of the Settlement Funds or interest earned thereon, or any reporting requirements that may relate thereto.

## VII.  **SETTLEMENT DISBURSEMENTS**

24

A.   **Payments By the Escrow Agent**.  The Escrow Agent shall have the following responsibilities:

1.   Depositing and investing the Aggregate Settlement Fund into the Escrow Account; and

2.   Paying out of the Aggregate Settlement Fund, in accordance with Orders of the Court and on the time schedule specified in this Settlement Agreement:

a.   To the Settlement Administrator, actual costs reasonably incurred for the purpose of undertaking the functions described in Section I.DD(1)-(2), and (4)-(5), provided that such costs together with the costs specified in subparagraph (c) below shall not exceed in the aggregate Six Hundred Thousand Dollars ($650,000);

b.   To the Settlement Administrator, actual notice costs reasonably incurred for the purpose of providing the Consumer Summary Notice of Settlement, Consumer Notice of Settlement, TPP Summary Notice of Settlement, and TPP Notice of Settlement, and any other authorized notice to members of the IPP Classes in accordance with the Notice Plan, provided that such costs shall not exceed in the aggregate Five Hundred Thousand Dollars ($500,000);

c.   To the Settlement Administrator, the costs incurred in the administration of the TPP Settlement Fund and the Consumer Settlement Fund, provided that such costs together with the costs specified in subparagraph (a) above shall not exceed in the aggregate Six Hundred Thousand Dollars ($650,000);

d.   To the Escrow Agent, those fees or other payments payable to the Escrow Agent pursuant to the terms of the Escrow Agreement;

25

e.      To IPPs' counsel, as directed by IPPs' Designated Counsel, the amount of IPPs' attorneys' fees and expenses awarded by the Court;

f.      To any IPP entitled thereto, any incentive payment awarded by the Court;

g.      To Plaintiff States, the amount of the State Settlement Fund, pursuant to the direction of State Liaison Counsel; and

h.      To the members of the IPP Classes who or which file timely and valid proofs of claim, the approved amounts of such claims;

3.      Paying any Taxes or Tax Expenses (including reimbursing a Defendant for its payment of any Taxes or Tax Expenses); and

4.      Paying to the Defendants the Termination Refund as set forth in Section X.C.

B.      **Timing of Payments By the Escrow Agent.** Following the funding of the Escrow Account as set forth in Section III.A. of this Settlement Agreement, the Escrow Agent shall make the payments identified in Sections VII.A. and X of this Settlement Agreement at the following times:

1.      The payments identified in Section VII.A.2(a)-(c) of this Settlement Agreement, as such notice and administrative costs are actually incurred on the schedule specified in Section I.DD.

2.      In the event that Defendants shall become entitled to a Termination Refund (as described and defined in Sections VII.A.4 and X.B of this Settlement Agreement), the Escrow Agent shall pay that amount to Defendants at the time provided in Section X.B.

26

3.      After this Court's entry of the Preliminary Approval Order without material change, the payments identified in Section VII.A.2(d) of this Settlement Agreement, as such payments become payable pursuant to the terms of the Escrow Agreement.

4.      IPPs' attorneys' fees and expenses approved and awarded by the Court shall be paid by the Escrow Agent out of the amount remaining in the Aggregate Settlement Fund, following segregation of the State Settlement Fund, within five (5) business days after the Effective Date of the Settlement and the receipt by the Escrow Agent of joint written notice from the IPPs' Designated Counsel and the Defendants, acting through their respective counsel, advising the Escrow Agent that the Settlement Agreement has become Effective and directing the Escrow Agent to make these payments, which notice shall be promptly provided.  Before making payments of IPPs' attorneys' fees and expenses, the Escrow Agent must have received from IPPs' Designated Counsel written directions (accompanied by a copy of the Court's order awarding payment thereof) to pay the amounts ordered by the Court, to the extent, in the manner, and to the persons described in the Court's order, and/or as directed by IPPs' Designated Counsel in a manner not inconsistent with the Court's order.

5.      The payments identified in Sections VII.A.2(f), VII.A.2(g) and VII.A.2(h), within thirty (30) calendar days following the Effective Date of this Settlement Agreement and the receipt by the Escrow Agent of joint written notice from the Plaintiffs and the Defendants, acting through their respective counsel, advising the Escrow Agent that the Settlement Agreement has become Effective and directing the Escrow Agent to make these payments.

6.      The payments specified in Sections VII.A.3., as such amounts become due.

27

1078629.5

## VIII.  COOPERATION AND IMPLEMENTATION

A.    **Reasonable Best Efforts**.  Counsel for the Parties agree to recommend approval of this Settlement Agreement by the Court and to undertake their reasonable best efforts, including all steps and efforts detailed in this Settlement Agreement and any other steps and efforts that may be necessary or appropriate, by order of the Court or otherwise, to expeditiously carry out the terms of this Settlement Agreement.  The Parties shall have a reasonable opportunity to review any motion papers in advance of filing.

B.    **Stay of Appeal**.  The Defendants and IPPs agree to jointly notify the 11th Circuit Court of Appeals of this Settlement Agreement within five (5) business days of preliminary approval of this Settlement Agreement and request that such Court stay all further proceedings related to the pending Rule 23(f) appeal by Defendants of the Class Certification Order (the "Appeal") until further notice.  Within ten (10) business days following the date on which all events giving rise to the Effective Date except I.K.9 (concerning dismissal of the Appeal) have occurred, Defendants shall cause the Appeal to be dismissed.  If this Settlement Agreement is terminated for any reason contemplated in this Settlement Agreement, the Parties agree within ten (10) business days to jointly notify the 11th Circuit Court of Appeals of such termination and request that the Appeal be scheduled for the next available oral argument calendar.

## IX.  BENEFIT AND BINDING EFFECT

The terms of this Settlement Agreement shall be binding on, and shall inure to the benefit of, the Parties and their successors and assigns.  The Parties expressly disclaim any intention to create rights under this Settlement Agreement that may be enforced by any other person under any circumstances whatsoever, except as provided in this Settlement Agreement.

28

1078629.5

# X. **TERMINATION**

A.    **Events of Termination.**

    1.    Defendants shall have the right and the option in their sole discretion to terminate this Settlement Agreement as set forth in Section IV.

    2.    Either Defendants or Plaintiffs may unilaterally terminate this Settlement Agreement if any of the following conditions occur:

        a.    The Court's refusal to grant preliminary approval of this Settlement Agreement without any material change (it being agreed that the Court's continuance of the hearing on preliminary approval shall not be considered a refusal);

        b.    The Court's refusal to grant final approval of this Settlement Agreement without any material change;

        c.    The Court's refusal to issue the Final Judgment and Order without any material change; or

        d.    The reversal, vacatur, or material modification of the Final Judgment and Order on appeal; provided however that any reversal, vacatur or modification on appeal of any amount or allocation of attorney's fees and expenses awarded by the Court from the Settlement Fund, or any amount of incentive payments, or any determination by the Court to award less than the amounts requested for attorneys' fees, costs or incentive payments, shall not prevent the Effective Date from occurring or give rise to any right

29

1078629.5

of termination or otherwise serve as a basis for termination of this

Settlement Agreement.

B.     **Termination Refund.**  Within five (5) business days following the date on which

any Party provides written notice to both the Escrow Agent and all other Parties that said Party is

exercising his, her or its right of termination in accordance with Section X.A.1 or X.A.2, the

Escrow Agent shall repay to the Defendants, 60 percent to Abbott and 40 percent to Geneva, or

in such other proportion as Abbott and Geneva jointly instruct the Escrow Agent in writing, the

Aggregate Settlement Fund (including interest accrued thereon), less the sum of: (1) costs

actually incurred, and paid or due and payable, pursuant to Section VII.A.2(a)-(c), up to the

aggregate dollar limits set forth therein, plus (2) amounts paid, or due and payable, to the Escrow

Agent pursuant to the Escrow Agreement up to the date of the notice of termination, plus (3) any

accrued Taxes and Tax Expenses as defined in Section VI.C.3.  The amount so calculated is

referred to in this Settlement Agreement as the **"Termination Refund"**).

C.     **Effect of Exercise of Termination Rights on Litigation.**  Upon the timely and

valid exercise by any Party of the right to terminate this Settlement Agreement, this Settlement

Agreement (except provisions governing the Termination Refund and any other events to occur

upon termination) shall become null and void, shall have no further force and effect, and the

Plaintiff States and IPPs shall retain full rights to assert any and all Claims against Releasees,

and Releasees shall retain any and all defenses thereto.  All rights of the Parties shall be restored

to their status immediately prior to the execution of this Settlement Agreement.  These actions

shall thereupon revert to their respective procedural and substantive status prior to the date of

execution hereof and shall proceed as if this Settlement Agreement, and all other related orders

30

1078629.5

and papers, had not been executed. In such event, the Parties shall jointly request that any order contemplated hereby, which shall have been entered, be vacated.

## XI.  MISCELLANEOUS

A.     **Entire Agreement.** This Settlement Agreement, the attachments hereto, the documents referenced herein, and Rider A referenced in Section IV.A. of this Settlement Agreement (collectively, the **"Settlement Documents"**) contain the entire agreement and understanding of the Parties. There are no additional promises, understandings or terms of the Settlement Agreement other than those contained in the Settlement Documents. The Settlement Documents supersede and render of no effect all other oral or written communications concerning the subject matter hereof.

B.     **Modification; Waiver.** The terms or provisions of this Settlement Agreement may not be changed, waived, modified, cancelled or varied in any manner whatsoever unless in a writing duly signed by all Parties. Any failure by any Party to insist upon the strict performance by any other Party of any of the provisions of this Settlement Agreement shall not be deemed a waiver of any of the provisions hereof, and that Party, notwithstanding that failure, shall have the right thereafter to insist upon the strict performance of any and all of the provisions of this Settlement Agreement to be performed by the other Party.

C.     **Authority.** The undersigned counsel for each of the Parties hereby represents and warrants that he or she is authorized to enter into this Settlement Agreement on behalf of that Party. Each of the Plaintiffs represents and warrants that it has not assigned, and that it shall not assign any Released Claim or any right, title or interest in any Released Claim. State Liaison

31

Counsel represents and warrants that its signature on behalf of a Plaintiff State reflects the authority of State Liaison Counsel to bind such Plaintiff State.

D.     **No Party is the Drafter.** This Settlement Agreement is acknowledged to have been and shall be deemed to have been mutually prepared by the Parties hereto and shall not be construed against any of them solely by reason of authorship.

E.     **Execution in Counterparts.** This Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court. This Settlement Agreement may be validly executed and delivered by fax or other electronic transmission,.

F.     **Notice.** Without limitation on other methods of notice specified in this Settlement Agreement, any and all notices, requests, consents, directives, or communications by any Party intended for any other Party shall be deemed sufficient if made in a writing to be delivered personally, by express courier, or by postage prepaid mail, or by facsimile transmission or e-mail followed by postage prepaid mail, and addressed as follows:

To Plaintiff States:

Patricia Conners, Esq.
Office of the Attorney General, Florida
PL-01, The Capitol
Tallahassee, FL 32399
Tel.:    850-414-3600
Fax:    850-488-9134

Karl Hansen, Esq.
Office of the Attorney General, Kansas
120 S.W. 10th Ave., 2nd Floor
Topeka, KS 66612-1597
Tel.:    785-368-8447

32

Fax:    785-296-3131

- and -

Devin Laiho, Esq.
Office of the Attorney General, Colorado
1525 Sherman Street, 5th Floor
Denver, CO  80203
Tel.:    303-866-4500
Fax:    303-866-5691

To Indirect Purchaser Plaintiffs:

Richard W. Cohen, Esq. or Geoffrey M. Horn, Esq.
Lowey Dannenberg Bemporad & Selinger, P.C.
The Gateway, 11th Floor
One North Lexington Avenue
White Plains, NY  10601
Tel: 914-997-0500
Fax: 914-997-0035

Kimberly West, Esq.
Wallace Jordan Ratliff & Brandt, LLC
800 Shades Creek Parkway, Suite 400
Birmingham, AL  35209
Tel.:    205-870-0555
Fax:    205-871-7534

- and -

Michael Hausfeld, Esq. or Daniel Small, Esq.
Cohen Milstein Hausfeld & Toll
1100 New York Avenue N.W.
West Tower, Suite 500
Washington, DC  20005-3934
Tel.:    202-408-4614
Fax:    202-408-4699

To Abbott:

Jeffrey I. Weinberger, Esq. or Stuart N. Senator, Esq.
Munger, Tolles & Olson LLP
355 South Grand Avenue, 35th Floor

33

Los Angeles, CA 90071
Tel.:   213-683-9100
Fax:   213-683-5127

To Geneva:

Wayne A. Cross, Esq. or Robert A. Milne, Esq.
White & Case LLP
1155 Avenue of the Americas
New York, NY 10036-2787
Tel.:   212-819-8200
Fax:   212-354-8113

Any Party may, from time to time, change the address to which such notices, requests, consents,

directives, or communications are to be delivered, by giving the other Parties prior written notice

of the changed address, in the manner herein above provided, ten (10) calendar days before the

change is effective.

        G.    **Governing Law; Consent to Jurisdiction**. This Settlement Agreement,

including, but not limited to, the releases contained herein, shall be governed by, and construed

in accordance with, the laws of the State of Florida without regard to its conflict of laws

principles. The Parties to this Settlement Agreement agree that the Final Judgment and Order

shall provide that the Court shall retain jurisdiction to enforce all provisions and terms of this

Settlement Agreement. This Settlement Agreement shall be enforced in the United States

District Court for the Southern District of Florida, except that this Section XI.G shall not prohibit

(a) the assertion in the forum in which a claim is brought that the release herein is a defense, in

whole or in part, to such claim or, (b) in the event that such a defense is asserted in that forum,

the determination of its merits in that forum. The Parties, on behalf of themselves and the IPPs

additionally on behalf of the settling members of the IPP Classes, waive any objection that each

of them may now or hereafter have to the venue of any suit, action or proceeding to enforce this

34

Settlement Agreement and irrevocably consent to the jurisdiction of the Court and agree to accept and acknowledge service in any such suit, action or proceeding.

H. **No Admission**. Whether or not any termination right provided for herein is exercised by any Party, neither this Settlement Agreement, nor any action taken pursuant to it nor proceedings undertaken in accordance with the terms set forth herein shall be construed as or deemed to be evidence of or an admission or concession by Defendants as to the validity of any claim that has been or could have been asserted against them or as to any liability by them, which liability is hereby expressly denied and disclaimed by Defendants. Whether or not any termination right provided for herein is exercised by any Party, neither this Settlement Agreement, nor any of its provisions, nor any statement or document made or filed in connection herewith, shall be filed, offered, received in evidence or otherwise used in any action or proceeding or in any arbitration or other proceeding of any type, except in connection with the Parties' application for approval or enforcement of this Settlement Agreement and all proceedings incident thereto.

I. **Enforcement of Settlement Agreement.** The Parties agree that this Settlement Agreement may be pleaded as necessary for the purpose of enforcing the Settlement Agreement.

J. **Headings.** The headings used in this Settlement Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement in any manner.

K. **No Disparagement.** Until October 15, 2005, neither IPPs, IPPs' counsel or agents, Defendants, nor their counsel or agents shall make or cause to be made any public statement or comment regarding this Settlement Agreement or the settlement contemplated

1078629.5

hereby other than (1) press releases approved by all undersigned counsel, (2) straightforward statements (without elaboration) in substantially the form "the actions have settled," (3) neutral statements of the terms of the settlement, or (4) statements repeating or paraphrasing, in a non-misleading form, all or a portion of any Court-approved notice to the IPP Classes of the settlement; provided that each Defendant and each member of the IPP Classes shall be entitled to make such disclosures as it, in its discretion, shall determine are appropriate under the securities laws. This section does not apply to the Plaintiff States, their counsel, or agents or to any public statements or comments that either Defendant may make in response to a public statement or comment by one or more Plaintiff States.

L. **Use Of Work Product From This Litigation**.

1. Plaintiffs and their counsel agree not to, except by order of the Court:

   (a) take any action inconsistent with the provisions of the protective order(s) entered in MDL No. 1317;

   (b) share any of their work product from MDL No. 1317 with, or use any of their work product from MDL No. 1317 for the benefit of, any person or entity asserting or contemplating asserting claims relating to or arising out of any conduct challenged by any plaintiff in MDL No. 1317;

   (c) consent to any of their experts, advisors or consultants in MDL No. 1317 sharing work product from MDL No. 1317; or

   (d) consent to any of their experts or consultants in MDL No. 1317 working with or for the benefit of others (including counsel,

36

experts, advisors or consultants of others) that (i) are or have at any time been plaintiffs in MDL No. 1317 or (ii) are asserting or contemplating asserting claims relating to or arising out of any conduct challenged by any plaintiff in MDL No. 1317.

2.      Defendants and their counsel agree not, except by order of the Court,  to take any action or consent to any other person or entity taking any action inconsistent with the provisions of the protective order(s) entered in MDL No. 1317.

IN WITNESS WHEREOF, the Parties hereto through their fully authorized representatives have agreed to this Settlement Agreement, the attachments hereto, Rider A referenced in Section IV.A. of this Settlement Agreement, and the settlement embodied herein and therein, on the date first above herein written.

**IPP CLASSES**

LOWEY DANNENBERG
BEMPORAD & SELINGER, P.C.

By: _____

       Stephen Lowey, Esq.
       Richard W. Cohen, Esq.
       Geoffrey M. Horn, Esq.
       The Gateway, 11th Floor
       One North Lexington Avenue
       White Plains, NY 10601
       Tel:    914-997-0500
       Fax:    914-997-0035

**ABBOTT LABORATORIES**

MUNGER, TOLLES & OLSON LLP

By: _____

       Jeffrey I. Weinberger, Esq.
       Stuart N. Senator, Esq.
       355 South Grand Avenue, 35th Floor
       Los Angeles, CA 90071
       Tel:    213-683-9100
       Fax:    213-683-5127

       *Counsel for Defendant*
       *Abbott Laboratories*

37

1078629.5

**IPP CLASSES (CONT.)**

WALLACE JORDAN RATLIFF
& BRANDT, LLC

By: _____

Kimberly R. West, Esq.
800 Shades Creek Parkway
Suite 400
Birmingham, AL 35209
Tel:    205-870-0555
Fax:   205-871-7534


COHEN MILSTEIN HAUSFELD
& TOLL

By: _____

Michael Hausfeld, Esq.
Daniel Small, Esq.
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005-3934
Tel:    202-408-4614
Fax:   202-408-4699

*Indirect Purchaser Plaintiffs'*
*Co-Lead Counsel*


**GENEVA**
**PHARMACEUTICALS, INC.**

WHITE & CASE, LLP

By: _____

Wayne A. Cross, Esq.

1155 Avenue of the Americas
New York, New York 10036-2787
Tel:    212-819-8200
Fax:   212-354-8113

*Counsel for Defendant*
*Geneva Pharmaceuticals, Inc.*

1078629.5

Richard W. Cohen, Esq.
Geoffrey M. Horn, Esq.
The Gateway, 11th Floor
One North Lexington Avenue
White Plains, NY 10601
Tel:    914-997-0500
Fax:    914-997-0035

**IPP CLASSES (CONT.)**

**WALLACE JORDAN RATLIFF
& BRANDT, LLC**

By:    _____

Kimberly R. West, Esq.
800 Shades Creek Parkway
Suite 400
Birmingham, AL 35209
Tel:    205-870-0555
Fax:    205-871-7534

**COHEN MILSTEIN HAUSFELD
& TOLL**

By:    _____

Michael Hausfeld, Esq.
Daniel Small, Esq.
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005-3934
Tel:    202-408-4614
Fax:    202-408-4699

*Indirect Purchaser Plaintiffs'
Co-Lead Counsel*

Stuart N. Senator, Esq.
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071
Tel:    213-683-9100
Fax:    213-683-5127

*Counsel for Defendant
Abbott Laboratories*

**GENEVA
PHARMACEUTICALS, INC.**

**WHITE & CASE, LLP**

By:    _____

Wayne A. Cross, Esq.

1155 Avenue of the Americas
New York, New York 10036-2787
Tel:    212-819-8200
Fax:    212-354-8113

*Counsel for Defendant
Geneva Pharmaceuticals, Inc.*

38

**PLAINTIFF STATES**

OFFICE OF THE ATTORNEY
GENERAL, FLORIDA

By: _____

Patricia Conners, Esq.
PL-01, The Capitol
Tallahassee, FL 32399
Tel:    850-414-3600
Fax:   850-488-9134

OFFICE OF THE ATTORNEY
GENERAL, KANSAS

By: _____

Karl Hansen, Esq.
120 S.W. 10th Ave., 2nd Floor
Topeka, KS 66612-1597
Tel:    785-368-8447
Fax:   785-296-3131

OFFICE OF THE ATTORNEY
GENERAL, COLORADO

By: _____

Devin Laiho, Esq.
1525 Sherman Street, 5th Floor
Denver, CO 80203
Tel:    303-866-4500
Fax:   303-866-5691

39

# Attachment A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 99-MDL-1317-SEITZ/KLEIN

IN RE: TERAZOSIN HYDROCHLORIDE
ANTITRUST LITIGATION

THIS DOCUMENT RELATES TO:

*United Wisconsin Services, Inc., et al. v. Abbott
Laboratories*, N.D. Ill. C.A. No. 99-C-7410(JBZ)

*Grosskruege, et al. v. Abbott Laboratories, et al.*, N.D. Ill.
C.A. No. 99C-7883(JBZ)

*Reid, et al. v. Abbott Laboratories, et al.*, D.D.C.
C.A. No. 00-323

*Scafani v. Abbott Laboratories, et al.*, N.D. Cal.
C.A. No. 00-00508-SBA

*Mednick v. Abbott Laboratories, et al.*, No. 2:00-3468

*O'Neal v. Abbott Laboratories, et al.*, No. 00-J-1504-S

*Grund v. Abbott Laboratories, et al.*, No. _____

*Blue Cross and Blue Shield of Alabama, Inc. v. Abbott
Laboratories, et al.*, No. 00-1303-Civ.-Lenard

*Bernstein v. Abbott Laboratories*, E.D. Mich.
C.A. No. 2:00-CV-72974

*Blue Cross and Blue Shield of Michigan v. Abbott
Laboratories, et al.*, No. 5:01-CV-95

*State of Florida, et al. v. Abbott Laboratories, et al.*,
S.D. Fla. No. 01-4006-Civ-Gold

**[PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENT,
CERTIFYING A TENNESSEE INDIRECT PURCHASER SETTLEMENT CLASS FOR
PURPOSES OF SETTLEMENT AND REVISING END DATE IN DEFINITION OF
PREVIOUSLY-CERTIFIED CLASSES, AUTHORIZING NOTICE TO MEMBERS OF
THE IPP CLASSES, AND SETTING FAIRNESS HEARING AND OTHER DEADLINES**

Upon consideration of the Indirect Purchaser Plaintiff Classes' (the "IPP Classes") and

the States of Florida, Kansas, and Colorado's (the "Plaintiff States"), as defined in the Settlement

Agreement (collectively, the "Plaintiffs"), Motion for Preliminary Approval of Proposed

Settlement, Certification of the Proposed Tennessee Indirect Purchaser Settlement Class for Purposes of Settlement and Revising End Date in Definition of Previously Certified Classes and for Approval of the Form and Manner of Notice to TPP and Consumer Members of the IPP Classes, dated March 3, 2005 (the "Motion"), the attachments thereto and the submissions of the parties, and having held a hearing on March 7, 2005, to consider the Motion and proposed form of notice, and being satisfied that the Proposed Settlement Agreement meets the applicable criteria for preliminary approval, and that the proposed form of notice and the plan for dissemination of notice to the members of the IPP Classes satisfy all applicable requirements, it is hereby

**ORDERED** as follows:

1.     Indirect Purchaser Plaintiffs' proposed Tennessee Indirect Purchaser Class ("Tennessee Class") is certified for purposes of settlement. The Tennessee Class is defined as, "All persons and entities who or which have at any time from October 15, 1995 to March 7, 2005, paid all or part of the purchase price of Hytrin or its AB-rated generic bioequivalents other than for resale, in Tennessee or via mail for residents of Tennessee. Excluded from the Tennessee Class are the Defendants, their officers and directors, their direct and indirect parent and subsidiary corporations and their officers and directors; government entities; entities that purchased Hytrin and its generic bioequivalents for resale, to the extent of such purchases for resale; direct purchasers of Hytrin and its generic bioequivalents from Defendants, to the extent of such direct purchases; and indirect purchases who suffered no economic injury as a result of Defendants' allegedly unlawful conduct." In addition, the end date in the definitions of the IPP Classes certified on April 8, 2004 are extended to March 7, 2005. The IPP Classes certified on April 8, 2004 and the Tennessee Class are collectively the "IPP Classes."

2.　　　The Proposed Settlement between Plaintiffs and the Defendants (attached as Exhibit 1 to the Motion), establishes a settlement fund of $30,700,000. The Settlement Fund, less Court-approved expenses and fees, and other payments, will be distributed among IPP Class Members and the Plaintiff States pursuant to the terms of the Settlement Agreement. Reached as a result of arm's-length negotiations by counsel experienced in complex litigation, the Proposed Settlement between the Parties appears, upon preliminary review, to be within the range of reasonableness warranting providing notice to the IPP Classes and proceeding with a Fairness Hearing. In making this determination, the Court has considered the current posture of this litigation and the risks and benefits to the parties involved in both settlement of these claims and continuation of the litigation. Accordingly, the Court grants preliminary approval of the Settlement Agreement, and the Settlement will be submitted to the IPP Classes for their consideration and for a hearing in accord with F.R.C.P. 23(e).

3.　　　The Court approves the following schedule for proceedings on the Proposed Settlement:

(a)　　Notice of Settlement to be mailed to TPP members of the IPP Classes beginning March 10, 2005 and completed by March 11, 2005;

(b)　　Summary Notice of Settlement to TPP members of the IPP Classes to be published on or before March 11, 2005;

(c)　　TPP members of the IPP Classes to submit any Notices of Exclusion *for receipt* on or before April 11, 2005;

(d)　　TPP members of the IPP Classes to submit any objections or notices of intent to appear at the Final Fairness Hearing on or before April 11, 2005;

(e)     Notice Plan for Consumer members of the IPP Classes beginning March 11, 2005, and completed by May, 15, 2005;

(f)     Consumer members of the IPP Classes to submit any Notices of Exclusion, objections or notices of intent to appear at the Final Fairness Hearing on or before June 15, 2005;

(g)     Plaintiffs' Memorandum in Support of Final Approval of the Settlement, the Plaintiff States' motion for attorneys' fees and costs, and any IPPs' application for attorneys' fees, expenses, and incentive awards to be filed on or before June 20, 2005;

(h)     Hearing before the Court in final approval of the Settlement to be held on June 27, 2005, subject to the Court's convenience; and

(i)     Claim Forms Submitted by TPPs and Consumers to the Settlement Administrator to be postmarked no later than July 15, 2005.

4.     IPPs' Co-Lead Counsel are hereby Ordered to direct the Settlement Administrator: (a) to mail or cause to be mailed the Third Party Payer Notice of Settlement (the "TPP Notice") (substantially in the form of Exhibit 5 to the Motion) to each Third Party Payer that is a potential member of the Classes and whose address is reasonably ascertainable; (b) to mail or cause to be mailed the TPP Notice to any TPP that is a potential member of the Classes that requests a copy of the TPP Notice; and (c) to cause the TPP Summary Notice of Settlement (the "TPP Summary Notice of Settlement") (substantially in the form of Exhibit 6 to the Motion) to be published in the national edition of the Wall Street Journal one time.

5.     IPPs' Co-Lead Counsel are hereby Ordered to direct the Settlement Administrator: (a) to mail or cause to be mailed to each consumer identified as a class member at

the time of the administration of the settlement with Ivax Pharmaceuticals in these consolidated actions the Consumer Notice of Settlement (the "Consumer Notice") (substantially in the form of Exhibit 3 to the Motion); (b) to mail or cause to be mailed the Consumer Notice to each consumer that is a potential member of the Classes who requests a copy of the Consumer Notice; (c) to cause the Consumer Summary Notice of Settlement (the "Summary Notice of Settlement") (substantially in the form of Exhibit 4 to the Motion) to be published one time in each of those publications set forth in the Notice Plan.

6.      The Notice Plan, attached as Attachment C to the Settlement Agreement, constitutes the best notice practicable to the members of the IPP Classes and satisfies the requirements of due process and Federal Rule of Civil Procedure 23.

7.      The proposed Consumer Distribution Plan, attached as Exhibit 7 to the Motion, the proposed TPP Distribution Plan, attached as Exhibit 8 to the Motion, and that portion of the Government Compensation Plan allocating amounts specified for the Designated Governmental Entities and civil penalties to Colorado, attached as Exhibit 9, are approved.

8.      The Court approves the designation in the Settlement Agreement of Complete Claim Solutions, Inc. as the Settlement Administrator.   Responsibilities of the Settlement Administrator shall include those specified in the Settlement Agreement.

9.      Any TPP member of the IPP Classes that wishes to be excluded from the IPP Classes shall mail via first-class mail a written Notice of Exclusion to the Settlement Administrator, to be received no later than April 11, 2005.  The TPP Notice of Exclusion is approved.

1079136.3                                      5

10.     Any Consumer member of the IPP Classes that wishes to be excluded from the IPP Classes shall mail via first-class mail a written request for exclusion to the Settlement Administrator, to be postmarked no later than June 15, 2005.

11.     Any information received by the Settlement Administrator in connection with the Settlement that pertains to a particular member of the IPP Classes, or information contained in a Notice of Exclusion (other than the identity of the entity or person requesting exclusion), shall not be disclosed to any person or entity other than IPPs' Co-Lead Counsel and Defendants, or the Court.

12.     A hearing shall be held before the undersigned District Judge on June 27, 2005 (the "Fairness Hearing") for the purpose of considering: (a) whether the proposed settlement between the Plaintiffs and the Defendants is fair, reasonable, and adequate, and should be approved by the Court; (b) whether IPPs' counsel's applications for fees and expenses incurred in prosecuting this case, and any incentive payments to IPPs, should be granted; and (c) Plaintiff States' motion for attorneys' fees and costs. The hearing may be rescheduled or continued. In this event, the Court will furnish all counsel with appropriate notice. IPPs' Co-Lead Counsel shall be responsible for communicating any such notice promptly to the Classes by having a conspicuous notice posted in the Settlement Administrator's website, www.terazosinlitigation.com.

13.     Persons or entities wishing to object or otherwise be heard with respect to the proposed settlement, or to appear in person at the Fairness Hearing, must first send a *Notice of Intention to Appear and a Summary Statement* outlining the position(s) to be asserted and the grounds therefor, together with copies of any supporting papers or briefs, via first-class mail, postage prepaid, to the Settlement Administrator, with copies to Co-Lead Counsel for the IPP

Classes and to Defendants. Such Notices and Statements from TPPs must be received no later than April 11, 2005. Such Notices and Statements must be postmarked from Consumers no later than June 15, 2005. Except as herein provided, no person shall be entitled to contest the terms of the proposed settlement. All persons who fail to submit *a Notice of Intention to Appear* as well as a *Summary Statement* as provided above may be deemed to have waived such objections and will not be heard in person at the hearing.

14.    The Court finds that the Settlement Fund is a "qualified settlement fund" as defined in Section 1.468B-1(c) of the Treasury Regulations in that it satisfied each of the following requirements:

a.    The Settlement Fund is established pursuant to an order of this Court and is subject to the continuing jurisdiction of this Court;

b.    The Settlement Fund is established to resolve or satisfy one or more claims that have resulted or may result from an event that has occurred and that has given rise to at least one claim asserting liabilities; and

c.    The assets of the Settlement Fund are segregated from other assets of Defendants, the transferors of payments to the Settlement Fund.

15.    Under the "relation back" rule provided under Section 1.468B-1(j)(2)(i) of the Treasury Regulations, the Court finds that Defendants and the Settlement Administrator may jointly elect to treat the Settlement Fund as coming into existence as a "qualified settlement fund" on the later of the date the Settlement Fund met the requirements of ¶¶ 14(b) and 14(c) of this Order or January 1 of the calendar year in which all the requirements of ¶ 14 of this Order are met. If such a relation-back election is made, the assets held by the Settlement Fund on such date shall be treated as having been transferred to the Settlement Fund on that date.

16.     Pending the effective date of the Settlement Agreement, all members of the IPP Classes are enjoined from instituting, commencing or prosecuting any action against the Defendants based upon or relating to the claims released as set forth in the Settlement Agreement.

17.     Rider A to the Settlement Agreement shall be filed under seal and remain under seal until thirty (30) days following the Effective Date.

DONE and ORDERED in Miami, Florida, this ____ day of _____, 2005.

_____
PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

# Attachment B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 99-MDL-1317-SEITZ/KLEIN (ALL CASES)

IN RE: TERAZOSIN HYDROCHLORIDE
ANTITRUST LITIGATION

| | |
|---|---|
| THIS DOCUMENT RELATES TO: | : |
| | : |
| *United Wisconsin Services, Inc., et al. v. Abbott* | : |
| *Laboratories*, N.D. Ill. C.A. No. 99-C-7410(JBZ) | : |
| | : |
| *Grosskrueger, et al. v. Abbott Laboratories, et al.*, N.D. Ill. | : |
| C.A. No. 99C-7883(JBZ) | : |
| | : |
| *Reid, et al. v. Abbott Laboratories, et al.*, | : |
| D.D.C. C.A. No. 00-323 | : |
| | : |
| *Scafani v. Abbott Laboratories, et al.*, N.D. Cal. | : |
| C.A. No. 00-00508-SBA | : |
| | : |
| *Mednick v. Abbott Laboratories, et al.*, No. 2:00-3468 | : |
| | : |
| *O'Neal v. Abbott Laboratories, et al.*, No. 00-J-1504-S | : |
| | : |
| *Grund v. Abbott Laboratories, et al.*, No. _____ | : |
| | : |
| *O'Keefe v. Abbott Laboratories, et al.*, No. _____ | : |
| | : |
| *Blue Cross and Blue Shield of Alabama, Inc. v. Abbott* | : |
| *Laboratories, et al.*, No. 00-1303-Civ.-Lenard | : |
| | : |
| *Bernstein v. Abbott Laboratories*, E.D. Mich. | : |
| C.A. No. 2:00-CV-72974 | : |
| | : |
| *Blue Cross and Blue Shield of Michigan v. Abbott* | : |
| *Laboratories, et al.*, No. 5:01-CV-95 | : |
| | : |
| *State of Florida, et al. v. Abbott Laboratories, et al.*, | : |
| S.D. Fla. No. 01-4006-CIV-GOLD | : |
| | : |
| *Arkansas Carpenters' Health v. Abbott Laboratories, et al.*, | : |
| S.D. Fla., No. 00-1323-Seitz | : |
| | : |
| *Valentine v. Abbott Laboratories, et al.*, | : |
| E.D. Tenn., No. 2:00-46 | : |
| | : |
| *Alabama Medicaid Agency v. Abbott Laboratories, et al.*, | : |
| S.D. Ala., No., 01-129-C | : |

## (PROPOSED) FINAL JUDGMENT AND ORDER
## APPROVING PROPOSED SETTLEMENT AND DISMISSING ACTIONS

Pursuant to Rule 23(e) and 54 of the Federal Rules of Civil Procedure, and in accordance with the terms of the Settlement Agreement entered into as of March 3, 2005, it is hereby ORDERED, ADJUDGED and DECREED:

1.     This Final Judgment and Order of Dismissal hereby incorporates by reference the definitions in the Settlement Agreement, which was attached to Plaintiffs' motion in support of preliminary approval of the settlement (the "Preliminary Approval Motion"), among the IPP Plaintiffs, Plaintiff States, and Defendants, and all capitalized terms used and not otherwise defined herein shall have the meanings set forth in the Settlement Agreement.

2.     The Court has jurisdiction over these actions and over each of the Parties and over all members of the IPP Classes.

3.     The Consumer Notice of Settlement and the Consumer Summary Notice of Settlement (collectively, the "Consumer Notices"), directed to Consumer members of the IPP Classes in accordance with the Notice Plan, as previously approved, constituted the best notice practicable under the circumstances to Consumer members of the IPP Classes.

4.     The TPP Notice of Settlement and the TPP Summary Notice of Settlement (collectively, the "TPP Notices"), directed to TPP members of the IPP Classes in accordance with the Notice Plan as previously approved, constituted the best notice practicable under the circumstances to TPP members of the IPP Classes.

5.     In making the determinations set forth in Paragraphs 3 and 4 above, the Court finds that the Consumer Notices, TPP Notices, and the Notice Plan provided for individual notice to all members of the IPP Classes who could be identified through reasonable efforts. Pursuant to, and in accordance with Rule 23 of the Federal Rules of Civil Procedure, the Court hereby

2

finds that the Notices and the Notice Plan provided to the members of the IPP Classes constituted due and adequate notice of the Settlement Agreement and these proceedings and the rights of members of the IPP Classes to object to the Settlement Agreement.

6.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court hereby approves the settlement, as set forth in the Settlement Agreement (the "Settlement"), and finds that the Settlement is, in all respects, fair, reasonable and adequate to the members of the IPP Classes. Accordingly, the Settlement shall be consummated in accordance with the terms and provisions of the Settlement Agreement, including, but not limited to, payments to the IPP Classes and the Plaintiff States.

7.     By prior Orders, this Court certified the following state classes for Alabama, California, Florida, Illinois, Kansas, Maine, Michigan, Minnesota, Mississippi, Nevada, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, West Virginia and Wisconsin:

> All persons and entities who or which have at any time from October 15, 1995 to March 7, 2005, paid all or part of the purchase price of Hytrin or its AB-rated generic bioequivalents other than for resale in [state], or via mail order for residents of [state]. Excluded from the Class are Defendants; their officers and directors; their direct and indirect parent and subsidiary corporations and their officers and directors; government entities; entities which purchased Hytrin and its generic bioequivalents for resale to the extent of such purchases for resale; direct purchasers of Hytrin and its generic bioequivalents from Defendants, to the extent of such direct purchases; and indirect purchasers who have suffered no economic injury as a result of Defendants' allegedly unlawful conduct.

8.     The Court finds that the classes previously certified continue to meet all the requirements of Fed. R. Civ. P. 23(a) and (b)(3).

9.     The Court approves the IPPs as class representatives. In addition to any *parens patriae* or functionally equivalent authority that Attorneys General may have under state law, the

3

Court further approves the Attorneys General of Florida and Kansas as additional representatives on behalf of Consumer members of the IPP Classes residing in their respective states.

10. The Court also previously appointed the following counsel as Co-Lead Counsel for the IPP Classes, and recognizes that they have continued to fairly and adequately represent the IPP Classes:

> Stephen Lowey, Esq. & Richard W. Cohen, Esq.
> Lowey Dannenberg Bemporad & Selinger, P.C
> The Gateway, 11th Floor
> One North Lexington Avenue
> White Plains, NY 10601-1714

> Kimberly R. West, Esq.
> Wallace, Jordan, Ratliff & Brandt, LLC
> 450 Shades Creek Parkway, Suite 400
> Birmingham, AL 35209

> Michael D. Hausfeld, Esq. & Daniel Small, Esq.
> Cohen, Milstein, Hausfeld & Toll, P.L.L.C.
> 1100 New York Avenue, N.W.
> West Tower, Suite 500
> Washington, DC 20005-3964

11. The "Coordinated Fourth Amended Class Action Complaints" in MDL 1317, filed on or about Nov. 22, 2002 [D.E. 903], as well as *State of Florida, et al. v. Abbott Laboratories, et al.,* S.D. Fla. No. 01-4006-CIV-GOLD, are dismissed with prejudice in their entirety.

12. The Court now enters final judgment of dismissal with prejudice and without costs, with respect to the following actions, which are being dismissed pursuant to the previous paragraph or were dismissed by prior orders of the Court.

> *United Wisconsin Services, Inc., et al. v. Abbott Laboratories*, N.D. Ill. C.A. No. 99-C-7410(JBZ);

> *Blue Cross and Blue Shield of Michigan v. Abbott Laboratories, et al.*, No. 5:01-CV-95;

4

*Blue Cross and Blue Shield of Alabama, Inc. v. Abbott Laboratories, et al.*, No. 00-1303-Civ.-Lenard;

*Grosskrueger, et al. v. Abbott Laboratories, et al.*, N.D. Ill. C.A. No. 99C-7883(JBZ);

*Reid, et al. v. Abbott Laboratories, et al.*, D.D.C. C.A. No. 00-323;

*Scafani v. Abbott Laboratories, et al.*, N.D. Cal. C.A. No. 00-00508-SBA;

*Mednick v. Abbott Laboratories, et al.*, No. 2:00-3468;

*O'Neal v. Abbott Laboratories, et al.*, No. 00-J-1504-S;

*Bernstein v. Abbott Laboratories*, E.D. Mich. C.A. No. 2:00-CV-72974;

*O'Keefe v. Abbott Laboratories, et al.* No. _____:

*Grund v. Abbott Laboratories, et al.*, No. _____;

*Arkansas Carpenters' Health v. Abbott Laboratories, et al.*, S.D. Fla., No. 00-1323-Seitz;

*Valentine v. Abbott Laboratories, et al.*, E.D. Tenn., No. 2:00-46; and

*Alabama Medicaid Agency v. Abbott Laboratories, et al.*, S.D. Ala., No. 01-129-C

*State of Florida, et al. v. Abbott Laboratories, et al.*, S.D. Fla. No. 01-4006-CIV-GOLD

13.     Releasors have covenanted and agreed that they shall not hereafter seek to establish liability or assert Claims, on behalf of themselves or any other person or entity, against any of the Releasees, in whole or in part, for any of the Released Claims. Upon the Effective Date of this settlement, if any Releasor seeks to establish liability or assert any of the Released Claims, then this Court or any court of competent jurisdiction may enter an injunction restraining prosecution of such proceeding.

14.     As of the Effective Date, the Releasors have released and will be deemed to have released the Releasees of the Released Claims as set forth in the Settlement Agreement.

5

15.     The Court retains exclusive jurisdiction over the Settlement and the Settlement Agreement as described therein, including the administration and consummation of the Settlement.

16.     Pursuant to Fed. R. Civ. P. 54(b), there being no just reason for delay, this judgment of dismissal as to all actions referenced in paragraph 12 above shall be entered as final and appealable.

Dated:_____          _____
                                         THE HONORABLE PATRICIA A. SEITZ
                                         UNITED STATES DISTRICT JUDGE

1078209.2

# Attachment C

# Hytrin Indirect Purchaser Plaintiffs' Notice Plan

**I**      **Publication**

**A.**      **Publication of the Consumer Summary Notice**

Pursuant to the affidavit of Linda Young of Mile Marker Zero, attached as Exhibit A

hereto, the Consumer Summary Notice shall be published in the following publications by April

15, 2005:

- Birmingham News (Alabama)
- Mobile Register/Pacagoula Press (Alabama and Mississippi)
- Los Angeles Times (California)
- Orange County Register (California)
- Sacramento Bee (California)
- San Diego Union Tribune (California)
- San Francisco Chronicle (California)
- San Jose Mercury News (California)
- Miami Herald (Florida)
- Ft. Lauderdale Sun-Sentinel (Florida)
- St. Petersburg Times (Florida)
- Orlando Sentinel (Florida)
- Ft. Myers News-Press (Florida)
- Jacksonville Times-Union (Florida)
- Tallahassee Democrat (Florida)
- Melbourne Florida Today (Florida)
- Tampa Tribune (Florida)
- Chicago Tribune (Illinois)
- Peoria Journal Star/Galesburg Register (Illinois)
- Springfield State Journal/Lincoln Courier (Illinois)
- Wichita Eagle (Kansas)
- Topeka Capital Journal (Kansas)
- Portland Press Herald (Maine)
- Detroit News & Free-Press (Michigan)
- Ann Arbor News (Michigan)

- Bay City Journal (Michigan)
- Flint Journal (Michigan)
- Grand Rapids Press (Michigan)
- Jackson Citizen Patriot (Michigan)
- Kalamazoo Gazette (Michigan)
- Muskegon Chronicle (Michigan)
- Saginaw News (Michigan)
- Minneapolis Star Tribune (Minnesota)
- Jackson Clarion Ledger (Mississippi)
- Las Vegas Review-Journal Sun (Nevada)
- Reno Gazette-Journal (Nevada)
- Albuquerque Daily Journal Tribune (New Mexico)
- New York Times (New York)
- Albany Times Union (New York)
- Buffalo News (New York)
- Rochester Democrat (New York)
- Syracuse Post-Standard (New York)
- Charlotte Observer (North Carolina)
- Raleigh News & Observer (North Carolina)
- Fargo Forum (North Dakota)
- Sioux Falls Argus Leader (South Dakota)
- Charleston Gazette Daily Mail (West Virginia)
- Milwaukee Journal Sentinel (Wisconsin)
- Madison Capital Times/State Journal (Wisconsin)
- Parade Magazine (The Summary Consumer Notice will appear in 149 Parade Magazine publications in the 17 class states).

**B.     Publication of TPP Summary Notice**

Pursuant to the affidavit of Linda Young of Mile Marker Zero, attached as Exhibit A

hereto, the TPP Summary Notice shall be published on March 4, 2005 in the national edition of

the Wall Street Journal.

**III.     Mailing of Notice**

**A.     Mailing to Consumers**

Pursuant to the Affidavit of Tom Glenn of Complete Claims Solutions, Inc. ("CCS"), attached as Exhibit B hereto, CCS will mail the Consumer Notice and Claim Form to anyone requesting same and to all names developed and maintained by CCS as a result of the Ivax Settlement.

### B.     Mailing to TPPs

Pursuant to the Affidavit of Tom Glenn of Complete Claims Solutions, Inc. ("CCS"), attached as Exhibit B hereto, CCS shall mail beginning March 4, 2005, and finishing on March 7, 2005, the TPP Notice and Claim Form to all potential TPP class members pursuant to the database of names and addresses described in the Glenn Affidavit attached as Exhibit B hereto.

### III.    Internet and Toll-Free Phone Number

CCS will continue to maintain and host the website www.hytrinlitigation.com. The website will contain the following information:

- The Settlement Agreement and all attachments thereto, including both TPP and Consumer Claim forms;

- All Court orders related to the Settlement;

- A Frequently Asked Questions section which will provide an additional format for finding information about the settlement; and a

- A toll-free telephone number potential class members can call to get more information.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Southern Division

|  |  |
|---|---|
| **IN RE: TERAZOSIN HYDROCHLORIDE ANTITRUST LITIGATION** | **MASTER FILE NO. 99-MDL-1317 MDL DOCKET NO. 1317** |

THIS DOCUMENT RELATES TO:

*United Wisconsin Services, Inc., et al. v. Abbott Laboratories*, N.D. Ill. C.A. No. 99-C-7410(JBZ)

*Grosskrueger v. Abbott Laboratories, et al.,* N.D. Ill. C.A. No. 99C-7883(JBZ)

*Reid v. Abbott Laboratories, et al.,* D.D.C. C.A. No. 00-323

*Scafani v. Abbott Laboratories, et al.,* N.D. Cal. C.A. No. 00-00508-SBA

*Mednick v. Abbott Laboratories, et al.,* No. 2:00-3468

*O'Neal v. Abbott Laboratories, et al.,* No. 00-J-1504-S

*Grund v. Abbott Laboratories, et al.,* No. _____

*Blue Cross and Blue Shield of Alabama, Inc. v. Abbott Laboratories, et al.,* No. 00-1303-Civ.-Lenard

*Bernstein v. Abbott Laboratories,* E.D. Mich. C.A. No. 2:00-CV-72974

*Blue Cross and Blue Shield of Michigan v. Abbott Laboratories, et al.,* No. 5:01-CV-95

**MASTER FILE NO. 99-MDL-1317 MDL DOCKET NO. 1317**

Hon. Patricia A. Seitz
Mag. Judge Theodore Klein

## AFFIDAVIT OF THOMAS R. GLENN

RE: MAILING OF NOTICE OF TERAZOSIN HYDROCHLORIDE
ANTITRUST LITIGATION SETTLEMENT AND HEARING

STATE OF FLORIDA )
                 :    s.s.:
COUNTY OF PALM BEACH )

THOMAS R. GLENN, being duly sworn, deposes and says as follows:

1.      I submit this Affidavit in order to provide the Court and the parties to the above-captioned action with information regarding the mailing of the Third Party Payor Notice of Pendency of Class Action, Proposed Settlement and Fairness Hearing (the "Notice"). I am over the age of 21 years and not a party to this action. I have personal knowledge of the facts set forth herein and, if called as a witness, could testify competently thereto.

2.      I am the Senior Vice President and Chief Operating Officer for Complete Claim Solutions, Inc. ("CCS"). CCS was previously appointed as the Settlement Administrator of the Settlement in this action between Indirect Purchaser Plaintiffs ("IPPs") and IVAX Pharmaceuticals, Inc. ("IVAX Settlement"), and has been retained by IPP Class Co-Counsel to assist in the process of providing notice to the potential Third Party Payor ("TPP") Class Members and Consumer Class Members in this action. The TPP Class Members include health insurance companies and the prescription drug benefit plans of self-insured groups.

3.      CCS has served as Claims Administrator for classes of other prescription drug antitrust cases. including *In re Lorazepam and Clorazepate Antitrust Litigation* (MDL No. 98-1232); *In re Cardizem CD Antitrust Litigation* (MDL No. 1278); *Vista Healthplan, Inc., and Ramona Sakiestewa v. Bristol-Myers Squibb Co., and American BioScience, Inc.* (Civil Action No. 1:01CV01295 (EGS) (AK)) ("Taxol"): *In re: Lupron® Marketing and Sales Practices Litigation*

(MDL No. 1430), *In re: Terazosin Hydrochloride Antitrust Litigation* (MDL Docket No. 1317), *In re Warfarin Sodium Antitrust Litigation* (MDL No. 98-1232 (SLR)); *Rosemarie Ryan House. et al. v. GlaxoSmithKline PLC and SmithKline Beecham Corporation* (Docket No. 2:02cv442) ("Augmentin"); and *Nichols et al. v. SmithKline Beecham Corporation* (Master File No. 00-CV-6222) ("Paxil").

4.      CCS maintains a mailing database of approximately 13,500 potential TPP Class Members and record keepers (the "CCS TPP Mailing Database") which consists of membership listings and existing databases from the following sources:

|     |                                                      |
|-----|------------------------------------------------------|
| a)  | Pharmacy Benefit Management Institute;               |
| b)  | Health Insurance Association of America;             |
| c)  | Benefits Sourcebook;                                 |
| d)  | Managed Care Information Centers;                    |
| e)  | Judy Diamond Associates;                             |
| f)  | A.M. Best Company;                                   |
| g)  | Association of Managed Care Providers;               |
| h)  | Society of Professional Benefit Administrators;      |
| i)  | American Association of Health Plans;                |
| j)  | Self Insurers Institute of America;                  |
| k)  | National Association of Insurance Commissioners; and |
| l)  | Society of Professional Benefit Administrators.      |

5.      As the court-appointed claims administrator, CCS developed the CCS TPP Mailing Database in March 2001 as a proprietary mailing database and it is maintained and regularly updated by CCS to be used in notifying TPP Class members in settlements of large pharmaceutical antitrust litigations. including: *In re Warfarin Sodium Antitrust Litigation* (MDL

{1418 / MEMO / 00071713.DOC v1}

No. 98-1232), *In re Lorazepam and Clorazepate Antitrust Litigation* (MDL No. 1290), *In re Terazosin Hydrochloride Antitrust Litigation* (MDL No. 1317), *Vista Healthplan, Inc., and Ramona Sakiestewa v. Bristol-Myers Squibb Co., and American BioScience, Inc.* (Civil Action No. 1:01CV01295 (EGS) (AK)) ("Taxol"); *In re: Lupron® Marketing and Sales Practices Litigation* (MDL No. 1430), *Rosemarie Ryan House, et al. v. GlaxoSmithKline PLC and SmithKline Beecham Corporation* (Docket No. 2:02cv442) ("Augmentin"), and *In re Cardizem CD Antitrust Litigation* (MDL No. 1278). CCS continues to update the CCS TPP Mailing Database with changes of address and additional TPP Class members and record keepers as they are identified in subsequent settlements. In addition, CCS has a database of approximately 24,000 names and addresses of self-funded plans. CCS will include these names and addresses in the mailing plan.

6. As stated in ¶7 of the Affidavit of Linda V. Young ("Young Affidavit"), attached hereto as Exhibit A, CCS, together with Mile Marker Zero, LLC, recommends the publication of the Summary Notice in the National edition of *The Wall Street Journal* to notify potential Third Party Payor Class Members who may not have received the mailed Notice.

7. CCS has acted as a repository for inquiries and communications from potential Consumer and Third Party Payor Class Members in the IVAX Settlement. To this extent, CCS established and maintains a Post Office box, toll-free number, and website (www.hytrinlitigation.com) which allows CCS to respond to potential claimants' inquiries and to provide copies of the Notice and Claim forms to any potential class member that requests same. CCS will continue to maintain the Post Office box, and will update the introduction on toll-free number and will

4

update the website, www.hytrinlitigation.com, to reflect current information and documents, including the Settlement Agreement, the Notice and Claim Forms and any Orders issued by the Court concerning the Settlement.

8.      As outlined in ¶4 of the Young Affidavit, CCS will also mail Notice Packets to the 175 potential Consumer Class Members identified through the IVAX Settlement.

9.      I swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_____

Thomas R. Glenn

Sworn to before me this
28th day of February, 2005.



Notary Public

ERIC P. LACHANCE
COMMISSION # DD073904
EXPIRES NOV 25 2005
BONDED THROUGH
RLI INSURANCE COMPANY

{1418 - MEMO - 00071713.DOC v1}

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Southern Division

| | |
|---|---|
| IN RE: TERAZOSIN HYDROCHLORIDE ANTITRUST LITIGATION | MASTER FILE NO. 99-MDL-1317 MDL DOCKET NO. 1317 |
| THIS DOCUMENT RELATES TO: | Hon. Patricia A. Seitz Mag. Judge Theodore Klein |

*United Wisconsin Services, Inc., et al. v. Abbott Laboratories,* N.D. Ill. C.A. No. 99-C-7410(JBZ)

*Grosskrueger v. Abbott Laboratories, et al.,* N.D. Ill. C.A. No. 99C-7883(JBZ)

*Reid v. Abbott Laboratories, et al.,* D.D.C. C.A. No. 00-323

*Scafani v. Abbott Laboratories, et al.,* N.D. Cal. C.A. No. 00-00508-SBA

*Mednick v. Abbott Laboratories, et al.,* No. 2:00-3468

*O'Neal v. Abbott Laboratories, et al.,* No. 00-J-1504-S

*Grund v. Abbott Laboratories, et al.,* No. _____

*Blue Cross and Blue Shield of Alabama, Inc. v. Abbott Laboratories, et al.,* No. 00-1303-Civ.-Lenard

*Bernstein v. Abbott Laboratories,* E.D. Mich. C.A. No. 2:00-CV-72974

*Blue Cross and Blue Shield of Michigan v. Abbott Laboratories, et al.,* No. 5:01-CV-95

## AFFIDAVIT OF LINDA V. YOUNG

### REGARDING PUBLISHED NOTICE OF SETTLEMENT AND HEARING PROGRAM

| | |
|---|---|
| STATE OF SOUTH CAROLINA | ) |
| | ) ss: |
| COUNTY OF GREENVILLE | ) |

LINDA V. YOUNG being duly sworn, deposes and states that:

1.      I submit this affidavit, in order to provide the Court and the parties to the above-captioned litigation (the "Action") with the information regarding the adequacy and reach of the Published Notice Program for the proposed Settlement in this Action. I am over 21 years of age and am not a party to this action. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2.      I am a principal of Mile Marker Zero, LLC, ("MMZero") a full-service marketing and advertising consulting firm which provides marketing research and analysis services, creative development, advertising and marketing planning. MMZero was retained by Complete Claim Solutions, Inc., the Settlement Administrator, as the Media Consultant to provide notice to the potential members of the plaintiff Class. Attached, hereto, as Exhibit A are MMZero's credentials and my personal resume. I have worked as a media consultant for 21 years, and have handled extensive media campaigns for national advertising programs, e.g. Coca-Cola, Denny's, and American Express which included running 50 newspaper ads, weekly.

3.      I understand, that the Class consists of all persons and entities who or which have at any time from October 14, 1995 to March 1, 2005 paid all or part of the purchase price of Hytrin or its AB-rated generic bioequivalents other than for resale in Alabama, California, Florida, Illinois, Kansas, Maine, Michigan, Minnesota, Mississippi, Nevada, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, West Virginia and Wisconsin or via mail for residents of the 18 states.

4.      To this extent, MMZero has provided a media plan outlining recommended publications to target consumers based on syndicated research, along with demographic and reach analyses. This plan

is attached as Exhibit B hereto.  This recommended media plan is cost effective in reaching the target audience in the 18-State Classes and will reach an audience of over 64,000,000 in the 18 Class States.  A targeted edition of *Parade Magazine* that is distributed only within the 18 states is also recommended. National publications such as AARP's *Modern Maturity* would deliver significant circulation outside the 18 States and the high cost would make it inefficient in reaching the consumer target. As well, national publications could confuse Consumers who are not part of the Class.  Therefore, the media plan includes publications in multiple newspapers in each Class State and in senior-oriented newspapers in many of the Class States.  There are no similar senior newspapers in North Dakota, South Dakota, Mississippi, or Maine that coordinate with our proposed timing.

5.     As recommended to the Class Plaintiff Counsel, MMZero will stagger the publications of the summary notice over a several week period throughout the country, but no later than April 15, 2005, so as not to overburden the call-center response team, which will fulfill requests for notice packets.

6.     In addition, it is our recommendation that MMZero post a notice of the certification on the Internet via the Business Wire.

7.     It is my understanding that the proposed Settlement Administrator, Complete Claim Solutions, Inc., will post the Notice documentation on their website www.hytrinlitigation.com which will serve as an additional resource for the Class.  The proposed Settlement Administrator maintains a proprietary database of approximately 13,500 Third Party Payors, to which the full Notice will be directly mailed. In addition, we have recommended publication of the Summary Notice in the National edition of *The Wall Street Journal* to capture Third Party Payors who may not receive the mailed Notice.   The TPP mailing

is described in detail in the affidavit of Thomas R. Glenn of Complete Claim Solutions, Inc.

8.      I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Linda V. Young

Sworn to before me on
this 28 day of February 2005.

Notary Public.

My Commission Expires
March 28, 2013

# EXHIBIT A

**Exhibit A**

# Mile Marker Zero, LLC
## Firm Description

Mile Marker Zero, LLC, (MMZero) a full-service marketing and advertising consulting firm, provides a broad range of services including market research and analysis, creative development, advertising and marketing planning, along with media planning and implementation to enhance visibility for public and private companies across the US. To ensure we fit the specific needs of each client, Mile Marker Zero operates as a virtual consulting company with consultants based in offices across the country. On each assignment that we accept, we bring together the appropriate team members who can deliver the advertising, public relations and marketing expertise to assess client needs, and design and orchestrate effective solutions. Therefore, our clients receive the benefit of work produced by seasoned, senior level professionals without experiencing the overhead costs of a large agency or being passed on to junior account executives to meet payroll needs.

MMZero consultants have worked with global, national, regional and local clients spanning both business-to-business and consumer industries ranging from Georgia-Pacific to AFLAC, The Coca-Cola Company and Complete Claim Solutions, Inc. Some of our clients have had access to enormous resources; others have made do with very little. Working with these organizations has underscored our belief that there is no standard formula for marketing any company. Every company has a personality and must be marketed based on that uniqueness. Only a well-thought out, individualized communications plan based on the company's personality, needs, strengths, vision and goals will result in long term success.

Some relevant project experience includes:

Complete Claim Solutions – Developed national print plans to support the notification of unidentified putative consumers and/or third party payors in several pharmaceutical class action settlements such as:

*In Re: Cardizem CD Antitrust Litigation*, Master File No. 99-MDL-1278

*In Re: Warfarin Sodium Antitrust Litigation*, MDL 98-1232 (SLR)

*In Re: Terazosin Hydrochloride Antitrust Litigation*, Master File No. 99-MDL-1317

*Vista Healthplan, Inc., and Ramona Sakiestewa, et al. v. Bristol-Myers Squibb, Co., and American Bioscience, Inc.*, Civil Action No. 1:01CV011295 (EGS) (AK)

*Oncology & Radiation Associates, P.A. v. Bristol-Myers Squibb Company and American Bioscience, Inc.*, Civil Action No. 1:01CV02313 (EGS)

*Rosemarie Ryan House, et al. v. Glaxosmithkline PLC and Smithkline Beecham Corporation*, Docket No. 2:02cv442

*In Re Relafen® Antitrust Litigation*, Master File No. 01-CV-12239-WGY

Other case experience includes settlements in the securities, antitrust and consumer products such as Waste Management, Campbell Soup, Alias Research, Van Kampen, Unity Life Insurance Company and Premier Cruise Lines. This involved the development of media plans, the production of creative materials plus the follow up of providing tear sheets and invoices. Results: Client and attorneys have saved hundreds of thousands of dollars through negotiated pricing as well as a reduction in agency commissions. Media plans also generated thousands of calls in response to the advertising.

# Linda V. Young, Principal

## JOB RESPONSIBILITIES

Direct the development and implementation of effective marketing planning; lead all aspects of national, regional and local advertising campaigns; proficient at developing strategically targeted advertising plans and creative materials.

## EDUCATION

Bachelor of Arts; Business Administration, University of North Dakota, Grand Forks, ND, 1983.

## RELEVANT EXPERIENCE

### Principal, Mile Marker Zero, LLC, Greenville, SC

Direct the development of marketing and advertising plans for local and national clients such as:

- Complete Claim Solutions:
  - Third Party Payor Settlements such as Augmentin, Relafen, Terazosin Hydrochloride (Hytrin) Coumadin-Warfarin, Cardizem, Buspar, Taxol – Developed media recommendation and implemented newspaper and magazine advertising campaigns ranging from $6,500 to as high as $1.7 million.
  - Securities Settlements such as Morgan Stanley, First Central Financial, Waste Management, Campbell Soup, Van Kampen, Alias Research, and Nuko Information Systems – Developed and implemented media plans, some which included running newspapers ads in over 50 city newspapers over a two week period.
  - Consumer and Insurance Settlements such as Premier Cruise Lines, and Unity Life Insurance Company – Developed media recommendation and implemented newspaper and magazine advertising campaign on both regional and national levels.
- FIERO – National fire services association (Fire Industry Equipment Research Organization).
  - Developed collateral material and advertising campaign to generate awareness of association and to announce their bi-annual symposium on Fire Station Design and Safety.  Symposium exceeded their goals by hosting several hundred Fire Fighting support personnel.  FIERO has also seen a 10% increase in membership during this period.
- TeamPoint Systems, Inc., a global software company with over 10,000 users
  - Directed the graphic design, writing and development of company website, www.teampointsystems.com which receives over 8,000 visits monthly.
  - Produced brochures, signage and promotional materials for attendance at the National SITEK convention.
  - Interviewed DayPoint product users and wrote case studies about their successful use of the product.  After putting the case studies on the website, visit time lengthened from an average of 3 minutes to over 8 minutes per visit.  Sales also increased by 45% and have risen steadily.

### Senior National Advertising Manager, Denny's Corporate, Spartanburg, SC

Partner with Brand Marketing Director in the development of new product promotions and determine all marketing materials needed to support the business initiative and ensure message consistency; direct five national US advertising agencies and one Canadian agency in the development and implementation of advertising and media strategies, objectives and tactics.  Ensure that all advertising reinforces brand positioning and marketing mission.

### Field Advertising Services Supervisor/Contract position; The Coca-Cola Company, Atlanta, GA

Present and reinforce General Market, African American and Hispanic brand strategies, objectives and positioning for both Carbonated Soft Drinks and Non-Carbonated beverages to the bottler system and local agencies; develop local vendor promotions with bottlers and agencies that strengthened brand positioning and increased case volume including the development of POP materials, merchandising displays and broadcast creative.

### Principal/Consultant, LV Media, Inc., Atlanta, GA

Develop marketing and advertising solutions for national and local companies and organizations:

- South Fulton Revitalization – developed national marketing plan to attract retail and commercial/industrial business to relocate or locate their start-up company in South Fulton County.  Plan included advertising, public relations and direct mail strategies.
- Showtime Networks – developed local advertising and direct marketing plans to announce the availability of Showtime on cable systems

### Media Supervisor McCann-Erickson, Inc., Atlanta, GA

Supervise six advertising professionals in media planning and buying for travel, B2B, consumer retail and consumer packaged goods accounts.

# EXHIBIT B

**Exhibit B**
**Hytrin**
**Proposed Media Plan**

3/1/2005

| State/Metropolitan Area | Publications | Circulation | Audience | 2005 Cost | Publishing Frequency | Space Reservation | Material Closing Date | Publication Date |
|---|---|---|---|---|---|---|---|---|
| 18 States Edition | Parade (18 states edition) | 15,930,797 | 36,640,833 | $153,232 | weekly | 35 days prior | 27 days | Sunday |
| | | | | | | 3/3/05 | 3/3/05 | 3/5/05 |
| National | Wall Street Journal | 2,101,017 | 3,781,831 | $19,641 | Mon-Fri | 1 week prior | 5 days prior | daily |
| Alabama | Birmingham News | 158,627 | 285,529 | $2,363 | Daily | 1 week prior | 5 days prior | daily |
| Alabama | Mobile Register(AL)/Pacagoula Press (MS) | 112,369 | 202,264 | $1,382 | Daily | 1 week prior | 5 days prior | daily |
| California | Los Angeles Times | 995,838 | 1,792,508 | $11,678 | Daily | 1 week prior | 5 days prior | daily |
| California | Orange County Register | 303,418 | 546,152 | $3,928 | Daily | 1 week prior | 5 days prior | daily |
| California | Sacramento Bee | 293,705 | 528,669 | $3,726 | Daily | 1 week prior | 5 days prior | daily |
| California | San Diego Union Tribune | 328,531 | 591,356 | $4,779 | Daily | 1 week prior | 5 days prior | daily |
| California | San Francisco Chronicle | 512,640 | 922,752 | $8,114 | Daily | 1 week prior | 5 days prior | daily |
| California | San Jose Mercury News | 464,538 | 836,168 | $5,522 | Daily | 1 week prior | 5 days prior | daily |
| Florida | Miami Herald | 304,795 | 548,631 | $5,825 | Daily | 1 week prior | 5 days prior | daily |
| Florida | Ft. Lauderdale Sun-Sentinel | 249,997 | 449,995 | $5,535 | Daily | 1 week prior | 5 days prior | daily |
| Florida | St. Petersburg Times | 314,614 | 566,305 | $5,658 | Daily | 1 week prior | 5 days prior | daily |
| Florida | Orlando Sentinel | 248,492 | 447,286 | $4,658 | Daily | 1 week prior | 5 days prior | daily |
| Florida | Ft. Myers News-Press | 79,901 | 143,822 | $1,445 | Daily | 1 week prior | 5 days prior | daily |
| Florida | Jacksonville Times-Union | 161,757 | 291,163 | $2,862 | Daily | 1 week prior | 5 days prior | daily |
| Florida | Tallahassee Democrat | 49,233 | 88,619 | $1,194 | Daily | 1 week prior | 5 days prior | daily |
| Florida | Melbourne Florida Today | 80,650 | 145,170 | $1,449 | Daily | 1 week prior | 5 days prior | daily |
| Florida | Tampa Tribune | 214,269 | 385,684 | $1,244 | Daily | 1 week prior | 5 days prior | daily |
| Illinois | Chicago Tribune | 680,850 | 1,225,530 | $8,978 | Daily | 1 week prior | 5 days prior | daily |
| Illinois | Peoria Journal Star/Galesburg Register | 83,448 | 150,206 | $1,065 | Daily | 1 week prior | 5 days prior | daily |
| Illinois | Springfield State Journal/Lincoln Courier | 61,434 | 110,581 | $960 | Daily | 1 week prior | 5 days prior | daily |
| Kansas | Wichita Eagle | 87,366 | 157,259 | $1,523 | Daily | 1 week prior | 5 days prior | daily |
| Kansas | Topeka Capital Journal | 50,754 | 91,357 | $1,022 | Daily | 1 week prior | 5 days prior | daily |
| Maine | Portland Press Herald | 77,487 | 139,477 | $990 | Daily | 1 week prior | 5 days prior | daily |
| Michigan | Detroit News & Free-Press | 580,107 | 1,044,193 | $9,815 | Daily | 1 week prior | 5 days prior | daily |
| Michigan | Booth/Michigan Group * | 489,571 | 881,228 | $4,510 | Daily | 1 week prior | 5 days prior | daily |
| Minnesota | Minneapolis Star Tribune | 380,355 | 684,639 | $3,780 | Daily | 1 week prior | 5 days prior | daily |
| Mississippi | Jackson Clarion Ledger | 94,938 | 170,888 | $1,426 | Daily | 1 week prior | 5 days prior | daily |
| Nevada | Las Vegas Review-Journal Sun | 193,013 | 347,423 | $2,552 | Daily | 1 week prior | 5 days prior | daily |
| Nevada | Reno Gazette-Journal | 66,409 | 119,536 | $1,786 | Daily | 1 week prior | 5 days prior | daily |
| New Mexico | Albuquerque Daily Journal Tribune | 124,066 | 223,319 | $1,708 | Daily | 1 week prior | 5 days prior | daily |
| New York | New York Times | 1,118,165 | 2,012,697 | $14,364 | Daily | 1 week prior | 5 days prior | daily |
| New York | Albany Times Union | 100,628 | 181,130 | $3,501 | Daily | 1 week prior | 5 days prior | daily |
| New York | Buffalo News | 196,429 | 353,572 | $3,516 | Daily | 1 week prior | 5 days prior | daily |
| New York | Rochester Democrat | 166,727 | 300,109 | $5,336 | Daily | 1 week prior | 5 days prior | daily |
| New York | Syracuse Post-Standard | 118,962 | 214,132 | $2,466 | Daily | 1 week prior | 5 days prior | daily |
| North Carolina | Charlotte Observer | 226,849 | 408,328 | $4,041 | Daily | 1 week prior | 5 days prior | daily |
| North Carolina | Raleigh News & Observer | 164,294 | 295,729 | $2,170 | Daily | 1 week prior | 5 days prior | daily |
| North Dakota | Fargo Forum | 51,635 | 92,943 | $659 | Daily | 1 week prior | 5 days prior | daily |
| South Dakota | Sioux Falls Argus Leader | 53,706 | 96,671 | $946 | Daily | 1 week prior | 5 days prior | daily |

# Hytrin
## Proposed Media Plan

3/1/2005

| State/Metropolitan Area | Publications | Circulation | Audience | 2005 Cost | Publishing Frequency | Space Reservation | Material Closing Date | Publication Date |
|---|---|---|---|---|---|---|---|---|
| Tennessee | Knoxville News-Sentinel | 113,994 | 205,189 | $1,663 | Daily | 1 week prior | 5 days prior | daily |
| Tennessee | Memphis Commercial-Appeal | 163,731 | 294,716 | $3,467 | Daily | 1 week prior | 5 days prior | daily |
| Tennessee | Nashville Tennessean | 191,515 | 344,727 | $4,067 | Daily | 1 week prior | 5 days prior | daily |
| West Virginia | Charleston Gazette Daily Mail | 85,443 | 153,797 | $1,231 | Daily | 1 week prior | 5 days prior | daily |
| Wisconsin | Milwaukee Journal Sentinel | 244,288 | 439,718 | $4,085 | Daily | 1 week prior | 5 days prior | daily |
| Wisconsin | Madison Capital Times/State Journal | 110,291 | 198,524 | $1,188 | Daily | 1 week prior | 5 days prior | daily |
| | Total Metropolitan Newspapers | 10,949,829 | 19,709,692 | $160,174 | | | | |
| Los Angeles | Southern California Senior Life | 285,000 | 649,800 | $5,000 | Monthly | 3/1/05 | 3/4/05 | 4/1/05 |
| Miami/Ft. Lauderdale | Senior News | 30,000 | 68,400 | $475 | Monthly | 3/1/05 | 3/4/05 | 4/1/05 |
| San Diego | Good News, Etc. | 42,000 | 95,760 | $522 | Monthly | 3/1/05 | 3/4/05 | 3/26/05 |
| Charlotte | Senior Directions | 30,000 | 68,400 | $514 | Monthly | 3/1/05 | 3/4/05 | 4/1/05 |
| Raleigh/Durham/Fay. | 50 Plus - Triangle Edition | 35,000 | 79,800 | $864 | Monthly | 3/1/05 | 3/4/05 | 4/1/05 |
| Buffalo | Forever Young | 50,000 | 114,000 | $1,669 | Monthly | 3/1/05 | 3/4/05 | 4/1/05 |
| Wichita/Hutchinson | Active Aging | 45,000 | 102,600 | $800 | Monthly | 3/1/05 | 3/4/05 | 4/1/05 |
| Minneapolis/St. Paul | Minnesota Senior News | 45,000 | 102,600 | $1,095 | Monthly | 3/1/05 | 3/4/05 | 3/21/05 |
| Albuquerque/Santa Fe | Prime Time | 27,500 | 62,700 | $599 | Monthly | 3/1/05 | 3/4/05 | 4/1/05 |
| Milwaukee | Fifty Plus | 70,000 | 159,600 | $1,168 | Monthly | 3/1/05 | 3/4/05 | 4/1/05 |
| Charleston/Huntington | Senior News - Charleston Edition | 23,000 | 52,440 | $270 | Monthly | 3/1/05 | 3/4/05 | 4/1/05 |
| Birmingham/Anniston | Senior Living | 50,000 | 114,000 | $1,291 | Monthly | 3/1/05 | 3/4/05 | 4/1/05 |
| San Francisco/Oak/SJ | Prime Time - SF Independent | 379,230 | 864,644 | $3,131 | Monthly | 3/1/05 | 3/4/05 | 4/12/05 |
| New York | 50 Plus Senior News - All Editions | 140,000 | 319,200 | $3,242 | Monthly | 3/1/05 | 3/4/05 | 4/1/05 |
| Chicago | Senior News (Chicagoland's) | 120,000 | 273,800 | $1,806 | Monthly | 2/25/05 | 3/3/05 | 4/1/05 |
| Detroit | Conquest | 885,000 | 2,017,800 | $2,176 | 6X Annually | 3/1/05 | 3/4/05 | 4/15/05 |
| Nevada | Senior Spectrum/Lovin' Life | 70,000 | 159,600 | $2,586 | Monthly | 3/1/05 | 3/4/05 | 4/1/05 |
| Memphis | Best Times | 25,000 | 57,000 | $994 | Monthly | 3/1/05 | 3/4/05 | 4/1/05 |
| Nashville | Senior Sentinel | 15,000 | 34,200 | $348 | Monthly | 3/1/05 | 3/4/05 | 4/1/05 |
| | Total Senior Newspapers | 2,366,730 | 5,396,144 | $28,551 | | | | |
| | Total All Media | 31,348,373 | 65,528,501 | $361,598 | | | | |

**\* Booth/Michigan Newspapers**

| | |
|---|---|
| Ann Arbor News | Jackson Citizen Patriot |
| Bay City Journal | Kalamazoo Gazette |
| Flint Journal | Muskegon Chronicle |
| Grand Rapids Press | Saginaw News |

# **Parade Newspapers**

| State/City | Newspaper |
| --- | --- |
| **Alabama** | |
| Anniston | The Anniston Star |
| Birmingham | The Birmingham News |
| Gadsden | The Gadsden Times |
| Tuscaloosa | The Tuscaloosa News |
| Alexander City | The Outlook |
| Selma | The Selma Times-Journal |
| Florence/Sheffield | Times Daily |
| Huntsville | The Huntsville Times |
| Mobile | Mobile Register |
| Talladega | The Daily Home |
| | |
| **California** | |
| Bakersfield | The Bakersfield Californian |
| San Luis Obispo | The Tribune |
| Redding | Record Searchlight |
| Fresno | The Fresno Bee |
| Los Angeles | Los Angeles Times |
| Modesto | The Modesto Bee |
| Stockton | The Record |
| Monterey | The Monterey County Herald |
| Santa Rosa | The Press Democrat |
| Walnut Creek | The Sunday Times |
| Oceanside/Escondido | North County Times |
| Ventura | Ventura County Star |
| Riverside | The Press-Enterprise |
| Sacramento | The Sacramento Bee |
| San Diego | The San Diego Union-Tribune. |
| San Francisco | San Francisco Chronicle |
| San Jose | San Jose Mercury News |
| Santa Ana | The Orange County Register |
| | |
| **Florida** | |
| Fort Pierce/Stuart/Vero Beach | Treasure Coast News/Press Tribune |
| Fort Walton Beach | Northwest Florida Daily News |
| Gainesville | The Gainesville Sun |
| Tallahassee | Tallahassee Democrat |
| Lake City | Lake City Reporter |
| Lakeland | The Ledger |
| Miami | El Nuevo Herald |
| Miami | The Herald |
| Naples | Naples Daily News |
| Ocala | Star-Banner |
| Orlando | Orlando Sentinel |

## Parade Newspapers

| State/City | Newspaper |
|---|---|
| Sarasota | The Sarasota Herald Tribune |
| St. Petersburg | The St. Pete Times |
| Tampa | The Tampa Tribune |
| West Palm Beach | The Palm Beach Post |
|  |  |
| **Illinois** |  |
| Belleville | Belleville News-Democrat |
| Centralia | Morning Sentinel |
| Bloomington | The Pantagraph |
| Galesburg | The Register-Mail |
| Peoria | Journal Star |
| Carbondale | The Southern Illinoisan |
| Chicago | Chicago Tribune |
| Champaign/Urbana | The News-Gazette |
| Decatur | Herald & Review |
| Springfield | The State Journal-Register |
| Quincy | The Quincy Herald-Whig |
| Freeport | The Journal-Standard |
| Dekalb | Daily Chronicle |
| Danville | Commercial-News |
|  |  |
| **Kansas** |  |
| Manhattan | Manhattan Mercury |
| Wichita | The Wichita Eagle |
|  |  |
| **Maine** |  |
| Portland | Maine Sunday Telegram |
|  |  |
| **Michigan** |  |
| Ann Arbor | The Ann Arbor News |
| Monroe | The Monroe Sunday News |
| Mount Clemens | The Macomb Daily |
| Pontiac | The Oakland Press |
| Royal Oak | The Daily Tribune |
| Southgate | The News-Herald |
| Bay City | The Bay City Times |
| Flint | The Flint Journal |
| Mount Pleasant | The Morning Sun |
| Saginaw | The Saginaw News |
| Grand Rapids | The Grand Rapids Press |
| Kalamazoo | Kalamazoo Gazette |
| Muskegon | Sunday Chronicle |
| Jackson | The Jackson Citizen Patriot |
| Marquette | The Mining Journal |

## **Parade Newspapers**

| State/City | Newspaper |
|---|---|
| Traverse City | Traverse City Record-Eagle |
| | |
| **Minnesota** | |
| Albert Lea | Albert Lea Tribune |
| Austin | Austin Daily Herald |
| Mankato | The Free Press |
| New Ulm | The Journal |
| Winona | Winona Daily News |
| Bemidji | The Pioneer |
| Faribault | Faribault Daily News |
| Owatonna | Owatonna People's Press |
| St Paul | St.Paul Pioneer Press |
| Duluth | Duluth News Tribune |
| | |
| **Mississippi** | |
| Biloxi/Gulfport | The Sun Herald |
| Columbus | The Commercial Dispatch |
| Greenwood | The Greenwood Commonwealth |
| Laurel Ms | Laurel Leader-Call |
| Pascagoula | The Mississippi Press |
| Tupelo | Northeast Mississippi Daily Journal |
| Brookhaven | The Daily Leader |
| Mccomb | Enterprise-Journal |
| Vicksburg | The Vicksburg Post |
| Picayune | Picayune Item |
| | |
| **Nevada** | |
| Carson City | Nevada Appeal |
| Sparks | Sparks Tribune |
| Las Vegas | Las Vegas Review-Journal & Las Vegas Sun |
| | |
| **New Mexico** | |
| Albuquerque | Albuquerque Journal |
| Hobbs | Hobbs News-Sun |
| Santa Fe | The Santa Fe New Mexican |
| Clovis | New Journal |
| Portales | News-Tribune |
| | |
| **New York** | |
| Albany | Albany Times-Union |
| Auburn | The Citizen |
| Syracuse | The Post-Standard |
| Buffalo | The Buffalo News |
| Corning | The Sunday Leader |

# Parade Newspapers

| State/City | Newspaper |
|---|---|
| Middletown | The Times Herald-Record |
| Staten Island | Staten Island Sunday Advance |
| Newsday/Melville | Newsday |
| Plattsburgh | Press-Republican |
| Canandaigua | Daily Messenger |
| Geneva | Finger Lakes Sunday Times |
| Oneonta | The Daily Star |
| Ogdensburg | The Advance-News |
| Gloversville | The Leader-Herald |
| New York | New York Post |
|  |  |
| **North Carolina** |  |
| Elizabeth City | The Daily Advance |
| Hendersonville | Times-News |
| Winston-Salem | Winston-Salem Journal |
| Charlotte | The Charlotte Observer |
| Fayetteville | The Fayetteville Observer |
| Raleigh | The News & Observer |
| Rocky Mount | Rocky Mount Telegram |
| Greensboro | News & Record |
| Greenville | The Daily Reflector |
| Wilmington | Sunday Star-News |
|  |  |
| **North Dakota** |  |
| Dickinson | The Dickinson Press |
| Minot | Minot Daily News |
| Fargo | The Forum |
|  |  |
| **South Dakota** |  |
| Huron | Plainsman |
| Rapid City | The Rapid City Journal |
|  |  |
| **Tennessee** |  |
| Chattanooga | Times Free-Press |
| Cookeville | Herald Citizen |
| Shelbyville | Times-Gazette |
| Tullahoma | Sunday News |
| Johnson City | Press |
| Knoxville | News-Sentinel |
| Morristown | Citizen-Tribune |
| Newport | Plain Talk |
| Dyersburg | State Gazette |
| Memphis | Commercial Appeal |

## Parade Newspapers

| State/City | Newspaper |
|---|---|
| **West Virginia** | |
| Clarksburg | Sunday Exponent Telegram |
| Fairmont | Times-West Virginian |
| Parkersburg | The Parkersburg News |
| Wheeling | Sunday News-Register |
| Charleston | Sunday Gazette-Mail |
| Logan | The Logan Banner |
| Williamson | Williamson Daily News |
| Morgantown | The Dominion Post |
| Martinsburg | The Journal |
| | |
| **Wisconsin** | |
| Kenosha | Kenosha News |
| Racine | The Journal Times |
| La Crosse | La Crosse Tribune |
| Rhinelander | The Daily News |
| Madison | Wisconsin State Journal |
| Milwaukee | Milwaukee Journal Sentinel |
| | |

# Attachment D

## DESIGNATED GOVERNMENTAL ENTITIES

### Florida Entities

Florida Department of Children and Family Services
Florida Department of Corrections
Florida Department of Health
Florida State University
Orange County Medical Clinic

### Kansas Entities

Kansas State Employees Prescription Drugs Plan
Entities Purchasing Pursuant to MMCAP:

Fort Hays Student Health Center
Kansas Soldiers Home
Kansas State University Lafene Health Center
Kansas Neurological Institute
Larned State Hospital
Osawatomie State Hospital
Parsons State Hospital
Rainbow Mental Health Facility
University of Kansas Watkins Health Center

Exhbit 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 99-MDL-1317-SEITZ/KLEIN

IN RE: TERAZOSIN HYDROCHLORIDE
ANTITRUST LITIGATION

_____

THIS DOCUMENT RELATES TO:                           :
                                                     :
                                                     :
*United Wisconsin Services, Inc., et al. v. Abbott*   :
*Laboratories*, N.D. Ill. C.A. No. 99-C-7410(JBZ)     :
                                                     :
*Grosskruege, et al. v. Abbott Laboratories, et al.*, N.D. Ill.   :
C.A. No. 99C-7883(JBZ)                               :
                                                     :
*Reid, et al. v. Abbott Laboratories, et al.*, D.D.C.   :
C.A. No. 00-323                                      :
                                                     :
*Scafani v. Abbott Laboratories, et al.*, N.D. Cal.   :
C.A. No. 00-00508-SBA                                :
                                                     :
*Mednick v. Abbott Laboratories, et al.*, No. 2:00-3468   :
                                                     :
*O'Neal v. Abbott Laboratories, et al.*, No. 00-J-1504-S   :
                                                     :
*Grund v. Abbott Laboratories, et al.*, No. _____   :
                                                     :
*Blue Cross and Blue Shield of Alabama, Inc. v. Abbott*   :
*Laboratories, et al.*, No. 00-1303-Civ.-Lenard      :
                                                     :
*Bernstein v. Abbott Laboratories*, E.D. Mich.        :
C.A. No. 2:00-CV-72974                               :
                                                     :
*Blue Cross and Blue Shield of Michigan v. Abbott*    :
*Laboratories, et al.*, No. 5:01-CV-95               :
                                                     :
*State of Florida, et al. v. Abbott Laboratories, et al.*,   :
S.D. Fla. No. 01-4006-Civ-Gold                       :
_____:

**[PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENT,
CERTIFYING A TENNESSEE INDIRECT PURCHASER SETTLEMENT CLASS FOR
PURPOSES OF SETTLEMENT AND REVISING END DATE IN DEFINITION OF
PREVIOUSLY-CERTIFIED CLASSES, AUTHORIZING NOTICE TO MEMBERS OF
THE IPP CLASSES, AND SETTING FAIRNESS HEARING AND OTHER DEADLINES**

Upon consideration of the Indirect Purchaser Plaintiff Classes' (the "IPP Classes") and

the States of Florida, Kansas, and Colorado's (the "Plaintiff States"), as defined in the Settlement

Agreement (collectively, the "Plaintiffs"), Motion for Preliminary Approval of Proposed

Settlement, Certification of the Proposed Tennessee Indirect Purchaser Settlement Class for Purposes of Settlement and Revising End Date in Definition of Previously Certified Classes and for Approval of the Form and Manner of Notice to TPP and Consumer Members of the IPP Classes, dated March 3, 2005 (the "Motion"), the attachments thereto and the submissions of the parties, and having held a hearing on March 7, 2005, to consider the Motion and proposed form of notice, and being satisfied that the Proposed Settlement Agreement meets the applicable criteria for preliminary approval, and that the proposed form of notice and the plan for dissemination of notice to the members of the IPP Classes satisfy all applicable requirements, it is hereby

**ORDERED** as follows:

1.      Indirect Purchaser Plaintiffs' proposed Tennessee Indirect Purchaser Class ("Tennessee Class") is certified for purposes of settlement. The Tennessee Class is defined as, "All persons and entities who or which have at any time from October 15, 1995 to March 7, 2005, paid all or part of the purchase price of Hytrin or its AB-rated generic bioequivalents other than for resale, in Tennessee or via mail for residents of Tennessee. Excluded from the Tennessee Class are the Defendants, their officers and directors, their direct and indirect parent and subsidiary corporations and their officers and directors; government entities; entities that purchased Hytrin and its generic bioequivalents for resale, to the extent of such purchases for resale; direct purchasers of Hytrin and its generic bioequivalents from Defendants, to the extent of such direct purchases; and indirect purchases who suffered no economic injury as a result of Defendants' allegedly unlawful conduct." In addition, the end date in the definitions of the IPP Classes certified on April 8, 2004 are extended to March 7, 2005. The IPP Classes certified on April 8, 2004 and the Tennessee Class are collectively the "IPP Classes."

2.      The Proposed Settlement between Plaintiffs and the Defendants (attached as Exhibit 1 to the Motion), establishes a settlement fund of $30,700,000. The Settlement Fund, less Court-approved expenses and fees, and other payments, will be distributed among IPP Class Members and the Plaintiff States pursuant to the terms of the Settlement Agreement. Reached as a result of arm's-length negotiations by counsel experienced in complex litigation, the Proposed Settlement between the Parties appears. upon preliminary review, to be within the range of reasonableness warranting providing notice to the IPP Classes and proceeding with a Fairness Hearing. In making this determination, the Court has considered the current posture of this litigation and the risks and benefits to the parties involved in both settlement of these claims and continuation of the litigation. Accordingly, the Court grants preliminary approval of the Settlement Agreement, and the Settlement will be submitted to the IPP Classes for their consideration and for a hearing in accord with F.R.C.P. 23(e).

3.      The Court approves the following schedule for proceedings on the Proposed Settlement:

> (a)      Notice of Settlement to be mailed to TPP members of the IPP Classes beginning March 10, 2005 and completed by March 11, 2005;
>
> (b)      Summary Notice of Settlement to TPP members of the IPP Classes to be published on or before March 11, 2005;
>
> (c)      TPP members of the IPP Classes to submit any Notices of Exclusion *for receipt* on or before April 11, 2005;
>
> (d)      TPP members of the IPP Classes to submit any objections or notices of intent to appear at the Final Fairness Hearing on or before April 11, 2005;

(e) Notice Plan for Consumer members of the IPP Classes beginning March 11, 2005, and completed by May, 15, 2005;

(f) Consumer members of the IPP Classes to submit any Notices of Exclusion, objections or notices of intent to appear at the Final Fairness Hearing on or before June 15, 2005;

(g) Plaintiffs' Memorandum in Support of Final Approval of the Settlement, the Plaintiff States' motion for attorneys' fees and costs, and any IPPs' application for attorneys' fees, expenses, and incentive awards to be filed on or before June 20. 2005;

(h) Hearing before the Court in final approval of the Settlement to be held on June 27, 2005. subject to the Court's convenience; and

(i) Claim Forms Submitted by TPPs and Consumers to the Settlement Administrator to be postmarked no later than July 15, 2005.

4. IPPs' Co-Lead Counsel are hereby Ordered to direct the Settlement Administrator: (a) to mail or cause to be mailed the Third Party Payer Notice of Settlement (the "TPP Notice") (substantially in the form of Exhibit 5 to the Motion) to each Third Party Payer that is a potential member of the Classes and whose address is reasonably ascertainable; (b) to mail or cause to be mailed the TPP Notice to any TPP that is a potential member of the Classes that requests a copy of the TPP Notice; and (c) to cause the TPP Summary Notice of Settlement (the "TPP Summary Notice of Settlement") (substantially in the form of Exhibit 6 to the Motion) to be published in the national edition of the Wall Street Journal one time.

5. IPPs' Co-Lead Counsel are hereby Ordered to direct the Settlement Administrator: (a) to mail or cause to be mailed to each consumer identified as a class member at

the time of the administration of the settlement with Ivax Pharmaceuticals in these consolidated actions the Consumer Notice of Settlement (the "Consumer Notice") (substantially in the form of Exhibit 3 to the Motion); (b) to mail or cause to be mailed the Consumer Notice to each consumer that is a potential member of the Classes who requests a copy of the Consumer Notice; (c) to cause the Consumer Summary Notice of Settlement (the "Summary Notice of Settlement") (substantially in the form of Exhibit 4 to the Motion) to be published one time in each of those publications set forth in the Notice Plan.

6.     The Notice Plan, attached as Attachment C to the Settlement Agreement, constitutes the best notice practicable to the members of the IPP Classes and satisfies the requirements of due process and Federal Rule of Civil Procedure 23.

7.     The proposed Consumer Distribution Plan, attached as Exhibit 7 to the Motion, the proposed TPP Distribution Plan, attached as Exhibit 8 to the Motion, and that portion of the Government Compensation Plan allocating amounts specified for the Designated Governmental Entities and civil penalties to Colorado, attached as Exhibit 9, are approved.

8.     The Court approves the designation in the Settlement Agreement of Complete Claim Solutions, Inc. as the Settlement Administrator. Responsibilities of the Settlement Administrator shall include those specified in the Settlement Agreement.

9.     Any TPP member of the IPP Classes that wishes to be excluded from the IPP Classes shall mail via first-class mail a written Notice of Exclusion to the Settlement Administrator, to be received no later than April 11, 2005. The TPP Notice of Exclusion is approved.

10.    Any Consumer member of the IPP Classes that wishes to be excluded from the IPP Classes shall mail via first-class mail a written request for exclusion to the Settlement Administrator, to be postmarked no later than June 15, 2005.

11.    Any information received by the Settlement Administrator in connection with the Settlement that pertains to a particular member of the IPP Classes, or information contained in a Notice of Exclusion (other than the identity of the entity or person requesting exclusion), shall not be disclosed to any person or entity other than IPPs' Co-Lead Counsel and Defendants, or the Court.

12.    A hearing shall be held before the undersigned District Judge on June 27, 2005 (the "Fairness Hearing") for the purpose of considering: (a) whether the proposed settlement between the Plaintiffs and the Defendants is fair, reasonable, and adequate, and should be approved by the Court; (b) whether IPPs' counsel's applications for fees and expenses incurred in prosecuting this case, and any incentive payments to IPPs, should be granted; and (c) Plaintiff States' motion for attorneys' fees and costs. The hearing may be rescheduled or continued. In this event, the Court will furnish all counsel with appropriate notice. IPPs' Co-Lead Counsel shall be responsible for communicating any such notice promptly to the Classes by having a conspicuous notice posted in the Settlement Administrator's website, www.terazosinlitigation.com.

13.    Persons or entities wishing to object or otherwise be heard with respect to the proposed settlement, or to appear in person at the Fairness Hearing, must first send a *Notice of Intention to Appear and a Summary Statement* outlining the position(s) to be asserted and the grounds therefor, together with copies of any supporting papers or briefs, via first-class mail, postage prepaid, to the Settlement Administrator, with copies to Co-Lead Counsel for the IPP

Classes and to Defendants. Such Notices and Statements from TPPs must be received no later than April 11, 2005. Such Notices and Statements must be postmarked from Consumers no later than June 15, 2005. Except as herein provided, no person shall be entitled to contest the terms of the proposed settlement. All persons who fail to submit *a Notice of Intention to Appear* as well as a *Summary Statement* as provided above may be deemed to have waived such objections and will not be heard in person at the hearing.

14.     The Court finds that the Settlement Fund is a "qualified settlement fund" as defined in Section 1.468B-1(c) of the Treasury Regulations in that it satisfied each of the following requirements:

    a.     The Settlement Fund is established pursuant to an order of this Court and is subject to the continuing jurisdiction of this Court;

    b.     The Settlement Fund is established to resolve or satisfy one or more claims that have resulted or may result from an event that has occurred and that has given rise to at least one claim asserting liabilities; and

    c.     The assets of the Settlement Fund are segregated from other assets of Defendants, the transferors of payments to the Settlement Fund.

15.     Under the "relation back" rule provided under Section 1.468B-1(j)(2)(i) of the Treasury Regulations, the Court finds that Defendants and the Settlement Administrator may jointly elect to treat the Settlement Fund as coming into existence as a "qualified settlement fund" on the later of the date the Settlement Fund met the requirements of ¶¶ 14(b) and 14(c) of this Order or January 1 of the calendar year in which all the requirements of ¶ 14 of this Order are met. If such a relation-back election is made, the assets held by the Settlement Fund on such date shall be treated as having been transferred to the Settlement Fund on that date.

16.     Pending the effective date of the Settlement Agreement, all members of the IPP Classes are enjoined from instituting, commencing or prosecuting any action against the Defendants based upon or relating to the claims released as set forth in the Settlement Agreement.

17.     Rider A to the Settlement Agreement shall be filed under seal and remain under seal until thirty (30) days following the Effective Date.

DONE and ORDERED in Miami, Florida, this ____ day of _____, 2005.

_____
PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

Exhibit 3

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA, MIAMI DIVISION

IN RE TERAZOSIN HYDROCHLORIDE          Master File No. 99-MDL-1317
ANTITRUST LITIGATION                    MDL No. 1317

## NOTICE OF PENDENCY OF CLASS ACTION, PROPOSED SETTLEMENT AND FAIRNESS HEARING

**TO:   ALL CONSUMERS (NATURAL PERSONS) WHO HAVE AT ANY TIME FROM OCTOBER 15, 1995 THROUGH MARCH 7, 2005 (THE "CLASS PERIOD") PAID ALL OR PART OF THE PURCHASE PRICE OF HYTRIN® OR ITS AB-RATED GENERIC BIOEQUIVALENTS ("TERAZOSIN PRODUCTS") INCLUDING ALL FORMS OF TERAZOSIN HYDROCHLORIDE OTHER THAN FOR RESALE, IN ALABAMA, CALIFORNIA, FLORIDA, ILLINOIS, KANSAS, MAINE, MICHIGAN, MINNESOTA, MISSISSIPPI, NEVADA, NEW MEXICO, NEW YORK, NORTH CAROLINA, NORTH DAKOTA, SOUTH DAKOTA, TENNESSEE, WEST VIRGINIA OR WISCONSIN, OR VIA MAIL ORDER FOR RESIDENTS OF SUCH STATES.**

## THIS NOTICE EXPLAINS YOUR RIGHTS - PLEASE READ IT CAREFULLY

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

## I.   PURPOSE OF THIS NOTICE

- A settlement has been proposed in a class action lawsuit involving disputed claims alleging violations of antitrust and consumer protection laws through conduct relating to the sale of Terazosin Products, which are prescription drugs used to treat hypertension and enlarged prostate. This lawsuit does not involve the safety or effectiveness of Terazosin Products.

- The settlement will provide payments to those who submit valid claims, plus expenses and costs of notice and administration of the settlement, as well as fees and litigation costs incurred by the lawyers appointed by the United States District Court for the Southern District of Florida (the "Court"), subject to Court approval.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| SUBMIT A CLAIM | The only way to get a payment. |

|  | Get no payment. This is the only option that allows you to be part of any other lawsuit against the Defendants about the legal claims alleged in this case. |
| | Write to the Court about why you don't like the settlement. |
| | Ask to speak in Court about the settlement. |
| | Get no payment. Give up rights to be part of any other lawsuit against Defendants about the legal claims alleged in this case. |

- These rights and options – **and the deadlines to exercise them** – are explained in this notice.

- The Court in charge of this case has to decide whether to approve the settlement. Payments will be made if the Court approves the settlement, and after any appeals are resolved. Please be patient.

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **PAGE**
     1.    Why was this notice issued?
     2.    What is the lawsuit about?
     3.    What are Terazosin Products?
     4.    Why is this a class action?
     5.    Why is there a Settlement?

**WHO IS IN THE SETTLEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **PAGE**
     6.    How do I know if I am part of the Settlement?
     7.    Are there exceptions to being included?
     8.    How are consumers included?
     9.    Which entities are included?
     10.   What if I'm not sure whether I'm included in the Settlement?

**THE SETTLEMENT BENEFITS–WHAT YOU GET** . . . . . . . . . . . . . . . . . . . . . . . . . . **PAGE**
     11.   What does the Settlement provide?
     12.   How much will my payment be?
     13.   Which "payments for Terazosin Products" qualify me for money from the settlement?
     14.   What am I giving up as part of the Settlement?

**HOW DO YOU GET A PAYMENT--SUBMITTING A CLAIM** . . . . . . . . . . . . . . . . . **PAGE**
     15.   How can I get a payment?

16.     When would I get my payment?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** . . . . . . . . . . . . . . . . . . . . . . **PAGE**
17.     If I exclude myself, can I get money from this Settlement?
18.     If I don't exclude myself, can I sue later?
19.     How do I get out of the Settlement?

**THE LAWYERS REPRESENTING YOU** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **PAGE**
20.     Do I have a lawyer in the case and how do I contact them?
21.     How will the lawyers be paid?

**OBJECTIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **PAGE**
22.     How do I tell the Court if I don't like the Settlement?
23.     What's the difference between objecting and excluding?

**THE COURT'S FAIRNESS HEARING** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **PAGE**
24.     When and where will the Court decide whether to approve the Settlement?
25.     Do I have to come to the hearing?
26.     May I speak at the hearing?

**IF YOU DO NOTHING** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **PAGE**
27.     What happens if I do nothing at all?

**GETTING MORE INFORMATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **PAGE**
28.     How do I get more information?

## BASIC INFORMATION

### 1. Why was this notice issued?

A Court authorized this notice because you have a right to know about a proposed settlement of this class action lawsuit, including the right to claim money, and about all of your options, before the Court decides whether to give "final approval" to the settlement. If the Court approves the settlement, and after any appeals are resolved, payments will be made to everyone who submitted a valid claim. This notice explains the lawsuit, the settlement, your legal rights, what benefits are available, who may be eligible for them, and how to get them.

### 2. What is the lawsuit about?

Between 1999 and 2001, a number of Consumer Plaintiffs (including Martin Bernstein, Lavera Grosskrueger, David Grund, William Mednick, Albert J. Meyer, Willie O'Neal, and Victor Scafani) and Third Party Payer Plaintiffs (including Cobalt Corporation (formerly known as United Wisconsin Services, Inc. and now known as Crossroads Acquisition Corporation), Blue Cross and Blue Shield of Alabama, and Blue Cross/Blue Shield of Michigan) (collectively, the "Indirect Purchaser Plaintiffs" or "IPPs") filed lawsuits against Abbott Laboratories ("Abbott"), and Geneva Pharmaceuticals, Inc. ("Geneva") (now known as Sandoz Inc.) (collectively "Defendants"). The cases were consolidated in the United States District Court for the Southern District of Florida, where they have been proceeding under the name *In re Terazosin Hydrochloride Antitrust Litig.,* MDL No. 1317. The Plaintiffs contend that Defendants allegedly violated antitrust and consumer protection laws through conduct relating to the sale of Terazosin Products. The Defendants have denied all wrongdoing and have asserted a number of defenses to the claims against them. This case does not involve the safety or effectiveness of Terazosin Products.

In 2001, the States of Florida, Kansas, and Colorado, through their respective Attorneys General, after conducting factual investigations, filed their own complaint in this case, in the same Florida federal court. The States asserted claims on their own behalf, on behalf of certain governmental entities and, in the case of Florida and Kansas, on behalf of consumers in those states. The Attorney General for the State of Florida for the State of Florida was appointed by the Court as State Liaison Counsel. The Defendants have also denied all wrongdoing alleged in the States' complaint and have asserted defenses to those claims as well.

Over the past five years, the Parties have engaged in extensive pretrial discovery and motions practice. Since 1999, the IPPs and Plaintiff States have cooperated in and coordinated their efforts for the benefit of the Consumers, Third Party Payers and governmental entities they represent. They have conducted extensive economic and factual investigation relating to the claims, underlying events, and transactions alleged in the Complaints, including review of in

excess of a million pages of documents, the taking of more than fifty (50) depositions of defense and non-party witnesses, production of data by Plaintiffs, the giving of deposition testimony by various Plaintiffs, consultations with expert witnesses and the taking of expert discovery, and extensive legal research on the applicable statutes and case law of the fifty (50) states and the District of Columbia.

During the course of the case, both Plaintiffs and Defendants have filed numerous motions, including complex motions for summary judgment on novel questions of antitrust and other laws. The IPP Plaintiffs also moved for the certification of classes of "end payers" – Consumers and Third Party Payers – in a number of States. After extensive discovery, briefing and argument, the Court on April 8, 2004 granted the IPP Plaintiffs' motion and certified the end payer classes, as described more fully in later sections of this Notice. The Defendants have appealed the Court's class certification decision to the United States Court of Appeals for the Eleventh Circuit; that appeal was fully briefed as of November 2004, but the appellate court had not decided the appeal as of the date of this Notice.

For more information about the lawsuit, please go to **www.terazosinlitigation.com** or call, toll-free, 1-877-886-0283.

### 3. What are Terazosin Products?

Terazosin Products are commonly used to treat hypertension and enlarged prostate.

### 4. Why is this a class action?

In a class action, one or more people, called Class Representatives, sue on behalf of people who have similar claims. All these people are a "Class" or "Class Members." One court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

The United States District Court for the Southern District of Florida is overseeing this class action lawsuit. The case is known as *In re Terazosin Hydrochloride Antitrust Litigation*, Case No. 99-MDL-1317. The people who sued are called the "Plaintiffs," and the companies they sued, Abbott and Geneva, are called the "Defendants."

### 5. Why is there a Settlement?

Both sides agreed to a settlement to avoid the cost and risk of a trial. The settlement does not mean Defendants did anything wrong or that they violated any laws. The Class

1418 / MISC / 00071686.WPD v1

Representatives and the lawyers representing them think the settlement is best for all Class members.

## WHO IS IN THE SETTLEMENT?

To see if your rights will be affected by this settlement or if you will get money from the settlement, you first have to determine if you are a Class Member.

### 6. How do I know if I am part of the Settlement?

The Court has certified the following classes: all Consumers and Third Party Payers (such as insurers) who or which paid all or part of the purchase price of Terazosin Products other than for resale, in one or more of the following states – **Alabama, California, Florida, Illinois, Kansas, Maine, Michigan, Minnesota, Mississippi, Nevada, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, West Virginia, and Wisconsin** – or via mail order for delivery to one or more of those same states, at any time during the period October 15, 1995 through March 7, 2005 (the "Class Period"). You are a member of one of these classes if you purchased Terazosin Products in one or more of these states or by mail order for delivery to one or more of these states.

The States of Florida, Kansas and Colorado, and certain governmental entities in Florida and Kansas, represented by their State Attorneys General, are also part of this Settlement. Additionally, the Attorneys General of the States of Florida and Kansas have claims on behalf of consumers in those States. Colorado law does not permit the State Attorney General to represent consumers in a case like this one, and Colorado consumers are not part of this settlement.

### 7. Are there exceptions to being included?

Excluded from the Settlement are Defendants and any of their officers and directors, governmental entities, other than the States of Colorado, Florida and Kansas, and certain governmental entities represented by the Attorneys General of Florida and Kansas, direct purchasers of Terazosin Products to the extent of such purchases, entities that purchased Terazosin Products for resale, to the extent of such purchases for resale, and any persons or entities who have suffered no economic injury as a result of Defendants' allegedly unlawful conduct.

### 8. How are consumers included?

Consumers who paid all or part of the purchase price of Terazosin Products in **Alabama, California, Florida, Illinois, Kansas, Maine, Michigan, Minnesota, Mississippi, Nevada, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, West Virginia, and Wisconsin,** or via mail order for delivery to one or more of those same states, are included in

the settlement.

## 9. Which entities are included?

Entities, also known as "third party payers" or "TPPs," include health insurers that paid part or all of the cost of Terazosin Products for their insured patients. Entities may also include employee welfare benefit plans that paid some portion of the purchase price of Terazosin Products for employees or family members of employees insured under these plans.

## 10. What if I'm not sure whether I'm included in the Settlement?

If you are not sure whether you are included in the Settlement, you may call the toll-free number **1-877-886-0283** with questions. You may also write with questions to the Settlement Administrator at:

**In re Terazosin Hydrochloride Antitrust Litigation**
**c/o Complete Claim Solutions, Inc.**
**P.O. Box 24607**
**West Palm Beach, FL 33416**

### OR VISIT THE WEBSITE:

### WWW.TERAZOSINLITIGATION.COM

### PLEASE DO NOT CONTACT THE COURT FOR ADDITIONAL INFORMATION

### THE SETTLEMENT BENEFITS-WHAT YOU GET

## 11. What does the Settlement provide?

The Settlement provides for a fund that will initially contain a total of $30.7 million. After deducting the State Settlement Fund, attorneys' fees and litigation expenses incurred by IPP Plaintiffs during the case, and notice and administrative expenses for the Settlement, the fund will be divided so that 25% will go to consumers, and 75% will go to the third party payers. Incentive Payments will also be made as ordered by the Court for Class Representatives (See question 21). The net fund remaining will be distributed, in cash, to consumers as well as to third party payers who submit valid claim forms. Depending on the amount of claims made, money may be reallocated between the consumer portion and third party payer portion of the fund based on distribution plans called for in the Settlement Agreement.

## 12. How much will my payment be?

Your share of the Settlement fund will be paid on a *pro rata* basis, which means it will be based on how much you spent on Terazosin Products from October 15, 1995 through March 7, 2005, and on how many other class members file valid claims. The maximum amount you can receive from the settlement is 100% of the amount you paid for Terazosin Products. For example, if you paid $100 for Terazosin Products between October 15, 1995, and March 7, 2005, you may receive up to $100, but you will not receive more than $100.

## 13. Which payments for Terazosin Products qualify me for money from the Settlement?

If your co-pay for generic drugs was the same as your co-pay for non-generic drugs, or you were reimbursed in full by insurance, you can't get money back for those amounts, because you did not lose money – that is, you did not suffer economic injury – from the events at issue in this Settlement.

## 14. What am I giving up as part of the Settlement?

If the Settlement becomes final, you will be releasing Defendants for all the claims identified in Section I.AA. of the Settlement Agreement. The Settlement Agreement is available at **www.terazosinlitigation.com,**. The Settlement Agreement describes the released claims with specific descriptions, in necessarily accurate legal terminology, so read it carefully. **The release does not cover any legal claims about the safety or effectiveness of Terazosin Products.**

### HOW DO YOU GET A PAYMENT-SUBMITTING A CLAIM

## 15. How can I get a payment?

To ask for a payment, you must complete the attached Consumer Claim Form ("Claim Form").

## Your Claim Form must be postmarked by July 15, 2005, and mailed to:

**In re Terazosin Hydrochloride Antitrust Litigation
c/o Complete Claim Solutions, Inc.
P.O. Box 24607
West Palm Beach, FL 33416**

## 16. When would I get my payment?

Payments will be made to Class Members after the Court grants "final approval" of the Settlement and any appeals are resolved. Please be patient, as distributions may come many

months after the claims deadline.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want to be a part of this Settlement and you want to keep the right to sue or continue to sue Defendants over the legal issues in this case, then you must take steps to get out. This is called asking to be excluded from or sometimes called "opting out" of the Class.

### 17.  If I exclude myself, can I get money from this Settlement?

**No.**  If you exclude yourself, do not send in a claim form requesting a payment.  If you ask to be excluded, you will not get any Settlement payment, and you cannot object to the Settlement.  But you may sue, continue to sue, or be part of a different lawsuit against Defendants in the future. You should be aware, however, that if you choose to exclude yourself the passage of time may have some effect on the amount you may recover in another lawsuit, or your ability to recover at all.  If you exclude yourself, you will not be bound by anything that happens in this lawsuit.

### 18.  If I don't exclude myself, can I sue later?

**No.**  Unless you exclude yourself, you give up the right to sue Defendants for the claims that this settlement resolves.  You must exclude yourself from this Settlement to start or continue your own lawsuit.  Remember, the exclusion deadline is **June 15, 2005.**

### 19.  How do I get out of the Settlement?

**If you are an individual and wish to be excluded from the Settlement, you MUST send a letter to the Settlement Administrator below postmarked no later than June 15, 2005. In the letter, be sure to include the name of this case and your name, address and telephone number, and sign your letter.**

In re Terazosin Hydrochloride Antitrust Litigation
c/o Complete Claim Solutions, Inc.
P.O. Box 24607
West Palm Beach, FL 33416

**You can't ask to be excluded on the phone or at the website.**

## THE LAWYERS REPRESENTING YOU

**20. Do I have a lawyer in the case and how do I contact them?**

The Court has appointed the following law firms to represent you and other Class Members as "Co-Lead Class Counsel":

| | | |
|---|---|---|
| Lowey Dannenberg Bemporad & Selinger, P.C. The Gateway, 11th Floor One North Lexington Ave. White Plains, NY 10601 | Wallace Jordan Ratliff & Brandt, LLC 800 Shades Creek Parkway, Suite 400 Birmingham, AL 35209 | Cohen Milstein Hausfeld & Toll 1100 New York Ave. N.W. West Tower, Suite 500 Washington, DC 20005 |
| Phone (914) 997-0500 | Phone (205) 870-0555 | Phone (202) 408-4600 |

Also representing Florida and Kansas consumers as well as certain Florida and Kansas governmental entities are the Attorneys General of the States of Florida and Kansas. If you want to be represented by your own separate lawyer, you may hire one at your own expense.

**21. How will the lawyers be paid?**

To be paid for the work they have done in this case, Co-Lead Class Counsel will ask the Court for attorneys' fees not to exceed 30% of the Settlement fund plus reimbursement of their expenses. The Court may award more or less than these amounts. Class Counsel will also ask for up to $2,500 for each of the Consumer Class Representatives and $40,000 for each of the Third Party Payer Class Representatives to compensate them for the time and expense of prosecuting this case on behalf of the class for over five years.

The Attorney General of the State of Florida, as State Liaison Counsel, along with the Attorneys General of the States of Kansas and Colorado have been involved in the investigation and litigation of this case for nearly five years. The Plaintiff States have worked for the benefit of consumers and certain public entities throughout this case. For these efforts, and subject to Court approval, the Plaintiff States and primarily the State of Florida, as State Liaison Counsel, will ask to be reimbursed up to $1,625,000 for the fees and costs.

## OBJECTIONS

**22. How do I tell the Court if I don't like the Settlement?**

If you're a Class member and you do not exclude yourself, you can object to the Settlement, including the amount of Class Counsel's fees and expenses. You should give reasons why you think the Court should not approve it. The Court will consider your views.

**You must object in writing. Be sure to include your name, address and telephone number, your signature, the name of the case, and the reasons why you object to the Settlement.**

Send the objection to the Settlement Administrator at the address below **postmarked no later than June 15, 2005**. You do not have to appear personally in court, but you may do so.

> In re Terazosin Hydrochloride Antitrust Litigation
> c/o Complete Claim Solutions, Inc.
> P.O. Box 24607
> West Palm Beach, FL 33416

**23. What's the difference between objecting and excluding?**

Objecting is simply telling the Court that you don't like something about the Settlement. You can object only if you stay in the Settlement. Excluding yourself is telling the Court that you don't want to be part of the Settlement. If you exclude yourself, you cannot object to the Settlement or to the attorneys' fees because the case no longer affects you, and you will not receive any Settlement payment.

### THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement. You may attend, but you don't have to. You may also ask to speak at the hearing.

## 24.  When and where will the Court decide whether to approve the Settlement?

The Court will hold a Fairness Hearing at \_\_\_\_ \_.m. on Friday, June 27, 2005 at the United States District Court for the Southern District of Florida, Court Room No. 5, 301 North Miami Avenue, Miami, FL. At this hearing the Court will consider whether the Settlement is fair, reasonable, and adequate. The Court will decide whether to approve the Settlement and the motion for attorneys' fees, expenses, and awards to the Class Representatives and Plaintiff States. If there are objections, the Court will consider them. The hearing may be moved to a different date without additional notice, so it is a good idea to check www.terazosinlitigation.com for updated information.

## 25.  Do I have to come to the hearing?

**No**. Class Counsel will answer any questions the Court may have. But, you are welcome to come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it's not necessary.

## 26.  May I speak at the hearing?

To speak at the Fairness Hearing, you must send a letter or other written document saying that the letter or document is your "Notice of Intention to Appear" in *In re Terazosin Hydrochloride Antitrust Litigation*, 99-MDL-1317. Be sure to include your name, address, telephone number, and your signature. You must send your "Notice of Intention to Appear" to the address listed in question 22 above. It must be postmarked no later than **June 15, 2005.**

### IF YOU DO NOTHING

## 27.  What happens if I do nothing at all?

If you do nothing, you will not get any payment from this Settlement. Unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Defendants about the legal issues alleged in this case.

### GETTING MORE INFORMATION

## 28.  How do I get more information?

This Notice summarizes the proposed Settlement. More details are in a Settlement Agreement. You

1418 / MISC / 00071686.WPD v1

can get a copy of the Settlement Agreement at **www.terazosinlitigation.com** or by calling the toll free number 1-877-886-0283.  You may also write with questions to Settlement Administrator at:

In re Terazosin Hydrochloride Antitrust Litigation
c/o Complete Claim Solutions, Inc.
P.O. Box 24607
West Palm Beach, FL 33416

To make a claim, complete and mail to the address below, **postmarked by July 15, 2005**.

## CONSUMER CLAIM FORM

**Note: You may participate in this Settlement ONLY if you purchased Hytrin or its generic equivalent ("Terazosin Products") at any time from October 15, 1995 through March 7, 2005, other than for resale, in one or more of the following states – Alabama, California, Florida, Illinois, Kansas, Maine, Michigan, Minnesota, Mississippi, Nevada, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, West Virginia or Wisconsin – or via mail order for delivery to one or more of those states.**

*Section 1 - Everyone must complete this Section. **(Please print or type)***

1.    Hytrin or Terazosin Hydrochloride Purchaser Name:

_____
(Use name in which prescriptions were written)

2.    Address:_____
               *Street Address*

_____   _____   _____
*City*                              *State*                *Zip Code*

3.    Date of Birth:_____/_____/_____

4.    Last 4 digits of your Social Security Number:_____

5.    Telephone Number: (_____)_____

6.    E-Mail Address (optional): _____

7.    Did you have a prescription for Terazosin Products filled at any time between October 15, 1995 and March 7, 2005?

                        Yes            No

1418 / MISC / 00071686.WPD v1

8.   State the dates between October 15, 1995 and March 7, 2005 when you purchased Terazosin Products:

_____/_____/_____                    _____/_____/_____
           *From*                                        *To*

9.   Please provide the name (and address and phone number, if possible) of the doctor who prescribed Terazosin Products:

Doctor's Name:_____

Address and Phone Number:   _____

_____

_____

10.   **Did you have insurance that included prescription drug coverage?** (If your prescription drug coverage changed while on terazosin - for example, you did not always have prescription drug coverage - please explain on the back of this form.)

                          Yes           No

11.   **What was the total dollar amount that you paid for Terazosin Products, between October 15, 1995 and March 7, 2005?** (You must **not** include any amounts that **were paid by or reimbursed to you by a third party**, such as a health insurer. Also, if you would have paid the same amount for a generic drug as you paid for Hytrin - for example, your generic and brand drug co-pays were the same - do not include the amount you paid at that time.)

                          $_____

*Section 2 - Complete this Section only if you are filing this form on someone else's behalf. (Please type or print.)*

1.   Your name:_____

2.   Your relationship to the purchaser of Terazosin Products:

_____

3.     Is the purchaser of Terazosin Products, deceased? (Note: If you are submitting this claim on behalf of a deceased claimant, we may contact you for documentation that shows you can act on behalf of that person's estate.)

                                   Yes              No

*Section 3 - EVERYONE must read and complete this Signature and Certification Section. (Please type or print.)*

## FULL AND GENERAL RELEASE

Please read this information.  It explains the claims you are releasing as a member of the Settlement classes:

By signing below, I acknowledge that, if the Settlement is finally approved by the Court and becomes effective, members of the Indirect Purchaser Plaintiff ("IPP") Settlement Classes who have not made valid and timely elections to exclude themselves from the IPP Settlement Classes, whether or not they object to the Settlement Agreement and whether or not they make a claim upon or participate in any Settlement Fund (including both third party payers ("TPPs") and Consumers, whether IPPs or not), as well as their respective past, present and future directors, officers, insurers, employees, shareholders, agents, attorneys, trustees, associates, general or limited partners, affiliates, divisions, agents, representatives, predecessors, parents, subsidiaries, agencies, departments, institutions, successors and assigns ("Releasors"), will unconditionally, fully and finally release and discharge forever the Defendants and their respective past, present and future directors, officers, employees, agents, attorneys, shareholders, affiliates, divisions, agents, representatives, parents, subsidiaries, general or limited partners, insurers, and the predecessors, heirs, executors, administrators, successors, and assigns of each of the foregoing ("Releasees") of all claims, demands, debts, obligations, damages, civil penalties, whenever and wherever incurred, liabilities of any nature whatsoever (including costs, expenses, penalties and attorneys' fees), actions, suits, proceedings, assertions, and causes of action (**"Claims"**), known or unknown, suspected or unsuspected, in law or in equity of any jurisdiction, including but not limited to Claims arising under any federal or state antitrust, unfair methods of competition, or consumer protection laws, under any state or federal deceptive practices acts, or under the common laws (including any theory of unjust enrichment) of any jurisdictions, whether accrued in whole or in part of any kind whatsoever, from the beginning of time through the date this Settlement Agreement is preliminarily approved by the Court, which any Releasor had, has, or may have in the future, directly, representatively, derivatively, or in any other capacity against any Releasee (i) arising out of or concerning the allegations, or the facts and circumstances giving rise to the allegations in the Complaints or in any other complaint filed, consolidated or coordinated in the case called *In re Terazosin Hydrochloride Antitrust Litig.*, Case No. 99-MDL-1317 (Southern District of Florida), or (ii) otherwise relating to any alleged delay in marketing or selling of generic equivalents of Hytrin and/or Terazosin Products, regardless of whether such claim was raised in the Complaints. Released Claims shall not be construed to include: (1) claims arising solely from and asserting damages based solely on an alleged physical injury; or (2) claims that may be asserted by any Releasor relating to the "best price" or "average wholesale price" reporting practices, or to health care or Medicaid fraud or abuse, except to the extent that such claims arise from the facts, matters, transactions, events, occurrences, acts, disclosures, statements, omissions, or failures to act set forth in the Complaints, or in any other complaint filed in any action that has been consolidated or coordinated with any of the Complaints.

        Moreover, if the Settlement is finally approved by the Court and becomes effective, each member of the IPP Settlement Classes that has not made a valid and timely election to exclude itself from the IPP Settlement Classes will also be deemed to have expressly waived, released and forever discharged any and all provisions, rights and benefits that may be available under Section 1542 of the California Civil Code (**"Section 1542"**), which provides: "A general release does not extend to **claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his settlement with the debtor"**;

or under any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable or equivalent to Section 1542 (each a **"Comparable Law"**). Each Releasor may hereafter discover facts other than or different from those which he, she or it knows or believes to be true, but each Releasor hereby expressly waives and fully, finally and forever settles and releases, upon the Effective Date, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that would otherwise fall within the definition of Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. Each Releasor also hereby expressly waives and fully, finally and forever settles and releases any and all claims it may have against any Released Party under California's Unfair Competition Law, § 17200, *et seq.*, of the California Business and Professions Code or any similar, comparable or equivalent provision of the law of any other state or territory of the United States or other jurisdiction, which claims are hereby expressly incorporated into the definition of Released Claims.

I, declare, under penalty of perjury, that all the information provided in this form is true, correct and complete. I understand that filing a false claim constitutes a federal criminal offense under 18 U.S.C. § 1621 and § 1623.

_____          _____/_____/_____

SIGNATURE                                                DATE

(Note: You must sign and date for your submission to be valid.)

## MAIL BY **JULY 15, 2005** TO:

In re Terazosin Hydrochloride Antitrust Litigation

c/o Complete Claims Solutions, Inc.

P.O. Box 24607

West Palm Beach, FL 33416

*If you have any questions about how to fill out any of the blanks in this form, please call the Settlement Administrator, toll-free, at 1-877-886-0283 or visit the website www.terazosinlitigation.com.*

# Exhibit 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA, MIAMI DIVISION

IN RE TERAZOSIN HYDROCHLORIDE          Master File No. 99-MDL-1317
ANTITRUST LITIGATION                   MDL No. 1317

SUMMARY NOTICE OF PENDENCY OF CLASS ACTION, PROPOSED
SETTLEMENT AND FAIRNESS HEARING

# PLEASE READ THIS IMPORTANT NOTICE TO DETERMINE IF YOU HAVE A CLAIM IN A CLASS ACTION SETTLEMENT.

A class action settlement may provide money to people and entities (together called "class members") who paid for any portion of the price of the prescription drug Hytrin® or its generic equivalent, terazosin hydrochloride ("Terazosin Products"), at any time from October 15, 1995 through March 7, 2005, and who qualify under the settlement. If you are included, you may submit a claim for a payment, or you can exclude yourself from, or object to, the settlement. The United States District Court for the Southern District of Florida, Hon. Patricia A. Seitz, will have a hearing to decide whether to approve the settlement so that payment can be issued.

**In order to make a claim in this settlement, you must have purchased Terazosin Products in one or more of these states – Alabama, California, Florida, Illinois, Kansas, Maine, Michigan, Minnesota, Mississippi, Nevada, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, West Virginia or Wisconsin – or via mail order for delivery to one or more of those same states.**

---

The lawsuit claims that Abbott Laboratories and Geneva Pharmaceuticals, Inc. (now known as Sandoz Inc.) (the "Defendants") allegedly violated antitrust and consumer protection laws through conduct relating to the sale of Terazosin Products. Defendants deny the claims and do not admit any wrongdoing by entering into this settlement. This litigation does <u>not</u> involve the safety or effectiveness of Terazosin Products in any way.

### What Does the Settlement Provide?

A fund initially containing $30.7 million will be established. After deducting court-awarded attorneys' fees (not to exceed 30%), expenses incurred during the litigation, payments to class representatives, $2 million to the State Attorneys General of Florida, Kansas and Colorado relating to their governmental entity claims and including reimbursement for their attorneys' fees

and costs, and certain costs of notice and administration of this settlement, the remaining amount will be distributed to consumers and entities known as Third Party Payers (for example, health insurers) who submit timely and valid claim forms. Seventy-five percent (75%) of these remaining funds will go to Third Party Payers and twenty-five percent (25%) will go to consumers. If you would like more information, a detailed Notice is available at www.terazosinlitigation.com, or by calling 1-877-886-0283.

### How Do You Get a Payment?

Fill out the Claim Form and mail it no later than **July 15, 2005** to the address on the form. To get a Claim Form go to www.terazosinlitigation.com or call toll-free 1-877-886-0283, or write to the address below. The amount you receive will depend on the total amount of money that you paid for Terazosin Products and how many valid claims are filed.

### Your Other Rights.

If you don't want to be a part of this settlement, or if you don't want to be legally bound by it, you **MUST** exclude yourself by **June 15, 2005** – unless you are an entity known as a Third Party Payer (which is explained fully in the full Notice), in which case you **MUST** exclude yourself by **April 11, 2005** – or you won't be able to sue, or continue to sue, Defendants about the legal claim in this case. If you exclude yourself, you can't get a payment from this settlement. If you stay in the settlement, you may choose to object to it but you must do so by **June 15, 2005** (or **April 11, 2005**, if you are a Third Party Payer). The detailed Notice explains how to exclude yourself or object. The Court will hold a hearing in this case on **June 27, 2005**, to consider whether to approve the settlement. At that time, the Court will also consider a request by the private lawyers representing the classes for fees and expenses. You have the right to appear and to ask to be heard at the hearing, but you do not have to do either.

**This Summary Notice is only a summary of the provisions of the settlement.** For a more complete Notice, to review the Settlement Agreement, to obtain a Claim Form, or for more information, you may call toll-free **1-877-886-0283**, go to www.terazosinlitigation.com, or write to this address: In re Terazosin Hydrochloride Antitrust Litigation, Complete Claims Solutions, Inc. P.O. Box 24607, West Palm Beach, FL 33416.

### PLEASE DO NOT CONTACT THE COURT FOR ADDITIONAL INFORMATION

Dated: March 7, 2005 BY ORDER OF THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

# Exhibit 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA, MIAMI DIVISION

IN RE TERAZOSIN HYDROCHLORIDE        Master File No. 99-MDL-1317
ANTITRUST LITIGATION        MDL No. 1317

## NOTICE OF PENDENCY OF CLASS ACTION, PROPOSED SETTLEMENT AND FAIRNESS HEARING

**TO:**    ALL THIRD PARTY PAYERS THAT HAVE AT ANY TIME FROM OCTOBER 15, 1995 THROUGH MARCH 7, 2005 (THE "CLASS PERIOD") PAID ALL OR PART OF THE PURCHASE PRICE OF HYTRIN® OR ITS AB-RATED GENERIC BIOEQUIVALENTS ("TERAZOSIN PRODUCTS") INCLUDING ALL FORMS OF TERAZOSIN HYDROCHLORIDE OTHER THAN FOR RESALE, IN **ALABAMA, CALIFORNIA, FLORIDA, ILLINOIS, KANSAS, MAINE, MICHIGAN, MINNESOTA, MISSISSIPPI, NEVADA, NEW MEXICO, NEW YORK, NORTH CAROLINA, NORTH DAKOTA, SOUTH DAKOTA, TENNESSEE, WEST VIRGINIA OR WISCONSIN, OR VIA MAIL FOR RESIDENTS OF SUCH STATES.**

## THIS NOTICE EXPLAINS YOUR RIGHTS - PLEASE READ IT CAREFULLY

### I.  PURPOSE OF THIS NOTICE

The parties to the above-captioned actions pending before the Honorable Patricia A. Seitz of the United States District Court for the Southern District of Florida (the "Court") have agreed to a Settlement, described in more detail in Section IV. The Settlement is subject to approval by the Court. The purpose of this Notice is to inform Third Party Payer ("TPP") Members of the Indirect Purchaser Plaintiff ("IPP") Settlement Classes (described below) of their rights. The provisions in this Notice are qualified and subject in their entirety to the terms of the Settlement Agreement, copies of which are available for review in the manner provided in Section IX. Capitalized terms used but not defined herein have the meanings given to them in the Settlement Agreement.

### II.  THE SETTLEMENT CLASSES

The "IPP Settlement Classes" consist of all Consumers and TPPs who purchased and/or paid all or part of the purchase price of Terazosin Products in one or more of the following states – **Alabama, California, Florida, Illinois, Kansas, Maine, Michigan, Minnesota, Mississippi, Nevada, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, West Virginia, and Wisconsin** – or via mail order for delivery in one or more of those states, at any time during the period October 15, 1995 through March 7, 2005 (the "Class Period"). Excluded from the IPP Settlement Classes are the Defendants, their officers and directors, their direct and indirect parent and subsidiary corporations and their officers and directors; government entities; entities that purchased Terazosin Products for resale, to the extent of such purchases for resale; direct purchasers of Terazosin Products from Defendants, to the extent of such direct purchases; *and*

-1-

indirect purchasers who suffered no economic injury as a result of Defendants' allegedly unlawful conduct.

"Third Party Payer" or "TPP" for these purposes means any entity that was (a) a party to a contract, issuer of a policy or sponsor of a plan, and was also (b) at risk, pursuant to such contract, policy or plan, to pay or reimburse all or part of the cost of Terazosin Products dispensed to natural persons covered by such contract, policy, or plan. Entities with self-funded plans that contract with a health insurance company or other entity to serve as a third party claims administrator to administer their prescription drug benefits may qualify as TPPs. If such an entity's contract with its claims administrator does not shift the financial risk for the purchase of Terazosin Products from the entity to its claims administrator or otherwise assign the entity's rights in any recovery under this Settlement to its claims administrator, the entity with the self-funded plan (rather than the claims administrator) will be a TPP for purposes of this Settlement. Entities with self-funded plans should also be aware that any agreements that they may have with third party claims administrators may affect their ability to, or the terms under which such entities may, assert any claim against the Third Party Payer Settlement Fund, as well as the amount of any recovery to which such entity may be entitled. Entities with self-funded plans that maintain such contractual arrangements with third party claims administrators should review the terms of their administrative services agreements before making any claim against the Third Party Payer Settlement Fund to determine whether the entity or its third party claims administrator possesses the claim and/or has the right or obligation to assert the claim or the right to any or all proceeds that may be paid on the claim.

"Consumer" is any natural person who purchased and/or paid all or part of the purchase price of Terazosin Products during the Class Period.

"Plaintiff States" are the States of Colorado, Florida and Kansas.

### III.   BACKGROUND TO THIS LITIGATION

**The Indirect Purchaser Plaintiffs' Complaints.**   Between 1999 and 2001, a number of Consumer Plaintiffs (including Martin Bernstein, Lavera Grosskrueger, David Grund, William Mednick, Albert J. Meyer, Willie O'Neal, and Victor Scafani) and TPP Plaintiffs (including Cobalt Corporation (formerly known as United Wisconsin Services, Inc. and now known as Crossroads Acquisition Corporation), Blue Cross and Blue Shield of Alabama, and Blue Cross and Blue Shield of Michigan) (collectively, the "Indirect Purchaser Plaintiffs" or "IPPs") filed class action lawsuits against Abbott Laboratories ("Abbott"), and Geneva Pharmaceuticals, Inc. ("Geneva") (now known as Sandoz Inc.) (collectively "Defendants"), contending that between October 15, 1995 and August 1999, Defendants allegedly violated antitrust and consumer protection laws through conduct relating to the sale of Terazosin Products. The plaintiffs sought declaratory judgments, restitution for unjust enrichment, damages, and other equitable relief. Each of these cases is currently pending before the Honorable Patricia A. Seitz of the United States District Court for the Southern District of Florida, before whom the Judicial Panel on Multidistrict Litigation coordinated these actions in MDL No. 1317 on December 20, 1999. *In re Terazosin Hydrochloride Antitrust Litigation*, 2000 WL 33951466 (J.P.M.L. Dec. 20, 1999). In 2002, the IPPs filed their Fourth Amended Coordinated Class Action Complaints (the "IPP Complaints").

**The Plaintiff States' Complaint**. On September 27, 2001, the Plaintiff States filed a complaint against Defendants in the United States District Court for the Southern District of Florida

on their own behalf, on behalf of certain state agencies, and through their statutory, equitable or common law authority or as representative of or *parens patriae* on behalf of natural person citizens of Florida and Kansas, contending that Defendants allegedly violated antitrust and consumer protection laws through conduct relating to the sale of Terazosin Products and seeking injunctive relief, civil penalties, damages, disgorgement, restitution and other equitable relief.

**Class Certification.** On September 4, 2001, the IPPs moved to certify various state classes of Consumers and Third Party Payers.  On April 8, 2004, the Court entered an order ("Class Certification Order") certifying the following state-wide classes of indirect purchasers in Alabama, California, Florida, Illinois, Kansas, Maine, Michigan, Minnesota, Mississippi, Nevada, New Mexico, New York, North Carolina, North Dakota, South Dakota, West Virginia, and Wisconsin:

> All persons and entities who or which have at any time from October 15, 1995 to June 30, 2002, paid all or part of the purchase price of Terazosin Products other than for resale, in the seventeen (17) states listed above or via mail for delivery to those same seventeen (17) states.  Excluded from the state-wide classes were the Defendants, their officers and directors, their direct and indirect parent and subsidiary corporations and their officers and directors; government entities; entities that purchased Terazosin Products for resale, to the extent of such purchases for resale; direct purchasers of Terazosin Products from Defendants, to the extent of such direct purchases; and indirect purchasers who suffered no economic injury as a result of Defendants' allegedly unlawful conduct.

*In re Terazosin Hydrochloride Antitrust Litigation*, 220 F.R.D. 672 (S.D. Fla. 2004).  On April 22, 2004, Defendants petitioned the United States Court of Appeals for the Eleventh Circuit for leave to appeal this decision pursuant to Fed. R. Civ. P. 23(f) and, on June 4, 2004, the Eleventh Circuit granted the petition.  As of November 30, 2004, the briefs of the parties to the appeal were fully submitted.  As of the date of this Notice, the Eleventh Circuit has not ruled on Defendants' appeal. The Court has, in addition to the previously certified seventeen (17) states, certified a Tennessee IPP Settlement Class in light of this Settlement (collectively, the 18 state classes are the "IPP Settlement Classes"), and extended the end date of the Class Period to March 7, 2005.

**Summary Judgment.**  On April 26, 2004, IPP Plaintiffs and Defendants filed various Motions for Summary Judgment.  On August 3, 2004, the Court heard oral argument on those motions.  On August 31, 2004, the Court granted Defendants' motion and denied Plaintiffs' motions related to Plaintiffs' monopolization claims against Abbott under state laws analogous to Section Two of the Sherman Act.  On January 5, 2005, the Court granted Plaintiffs' motion and denied Defendants' motions related to Plaintiffs' claims that Defendants had violated certain state laws analogous to Section One of the Sherman Act by entering into an agreement related to patent litigation between the Defendants.  On February 9, 2005, Defendants filed a Petition for Writ of Mandamus with the United States Circuit Court of Appeals for the Eleventh Circuit.  As of the date of this Notice, the Eleventh Circuit has not ruled on Defendants' petition.

**Coordinated Discovery.**  Since 1999, the IPPs and Plaintiff States have cooperated in and coordinated their joint prosecution of claims for the benefit of the Consumers and Third Party Payers they respectively represent.  They have conducted extensive economic and factual investigation relating to the claims, underlying events, and transactions alleged in the IPP Complaints and the

Plaintiff States' Complaint (collectively, the "Complaints"), including review of in excess of a million pages of documents, the taking of more than fifty (50) depositions of defense and non-party witnesses, production of data by Plaintiffs, the giving of deposition testimony by various Plaintiffs, the consultation with expert witnesses and the taking of expert discovery, and extensive legal research on the applicable statutes and case law of the fifty (50) states and the District of Columbia.

**Trial**. On August 24, 2004, the Court ordered that the trial of all plaintiffs in MDL No. 1317 would proceed against the Defendants beginning April 11, 2005. On February 4, 2005, the Court ordered that, while the trial of other plaintiffs would proceed on April 11, 2005, trial of the IPPs and Plaintiff States would be postponed until the Eleventh Circuit ruled on Defendants' appeal from the Class Certification Order. On February 25, 2005, the Court continued the trial of other plaintiffs' claims in light of provisional settlements of those claims.

## IV. SETTLEMENT OF THESE CASES

In April 2004, the Court ordered that the parties to this litigation explore settlement through mediation with Professor Eric Green, an experienced and prominent mediator (the "Mediator"), while continuing with the litigation. With the help of Professor Green, the parties agreed to this Settlement, subject to approval of the Court and the terms and conditions of the Settlement Agreement and related documents. Throughout this process, arm's-length negotiations occurred among counsel for IPP Plaintiffs, the Plaintiff States and counsel for Third Party Payers to determine how the Net Settlement Fund would be allocated among Consumers and Third Party Payers.

Defendants deny each and every one of Plaintiffs' allegations of unlawful and inequitable conduct and Plaintiffs' entitlement to damages, restitution or any other legal or equitable relief in connection with Plaintiffs' claims and have asserted a number of defenses to Plaintiffs' claims which Defendants believe to be meritorious. While Defendants have agreed to settle the matter on the terms described herein, Defendants are prepared to litigate each of these matters vigorously if the Settlement is not approved. Defendants do not admit any wrongdoing by entering into this Settlement. If the Settlement is not finally approved by the Court, the Parties will resume litigating each of these cases, including the certification of the IPP classes, and there will be no assurance that any plaintiff or any member of the IPP classes can obtain a recovery.

The following description summarizes key terms of the Settlement. The Settlement Agreement is on file with the Court and can be reviewed as more fully described in Section IX.

The Settlement Agreement provides:

**a. Settlement Funds.** Defendants will collectively pay the sum of $30,700,000 as part of this Settlement. This amount, together with any interest earned thereon, constitutes the "Aggregate Settlement Fund." The Aggregate Settlement Fund, less Court-approved amounts paid for (1) a State Settlement Fund, (2) attorneys' fees and expenses incurred during the litigation, and (3) certain escrow agent fees associated with the Aggregate Settlement Fund (the "Net Settlement Fund") will be allocated to separate settlement funds for Consumers and Third Party Payers for (1) distribution to the members of the IPP Settlement Classes who or which file timely and valid Proofs of Claim, on the forms accompanying this Notice, containing the information requested therein, in accordance with the terms described below, (2) the costs of providing notice to the IPP Settlement Classes and administration of the Settlement, and (3) payment of incentive awards to Plaintiffs.

The Net Settlement Fund will be allocated as follows:

(1) **The State Settlement Fund.** The Attorney General of the State of Florida, as State Liaison Counsel, along with the Attorneys General of the States of Kansas and Colorado, have been involved in the investigation and litigation of this case for nearly five years. The State Settlement Fund is created to settle the claims of certain governmental entities and Attorney General-specific remedies, and state costs and fees. The State Settlement Fund totals $2,000,000, plus interest earned on that amount, to be paid from the Aggregate Settlement Fund. The Plaintiff States have worked for the benefit of agencies and consumers in this case. For these efforts, and subject to Court approval, the Plaintiff States, and primarily the State of Florida, as State Liaison Counsel, will ask to be reimbursed up to $1,625,000 from the State Settlement Fund for their fees and costs.

(2) **IPP Attorneys' Fees and Expenses.** IPPs' Co-Lead Counsel will apply for an award of attorneys' fees not exceeding thirty percent (30%) of the Aggregate Settlement Fund less the State Settlement Fund. Such fees would be distributed among the law firms that have litigated cases on behalf of IPPs in MDL 1317 since 1999. In addition, IPPs' Co-Lead Counsel will apply for reimbursement of the accountable out-of-pocket expenses they have incurred in the prosecution of these cases since 1999, including expert witness fees and their respective shares of the fees of the Mediator. The application for accountable expenses will be for an aggregate amount not to exceed $2,000,000.

(3) **Notice Costs.** The costs of providing notice to the Consumer members of the IPP Settlement Classes will be paid from the Consumer Settlement Fund (described below). The costs of providing notice to the TPP members of the IPP Settlement Classes will be paid from the TPP Settlement Fund (described below).

(4) **Incentive Awards.** Certain named plaintiffs spent a significant amount of unreimbursed time and expenses litigating these cases for the benefit of the absent members of the IPP Settlement Classes. IPPs will seek awards of incentive fee payments to such plaintiffs in an amount not to exceed $120,000 for TPP Plaintiffs and $30,000 for Consumer Plaintiffs. Incentive awards for Consumer Plaintiffs will be paid from the Consumer Settlement Fund, and incentive awards for TPP Plaintiffs will be paid from the TPP Settlement Fund.

b. **The Consumer Settlement Fund.** Twenty-five percent (25%) of the Net Settlement Fund, the "Consumer Settlement Fund," shall be set aside to pay notice and administration costs of the Consumer Settlement Fund and incentive payments awarded to Consumer Plaintiffs, if any, with the balance of the Consumer Settlement Fund to be paid to satisfy the claims of Consumer members of the IPP Settlement Classes who file timely and valid Proofs of Claim. Payments to Consumer members of the IPP Settlement Classes will be based on the total amount of Terazosin Product purchases made in the 18 settlement class states submitted in timely and valid Consumer Proofs of Claim. If the total amount of Terazosin Product purchases made in the 18 settlement class states claimed by Consumers exceeds the amount available for distribution to Consumer members of the IPP Settlement Classes, said members will receive their pro rata share of the Consumer Settlement Fund. If, after payment of (a) Court-approved costs of notice and administration, (b) any incentive payments awarded to Consumer Plaintiffs, and (c) 100% of valid and timely filed claims, monies remain in the Consumer Settlement Fund, any such remaining amount shall be paid to the TPP Settlement Fund, to the extent 100% of valid and timely filed claims by TPP members of the IPP Settlement Classes remain unpaid.

**c.  The Third Party Payer Settlement Fund.**  Seventy-five percent (75%) of the Net Settlement Fund, the "Third Party Payer Settlement Fund,"shall be set aside to pay notice and administration costs of the Third Party Payer Settlement Fund and incentive payments awarded to TPP Plaintiffs, if any, with the balance of the Third Party Payer Settlement Fund to be paid to satisfy the claims of TPP members of the IPP Settlement Classes who file timely and valid Proofs of Claim. Payments to TPP members of the IPP Settlement Classes will be based on the total amount of Terazosin Product purchases made in the 18 class states submitted in timely and valid TPP Proofs of Claim. If the total amount of Terazosin Product purchases made in the 18 class states claimed by TPPs exceeds the amount available for distribution to TPP members of the IPP Settlement Classes, said members will receive their pro rata share of the TPP Settlement Fund. If, after payment of (a) Court-approved costs of notice and administration, (b) any incentive payments awarded to TPP Plaintiffs, and (c) 100% of valid and timely filed claims, monies remain in the TPP Settlement Fund, any such remaining amount shall be paid to the Consumer Settlement Fund, to the extent 100% of valid and timely filed claims by Consumer members of the IPP Settlement Classes remain unpaid.

**d.  Distribution of Amounts Not Claimed.**  If, after payment of all (a) Court-approved costs of notice and administration for the Consumer Settlement Fund and the TPP Settlement Fund, (b) any incentive payments awarded to Consumer Plaintiffs and TPP Plaintiffs, and (c) 100% of valid and timely filed claims of Consumers and TPP, monies remain in either the Consumer Settlement Fund or the TPP Settlement Fund, the remaining amounts in either or both Settlement Funds shall be distributed as ordered by the Court.

**e.  Settlement Termination Contingency.**  Under certain circumstances relating, among other things, to  Consumer and TPP class members who or which timely and validly exclude themselves from the IPP Settlement Classes,  Defendants may terminate the Settlement, in which case the litigation will continue.

**f.  Release and Discharge of Claims.**  If the Settlement is finally approved by the Court and becomes effective, members of the IPP Settlement Classes who have not made valid and timely elections to exclude themselves from the IPP Settlement Classes, as well as their respective past, present and future directors, officers, employees, shareholders, attorneys, heirs, executors, administrators, general or limited partners, affiliates, divisions, agents, representatives, predecessors, parents, subsidiaries, agencies, departments, institutions, successors and assigns ("Releasors"), will unconditionally, fully and finally release and discharge forever the Defendants and their respective past, present and future directors, officers, employees, shareholders, affiliates, divisions, agents, representatives, attorneys, heirs, executors, administrators, predecessors, parents, subsidiaries, general or limited partners, successors, and assigns ("Releasees") of all claims, demands, debts, obligations, damages, civil penalties, whenever and wherever incurred, liabilities of any nature whatsoever (including costs, expenses, penalties and attorneys' fees), actions, suits, proceedings, assertions, and causes of action (**"Claims"**), known or unknown, suspected or unsuspected, in law or in equity of any jurisdiction, including but not limited to Claims arising under any federal or state antitrust, unfair methods of competition, or consumer protection laws, under any state or federal deceptive practices acts, or under the common laws (including any theory of unjust enrichment) of any jurisdictions, whether accrued in whole or in part of any kind whatsoever, from the beginning of time through the date this Settlement Agreement is preliminarily approved by the Court, which any Releasor had, has, or may have in the future, directly, representatively, derivatively, or in any other capacity against any Releasee that were or could have been asserted by any Releasor (i) arising

-6-

out of or concerning the allegations, or the facts and circumstances giving rise to the allegations in the Complaints or in any action consolidated as part of MDL No. 1317, or (ii) otherwise relating to any alleged delay in marketing or selling of generic equivalents of Terazosin Products, regardless of whether such claim was raised in the Complaints. Released Claims shall not be construed to include: (1) claims arising solely from and asserting damages based solely on an alleged physical injury; or (2) claims that may be asserted by any Releasor that do not arise from the facts, matters, transactions, events, occurrences, acts, disclosures, statements, omissions, or failures to act set forth in the Complaints, or in any other complaint filed in any action that has been consolidated or coordinated with any of the Complaints, such as claims relating to the "best price" or "average wholesale price" reporting practices or to health care or Medicaid fraud or abuse.

Moreover, if the Settlement is finally approved by the Court and becomes effective, each member of the IPP Settlement Classes that has not made a valid and timely election to exclude itself from the IPP Settlement Classes will also be deemed to have expressly waived, released and forever discharged any and all provisions, rights and benefits that may be available under Section 1542 of the California Civil Code (**"Section 1542"**), which provides: **"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his settlement with the debtor";** or under any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable or equivalent to Section 1542 (each a **"Comparable Law"**). Each Releasor may hereafter discover facts other than or different from those which he, she or it knows or believes to be true, but each Releasor hereby expressly waives and fully, finally and forever settles and releases, upon the Effective Date, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that would otherwise fall within the definition of Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. Each Releasor also hereby expressly waives and fully, finally and forever settles and releases any and all claims it may have against any Released Party under California's Unfair Competition Law, § 17200, *et seq.*, of the California Business and Professions Code or any similar, comparable or equivalent provision of the law of any other state or territory of the United States or other jurisdiction, which claims are hereby expressly incorporated into the definition of Released Claims.

If the Settlement is finally approved by the Court and becomes effective, each member of the IPP Settlement Classes that has not made a valid and timely election to exclude itself from the IPP Settlement Classes shall look solely to the Consumer Settlement Fund or the Third Party Payer Settlement Fund, as appropriate, for settlement with and satisfaction of all claims that are released under the Settlement Agreement. Except as provided by order of the Court, no such member of the IPP Settlement Classes shall have any interest in either the Consumer Settlement Fund or the Third Party Payer Settlement Fund or any portion thereof.

## V. **COUNSEL FOR IPP SETTLEMENT CLASSES AND PLAINTIFF STATES**

IPPs' Co-Lead Counsel, who prosecuted these actions and negotiated the Settlement Agreement with the Defendants on behalf of the members of the IPP Settlement Classes are:

Stephen Lowey, Esq.
Richard W. Cohen, Esq.
Geoffrey M. Horn, Esq.
Lowey Dannenberg Bemporad
& Selinger, P.C.
The Gateway, 11th Floor
One North Lexington Ave.
White Plains, NY 10601

Kimberly West, Esq.
Wallace Jordan Ratliff &
Brandt, LLC
800 Shades Creek Parkway
Suite 400
Birmingham, Alabama 35209

Michael Hausfeld, Esq.
Daniel Small, Esq.
1100 New York Ave. N.W.
West Tower, Suite 500
Washington, DC 20005

State Liaison Counsel, who prosecuted these actions and negotiated the Settlement Agreement with the Defendants on behalf of the Plaintiff States is:

Patricia Conners, Esq.
Office of the Attorney General
State of Florida
PL-01, The Capitol
Tallahassee, FL 32399-1050

## VI.  THE SETTLEMENT HEARING

The Court has scheduled a hearing to be held at _____.m. on **June 27, 2005**, at the United States Courthouse, Courtroom 5, 301 North Miami Avenue, 5th Floor, Miami, Florida 33128, to consider whether to approve the terms of the Settlement, the Consumer Distribution Plan and the Third Party Payer Distribution Plan, and the applications for fees and costs and for incentive awards. Although you may attend this hearing in person or through your own attorney, you are not required to do so. If you wish to comment in support of, or in opposition to, the Settlement, you may do so, but you must mail your comments or objections in writing *on or before April 11, 2005*, giving your name and current address. If you wish to be heard at the hearing in person or through your own attorney, you or your attorney must mail a written notice of appearance *on or before April 11, 2005.* Any objections or notices of appearance must be mailed to: (1) The Settlement Administrator at In re Terazosin Hydrochloride Antitrust Litigation, c/o Complete Claim Solutions, Inc., P.O. Box 24607, West Palm Beach, FL 33416; (2) IPPs' Co-Lead Counsel listed in Section V above; and (3) Defendants at both addresses below:

Jeffrey I. Weinberger, Esq.
Stuart N. Senator, Esq.
Munger, Tolles & Olson, LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071
*Counsel for Defendant Abbott Laboratories*

Wayne A. Cross, Esq.
Paul Olszowka, Esq.
White & Case
1155 Avenue of the Americas
New York, NY 10036
*Counsel for Defendant Geneva Pharmaceuticals, Inc. (Sandoz Inc.)*

## VII.  PROOFS OF CLAIM

In order to share in the proceeds of the Settlement and to receive a portion of the Net Settlement Fund, Third Party Payer members of the IPP Settlement Classes are required to complete (providing all requested information) and certify a Proof of Claim on the form accompanying this Notice, and mail it via first-class mail to the following address, *postmarked no later than July 15, 2005*:

**In re Terazosin Hydrochloride Antitrust Litigation**
**c/o Complete Claim Solutions, Inc.**
**P.O. Box 24607**
**West Palm Beach, FL 33416**

## VIII.  YOUR RIGHT TO BE EXCLUDED FROM THE SETTLEMENT

(1)    Any Third Party Payer member of the IPP Settlement Classes that wishes to be excluded from the Settlement for any reason is entitled to do so.  The accompanying Third Party Payer Notice of Exclusion Form is provided for this purpose.  **In order to be considered timely, it must be *received on or before April 11, 2005*, and mailed by first-class mail to:**

**In re Terazosin Hydrochloride Antitrust Litigation**
**c/o Complete Claim Solutions, Inc.**
**P.O. Box 24607**
**West Palm Beach, FL 33416**

**Any member of the IPP Settlement Classes that elects to be excluded from the Settlement will not be entitled to participate in distributions from the Net Settlement Fund or in the Settlement generally, but will retain such rights, if any, it may have to prosecute separate litigation against Defendants at its own expense.**

(2)    Because of the settlement termination contingencies described in Section IV above, any member of the IPP Settlement Classes that elects to be excluded from the Settlement (an "Opt Out") will be requested to provide information concerning purchases of Terazosin Products.  Failure to do so, or failure to provide information sufficient for the parties to determine what effect, if any, the Opt-Out's exclusion has on the termination contingencies may subject the Opt-Out to discovery via subpoena or other legal process.

## IX.  ADDITIONAL INFORMATION

You may review the Settlement Agreement and the Third Party Payer Distribution Plan during normal business hours at the office of the Clerk of Court, United States District Court for the Southern District of Florida, 301 North Miami Avenue, Room 150, Miami, Florida 33128.  If you desire additional information, you may also write any of the IPPs' Co-Lead Counsel listed above in Section V, or telephone the Settlement Administrator at (877) 886-0283 or you may visit the website

www.terazosinlitigation.com.

**PLEASE DO NOT CONTACT THE COURT, THE CLERK'S OFFICE,
OR COUNSEL FOR DEFENDANTS FOR ADDITIONAL INFORMATION.**

Dated: March 7, 2005                    BY ORDER OF THE COURT
                                        UNITED STATES DISTRICT COURT
                                        SOUTHERN DISTRICT OF FLORIDA

| THIRD PARTY PAYER EXCLUSION FORM |
|---|

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE: TERAZOSIN HYDROCHLORIDE )          CASE NO. 99-MDL-1317-SEITZ/KLEIN
ANTITRUST LITIGATION                      )
_____ )

## THIRD PARTY PAYER REQUEST FOR EXCLUSION

*Third Party Payers that wish to be excluded from the IPP Settlement Classes must complete the following form and send it by first-class mail in time to be **received no later than April 11, 2005** at the following address:*

In re Terazosin Hydrochloride Antitrust Litigation
c/o Complete Claims Solutions, Inc.
P.O. Box 24607
West Palm Beach, FL 33416

**A SEPARATE NOTICE OF EXCLUSION MUST BE FILED BY EACH CLASS MEMBER ELECTING TO BE EXCLUDED FROM THE CLASSES.** If a Notice of Exclusion is filed on behalf of a Third Party Payer member of the IPP Classes by anyone other than a duly authorized officer, director, partner or employee of a Third Party Payer member of the IPP Classes, the Notice of Exclusion must be accompanied by written evidence, in addition to the Certification below, of such person's authority to request exclusion on behalf of that Class Member.

In order to elect to be excluded from the IPP Classes, you must provide the following information and complete the Certification:

1.    Name of TPP Class Member[1]:

_____

2.    TPP Class Member's Address: _____

_____

_____

[1]    Please include all names by which Class Member has been known since October 15, 1995.

-1-

3.    TPP Class Member Tax Identification Number ("FEIN")[2]:

### Certification

**The undersigned individual represents that he/she has the authority to sign and submit this Notice of Exclusion on behalf of the above-named Class Member.  If the undersigned individual is not a duly authorized officer, director, or employee of the above-named Class Member (if a corporation), or a general partner or duly authorized employee of the above-named Class Member (if a partnership), he/she must attach written evidence of the Class Member's grant of authority to him/her to execute this Notice of Exclusion on its behalf.**

**The undersigned also certifies that he/she has not received any advice from the parties to this litigation concerning his/her or the Class Member's fiduciary obligations under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1100, *et seq.*, or other laws governing their obligations to any Class Member.  The undersigned understands that by submitting this Notice of Exclusion, the Class Member identified above will not be bound by any further ruling of the Court and will not share in the Settlement.  By affixing my signature below, I certify under penalty of perjury that the foregoing is true and correct.  28 U.S.C. § 1746.**

Name: _____ Legal Relationship to Class Member: _____

Contact/Telephone Number: _____

Signature: _____ Executed on: _____

The Parties request that each Third Party Payer Class Member electing exclusion from the Classes  provide the following information: Amounts paid[3] in each of the 18 states for Hytrin® and/or generic terazosin hydrochloride during the period January 1,1998, to December 31, 1999, based on records maintained by the Class Member:

THE INFORMATION PROVIDED WILL BE TREATED AS CONFIDENTIAL BY ORDER OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA AND WILL BE USED SOLELY FOR PURPOSES OF ADMINISTERING THIS ACTION.

---

[2]    Please include all FEINs assigned to Class Member since October 15, 1995.

[3]    "Amounts paid" includes the total amount paid by the Third Party Payer members of the IPP Classes for Hytrin® and/or generic terazosin hydrochloride, whether paid directly to a pharmacy, through reimbursement to an insured, or otherwise.  Third Party Payers may submit this information in an electronic format acceptable to the Settlement Administrator.  For more information concerning the submission of electronic data, please contact the Settlement Administrator, Complete Claim Solutions, Inc., at the address and telephone number provided in the Notice.

| Alabama: | California: | Florida: | Illinois: |
|---|---|---|---|
| Kansas: | Maine: | Michigan: | Minnesota: |
| Mississippi: | Nevada: | New Mexico: | New York: |
| North Carolina: | North Dakota: | South Dakota: | Tennessee: |
| West Virginia: | Wisconsin: | | |

Signature: _____   Date: _____

Print Name: _____   Title: _____

In re Terazosin Hydrochloride Antitrust Litigation
c/o Complete Claims Solutions, Inc.
P.O. Box 24607
West Palm Beach, FL  33416
1-877-886-0283
www.terazosinlitigation.com

**IMPORTANT COURT DOCUMENTS**

### *THIRD PARTY PAYER PROOF OF CLAIM FORM*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE: TERAZOSIN HYDROCHLORIDE ) | CASE NO. 99-MDL-1317-SEITZ/KLEIN |
| ANTITRUST LITIGATION                ) | |
| _____ ) | |

## THIRD PARTY PAYER PROOF OF CLAIM FORM INSTRUCTIONS

**IMPORTANT NOTICE:** IN ORDER FOR THE THIRD PARTY PAYER ("TPP") CLASS MEMBER TO RECEIVE ITS SHARE OF THE TPP SETTLEMENT FUND, PURSUANT TO THE ALLOCATION AND DISTRIBUTION PLAN DESCRIBED IN THE NOTICE, A COMPLETED, SIGNED, AND CERTIFIED PROOF OF CLAIM MUST BE RECEIVED BY THE SETTLEMENT ADMINISTRATOR, AT THE ADDRESS LISTED BELOW:

*In re Terazosin Hydrochloride Antitrust Litigation*
*c/o Complete Claims Solutions, Inc.*
*P.O. Box 24607*
*West Palm Beach, FL 33416*
*1-877-886-0283*

**IF YOUR COMPLETED, SIGNED CLAIM FORM IS NOT MAILED BY FIRST-CLASS MAIL, POSTAGE PREPAID, AND POSTMARKED BY JULY 15, 2005, YOU WILL NOT BE ALLOWED TO PARTICIPATE IN THE SETTLEMENT DISTRIBUTION.**

THE COMPLETED CLAIM FORM AND THE INFORMATION CONTAINED HEREIN WILL BE TREATED AS CONFIDENTIAL BY ORDER OF THE COURT AND WILL BE USED SOLELY FOR PURPOSES OF ADMINISTERING THIS SETTLEMENT.

A Class Member must be a "Third Party Payer" or "TPP," which, for these purposes, means an entity that is (1) a party to a contract, issuer of a policy or sponsor of a plan, and is also (2) at risk, pursuant to such contract, policy or plan, to provide prescription drug benefits, or to pay or reimburse all or part of the cost of Terazosin Products dispensed to natural persons covered by such contract, policy or plan. Entities with self-funded plans that contract with a health insurance company or other entity to serve as a third party claims administrator to administer their prescription drug benefits may qualify as TPPs. If such an entity's contract with its claims administrator does not shift the financial risk for the purchase of Terazosin Products from the entity to its claims administrator or otherwise assign the entity's rights in any recovery under this Settlement to its claims administrator, the entity with the self-funded plan (rather than the claims administrator) will be a TPP for purposes of this Settlement. Entities with self-funded plans should also be aware that any agreements that they may have with third party claims administrators may affect their ability to, or the terms under which such entities may, assert any claim against the TPP Settlement Fund, as well as the amount of any

recovery to which such entity may be entitled. Entities with self-funded plans that maintain such contractual arrangements with third party claims administrators should review the terms of their administrative services agreements before making any claim against the TPP Settlement Fund to determine whether the entity or its third party claims administrator possesses the claim and/or has the right or obligation to assert the claim or the right to any or all proceeds that may be paid on the claim.

This Proof of Claim may be completed, signed and certified by the Class Member itself, or by its duly authorized agent. IF A CLASS MEMBER SUBMITS A PROOF OF CLAIM ON ITS OWN BEHALF, NO OTHER PROOF OF CLAIM WILL BE PERMITTED ON BEHALF OF THAT CLASS MEMBER. IN THE EVENT THAT PROOFS OF CLAIM ARE FILED BY BOTH A CLASS MEMBER AND ANOTHER ENTITY THAT PURPORTS TO BE THE AUTHORIZED AGENT OF THAT CLASS MEMBER, ONLY THE CLASS MEMBER'S PROOF OF CLAIM WILL BE CONSIDERED BY THE SETTLEMENT ADMINISTRATOR. **THE SETTLEMENT ADMINISTRATOR IS AUTHORIZED TO REQUEST FROM PERSONS OR ENTITIES SUBMITTING PROOFS OF CLAIM, ANY DOCUMENTATION NECESSARY TO VERIFY ALL INFORMATION APPEARING IN THE PROOF OF CLAIM OR TO PREVENT CONSIDERATION OF DUPLICATE CLAIMS SUBMITTED BY OR ON BEHALF OF A CLASS MEMBER. FAILURE TO PROVIDE SUCH INFORMATION IN RESPONSE TO SUCH REQUEST MAY CONSTITUTE GROUNDS FOR REJECTION OF THE PROOF OF CLAIM.**

If one or more Class Members has authorized you to submit a Proof of Claim on its or their behalf, you must provide the information requested in Section C in addition to the information requested by this Proof of Claim. You may submit a separate Proof of Claim for all each Class Member that has duly authorized you to do so, OR you may submit one aggregate Proof of Claim for all such Class Members that have authorized you to do so. If you are submitting Proofs of Claim both on your own behalf as a Class Member AND on behalf of one or more Class Members that has authorized you to submit a Proof of Claim, you should submit one Proof of Claim for yourself and another Proof of Claim for the other Class Member(s). **Do not submit a Proof of Claim on behalf of any Class Member without specific prior authorization from that Class Member.**

If after reviewing this Proof of Claim you need additional assistance, you may contact the Settlement Administrator at the toll-free number listed above.

### *THIRD PARTY PAYER PROOF OF CLAIM FORM*

**SECTION A - Type of Claimant**: Please indicate whether you are claiming on your own behalf as a Class Member or as the authorized agent of one or more Class Members by placing an "X" in the appropriate space below. Only one space should be marked. **If you wish to make a claim as a Class Member AND ALSO as the authorized agent of other Class Members, please complete one Proof of Claim for your claim as a Class Member and another Proof of Claim for those Class Members for whom you are authorized to submit a claim.**

This Proof of Claim is being filed by: (select one)

    A.      ( _____ )      The Class Member, itself.

    B.      The duly authorized agent of the Class Member(s) identified in Section C of this Proof of Claim, which agent's relationship with the Class Member(s) is best described, as follows:

         ( _____ )      Third Party Administrator (other than a Pharmacy Benefits Manager)

         ( _____ )      Pharmacy Benefits Manager

         ( _____ )      Other. Explain: _____

If you marked "A," complete Sections B, D and E of this Proof of Claim, but skip Section C.
If you marked "B," complete Sections C, D and E of this Proof Claim, but skip Section B.

**SECTION B - Claim by Class Member**: You should complete this Section B if you are making a claim on your own behalf as a Class Member. If you are making a claim as the authorized agent of one or more Class Members, you should skip this section and proceed to Section C.

_____

Class Member's Name

_____

Street Address                      Floor/Suite

_____

City                                State       Zip Code

( ___ ) _____    ( ___ ) _____

Area Code - Telephone No.      Area Code - Fax No.      FEIN

Any other names by which you have been known or other FEINs you have used to pay prescription drug benefits from January 1, 1998 - December 31, 2004:

        _____

        _____

Check the term below that best describes your company/entity:

( _____ )   Health Insurance Company/HMO
( _____ )   Self-Insured Employer Health Benefit Plan
( _____ )   Self-Insured Union Health & Welfare Fund
( _____ )   Other.  Describe: _____

If another entity, such as a Third Party Administrator or Pharmacy Benefits Manager, made payments or reimbursements on your behalf for Terazosin Products during the period from January 1, 1998 - December 31, 2004, provide the following information for each of those entities:

_____

Name of Entity Making Payments for Terazosin Products on Your Behalf

_____

Street Address                                          Floor/Suite

_____

City                                          State          Zip Code

( ___ ) _____   ( ___ ) _____
Area Code - Telephone No.        Area Code - Fax No.        FEIN

**SECTION C - Claim by Authorized Agent of Class Member(s)**: You should complete this Section C if you are submitting this Proof of Claim as the duly authorized agent of one or more Class Members.

_____

Authorized Agent's Name

_____

Street Address                                          Floor/Suite

_____

City                                          State          Zip Code

( ___ ) _____   ( ___ ) _____
Area Code - Telephone No.        Area Code - Fax No.        FEIN

Please identify every Class Member for whom you have been duly authorized to submit this Proof of Claim (attach additional sheets to this Proof of Claim as necessary).  (In the alternative, you may submit such identification information in an acceptable electronic format.  Please contact the Settlement Administrator to determine what formats are acceptable.):

-4-

_____     _____

_____     _____

_____     _____

## SECTION D - Information Necessary to Calculate Class Member(s)' Claim:

**Amounts paid or reimbursed for prescriptions of Hytrin and its AB-rated equivalents filled during the period January 1, 1998 through December 31, 2004, in the following states:**

| | | | |
|---|---|---|---|
| Alabama: | California: | Florida: | Illinois: |
| Kansas: | Maine: | Michigan: | Minnesota: |
| Mississippi: | Nevada: | New Mexico: | New York: |
| North Carolina: | North Dakota: | South Dakota: | Tennessee: |
| West Virginia: | Wisconsin: | | |

_Claimant certifies that the figures submitted are true and accurate and based upon actual records maintained by or otherwise available to the Claimant._

**SECTION E - Jurisdiction of the Court and Certification**: By signing below, I hereby swear or affirm, on my own behalf and/or on behalf of the "Authorized Agent," that: (1) I have been given authority to submit this Proof of Claim either (a) by the Class Member on its behalf; or (b) if this Proof of Claim is submitted by an "Authorized Agent," by the Authorized Agent on its behalf, and such Authorized Agent, in turn, has been given the authority to submit this Proof of Claim by each Class Member identified in this Proof of Claim and in any attachments to this Proof of Claim, and

to receive on behalf of each such Class Member any and all amounts that may be allocated from the TPP Settlement Fund to such Class Member; (2) the information contained in this Proof of Claim and any attachments hereto is true and accurate, based on records maintained by or otherwise available to me; (3) I, the Authorized Agent (if any), and each Class Member on whose behalf this Proof of Claim is submitted, hereby submits to the jurisdiction of the United States District Court for the Southern District of Florida (the "Court") for all purposes associated with this Proof of Claim, including resolution of disputes relating to this Proof of Claim; (4) in the event that amounts from the TPP Settlement Fund are distributed to the Authorized Agent of a Class Member, and the Class Member later claims that the Authorized Agent did not have the authority to claim and receive such amounts on its behalf, the Authorized Agent, I and/or my employer will hold the Class, counsel for the Class, and the Settlement Administrator harmless with respect to any claims made by said Class Member. I acknowledge that any false information or representations contained herein may subject the Authorized Agent and me to sanctions, including the possibility of criminal prosecution. I hereby agree, on behalf of myself and the Authorized Agent, to supplement this Proof of Claim by furnishing documentary backup for the information provided herein, upon request of the Settlement Administrator.

**SECTION F - ACKNOWLEDGMENT OF RELEASE OF CLAIMS:** By signing below, I acknowledge that, if the Settlement is finally approved by the Court and becomes effective, members of the IPP Settlement Classes who have not made valid and timely elections to exclude themselves from the IPP Settlement Classes, whether or not they object to the Settlement Agreement and whether or not they make a claim upon or participate in any Settlement Fund (including both TPPs and Consumers, whether IPPs or not), as well as their respective past, present and future directors, officers, insurers, employees, shareholders, agents, attorneys, trustees, associates, general or limited partners, affiliates, divisions, agents, representatives, predecessors, parents, subsidiaries, agencies, departments, institutions, successors and assigns ("Releasors"), will unconditionally, fully and finally release and discharge forever the Defendants and their respective past, present and future directors, officers, employees, agents, attorneys, shareholders, affiliates, divisions, agents, representatives, parents, subsidiaries, general or limited partners, insurers, and the predecessors, heirs, executors, administrators, successors, and assigns of each of the foregoing ("Releasees") of all claims, demands, debts, obligations, damages, civil penalties, whenever and wherever incurred, liabilities of any nature whatsoever (including costs, expenses, penalties and attorneys' fees), actions, suits, proceedings, assertions, and causes of action (**"Claims"**), known or unknown, suspected or unsuspected, in law or in equity of any jurisdiction, including but not limited to Claims arising under any federal or state antitrust, unfair methods of competition, or consumer protection laws, under any state or federal deceptive practices acts, or under the common laws (including any theory of unjust enrichment) of any jurisdictions, whether accrued in whole or in part of any kind whatsoever, from the beginning of time through the date this Settlement Agreement is preliminarily approved by the Court, which any Releasor had, has, or may have in the future, directly, representatively, derivatively, or in any other capacity against any Releasee (i) arising out of or concerning the allegations, or the facts and circumstances giving rise to the allegations in the Complaints or in any other complaint filed, consolidated or coordinated in MDL No. 1317, or (ii) otherwise relating to any alleged delay in marketing or selling of generic equivalents of Terazosin Products, regardless of whether such claim was raised in the Complaints.  Released Claims shall not be construed to include: (1) claims arising

-6-

solely from and asserting damages based solely on an alleged physical injury; or (2) claims that may be asserted by any Releasor relating to the "best price" or "average wholesale price" reporting practices, or to health care or Medicaid fraud or abuse, except to the extent that such claims arise from the facts, matters, transactions, events, occurrences, acts, disclosures, statements, omissions, or failures to act set forth in the Complaints, or in any other complaint filed in any action that has been consolidated or coordinated with any of the Complaints.

     Moreover, if the Settlement is finally approved by the Court and becomes effective, each member of the IPP Settlement Classes that has not made a valid and timely election to exclude itself from the IPP Settlement Classes will also be deemed to have expressly waived, released and forever discharged any and all provisions, rights and benefits that may be available under Section 1542 of the California Civil Code (**"Section 1542"**), which provides: **"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his settlement with the debtor";** or under any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable or equivalent to Section 1542 (each a **"Comparable Law"**). Each Releasor may hereafter discover facts other than or different from those which he, she or it knows or believes to be true, but each Releasor hereby expressly waives and fully, finally and forever settles and releases, upon the Effective Date, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that would otherwise fall within the definition of Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. Each Releasor also hereby expressly waives and fully, finally and forever settles and releases any and all claims it may have against any Released Party under California's Unfair Competition Law, § 17200, *et seq.*, of the California Business and Professions Code, or any similar, comparable or equivalent provision of the law of any other state or territory of the United States or other jurisdiction, which claims are hereby expressly incorporated into the definition of Released Claims.

 

Name:_____   Position:_____
          [Print or Type]

Signature:_____   Date:_____

The following information is to be provided by the Individual that signs and certifies this Proof of Claim:

I am filing this Proof of Claim as the authorized employee of the following Class Member or Authorized Agent for Class Member:

1.   _____
     Name of Individual's Employer

2.   _____

Business Address

_____
City                                                State                   Zip Code

3.    ( _____ ) _____        ( _____ ) _____
      Area Code - Telephone No.                Area Code - Fax No.

4.    _____
      E-mail Address

## NOTARIZATION OF CLAIMANT'S SIGNATURE:

STATE OF _____ )

COUNTY OF _____ )

　　　　Before me, the undersigned authority, a notary public in and for said County and State, personally appeared _____, who being known to me and being by me first duly sworn, deposed and testified as set forth above.

　　　　Sworn to and subscribed to before me this _____ day of _____, 200__ .


                                        _____
                                        Notary Public
My commission expires:_____

# Exhibit 6

## SUMMARY NOTICE OF PENDING CLASS ACTION, PROPOSED SETTLEMENT AND FAIRNESS HEARING

**THIS NOTICE MAY AFFECT YOUR LEGAL RIGHTS. PLEASE READ CAREFULLY.**

TO:   ALL PERSONS AND ENTITIES WHO OR WHICH HAVE AT ANY TIME FROM OCTOBER 15, 1995 THROUGH MARCH 7, 2005 (THE "CLASS PERIOD") PAID ALL OR PART OF THE PURCHASE PRICE OF HYTRIN® OR ITS AB-RATED GENERIC BIOEQUIVALENTS ("TERAZOSIN PRODUCTS") INCLUDING ALL FORMS OF TERAZOSIN HYDROCHLORIDE OTHER THAN FOR RESALE, IN AL, CA, FL, IL, KS, ME, MI, MN, MS, NV, NM, NY, NC, ND, SD, TN, WV or WI, OR VIA MAIL ORDER FOR RESIDENTS OF SUCH STATES.

This Summary Notice is to inform you of the proposed Settlement of class action lawsuits brought by Consumers, Third Party Payers ("TPPs") and the Attorneys General of Florida, Kansas, and Colorado ("Plaintiff States"), and to inform members of the proposed Settlement classes of their rights. This Notice is only a summary. **To obtain the full Notice, read the last section below.** The proposed Settlement provides for a fund that will initially contain a total of $30.7 million. As described in more detail in the full Notice, the Settlement amount, less court-awarded attorneys' fees and expenses, incentive payments to class representatives, $2 million allocated to the Plaintiff States, and notice and administrative costs for the settlement, will be allocated as follows: 25% to Consumers ("Consumer Settlement Fund") and 75% to Third Party Payers ("TPPs") ("TPP Settlement Fund"). (TPPs include entities such as health insurers and employer health benefit plans that paid for Terazosin Products during the Class Period.) Notice and claims administration costs and incentive payments for Consumer and TPP Plaintiffs awarded by the Court will also be paid from these Settlement Funds. The Plaintiff States and the private Plaintiffs bringing this lawsuit each have concluded on the basis of their extensive economic, factual and legal investigation that the proposed Settlement is fair, reasonable and adequate. The proposed Settlement is subject to approval by the Court.

The Settlement classes include all members of the classes certified by the Court in an April 8, 2004 Order, and in an additional Order on March 7, 2005 – All persons and entities who or which have at any time from October 15, 1995 to March 7, 2005, paid all or part of the purchase price of Terazosin Products, other than for resale, in one or more of the following states – AL, CA, FL, IL, KS, ME, MI, MN, MS, NV, NM, NY, NC, ND, SD, TN, WV or WI – or via mail order for delivery to one or more of those same states. There are exclusions from the Settlement classes for certain persons and entities, which are explained in the full Notice.

Plaintiffs filed lawsuits between 1999 and 2001 alleging that Abbott Laboratories and Geneva Pharmaceuticals, Inc. (now known as Sandoz Inc.) (the "Defendants") allegedly violated antitrust and consumer protection laws through conduct relating to the sale of Terazosin Products. Defendants deny Plaintiffs' claims and do not admit any wrongdoing by entering into this settlement. This litigation does not involve the safety or effectiveness of Terazosin Products.

If you are a member of the settlement classes, you may have a right to share in either the TPP or Consumer Settlement Fund, if this Settlement is approved by the Court. The proposed

Settlement also includes a release of claims as further described in the full Notice. If you are a TPP member of the Settlement classes, you **MUST** mail a TPP Claim Form by **July 15, 2005,** to participate in the Settlement. A TPP that wishes to be excluded from the Settlement classes **MUST** mail a TPP Exclusion Form, in compliance with the full Notice, so that it is **received** by the Settlement Administrator by **April 11, 2005.** Any TPP objecting to the Settlement **MUST** also submit objections by **April 11, 2005,** in compliance with the full Notice. If you are a Consumer member of the Settlement classes, you may exclude yourself or object to the Settlement by **June 15, 2005,** or you may file a Consumer Claim Form by **July 15, 2005,** in compliance with the full Notice. The Court has scheduled a final approval hearing to be held at _____, __.m., Eastern time, on **June 27, 2005,** in Courtroom 5, United States District Court for the Southern District of Florida, 301 North Miami Avenue, 5th Floor, Miami, Florida 33128, before the Honorable Patricia A. Seitz, on the proposed Settlement and applications for fees and costs and for incentive awards to the Consumer and TPP Plaintiffs. To learn whether the hearing has been postponed, please visit the website at www.terazosinlitigation.com or call the Settlement Administrator at 1-877-886-0283.

To claim money from the Settlement, you need to complete either the TPP Claim Form or Consumer Claim Form that is provided with the full Notice and mail the Claim Form **postmarked no later than July 15, 2005,** to the Settlement Administrator at: **In re Terazosin Hydrochloride Antitrust Litigation, c/o Complete Claim Solutions, Inc., P.O. Box 24607, West Palm Beach, FL 33416. (If you elect to exclude yourself from the settlement classes, you may not file a Claim Form and will not be entitled to any money from this Settlement.)**

To obtain the full Notice, a Claim Form, or more information, you may write the Settlement Administrator at the address above, call toll-free at 1-877-886-0283, or visit the website at www.terazosinlitigation.com.

### PLEASE DO NOT CONTACT THE COURT FOR ADDITIONAL INFORMATION

Dated: March 7, 2005              BY ORDER OF THE UNITED STATES DISTRICT
                                  COURT FOR THE SOUTHERN DISTRICT OF
                                  FLORIDA

# Exhibit 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 99-MDL-1317 SEITZ/KLEIN

| |
|---|
| IN RE: TERAZOSIN HYDROCHLORIDE ANTITRUST LITIGATION |
| THIS DOCUMENT RELATES TO: |
| *United Wisconsin Services, Inc., et al. v. Abbott Laboratories*, Case No. 99-C-7410 (N.D. Ill.) (JBZ) |
| *Grosskrueger, et al. v. Abbott Laboratories, et al.*, Case No. 99-C-7883 (N.D. Ill.) (JBZ) |
| *Reid, et al. v. Abbott Laboratories, et al.*, Case No. 00-342 (D.D.C.) |
| *Scafani v. Abbott Laboratories, et al.*, Case No. 00-00508-SBA (N.D. Cal.) |
| *Mednick v. Abbott Laboratories, et al.*, Case No. 2:00-3468 (C.D. Cal.) |
| *O'Neal v. Abbott Laboratories, et al.*, Case No. 00-J-1504-S (N.D. Ala.) |
| *Grund v. Abbott Laboratories, et al.*, Case No. _____ |
| *Blue Cross and Blue Shield of Alabama, Inc. v. Abbott Laboratories, et al.*, Case No. 00-1303-Civ-Lenard (S.D. Fla.) |
| *Bernstein v. Abbott Laboratories, et al.*, Case No. 2:00-CV-72974 (E.D. Mich.) |
| *Blue Cross and Blue Shield of Michigan v. Abbott Laboratories, et al.*, Case No. 5:01-CV-95 (W.D. Mich.) |

## DECLARATION OF GEOFFREY M. HORN

1.      I am an associate of the law firm of Lowey Dannenberg Bemporad & Selinger,

P.C., co-lead counsel for indirect purchaser plaintiffs and counsel for class representative Cobalt

Corporation.

2.      Attached as Exhibit A hereto is a spreadsheet reflecting purchases of Hytrin and

its generic equivalent terazosin hydrochloride by Cobalt Corporation in Tennessee during the

Class Period.

3.    I declare under penalty of perjury that the foregoing is true and correct.  Executed

on March 1, 2005, at White Plains, New York.

_____
Geoffrey M. Horn

# EXHIBIT A

## COBALT TENNESSEE PURCHASES

| Drug Label Name | NDC Code | Filled Date | Metric Decimal Quantity | Submitted Cost | Dispensing Fee | Deductible Amount | Copay Coinsurance | TotalPaid | Pharmacy City | Pharmacy State | Pharmacy Zip |
|---|---|---|---|---|---|---|---|---|---|---|---|
| TERAZOSIN 10MG CAPSU | 00781205401 | 10/25/2000 | 30 | $47.69 | $3.50 | $0.00 | $10.00 | $29.50 | NASHVILLE | TN | 37221 |
| TERAZOSIN 10MG CAPSU | 00378157001 | 1/30/2001 | 30 | $47.69 | $3.50 | $0.00 | $10.00 | $29.50 | NASHVILLE | TN | 37221 |
| TERAZOSIN 10MG CAPSU | 00378157001 | 3/2/2001 | -30 | ($47.69) | ($3.50) | $0.00 | ($10.00) | ($29.50) | NASHVILLE | TN | 37221 |
| TERAZOSIN 10MG CAPSU | 00378157001 | 3/2/2001 | 30 | $47.69 | $3.50 | $0.00 | $10.00 | $29.50 | NASHVILLE | TN | 37221 |
| TERAZOSIN 10MG CAPSU | 00781205401 | 11/27/2000 | 30 | $47.69 | $3.50 | $0.00 | $10.00 | $29.50 | NASHVILLE | TN | 37221 |
| TERAZOSIN 10MG CAPSU | 00378157001 | 1/2/2001 | 30 | $47.69 | $3.50 | $0.00 | $10.00 | $29.50 | NASHVILLE | TN | 37221 |
| TERAZOSIN 5MG CAPSUL | 00781205301 | 7/6/2000 | 30 | $46.29 | $3.50 | $0.00 | $0.00 | $39.50 | MEMPHIS | TN | 38128 |
| HYTRIN 5MG CAPSULE | 00074380713 | 10/2/1998 | 30 | $48.32 | $0.00 | $0.00 | $0.00 | $0.00 | NASHVILLE | TN | |
| HYTRIN 5MG CAPSULE | 00074380713 | 8/26/1997 | 30 | $37.97 | $2.25 | $0.00 | $1.00 | $39.22 | HIXSON | TN | |
| HYTRIN 2MG CAPSULE | 00074380613 | 11/14/1998 | 34 | $54.76 | $0.00 | $0.00 | $0.00 | $0.00 | KNOXVILLE | TN | |
| HYTRIN 2MG CAPSULE | 00074380613 | 11/18/1998 | 34 | $54.76 | $2.25 | $0.00 | $10.00 | $38.80 | KNOXVILLE | TN | |
| HYTRIN 2MG CAPSULE | 00074380613 | 11/17/1998 | 34 | $54.76 | $0.00 | $0.00 | $0.00 | $0.00 | KNOXVILLE | TN | |
| HYTRIN 2MG CAPSULE | 00074380613 | 12/17/1998 | 34 | $54.76 | $2.25 | $0.00 | $10.00 | $38.80 | KNOXVILLE | TN | |
| HYTRIN 2MG CAPSULE | 00074380613 | 1/16/1999 | 34 | $58.32 | $2.25 | $0.00 | $10.00 | $41.82 | KNOXVILLE | TN | |
| HYTRIN 2MG CAPSULE | 00074380613 | 10/24/1998 | 34 | $54.76 | $2.25 | $0.00 | $10.00 | $38.80 | KNOXVILLE | TN | |
| HYTRIN 2MG CAPSULE | 00074380613 | 7/29/1999 | 30 | $53.52 | $0.00 | $0.00 | $10.00 | $35.54 | LENOIR CITY | TN | |
| HYTRIN 2MG CAPSULE | 00074380613 | 2/22/1999 | 34 | $58.32 | $2.25 | $0.00 | $10.00 | $41.82 | KNOXVILLE | TN | |
| HYTRIN 2MG CAPSULE | 00074380613 | 3/29/1999 | 34 | $58.32 | $2.25 | $0.00 | $10.00 | $41.82 | KNOXVILLE | TN | |
| HYTRIN 2MG CAPSULE | 00074380613 | 6/6/1999 | 34 | $58.32 | $2.25 | $0.00 | $10.00 | $41.82 | KNOXVILLE | TN | |
| HYTRIN 2MG CAPSULE | 00074380613 | 9/28/1998 | 34 | $54.76 | $2.25 | $0.00 | $10.00 | $41.53 | KNOXVILLE | TN | |
| HYTRIN 5MG CAPSULE | 00074380713 | 1/31/1999 | 30 | $51.46 | $2.25 | $0.00 | $7.00 | $39.56 | BARTLETT | TN | |

Exhibit 8

## THIRD PARTY PAYER DISTRIBUTION PLAN

Capitalized terms used and not defined in this Third Party Payer Distribution Plan have the same meanings given to them in the Settlement Agreement.

1.   FUNDS AVAILABLE FOR THIRD PARTY PAYER ("TPP") DISTRIBUTION

   a.   Under the Settlement Agreement, Seventy-Five Percent (75%) of the Net Settlement Fund will be allocated to the TPP Settlement Fund.

   b.   Costs of notice to TPPs and administration of the TPP Settlement Fund will be borne by that Fund and such costs will be subject to the Court's approval. Anticipated costs include, but are not limited to, those relating to: (i) mailing notice to TPPs; (ii) rental of post office boxes to receive correspondence; (iii) development of computer databases for processing claims and Notices of Exclusion; (iv) receipt and processing costs for correspondence by Class members; (v) receipt of calls from Class members and responses to inquiries concerning the settlement; (vi) establishment and maintenance of a website dedicated to the settlement; (vii) correspondence relating to claims adjudication; (viii) tax accounting services; and (ix) distribution expenses and postage. It is anticipated that such expenses in the aggregate will not exceed Three Hundred Thousand Dollars ($300,000.00).

   c.   Any incentive payments awarded to the TPP Plaintiffs that have prosecuted this case on behalf of the IPP Classes will be paid from the TPP Settlement Fund. Said TPP Plaintiffs have dedicated time and resources to assisting IPP's Co-Lead Counsel in propounding and responding to discovery requests and have appeared at depositions. Any incentive payments to the TPP Plaintiffs will be awarded by the Court, and will, under no circumstances, exceed One Hundred Twenty Thousand and 00/100 Dollars ($120,000.00) in the aggregate. (Any incentive payments awarded to the Consumer Plaintiffs will be awarded solely from the Consumer Settlement Fund, and will not impact the TPP Settlement Fund.)

   d.   If, after payment of (a) Court-approved costs of notice and administration, (b) any incentive payments awarded to TPP Plaintiffs, and (c) 100% of valid and timely filed claims, monies remain in the TPP Settlement Fund, any such remaining amount shall be paid to the Consumer Settlement Fund, to the extent any valid and timely filed claims by Consumer members of the IPP Classes remain unpaid. If, after payment of (a) Court-approved costs of notice and administration, (b) any incentive payments awarded to Consumer Plaintiffs, and (c) 100% of valid and timely filed claims, monies remain in the Consumer Settlement Fund, any such remaining amount shall be paid to the TPP Settlement Fund, to the extent any valid and timely filed claims by TPP members of the IPP Classes remain unpaid. If, after payment of all (a) Court-approved costs of notice and administration for the Consumer Settlement Fund and the TPP Settlement Fund, (b) any incentive payments awarded to Consumer Plaintiffs and TPP Plaintiffs, and (c) 100% of valid and timely filed claims of Consumers and TPP, monies remain in either the

Consumer Settlement Fund or the TPP Settlement Fund, the remaining amounts in either or both Settlement Funds shall be distributed as ordered by the Court.

2.     ELIGIBLE TPP CLAIMANTS

a.     <u>Class Definition</u>.  The "Classes" include, among others, consumers and TPPs who or which purchased and/or paid all or part of the purchase price of Hytrin and its AB-rated equivalents ("Terazosin Products") dispensed pursuant to prescriptions in the IPP Class States during the period October 15, 1995 through March 7, 2005.  A "Third Party Payer" or "TPP" that may qualify as a Class member, provided the other conditions to class membership described above are met, is an entity that is (i) a party to a contract, issuer of a policy or sponsor of a plan, and is also (ii) at risk, pursuant to such contract, policy or plan, to pay or reimburse all or part of the cost of Terazosin Products dispensed to natural persons covered by such contract, policy or plan.

b.     <u>"At Risk Entities"</u>.  Some TPPs contract with a health insurance company or other entity to serve as a "third party administrator"(or "TPA") to administer their prescription drug benefits.  If such contracts do not shift the financial risk from the TPP to the TPA for a purchase of Terazosin Products, the TPP, and not the TPA, is the Class member possessing a claim for that purchase for purposes of this settlement.  A TPP may authorize its TPA or another agent to submit a proof of claim on its behalf, so long as that authorization is in writing and conforms to the requirements of the TPP Proof of Claim Form ("TPP Claim Form") attached to the TPP Notice of Settlement approved by the Court.

3.     INFORMATION REQUIRED TO BE PROVIDED ON PROOF OF CLAIM

a.     <u>Designation of Principal or Agent</u>.  The TPP Claim Form will require that an eligible claimant identify whether it is filing its TPP Claim Form on its own behalf or through a duly authorized agent.  If the TPP Claim Form is filed by a TPP's agent, such as a TPA, the TPP Claim Form will require that the agent identify the agent's relationship to the TPP (e.g., whether the agent is the TPP's TPA).

b.     <u>Identification</u>.  The TPP Claim Form will require identification information from each TPP and each agent that files a TPP Claim Form on behalf of a TPP to enable the Settlement Administrator of the TPP Settlement Fund to determine whether duplicative claims have been filed.  The TPP Claim Form will also require the TPP to describe itself as either a health insurance company or health maintenance organization, a self-insured employer health benefit plan, a self-insured union health and welfare plan, or some other entity.

c.     <u>Payment Information</u>.  The TPP Claim Form will require a TPP to identify any other entity that made payments or reimbursements on its behalf for Terazosin Products during the period from October 15, 1995 through March 7, 2005.

2

Authorized agents of Class members will be required to identify any TPPs on whose behalf they paid or reimbursed for Terazosin Products during the same time period if they are submitting a TPP Claim Form on behalf of any such TPP.

d. <u>Information Necessary to Calculate a TPP's Claim</u>.  For ease of administration, as an initial step, TPPs and/or their agents will be permitted in the TPP Claim Form to certify to the accuracy of their claims rather than provide the Settlement Administrator of the TPP Settlement Fund with documentary evidence of their claimed purchases of Terazosin Products.  However, claimants must certify that they have reviewed and retained documentary evidence from which the information in the TPP Claim Form is taken and on which it is based and will provide such documentary evidence upon request by the Settlement Administrator.  All claims will be subject to audit by the Settlement Administrator, and submission of a false claim, or a claim for which the claimant does not have documentary evidence, could subject the claimant to rejection of its entire claim and/or civil and/or criminal sanctions.  A TPP and/or its duly authorized agent will submit the total amounts paid or reimbursed at risk by or on behalf of such TPP for prescriptions of Terazosin Products filled in the eighteen IPP Class States during the period from January 1, 1998 through December 31, 2004.

e. <u>Separate Proofs of Claim</u>.  TPP Class members who will claim both for themselves and as agents for other TPPs must <u>not</u> file both such claims on the same TPP Claim Form.  TPP Class members who file claims on their own behalf as TPPs <u>and</u> file claims as TPAs on behalf of other TPP Class members must file two separate TPP Claim Forms.

f. <u>Certifications</u>.  A claimant will be required to certify in the TPP Claim Form that the information provided therein is true and correct in the manner provided by 28 U.S.C. § 1746, except that in addition the TPP Claim Form will require notorization of the claimant's signature.

4. DETERMINATION OF PAYMENTS

a. <u>Determination of Distribution Amounts</u>. After totaling all the purchases of Terazosin Products made by TPPs who submitted valid claims, the Settlement Administrator will distribute the TPP Settlement Fund, net of the expenses listed in Paragraphs 1(b) and (c), on a pro rata basis to each TPP claimant up to the total amount of their total purchases.

Exhibit 9

## CONSUMER DISTRIBUTION PLAN

Capitalized terms used and not defined in this Consumer Distribution Plan have the same meanings given to them in the Settlement Agreement.

1.  FUNDS AVAILABLE FOR CONSUMER DISTRIBUTION

    a.  Under the Settlement Agreement, Twenty-Five Percent (25%) of the Net Settlement Fund will be allocated to the Consumer Settlement Fund.

    b.  Costs of notice to Consumers and administration of the Consumer Settlement Fund will be borne by that Fund and such costs will be subject to the Court's approval. Anticipated costs include, but are not limited to, those relating to: (i) publishing summary notice to Consumers; (ii) printing and mailing notice to consumers and rental of post office boxes to receive correspondence; (iii) development of computer databases for processing claims and Notices of Exclusion; (iv) receipt and processing costs for correspondence by Class members; (v) receipt of calls from Class members and responses to inquiries concerning the settlement; (vi) establishment and maintenance of a website dedicated to the settlement; (vii) correspondence relating to claims adjudication; (viii) tax accounting services; and (ix) distribution expenses and postage. It is anticipated that such expenses in the aggregate will not exceed Seven Hundred and Fifty Thousand Dollars ($750,000.00).

    c.  Any incentive payments awarded to the Consumer Plaintiffs that have prosecuted this case on behalf of the IPP Classes will be paid from the Consumer Settlement Fund. Said Consumer Plaintiffs have dedicated time and resources to assisting IPP's Co-Lead Counsel in propounding and responding to discovery requests and have appeared at depositions. Any incentive payments to the Consumer Plaintiffs will be awarded by the Court, and will, under no circumstances, exceed Thirty Thousand and 00/100 Dollars ($30,000.00) in the aggregate. (Any incentive payments awarded to the Third Party Payer ("TPP") Plaintiffs will be awarded solely from the TPP Settlement Fund, and will not impact the Consumer Settlement Fund.)

    d.  If, after payment of (a) Court-approved costs of notice and administration, (b) any incentive payments awarded to TPP Plaintiffs, and (c) 100% of valid and timely filed claims, monies remain in the TPP Settlement Fund, any such remaining amount shall be paid to the Consumer Settlement Fund, to the extent any valid and timely filed claims by Consumer members of the IPP Classes remain unpaid. If, after payment of (a) Court-approved costs of notice and administration, (b) any incentive payments awarded to Consumer Plaintiffs, and (c) 100% of valid and timely filed claims, monies remain in the Consumer Settlement Fund, any such remaining amount shall be paid to the TPP Settlement Fund, to the extent any valid and timely filed claims by TPP members of the IPP Classes remain unpaid. If, after payment of all (a) Court-approved costs of notice and administration for the Consumer Settlement Fund and the TPP Settlement Fund, (b) any incentive payments awarded to Consumer Plaintiffs and TPP Plaintiffs, and (c) 100% of

valid and timely filed claims of Consumers and TPP, monies remain in either the Consumer Settlement Fund or the TPP Settlement Fund, the remaining amounts in either or both Settlement Funds shall be distributed as ordered by the Court.

2. ELIGIBLE CONSUMER CLAIMANTS

    a.   Class Definition. Eligible Consumers Claimants are natural persons who purchased and/or paid all or part of the purchase price of Hytrin and its AB-rated equivalents ("Terazosin Products") dispensed pursuant to prescriptions filled in, or via mail to residents of the IPP Class States during the period October 15, 1995 through March 7, 2005.

3. INFORMATION REQUIRED TO BE PROVIDED ON PROOF OF CLAIM

    a.   Identification. For identification purposes, the Consumer Claim Form will require that each Consumer to provide their name, address, telephone number, date of birth and the last four digits of his or her Social Security Number ("SSN"). The SSN is required to be provided to enable the Settlement Administrator to determine whether duplicative claims have been filed. The Consumer Claim Form also requires the name, address and phone number of the doctor who prescribed the Terazosin Product. In prior settlements, this information has been useful in auditing claims because the Claim Form does not require proof of purchase of the Terazosin Products.

    b.   Payment Information. The Consumer Claim Form does not require Consumers provide proof of purchase of the Terazosin Products. The Claim Form does require Consumers provide the period of time when the Consumer purchased Terazosin Products and how much the Consumer paid for Terazosin Products during that time period. All claims will be subject to audit by the Settlement Administrator, and submission of a false claim, or a claim for which the claimant does not have documentary evidence, could subject the claimant to rejection of its entire claim and/or civil and/or criminal sanctions.

    d.   Certifications. A claimant will be required to certify in that the information provided therein is true and correct in the manner provided by 28 U.S.C. § 1746.

4. DETERMINATION OF PAYMENTS

    a.   Determination of Distribution Amounts. After totaling all the purchases of Terazosin Products made by Consumers who submitted valid claims, the Settlement Administrator will distribute the Consumer Settlement Fund, net of the expenses listed in Paragraphs 1(b) and (c), on a pro rata basis to each Consumer claimant up to the total amount of their total purchases.

# Exhibit 10

## GOVERNMENT DISTRIBUTION PLAN

Capitalized terms used and not defined in this Government Distribution Plan have the meanings given to them in the Settlement Agreement.

Two Million Dollars ($2,000,000) out of the $30,700,000 Aggregate Settlement Fund paid by Defendants will constitute the **State Settlement Fund** and be used to compensate (i) the Plaintiff States for their proprietary claims of Designated Governmental Entities; (ii) civil penalties as assessed by Colorado in lieu of obtaining compensation for their Governmental Entity proprietary claims; and (iii) the Plaintiff States for their attorneys' fees and costs. Of the State Settlement Fund, the Plaintiff States have allocated up to $350,000 to compensate the Plaintiff States for Claims asserted by or on behalf of Designated Governmental Entities and to cover the remedies that the Plaintiff States, through their Attorneys General, but not class counsel, assert. Up to $1,625,000 will be divided among the Plaintiffs States to cover their respective attorneys' fees and expenses.

The proposed distribution of the State Settlement Fund recognizes the substantial resource commitment and the litigation risks borne in this case by the Plaintiff States both in their own capacity and on behalf of their state agencies. A summary of the plan of distribution among the Plaintiff States follows:

1.   A total of $175,000 will be allocated between the Designated Governmental Entities in Florida and Kansas based upon submitted purchase and damages data for specific Designated Governmental Entities in Kansas and Florida as follows:

| **Florida Entities** | Amount |
|---|---|
| Florida Department of Children and Family Services | $  4,820.82 |
| Florida Department of Corrections | $102,699.80 |
| Florida Department of Health $  5,474.41 | |
| Florida State University | $     268.68 |
| Orange County Medical Clinic | $     856.29 |
| Florida Total | $114,120.00 |
| **Kansas Entities** | Amount |
| Kansas State Employees Prescription Drugs Plan | $ 52,317.00 |
| Entities Purchasing Pursuant to MMCAP | $  8,563.00 |
| Kansas Total | $ 60,880.00 |
| TOTAL | $175,000.00 |

2.     The State of Colorado will receive $200,000 in civil penalties, in lieu of compensation for their Government Entity proprietary claims.

3.     The Plaintiff States will share $1,625,000 in reimbursement for their attorneys' fees and costs, subject to court approval. Colorado's designated portion of such funds, including interest thereon, shall be held by the Colorado Attorney General in trust to be used, first, for actual costs and attorneys' fees incurred by the Attorney General in this matter, and, second, for consumer education and for fraud and/or antitrust enforcement efforts.

Finally, until the date of distribution after final approval of the settlement, the State Settlement Fund will generate interest. The Plaintiff States propose that each disbursement by the State Liaison Counsel of monies from the State Settlement Fund shall include the interest attributable to that disbursement.