UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 99-MDL-1317 - SEITZ/KLEIN

**NIGHT BOX FILED**

APR 1 2 2005

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

IN RE TERAZOSIN HYDROCHLORIDE
ANTITRUST LITIGATION

_____/

THIS DOCUMENT RELATES TO:

*Louisiana Wholesale Drug Co., Inc. v. Abbott*
*Laboratories, et al.*

S.D. Fla. Case No. 98-3125

*Valley Drug Co. v. Abbott Laboratories, et al.*

S.D. Fla. Case No. 99-7143

## SHERMAN ACT CLASS PLAINTIFFS' NOTICE OF FILING REPORT OF STATUS OF MAILED CLASS NOTICE PROGRAM

By this Notice, Sherman Act Class Plaintiffs hereby report to the Court the status of the program of mailed notice approved by the Court on February 25, 2005, and state as follows:

1.       By order dated February 25, 2005 (the "Order") [DE #1528], the Court, *inter alia*, preliminarily approved the Sherman Act Class settlement with Defendants Abbott Laboratories ("Abbott") and Geneva Pharmaceuticals, Inc. ("the Settlement"), and authorized the form and manner of providing notice to the Class. Given that the members of the Class were readily identifiable from Abbott's Hytrin sales database, the Court approved a notice program that included only direct first class mail. Pursuant to the Order, Class Counsel retained the Certified Public Accounting firm of Heffler, Radetich & Saitta L.L.P. ("HR&S"), the firm the Court approved for purposes of disseminating notice to the Sherman Act Class (the "Class").

2.       As provided for in the Order, HR&S mailed via first class mail the court approved class notice (the "Class Notice") to a list of 2,510 names and addresses drawn from the Abbott Hytrin sales database that Abbott produced to Plaintiffs in this case (the "Class List"). Because some

entities on the Class List had more than one address on the List, the 2,510 mailings corresponded to 2,052 Class members. To help create the Class List, and to assist with the class notice project, Class Counsel also retained Econ One Research, Inc. ("Econ One"), a firm with extensive experience working with pharmaceutical company sales databases in general, and, in particular, the Abbott's Hytrin sales database from which the Class List was derived. One of Plaintiffs' principal economic experts in this case is Dr. Jeffrey Leitzinger, the President of Econ One.

3.      Pursuant to the Court's request, on or about March 22, 2005, Plaintiffs filed the affidavit of that same date of Edward J. Sincavage, a principal at HR&S (attached hereto as Exhibit "A") [DE #1544]. The March 22 Sincavage affidavit affirmed, *inter alia*, that HR&S had, on March 1, 2005, duly mailed via first class mail the form of Class Notice approved by the Court to all 2,510 addresses (corresponding to all 2,052 Class members) on the Class List.

4.      In addition, on March 1, 2005, Class Counsel sent a "pdf" file of the Class Notice via electronic mail to counsel for each of the five largest Class members (by purchase volume and relative share of Class damages), namely AmerisourceBergen Corp., McKesson HBOC, Cardinal Health, Inc., Medco Health, and WalMart.

5.      The Class Notice provided that Class members could exclude themselves from the Class by writing to the Claims Administrator at an address set forth in the Class Notice. The Class Notice stated that requests for exclusion had to be received by the Claims Administrator no later than March 31, 2005. According to the April 12, 2005 Second Affidavit of Edward J. Sincavage, CPA Regarding Dissemination of Notice to the Sherman Act Class ("Second Sincavage Affidavit") (attached hereto as Exhibit "B"), as of April 11, 2005 no requests for exclusion had been received.

–2–

6.      The Class Notice further provided that Class members could object to the Settlement by filing an objection with the Court with copies to Co-Lead counsel for the Class no later than April 8, 2005. To date, Class Counsel is aware of no objections having been filed or served.

7.      As discussed more fully in the Second Sincavage Affidavit (Exh. "B" hereto), just under 400 of the 2510 mailed Class Notices were returned by the U.S. Post Office as undeliverable ("RPOs"), corresponding to 289 distinct Class members. As explained more fully below, these returns related to Class Members, who as a group, had negligible brand and generic Hytrin purchases during the Class Period, *i.e.*, combined, they had no more than 0.2% of total class Hytrin purchases and 0.03% of total Class generic terazosin purchases.

8.      On or about April 1, 2005, HR&S compiled a list of these entities and forwarded it to Class Counsel and to Econ One for review. HR&S continually updated the list to include RPOs received through April 7, 2005. Analysis of this list of approximately 400 RPOs revealed that the RPO list had included (a) multiple addresses/entries for certain Class members, and (b) addresses of certain entities who appeared on the Class List multiple times. After removing the duplication and redundancy, Econ One determined that there were 289 unique Class member entities (a) to whom notice was returned as undeliverable and, (b) who were not successfully mailed notice at an alternate address. The resulting list will be referred to hereinafter as the "Revised RPO List." An annotated Revised RPO List/Spreadsheet is attached hereto as Exhibit "C".

9.      The only entities on the Revised RPO List with purchase volumes above 100,000 terazosin capsules during the Class Period were Fallon Clinic HMO, Independent Drug, and Professional Wholesale. After some research, Class Counsel was able to: (a) fax the Class Notice to Fallon Clinic and Independent Drug; (b) speak to persons with authority at both of these entities; and

–3–

(c) secure written statements from each stating that each had specifically decided not to opt out and not to object to any portion of the Settlement. *See* Letters from Fallon Clinic and Independent Drug attached collectively as Exhibit "D". Class Counsel also determined that Professional Wholesale went out of business in 2001.

10.     Econ One analyzed the Revised RPO List and determined the total Hytrin and generic terazosin purchases during the Class Period for each of the 289 entities on the List, and then sorted the entities in descending order by purchase volume (as reflected in Exhibit "C"). Class Counsel determined that the total terazosin purchases, and thus total potential damages, of all of the entities on this list underlined combined was negligible: 0.2% of total Class Hytrin purchases, and 0.03% of total Class generic terazosin purchases. When purchases by Fallon Clinic and Independent Drug are removed from the list (because their participation in the Class has been definitively confirmed), the total purchases by the remaining 287 entities become more negligible still: 0.05% of Class Hytrin purchases, and 0.001% of Class generic terazosin purchases. Approximately 260 of the entities on the Revised RPO List purchased 10 or fewer bottles of terazosin during the Class Period, and the vast majority purchased *two bottles* or fewer.

11.     On or about April 7, 2005, Class Counsel provided the Revised RPO List to counsel for Defendants for their review.

12.     As detailed in the Second Sincavage Affidavit, HR&S and Class Counsel took a number of steps to attempt to determine the reasons Class Notices were returned in the mail and to see if forwarding information could be found. These steps included, *inter alia*, Internet searches, pharmaceutical database searches, use of the U.S. Post Office's National Change of Address Service, research in Dun & Bradstreet, Inc. business database, use of the telephone information service, and

BERGER SINGERMAN
attorneys at law           Boca Raton   Fort Lauderdale   Miami   Tallahassee

350 East Las Olas Boulevard  Suite 1000  Fort Lauderdale, Florida 33301  Telephone 954 525 9900  Facsimile 954 523 2872

dozens and dozens of direct phone calls to the RPO entities where phone numbers could be found. *See* Second Sincavage Aff. (Exh. "B") at ¶ 4.

13.     Through these extensive efforts to contact each and every Class member whose notice was returned in the mail, HR&S and Class Counsel found forwarding addresses for 108 of the 289 entities on the Revised RPO List. HR&S then remailed notice via first class mail to these 104 entities during the week of April 4, 2005; and to another four on April 11, 2005. *Id.* Through their research, HR&S and Class Counsel also learned that at least 15 of the RPO entities were bought out by a few "opt out" chain drug stores are (and thus not members of the Class); and that 17 of the RPO entities confirmed that they had gone out of business. A summary of all of these efforts and the results achieved are reported in the Second Sincavage Affidavit (Exh. "B") at ¶¶ 4-6.

14.     In light of these extensive efforts to ensure adequate and fair notice to the Class, Mr. Sincavage has concluded as follows: "The above-described procedures performed to locate RPO updated addresses exceeded both HR&S's normal standards and also the industry standards of locating updated addresses for notices returned as undeliverable." *Id.* at ¶ 8.

Dated: April 13, 2005                   Respectfully submitted,

                                        **BERGER SINGERMAN**
                                        350 East Las Olas Boulevard, Suite 1000
                                        Fort Lauderdale, FL 33301
                                        Phone: (954) 525-9900
                                        Fax:    (954) 523-2872

                            By:         _____
                                        Mitchell W. Berger, Florida Bar No. 311340
                                        mberger@bergersingerman.com
                                        Rene D. Harrod, Florida Bar No. 627666
                                        rharrod@bergersingerman.com

–5–

Executed with the Consent of:

Bruce E. Gerstein
Barry S. Taus
Co-Lead Counsel
**GARWIN GERSTEIN & FISHER, L.L.P.**
1501 Broadway, Suite 1416
New York, New York 10036
Phone: (212) 398-0055
Fax:    (212) 764-6620
E-mail: btaus@garwingerstein.com

Daniel Berger
David F. Sorensen
Eric L. Cramer
Executive Committee
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, Pennsylvania 19103-6365
Phone: (215) 875-3000
Fax:    (215) 875-4671
E-mail:danberger@bm.net

John Gregory Odom
Stuart Des Roches
**ODOM & DES ROCHES, LLP**
Suite 2020, Poydras Center
650 Poydras Street
New Orleans, Louisiana  70130
Phone: (504) 522-0077
Fax:    (504) 522-0078
E-mail: stuart@ordlaw.com

Richard Drubel
Co-Lead Counsel
**BOIES SCHILLER & FLEXNER LLP**
26 South Main Street
Hanover, New Hampshire  03755
Phone: (603) 643-9090
Fax:    (603) 643-9010
E-mail: rdrubel@boies-schiller.com

Aubrey B. Calvin
Executive Committee
**THE CALVIN LAW FIRM, P.C.**
Niels Esperson Building
808 Travis, Suite 2300
P.O. Box 61586
Houston, Texas  77002-1586
Phone: (713) 224-5771
Fax:    (713) 225-0038
E-mail: acalvin@crvlaw.com

David P. Smith
**PERCY, SMITH, FOOTE & GADEL**
720 Murray Street
P.O. Box 1632
Alexandria, Louisiana  71309-1632
Phone: (318) 445-4480
Fax:    (318) 487-1741
E-mail: DPSmith@PSFG-law.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished via U.S. Mail and Electronic Mail to all Counsel of Record on the 13th day of April, 2005.

By: _____
    Rene D. Harrod, Esquire
    Florida Bar No. 627666

–6–

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
Case No. 99-MDL-1317-SEITZ/KLEIN

IN RE TERAZOSIN HYDROCHLORIDE
ANTITRUST LITIGATION

_____/

THIS DOCUMENT RELATES TO:

*Louisiana Wholesale Drug Co., Inc. v. Abbott*          S.D. Fla. Case No. 98-3125
*Laboratories, et al.*

*Valley Drug Co. v. Abbott Laboratories,*                 S.D. Fla. Case No. 99-7143
*et al.*

_____/

**SHERMAN ACT CLASS PLAINTIFFS' NOTICE OF FILING**
**AFFIDAVIT OF EDWARD J. SINCAVAGE REGARDING CLASS NOTICE**

At the request of the Court during the status conference on February 4, 2005, the

Sherman Act Class Plaintiffs hereby give notice of filing the attached Affidavit of Edward J.

Sincavage, CPA Regarding Dissemination of Notice to the Sherman Act Class. The Sherman Act

Class Plaintiffs further state that in addition to the matters set forth in the attached affidavit, the

Sherman Act Class Counsel have further caused the notice to be sent directly to outside counsel for

the five largest class members, and Co-Lead Counsel for the Sherman Act Class Plaintiffs have

posted the Notice and Settlement Agreement on their respective web sites.

278749-1                                                    1

BERGER SINGERMAN          *Boca Raton    Fort Lauderdale    Miami    Tallahassee*
     attorneys at law

350 East Las Olas Boulevard  Suite 1000  Fort Lauderdale, Florida 33301  Telephone 954-525-9900  Facsimile 954-523-2872

Respectfully submitted,

BERGER SINGERMAN
*Liaison Counsel for the Sherman Act Class Plaintiffs*
350 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, FL 33301
Phone: (954) 525-9900
Fax: (954) 523-2872

By: _____
   Mitchell W. Berger, Florida Bar No. 311340
   mberger@bergersingerman.com
   Rene D. Harrod, Florida Bar No. 627666
   rharrod@bergersingerman.com

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served by electronic mail and United States mail this March 22, 2005 on all attorneys identified on the official service list.

_____
Rene D. Harrod, Florida Bar No. 627666

278749-1                                    2

BERGER SINGERMAN
attorneys at law          *Boca Raton   Fort Lauderdale   Miami   Tallahassee*

350 East Las Olas Boulevard   Suite 1000   Fort Lauderdale, Florida 33301   Telephone 954-525-9900   Facsimile 954-523-2872

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
SOUTHERN DIVISION

CASE NO. 99-MDL-1317-SEITZ/KLEIN

IN RE TERAZOSIN HYDROCHLORIDE
ANTITRUST LITIGATION

_____/

This Notice relates to:

*Louisiana Wholesale Drug Co., Inc. et al.*
*v. Abbott Laboratories, et al.*     Civ. No. 98-3125-S/G (S.D. Fla.)


*Valley Drug Co. et al.*
*v. Abbott Laboratories, et al.*     Civ. No. 99-7143-S/G (S.D. Fla.)

_____/

## AFFIDAVIT OF EDWARD J. SINCAVAGE, CPA
## REGARDING DISSEMINATION OF NOTICE TO THE SHERMAN ACT CLASS

COMMONWEALTH OF PENNSYLVANIA   :
                :  ss.
COUNTY OF PHILADELPHIA      :

   I, Edward J. Sincavage, being first duly sworn according to law, depose and say as follows:

   1.  I am a partner in the Certified Public Accounting firm of Heffler, Radetich & Saitta L.L.P., ("HR&S" or the "Claims Administrator"), the offices of which are located at Suite 1700, 1515 Market Street, Philadelphia, Pennsylvania. I am over 21 years of age and am not a party to this action. I have personal knowledge of the matters set forth in this affidavit and, if

called upon as a witness, I could and would competently testify to these matters under penalty of perjury.

     2.      HR&S performed the following services under my supervision relating to dissemination of the Court-approved "Notice of Proposed Class Action Settlement and Hearing Regarding Settlement," dated March 1, 2005 (referred to herein as "the Notice"). A copy of the Notice is annexed hereto as Exhibit 1.

     3.      HR&S retrieved the original mailing list containing the names and addresses of the 4,604 potential class members who were mailed the notice of class certification, dated March 13, 2002. This earlier list was drawn from the electronic sales records of defendant Abbott Laboratories. HR&S then sent an excel file containing the prior mailing list to a representative of the firm Econ One Research, Inc., to determine the names and addresses to be used for the Notice dated March 1, 2005. I understand that Econ One Research Inc. has served as expert economists for the Sherman Act Class plaintiffs in this litigation, and that Econ One Research, Inc. has extensive experience working with Abbott's electronic sales database.

     4.      HR&S received an updated mailing list from Econ One Research, Inc., which contained 2,510 names and addresses of potential class members who purchased Hytrin, also known by the chemical name terazosin hydrochloride, directly from Abbott Laboratories at any time during the period commencing March 31, 1998 through and including June 30, 2001.

     5.      HR&S verified that the number of addresses in the file for mailing matched Econ One's estimate and arranged for the mailing of 2,510 names and addresses via postage prepaid, first-class mail on March 1, 2005.

     6.      The Notice also explains to Class members their right to exclude themselves from the Sherman Act Class by writing to the Claims Administrator on or before March 31, 2005 to a P.O. Box we established for the purpose of administering this case. The Notice also described

Class Members of their right to object to the Proposed Settlement, only upon specific written submission to the Office of the Clerk of the Court with copies to Co-Lead Counsel on or before April 8, 2005. Through March 18, 2005, HR&S has not received any such written requests for exclusions from the Class or objections to the Proposed Settlement.

*Edward J. Sincavage*

EDWARD J. SINCAVAGE

Sworn to and subscribed before me
this 22nd day of March 2005

*Kristine J. Blakla*

Notary Public

NOTARIAL SEAL
KRISTINE J. BLAKLA, Notary Public
City of Philadelphia, Phila. County
My Commission Expires April 14, 2007

3

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
SOUTHERN DIVISION

CASE NO. 99-MDL-1317-SEITZ/KLEIN

In re TERAZOSIN HYDROCHLORIDE
ANTITRUST LITIGATION

_____/

This Notice pertains to:

Louisiana Wholesale Drug Co., Inc., et al.
v. Abbott Labs., et al.                          Civ. No. 98-3125-S/G (S.D. Fla.)

Valley Drug Co., et al.
v. Abbott Labs., et al.                          Civ. No. 99-7143-S/G (S.D. Fla.)
_____/

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT AND HEARING REGARDING SETTLEMENT

*PLEASE READ THIS NOTICE FULLY AND CAREFULLY. A SETTLEMENT HAS BEEN PROPOSED IN PENDING CLASS ACTION LITIGATION THAT MAY AFFECT YOUR RIGHTS. IF YOU ARE A MEMBER OF THE CLASS DESCRIBED BELOW, YOU MAY BE ENTITLED TO SHARE IN THE SETTLEMENT FUND.*

**TO: All persons who purchased Hytrin, also known by the chemical name terazosin hydrochloride, directly from Abbott Laboratories at any time during the period commencing March 31, 1998 through and including June 30, 2001.**

**EXCLUDED FROM THE CLASS ARE: (1) Defendants Abbott Laboratories, Geneva Pharmaceuticals, Inc. (now known as Sandoz Inc.), Zenith Goldline Pharmaceuticals, Inc. (now known as Ivax Pharmaceuticals, Inc.), their officers, directors, management, employees, subsidiaries, and affiliates; (2) each of the following entities, and any and all claims of each said entity that have been asserted, or could have been asserted, in *In re Terazosin Hydrochloride*, Case No. 99 MDL 1317 arising out of Hytrin or generic terazosin hydrochloride purchases by said entity: CVS Meridian, Inc., Rite Aid Corp., Walgreen Co., Eckerd Corp., The Kroger Co., Albertson's, Inc., The Stop & Shop Supermarket Co., and Hy-Vee, Inc.; and (3) Kaiser Foundation Health Plan, Inc. and the Kaiser entities on whose behalf it has asserted claims in paragraph 8 of its complaint in 99 MDL 1317.**

## I.   PURPOSE OF NOTICE

Pending in this Court are cases brought by Louisiana Wholesale Drug Co., Inc. ("Louisiana Wholesale") and Valley Drug Co. ("Valley Drug") (collectively, "Class Plaintiffs" or "Class Representatives") under the federal antitrust laws on behalf of themselves and a class of similarly situated persons, against defendants Abbott Laboratories ("Abbott"), and Geneva Pharmaceuticals, Inc. ("Geneva") (now known as Sandoz, Inc.), alleging a conspiracy to violate the federal antitrust laws. Abbott and Geneva will be referred to below collectively as "Defendants." Previously, notice (dated March 13, 2002) had been given of a settlement with another defendant, Zenith Goldline Pharmaceuticals, Inc. ("Zenith"), now known as Ivax Pharmaceuticals, Inc. ("Ivax"). That settlement was finally approved by the Court on June 13, 2002.[1]

This Notice is given pursuant to Federal Rule of Civil Procedure 23 and by Order of the United States District Court for the Southern District of Florida (the "Court") for the purpose of informing you of your rights with regard to:

(a)   the Court's ruling that this lawsuit may be settled as a class action, with Louisiana Wholesale and Valley Drug as class representatives, on behalf of all persons who purchased Hytrin, also known by the chemical name terazosin hydrochloride directly from Abbott Laboratories at any time during the period commencing March 31, 1998 through and including June 30, 2001. Excluded from the Class are: (1) defendants Abbott Laboratories, Geneva Pharmaceuticals, Inc. (now known as Sandoz Inc.), Zenith Goldline Pharmaceuticals, Inc. (now known as Ivax Pharmaceuticals, Inc.), their officers, directors, management, employees, subsidiaries, and affiliates; (2) each of the following entities, and any and all claims of each said entity that have been asserted, or could have been asserted, in *In re Terazosin*

---

[1]Under that settlement ("Zenith Settlement"), Zenith paid $2,072,327 into an escrow account. The payments by Zenith, plus all interest earned on such payments, will be used to reimburse costs and expenses of this litigation, thereby effectively increasing the amount of the Net Settlement Fund available to distribute to members of the Class (defined below). The Zenith Settlement provided Zenith with the right to terminate the settlement if certain specified conditions occurred. Should the settlement between the Class *and Abbott and Geneva* described in *this notice* become final, and provided that the Court in its final order of approval of the Abbott and Geneva settlement re-affirms that all of the terms of the Zenith Settlement, including class-wide releases and the other provisions of the Zenith Settlement incorporated into the June 13, 2002 final judgment remain in full force and effect (except for any obligation for Zenith to pay up to $25,000 in notice costs, which obligation Plaintiffs have excused), then, in that event, to the extent Zenith has retained any enforceable rights to terminate the Zenith Settlement (which Plaintiffs dispute), those rights are forever expunged, the Zenith Settlement funds may be used for the benefit of the Class as the Court may direct, and the Zenith Settlement and all of its terms, including releases given by members of the Class, remain in full force and effect.

*Hydrochloride*, Case No. 99 MDL 1317 arising out of Hytrin or generic terazosin hydrochloride purchases by said entity: CVS Meridian, Inc., Rite Aid Corp., Walgreen Co., Eckerd Corp., The Kroger Co., Albertson's, Inc., The Stop & Shop Supermarket Co., and Hy-Vee, Inc.; (3) Kaiser Foundation Health Plan, Inc. and the Kaiser entities on whose behalf it has asserted claims in paragraph 8 of its complaint in 99 MDL 1317 ("the Class" or "the Sherman Act Class");[2]

(b) a proposed settlement (the "Settlement") as described below of the above-referenced litigation on behalf of the Sherman Act Class in exchange for a cash payment by defendant Abbott of $43.5 million and a cash payment by defendant Geneva of $29 million, for a total amount paid by these Defendants combined of $72.5 million in cash (the "Settlement Fund"); and,

(c) a fairness hearing scheduled to be held on **April 15, 2005 at 10:00 a.m.,** before The Honorable Patricia A. Seitz, United States District Judge for the United States District Court for the Southern District of Florida, in the Fifth Floor Courtroom, United States Courthouse, 301 North Miami Avenue, Miami, Florida (the "Fairness Hearing").

The purpose of the Fairness Hearing will be to consider whether to approve: (1) the proposed settlement between the Sherman Act Class and defendants Abbott and Geneva as fair, reasonable, adequate, and in the best interests of the Sherman Act Class; (2) a proposed Plan of Allocation to allocate the settlement proceeds among Sherman Act Class members; and (3) the application by Class Counsel for an award of attorneys' fees and costs, and the application for incentive awards for the Class Representatives, as described below. The Court may continue or reschedule the hearing; if the Court does so, the Class Counsel will advise the Sherman Act Class by posting a conspicuous notice at the internet web sites www.bsfllp.com and www.garwingerstein.com.

(d) Right to Object: Sherman Act Class members also are hereby advised of their right to object (by filing with the Clerk of the Court no later than April 8, 2005) and/or appear at the Fairness Hearing; or to elect to exclude themselves from the Sherman Act Class (by written notice received by the claims administrator no later than March 31, 2005), as explained further below. This Settlement is contingent upon Defendants not electing to terminate the Settlement in the event that the confidential threshold for exclusions from the Class is exceeded, or in the event other triggering events occur that are referenced in the Settlement Agreement. In the event any triggering event occurs that would permit Defendants to terminate the Settlement, Defendants must decide whether to terminate the Settlement at a date certain prior to the Fairness Hearing as provided for by the Settlement Agreement.

## II.   THE LITIGATION

### A.   Class Representatives' Claims

On December 18, 1998, plaintiff Louisiana Wholesale filed an action in the United States District Court for the Southern District of Florida alleging violations of the federal antitrust laws, specifically the Sherman Act and the Clayton Act, against defendants Abbott, Geneva and Zenith. Louisiana Wholesale alleged, among other things, that Abbott entered into an agreement with Geneva, pursuant to which Abbott agreed to pay Geneva millions of dollars in exchange for Geneva's agreement to refrain from marketing its generic version of Hytrin until Abbott's then-pending patent infringement suit against Geneva was resolved. Louisiana Wholesale alleged that the Abbott/Geneva Agreement, as well as a similar agreement between Abbott and Zenith (collectively "the Agreements"), were illegal under Section 1 of the Sherman Act, and caused direct purchasers of Hytrin to be overcharged for terazosin hydrochloride ("terazosin") because the agreements kept less expensive generic versions of Hytrin off the market.

On August 30, 1999, plaintiff Valley Drug filed a similar complaint challenging the Abbott/Geneva Agreement, alleging similar antitrust violations against Abbott and Geneva. The Louisiana Wholesale and Valley Drug cases were consolidated by the Court on October 22, 1999. Louisiana Wholesale and Valley Drug are hereafter referred to as the "Class Representatives" or "Class Plaintiffs."

### B.   Defendants' Denial of Liability

Defendants Abbott and Geneva vigorously dispute Class Plaintiffs' claims that the Agreements were illegal. Defendants also deny Class Plaintiffs' claims that the Agreements caused Class Plaintiffs and members of the Sherman Act Class any harm. For example, Defendants assert, among other defenses, that Geneva would not have come to market earlier with its cheaper generic product, even without the Abbott/Geneva Agreement, because of the risk of liability if Abbott won its then pending patent suit against Geneva relating to Geneva's proposed generic terazosin product. Defendants also assert that technical problems in manufacturing Geneva's terazosin product prevented it from bringing its product to market any earlier than August 1999, when it actually launched its product.

### C.   Status of the Litigation

On February 11, 2000, the Court appointed the law firms of Garwin Gerstein & Fisher LLP and Boies, Schiller & Flexner LLP as Co-Lead Counsel for the Sherman Act Class cases. Since that time, Co-Lead Counsel and lawyers working at their direction (collectively "Class Counsel") have prosecuted this lawsuit on behalf of the Sherman Act Class.

---

[2] Other cases challenging the same conduct by Abbott, Geneva, and Zenith were filed on behalf of consumers and other persons who purchased Hytrin indirectly, *i.e.,* from sources other than Abbott, and on behalf of persons that paid for all or part of such indirect purchases, including third-party payors such as insurance companies or health care plans. The proposed settlement described in this Notice relates *only* to the Class of direct purchasers of Hytrin from Abbott as defined above. NEITHER CONSUMERS NOR THIRD-PARTY PAYORS ARE PART OF THE CLASS TO WHOM THIS NOTICE IS DIRECTED.

### 1. Class Certification

On November 30, 1999, Class Counsel and the Class Plaintiffs moved for certification of the Sherman Act Class. On September 20, 2001, the Court certified the Sherman Act Class with Louisiana Wholesale and Valley Drug as Class Representatives. Defendants appealed the Court's order certifying the Sherman Act Class.

On November 14, 2003, the Eleventh Circuit Court of Appeals vacated the Court's order certifying the Sherman Act Class, and remanded the case for further proceedings to determine, among other things, whether there were conflicts of interest between the Class Representatives and members of the Sherman Act Class in connection with the prosecution of this litigation.

In March 2004, the Class Representatives filed a renewed motion for class certification. On June 23, 2004, the Court denied that motion, holding that, although ". . . the evidence indicates there is no class antagonism or conflict," the Sherman Act Class could not be certified at that time because of the possibility of potential unforeseen conflict in the future with regard to this litigation.[3]

On February 25, 2005, this Court certified the Sherman Act Class, holding, among other things, that because the proposed settlement would end the litigation, there was no longer any possibility of a future conflict of interest with regard to this litigation. Moreover, if any member of the Sherman Act Class does not believe that this Settlement is in its best interests, or for any other reason, such class member may exclude itself from the Sherman Act Class. See Section VII below. If for any reason any Class member, who does not timely exclude itself from the Class, believes that the Settlement is unfair, unreasonable, or inadequate, such Class member may submit an objection to the Settlement and be heard at the Fairness Hearing. See Section IX below.

### 2. Class Plaintiffs' Substantive Claims

On December 13, 2000, the Court found that the Abbott/Geneva Agreement was per se illegal under Section 1 of the Sherman Act. Defendants appealed the Court's decision. On September 15, 2003, the Eleventh Circuit Court of Appeals reversed the Court's December 13, 2000 order, and remanded for further proceedings. On January 5, 2005, upon consideration of additional briefing by the parties, the Court again held that the Abbott/Geneva Agreement was per se illegal. On January 21, 2005, the Court denied Defendants' request for permission to immediately appeal the Court's per se ruling to the Eleventh Circuit Court of Appeals. On February 9, 2005, Defendants filed a Writ of Mandamus, asking the Eleventh Circuit to review and vacate the Court's January 5, 2005 per se ruling or the Court's January 21, 2005 refusal to permit an immediate appeal of the per se ruling. That Writ of Mandamus is currently pending. Whether or not the Writ is granted, Defendants will have the right to appeal the Court's per se ruling after a final judgment in this case.

Although the Court has ruled (subject to Defendants' right to appeal) that the Abbott/Geneva Agreement is a per se violation of Section 1 of the Sherman Act, in order to recover monetary damages in this case, Class Plaintiffs still would have been required to prove that the Agreement caused them damage in a quantifiable amount. As described above, Defendants vigorously contend that the Agreement did not delay Geneva's (or any generic manufacturer's) entry into the market with a generic version of Hytrin, and thus did not cause plaintiffs or members of the Class to incur any damages.

At the time that the proposed settlement was reached, discovery in the case, which included the review of hundreds of thousands of pages of documents, and the depositions of dozens of fact and expert witnesses, had been completed. As a result, Class Counsel had conducted an intensive investigation, and obtained significant knowledge regarding the strengths and weaknesses of the claims and defenses in this case before entering into settlement negotiations with Defendants.

In the event Defendants elect to terminate this Settlement under the terms of the Settlement Agreement, or if the Settlement is otherwise not consummated, the parties' stipulation as to class certification would become null and void. In that event, the Court could order the trial scheduled for May 2005 to proceed on behalf of the Representative Plaintiffs only, and not on behalf of any other member of the Class.

OTHER THAN AS SPECIFICALLY INDICATED ABOVE REGARDING THE PER SE ILLEGALITY OF THE ABBOTT/GENEVA AGREEMENT, THE COURT HAS NOT RULED ON THE MERITS OF ANY OF THE CLAIMS OR DEFENSES ASSERTED BY THE PARTIES. THIS NOTICE IS NOT TO BE UNDERSTOOD AS AN EXPRESSION OF ANY OPINION BY THIS COURT AS TO THE MERITS OF ANY OF THE CLAIMS OR DEFENSES ASSERTED BY EITHER SIDE.

### III. SUMMARY OF THE PROPOSED SETTLEMENT

Subject to the terms and conditions of the settlement agreement with Abbott and Geneva ("the Settlement Agreement"), which is on file with the Court as Exhibit "A" to the Sherman Act Class Plaintiffs' February 24, 2005 Motion for Preliminary Approval, a copy of which is also available at www.bsfllp.com or www.garwingerstein.com, Abbott has paid $43.5 million, and Geneva has paid $29 million (for a combined total of $72.5 million in cash) into an escrow account for the benefit of the Sherman Act Class. Defendants do not admit any wrongdoing or liability. The proposed settlement is a compromise of disputed claims and does not mean that any defendant in this action has been found liable for the claims made by the Class Plaintiffs.

The Settlement Agreement also provides that if Class members who validly exclude themselves from the Class pursuant to Section VII below collectively have aggregate potential damages (as calculated by Class Plaintiffs' expert economist, based on the amount of their purchases of Hytrin and/or generic versions of Hytrin reflected in the sales records of

---

[3] If this proposed settlement is terminated for any reason or is not approved by the Court, the Class Representatives have the right to appeal the Court's June 2004 Order denying their renewed motion for class certification at the conclusion of the litigation.

Abbott, Geneva, and non-party, Mylan Pharmaceuticals, Inc.) that exceed a confidential number agreed upon with Abbott and Geneva, then Abbott and Geneva may exercise their right to terminate the Settlement as provided for under the Settlement Agreement.[4]

If the Settlement is finally approved by the Court, Abbott and Geneva, and their past, present and future parents, subsidiaries, divisions, affiliates, stockholders, officers, directors, insurers, general or limited partners, employees, agents, attorneys and any of their legal representatives (and the predecessors, heirs, executors, administrators, successors and assigns of each of the foregoing) (the "Released Parties") are and shall be released and forever discharged from all manner of claims, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, that Plaintiffs or any member or members of the Class who has (have) not timely excluded itself (themselves) from the Class, whether or not they object to the Settlement and whether or not they make a claim upon or participate in the Settlement Fund, ever had, now has, or hereafter can, shall or may have, arising out of any conduct alleged in the Actions or in any other complaint filed in any action consolidated or coordinated in 99 MDL 1317, or otherwise relating to any alleged delay in marketing or selling of generic equivalents of Hytrin, prior to the date of the Settlement Agreement (the "Released Claims").[5] Plaintiffs and each member of the Class covenant and agree that each shall not sue or otherwise seek to establish or impose liability against any Released Party based, in whole or in part, on any of the Released Claims.

Any disputes arising under or relating to the Settlement Agreement, including, but not limited to, the releases in the Settlement Agreement, will be resolved in the United States District Court for the Southern District of Florida.

The foregoing text is only a summary of the Settlement with Abbott and Geneva. A full copy of the Settlement Agreement, including the release, is attached as Exhibit "A" to Sherman Act Class Plaintiffs' February 24, 2005 Motion for Preliminary Approval on public file with the United States District Court for the Southern District of Florida, 301 North Miami Avenue, Miami, Florida. Class counsel have made copies of the settlement agreement readily available at www.bsfllp.com or www.garwingerstein.com.

Certain individual direct purchasers (or plaintiffs suing based upon an assignment of rights from members of the Class) have brought their own lawsuits against Abbott and Geneva. These individual plaintiffs will not share in the proposed Settlement with the Sherman Act Class.

The Court preliminarily approved the proposed Settlement with Abbott and Geneva on February 25, 2005 after a hearing on February 24, 2005. The Court found the proposed settlement, upon preliminary review, to be within the range of reasonableness given the present posture of this case.

Accordingly, the Court has set a Fairness Hearing in order to determine whether the proposed settlement with Defendants should finally be approved as described in Section VIII, below.

## IV.  PLAN OF ALLOCATION

In the event the proposed settlement is approved by the Court and becomes final, the Settlement Fund will be distributed in accordance with a proposed Plan of Allocation approved by the Court. Plaintiffs will file the Plan of Allocation with the Court on or before April 5, 2005. The Plan of Allocation will be based upon proofs of claim to be filed by class members at a later time. You may be required as a condition of participating in the recovery to present evidence of your purchases of brand name Hytrin and generic terazosin during the period **March 31, 1998 through and including June 30, 2001** (the "Class Period"). In summary, the Settlement Fund totaling $72.5 million plus interest, less administrative expenses, taxes, attorneys' fees and expenses, and incentive payments to the two Class Representatives as may be allowed by the Court (the "Net Settlement Fund"),[6] will be allocated to Class members who choose not to exclude themselves from the Class (see Section VII below for an explanation of how to exclude yourself from the Class) as follows: The Net Settlement Fund will be allocated based on a *pro rata* share of the total estimated actual overcharge damages of all class members making valid claims (at a later date after the Settlement becomes final) allegedly incurred as a result of the Defendants' alleged restraint of trade. Class Representatives claim their damages are measured by an "overcharge," *i.e.,* the amount by which Class members overpaid for terazosin as a result of the Defendants' conduct, which allegedly caused a delay in the entry into the market of less expensive generic versions of terazosin.

According to Class Plaintiffs, if generic entry had occurred earlier, direct purchasers would have realized significant savings by: (a) substituting Hytrin with less expensive generic versions of terazosin for some or all of their terazosin requirements; and/or (b) obtaining increased discounts, rebates, or lower prices on purchases of the brand name Hytrin

---

[4] Under the Settlement Agreement, Abbott and Geneva may also have the right to terminate this Settlement prior to the Fairness Hearing (described below) if certain other conditions set out in paragraph 13 of the Settlement Agreement are satisfied (see www.bsfllp.com and www.garwingerstein.com).

[5] The Settlement Agreement expressly provides that: "Released Claims shall not include claims arising in the ordinary course of business between Class members and the Released Parties concerning product liability, breach of warranty, breach of contract (other than breach of contract based in whole or in part on any conduct challenged by any plaintiff in 99 MDL 1317), personal or bodily injury, or any claim of any sort that does not relate to Hytrin or terazosin hydrochloride. Released Claims also shall not include any claim asserted in 99 MDL 1317 by any of the following entities based upon an assignment to said entity arising out of Hytrin or generic terazosin hydrochloride purchases of said entity: CVS Meridian, Inc., Rite Aid Corp., Walgreen Co., Eckerd Corp., The Kroger Co., Albertson's, Inc., The Stop & Shop Supermarket Co., and Hy-Vee, Inc.; this settlement shall not be construed to disturb or affect any such assigned claim."

[6] If the proposed Settlement with Abbott and Geneva is finally approved, the proceeds of the Zenith Settlement ($2,072,327), plus interest, upon authorization from the Court, will be applied to the costs and expenses incurred in this litigation, thereby reducing the amount that will be deducted from the settlement fund to reimburse Class Counsel for the outlay of such costs and expenses. Class Counsel will not seek any attorneys' fees from the proceeds of the Zenith Settlement.

4

after generic terazosin had entered the market; and/or (c) paying less for generic terazosin on or after October 1, 1999 (the date Plaintiffs believe that a second generic terazosin manufacturer would have entered the market had the alleged conduct in restraint of trade not occurred).

For purposes of allocation of the Net Settlement Fund, it is anticipated that damages will be estimated based on the following formulas (Class members have damages under any one or all of the formulas as may be applicable):

(1) the quantity of generic terazosin that each Class member purchased from any source from August 13, 1999 through June 30, 2001 as a substitute for buying brand-name Hytrin from Abbott, multiplied by the average differential in price between the brand and generic forms of terazosin (*i.e.*, the price savings due to the ability to substitute with cheaper generics);

(2) the quantity of generic terazosin that each Class member purchased from October 1, 1999 through June 30, 2001, multiplied by the price differential between the actual price paid for the generic and the price that allegedly would have been paid had there been no alleged delay in generic entry; and

(3) the quantity of brand-name Hytrin that each Class member purchased from October 1, 1998 through June 30, 2001, multiplied by the price differential between the actual price paid and the price that allegedly would have been paid for Hytrin had there been no alleged delay in generic entry.

Based upon substantial analysis and investigation, Plaintiffs believe that in the absence of Defendants' alleged restraint of trade, it is unlikely that generic versions of terazosin would have been on the market prior to October 1, 1998. Thus, it is also very unlikely that more than nominal overcharge damages were incurred with respect to Hytrin purchases made *before* that date. Accordingly, for those Class members who, during the Class Period (a) purchased Hytrin directly from Abbott *only* from March 31, 1998 through September 30, 1998, *and* (b) who also did *not* purchase any generic terazosin directly from any generic manufacturer from October 1, 1999 through June 30, 2001, nominal damages of a few cents per capsule will be awarded for each Hytrin capsule purchased.[7]

## V.   FEES, EXPENSES, AND INCENTIVE AWARDS

All costs and fees related to this litigation will be paid out of the proceeds of the Settlement Fund as the Court may order. Class Counsel intend to apply to the Court for attorneys' fees of up to thirty-three and one-third percent (33⅓%) of the gross Settlement Fund, including interest. In addition, Class Counsel intend to seek, from the Settlement Fund, reimbursement for any costs and expenses incurred in this litigation not otherwise reimbursed by the funds procured from the Zenith Settlement. Moreover, applications will also be made to the Court for incentive awards of $75,000, in total, for the two Class Representatives, to compensate them for their efforts in prosecuting this case on behalf of the Sherman Act Class, which efforts have included, among other things, submitting to depositions, producing hundreds of pages of documents, producing electronic purchase data, and providing written discovery. Class Counsel will file their Motion in Support of Final Approval of this Settlement, the Plan of Allocation, application for an award of attorneys' fees, reimbursement of costs and expenses, and request for incentive awards to the Class Representatives with the Clerk of the U.S. District Court for the Southern District of Florida, 301 North Miami Avenue, Miami, Florida on or before April 5, 2005. The application and other documents will be available for inspection during normal business hours at the office of the Clerk or on the website of www.bsfllp.com or www.garwingerstein.com.

## VI.   HOW TO PARTICIPATE IN THIS CLASS ACTION AND SETTLEMENT

If you wish to remain a member of the Class, you need not do anything at this time. All members of the Class will be entitled to share in the proceeds of this Settlement as described above and according to the terms of the Settlement Agreement if it is finally approved by the Court, and all members of the Class will be bound by the final judgment and release of claims against Abbott and Geneva entered by the Court. Class Counsel has been appointed by the Court to represent you as a member of the Class. All fees and expenses of Class Counsel will be paid out of any recovery by the Class. You will not have to pay Class Counsel any additional amounts, and in no event will you be obliged to pay any judgment, court costs, or lawyers' fees for participating in this class action. In addition, any Class member who does not request exclusion from the Class may also enter an appearance through their own counsel at their own expense. The pleadings and other public records in this litigation may be examined and copied at the cost of 50 cents per page at any time during regular business hours at the Office of the Clerk of Court, 301 North Miami Avenue, Miami, Florida.

## VII.   HOW TO BE EXCLUDED FROM THE CLASS

If you wish to be excluded from the Sherman Act Class you may do so by mailing a written request for exclusion which must be **received** by the Claims Administrator on or before **March 31, 2005** at the following address: Terazosin Hydrochloride Antitrust Litigation, c/o Heffler, Radetich & Saitta L.L.P., P.O. Box 70, Philadelphia, PA 19105-0070. The request for exclusion must: (1) clearly state your name, address, and the name of the case *(In re Terazosin Hydrochloride Litigation)*, and (2) clearly state that you wish to be excluded from the Sherman Act Class. You do not have to state the reason for this request.

---

[7] Combined Hytrin purchases by Class members who purchased only during this early part of the Class Period amount to only approximately 0.025% of the total terazosin purchases by all Class members during the entire Class Period.

If you exclude yourself from the Sherman Act Class in this way, you will NOT be entitled to appear at the Fairness Hearing, OR to share in the benefits of the Settlement, and you will NOT be bound by the release of Defendants summarized in this notice.

## VIII. FAIRNESS HEARING

Pursuant to an Order of the Court, a hearing will be held on **April 15, 2005 at 10 a.m.**, in the courtroom of the Honorable Patricia A. Seitz, Fifth Floor, United States District Court for the Southern District of Florida, 301 North Miami Avenue, Miami, Florida, for the purpose of determining whether the Court should approve: (1) the proposed settlement between the Sherman Act Class and defendants Abbott and Geneva as fair, reasonable, adequate, and in the best interests of the Sherman Act Class; (2) a proposed Plan of Allocation for distributing the net settlement proceeds to the members of the Sherman Act Class; and (3) the application of Class Counsel for an award of attorneys' fees and costs, and the application for incentive awards for the Sherman Act Class Representatives. You are entitled to appear and be heard at this hearing. The time and date of the hearing may be continued or rescheduled without further notice. If you have no objection to the Settlement with Abbott and Geneva, it is not necessary to appear at the hearing or to take any action at this time.

## IX. OBJECTIONS TO THE PROPOSED SETTLEMENT

Any member of the Sherman Act Class who does not exclude itself from the Class may appear at the Fairness Hearing in person or by duly authorized attorney and show cause why the Settlement should not be approved as fair, reasonable and adequate, or to oppose or comment on any other subject of the hearing (including, for example, the Plan of Allocation, and request for attorneys' fees), *provided that* the class member files with the Office of the Clerk, Southern District of Florida, 301 North Miami Avenue, Miami, Florida, a Notice of Intention to Appear and a Summary Statement of the position asserted and the grounds therefor, together with copies of any supporting papers or briefs, on or before **April 8, 2005, and causes a copy to be received by Co-Lead Counsel for the Class on the same day.**[8] The Court will not consider any paper or brief submitted after April 8, 2005. Unless a Class member files the *Notice* and *Summary* described above, it shall not be entitled to contest the terms and conditions of the proposed Settlement or to appear in person at the hearing, and may be deemed to have waived any such objections.

## X. ADDITIONAL INFORMATION

The pleadings and other records in this litigation may be examined and copied during regular hours at the Office of the Clerk, United States District Court for the Southern District of Florida, 301 North Miami Avenue, Miami, Florida. Copies of the Motion for Preliminary Approval of the Settlement, this Notice, and (when filed on April 5, 2005) the Proposed Plan of Allocation, Motion for Final Approval and Application for Attorneys' Fees and Incentive Awards for the Representative Plaintiffs will also be available at www.bsfllp.com or www.garwingerstein.com.

Any questions that you have concerning the matters contained in this Notice may be directed in writing to the Co-Lead Counsel for Sherman Act Class:

Richard B. Drubel  
Kimberly Schultz  
BOIES, SCHILLER  
& FLEXNER, L.L.P.  
26 South Main Street  
Hanover, NH 03755  
Telephone: (603) 643-9090  
Email: rdrubel@bsfllp.com

Bruce E. Gerstein  
Barry S. Taus  
GARWIN GERSTEIN & FISHER LLP  
1501 Broadway, Suite 1416  
New York, NY 10036  
Telephone: (212) 398-0055  
Email: btaus@garwingerstein.com

### PLEASE DO NOT ADDRESS ANY INQUIRIES TO THE COURT.

Dated: March 1, 2005, in Miami, Florida

---

[8] You need not appear at the hearing in order to object. The Notice of Intention to Appear and Summary Statement, and any accompanying papers, must include in a prominent location the name of the case, "In re Terazosin Hydrochloride Litigation," the "MDL" case number (99-MDL-1317), and the judge's name (the Honorable Patricia A. Seitz).

[THIS PAGE INTENTIONALLY LEFT BLANK]

Hytrin Antitrust Litigation
c/o Heffler, Radetich & Saltta L.L.P.
P.O. Box 70
Philadelphia, PA 19105-0070

FIRST-CLASS MAIL
U.S. POSTAGE
PAID
PERMIT NO. 2323
PHILADELPHIA, PA

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
SOUTHERN DIVISION

CASE NO. 99-MDL-1317-SEITZ/KLEIN

IN RE TERAZOSIN HYDROCHLORIDE
ANTITRUST LITIGATION

_____/

This Notice relates to:

*Louisiana Wholesale Drug Co., Inc. et al.*
*v. Abbott Laboratories, et al.*    Civ. No. 98-3125-S/G (S.D. Fla.)

*Valley Drug Co. et al.*
*v. Abbott Laboratories, et al.*    Civ. No. 99-7143-S/G (S.D. Fla.)

_____/

## SECOND AFFIDAVIT OF EDWARD J. SINCAVAGE, CPA
## REGARDING DISSEMINATION OF NOTICE TO THE SHERMAN ACT CLASS

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : |
| | :   ss. |
| COUNTY OF PHILADELPHIA | : |

  I, Edward J. Sincavage, being first duly sworn according to law, depose and say as follows:

  1.  I am a partner in the Certified Public Accounting firm of Heffler, Radetich & Saitta L.L.P. ("HR&S" or the "Claims Administrator"), the offices of which are located at Suite 1700, 1515 Market Street, Philadelphia, Pennsylvania. I am over 21 years of age and am not a party to this action. I have personal knowledge of the matters set forth in this affidavit and, if called upon as a witness, I could and would competently testify to these matters under penalty of perjury.

2.      HR&S performed services, under my supervision, relating to dissemination of the Court-approved "Notice of Proposed Class Action Settlement and Hearing Regarding Settlement," dated March 1, 2005 (referred to herein as "the Class Notice" or "the Notice") as set forth in this affiant's affidavit dated March 22, 2005.  HR&S arranged for the mailing of the Notice to 2,510 names and addresses provided to us by Econ One Research, Inc. ("Econ One") via postage prepaid, first-class mail on March 1, 2005.  I understand from Econ One that these 2,510 names and addresses correspond to 2,052 Class members. I further understand that Econ One has served as expert economists for the Sherman Act Class Plaintiffs ("Plaintiffs") in this litigation, and that Econ One has extensive experience working with the electronic sales database of Abbott Laboratories, the source of the Class mailing list.

3.      The Class Notice explains to Class members that they have a right to exclude themselves from the Sherman Act Class and the Settlement by sending a written request to the Claims Administrator at a P.O. Box HR&S established for the purpose of administering this case.  The Notice provided that exclusion requests had to be received by HR&S no later that March 31, 2005.  Through April 11, 2005, HR&S has not received any written requests for exclusion from the Class.

4.      Subsequent to the March 1, 2005 mailing and through April 7, 2005, HR&S has received 395 Notices returned by the Post Office ("RPOs") as undeliverable and 18 Notices with forwarding addresses provided by the Post Office. To effectuate notice to those entities whose original forms were returned as undeliverable, the following procedures were implemented:

a.      Any Notice returned by the Post Office with a forwarding address was promptly re-mailed to that forwarding address.

2

b.      On or about April 1, 2005, HR&S began compiling a spreadsheet listing the names and addresses of the 386 RPOs received by that date along with the reasons the Post Office returned the Notices. This spreadsheet was forwarded to Plaintiffs' Counsel and Econ One for research and review.

c.      The initial RPO list identified 386 RPOs. It is my understanding that Econ One reviewed the initial list of 386 RPOs and, relying on the Abbott Hytrin sales dataset and prior research, identified 102 initial RPOs whose corporate parents or affiliated entities were mailed notice of the proposed settlement through one or more alternate, apparently-valid addresses. This left 284 RPOs of potential concern, corresponding to 283 Class members ("unique RPOs"). As to these remaining unique RPOs, I understand that Econ One and Berger & Montague, P.C. staff searched for up-to-date addresses, telephone numbers, fax numbers, and information regarding the corporate status and ownership, using various in-house databases and internet resources -- such as:

Google <http://www.google.com/>,

Yahoo  <http://search.yahoo.com/>,

Switchboard Business <http://www.switchboard.com/bin/cgidir.dll>,

DoctorsInfoseek Pharmacies <http://www.doctorsinfoseek.com/pharmacies/>,

American Business Category // Pharmacies and Drug Stores

        <http://www.gy.com/biz/446110/>,

The Oklahoma State Board of Pharmacy

        <http://lv.pharmacy.state.ok.us/osbpinquire/>  and

AnyWho Reverse Lookup <http://www.anywho.com/rl.html>.

The unique RPO list of 283 entities was then sorted in descending order by the volumes of Hytrin and generic terazosin hydrochloride that each remaining RPO purchased during the Class Period.

d.      After a telephone conference among HR&S, Econ One staff and certain Plaintiffs' Counsel, HR&S and Berger & Montague, P.C. staff relied upon the updated address and telephone number database to make confirmation telephone calls to unique RPO Class members. The database was updated daily based on new RPOs received from the Post Office. Additional research to update telephone numbers and mailing addresses was performed as needed.

e.      HR&S also submitted the list of 283 RPOs to a vendor of the U.S. Post Office's National Change of Address service. HR&S also compared the RPO list to a Dun & Bradstreet, Inc. business database for name and address matches. HR&S compared the responses from these two vendors to the new RPO listing. If any possible new addresses were matched to non-confirmed telephone addresses, these records were added to the confirmation call list. Telephone calls were then made to attempt to confirm the new addresses.

f.      If no telephone numbers were found in steps (c) through (e) above, the telephone company's information service was called to determine whether the company had a listing in the last known city of record. If so, that telephone number was called for address confirmation.

g.      If a new confirmed address was that of an excluded entity, such as Rite Aid or CVS, that entity was not re-mailed the Notice. We learned through our research that large chain drug stores purchased several of the RPO entities in the past few years.

h.      Subsequent to creating the updated unique RPO spreadsheet (paragraph c above) and through April 7, 2005, nine additional RPOs were returned by the Post Office. Of these nine new RPOs, three were matched to entities that had been successfully mailed Notice at alternate addresses.  HR&S researched updated addresses for the remaining six unique RPOs under the procedures explained above and those six results were added to the original 283 and are also included in the table below.

5.      Furthermore, I understand that Plaintiffs' Counsel faxed notices to the two entities with the largest individual shares – Fallon Community Health Plan and Independent Drug Co. – and then spoke with representatives from each.  It is my understanding that both have agreed to participate in the settlement.

6.      Based on the above procedures, the following are the results of the efforts combined above:

| Results: | Total |
|---|---|
| Confirmed Updated Address & New Notice Mailed | 108 |
| Confirmation of Settlement Participation | 2 |
| Bought by Opt-out (not remailed) | 15 |
| Unconfirmed Addresses: | |
| Companies Confirmed Out of Business | 17 |
| Unreachable and Disconnected Phone numbers | 147 |
| TOTALUNIQUE RPOs: | 289 |

7.      I understand from consultants for Plaintiffs' Counsel that, excluding Independent Drug and Fallon Community Health Plan (who have affirmatively decided to remain in the Class), the 287 unique RPOs (Class members whose notices were returned as undeliverable and who were not noticed via an alternate address) comprise a negligible share of Class purchases: (1) 0.048% of Class Hytrin purchases from Abbott during March 1998 through June 2001; and

(2) 0.001% of Class generic terazosin hydrochloride purchases from Geneva and Mylan during August 1999 through June 2001. Finally, 17 of the other unique RPOs -- including the two largest, Professional Wholesale and Stanford Trading Company -- are apparently no longer in business.

8.     The above-described procedures performed to locate RPO updated addresses exceeded both HR&S's normal standards and also the industry standard of locating updated addresses for notices returned as undeliverable.

_Edward J. Sincavage_
EDWARD J. SINCAVAGE

Sworn to and subscribed before me
this 12th day of April 2005

_Kristine J. Blakla_
Notary Public

> NOTARIAL SEAL
> KRISTINE J. BLAKLA, Notary Public
> City of Philadelphia, Phila. County
> My Commission Expires April 14, 2007

# EXHIBIT C

Resolution of Hytrin Settlement Notice Unique RPOs'

| Class Member Name | Purchases during Class Period Hytrin from Abbott Capsules 03/31/98-06/30/01 | % Class | Generics Capsules 08/01/99-06/30/01 | % Class | Corrected Address | Bought by Opt Out | Remailed Notice | Comment | Note |
|---|---|---|---|---|---|---|---|---|---|
| FALLON CLINIC HMO PHARM | 1,175,920 | 0.136% | 0 | 0.000% | Yes | | 04/06/05 | Confirmed settlement participation | 2 |
| Independent Drug | 154,600 | 0.018% | 105,300 | 0.029% | Yes | | 04/06/05 | Confirmed settlement participation | 2 |
| PROFESSIONAL WHOLESALE INC | 139,200 | 0.016% | 3,600 | 0.001% | | | | Business Closed Down | 3 |
| STANFORD TRADING COMPANY | 57,600 | 0.007% | 0 | 0.000% | | | | Business Closed Down | 4 |
| G & G DRUG WHOLESALERS | 52,800 | 0.006% | 0 | 0.000% | Yes | | 04/07/05 | | |
| MERIT DISTRIBUTORS | 40,800 | 0.005% | 0 | 0.000% | Yes | | 04/07/05 | | |
| Commodities International LTD | 10,800 | 0.001% | 0 | 0.000% | | | | Disconnected | |
| UNION SQUARE DRUGS INC | 7,600 | 0.001% | 0 | 0.000% | Yes | | 04/06/05 | | |
| ILLINOIS DEPT OF HUMAN | 6,600 | 0.001% | 0 | 0.000% | Yes | | 04/06/05 | | |
| PRESCRIPTION CENTER | 5,000 | 0.001% | 0 | 0.000% | | | | No longer at given phone # | |
| HAMPSTEAD VLG PHCY INC | 4,815 | 0.001% | 0 | 0.000% | | | | Business Closed Down | 5 |
| THE SCRIPT SHOPPE | 4,500 | 0.001% | 0 | 0.000% | | | | Disconnected | |
| SUN REXALL DRUG | 3,500 | 0.000% | 0 | 0.000% | | | | Not Interested | |
| ARROWHEAD UNITED DRUG | 3,100 | 0.000% | 0 | 0.000% | | | | Disconnected | |
| CONTINENTAL PHARMACY INC | 3,100 | 0.000% | 0 | 0.000% | | | | Disconnected | |
| MEDICAL CENTER PHCY INC | 3,100 | 0.000% | 0 | 0.000% | Yes | | 04/06/05 | | |
| SWISHER L P MD | 2,900 | 0.000% | 0 | 0.000% | | | | Business Closed Down | |
| BONNIE-MIKE INC | 2,800 | 0.000% | 0 | 0.000% | | | | No longer at given phone # | |
| SOUTH NATICK PHCY INC | 2,600 | 0.000% | 0 | 0.000% | Yes | | 04/06/05 | | |
| CROWN GROUP TRADING | 2,400 | 0.000% | 0 | 0.000% | | | | Disconnected | |
| RICHARD'S DRUG CO INC | 2,400 | 0.000% | 0 | 0.000% | | | | No Answer | |
| WILMANS FOX LAKE PHCY | 2,200 | 0.000% | 0 | 0.000% | | | | Business Closed Down | |
| REPARINGS PHARMACY INC | 1,900 | 0.000% | 0 | 0.000% | | | | No longer at given phone # | |
| FAMILY DRUG INC | 1,400 | 0.000% | 0 | 0.000% | Yes | | 04/08/05 | | |
| MED SOURCE CORPORATION | 1,400 | 0.000% | 0 | 0.000% | | | | Left Message | |
| THE PRESCRIPTION SHOPPE (Daleville) | 1,400 | 0.000% | 0 | 0.000% | | | | No longer at given phone # | |
| ST CLAIR ALGEO PHARMACY | 1,260 | 0.000% | 0 | 0.000% | | | | No longer at given phone # | |
| RIEDERS PHARMACY | 1,200 | 0.000% | 0 | 0.000% | | | | Disconnected | |
| HAMILTON PHARMACY #1 | 1,100 | 0.000% | 0 | 0.000% | | | | No Answer | |
| BEST CARE PHARMACY | 1,000 | 0.000% | 0 | 0.000% | | | | Phone # Listed is Fax # | |
| MEDI MAIL INC | 1,000 | 0.000% | 0 | 0.000% | | | | Disconnected | |
| NEPONSIT HEALTH CARE CTR | 1,000 | 0.000% | 0 | 0.000% | | | | No longer at given phone # | |
| NORTH & FLORENCE PHCY | 1,000 | 0.000% | 0 | 0.000% | | | | Left Message | |
| WASHINGTON SQUARE PHCY | 1,000 | 0.000% | 0 | 0.000% | Yes | | 04/07/05 | | |
| 94 OCEANGATE INC | 900 | 0.000% | 0 | 0.000% | Yes | | 04/07/05 | | |
| M D PHARMACY | 900 | 0.000% | 0 | 0.000% | | | | Disconnected | |
| ST FRANCIS CENTRAL HOSP | 821 | 0.000% | 0 | 0.000% | Yes | | 04/07/05 | | |
| EXECUTIVE ORDERS PHCY | 800 | 0.000% | 0 | 0.000% | | | | No longer at given phone # | |
| WILTON PHARMACY | 800 | 0.000% | 0 | 0.000% | Yes | Yes | | | |
| STRONCEK EAGLE DRUG | 700 | 0.000% | 0 | 0.000% | | | | No Answer | |
| ELMIRA HEIGHTS DRUG CO | 600 | 0.000% | 0 | 0.000% | | | | Left Message | |
| LINDEMANN PHARMACY INC | 600 | 0.000% | 0 | 0.000% | | | | Left Message | |
| MORSEVIEW PHARMACY | 600 | 0.000% | 0 | 0.000% | Yes | Yes | | | |
| AL TELLS PHARMACY | 500 | 0.000% | 0 | 0.000% | | | | Disconnected | |
| ARS PROF PHARMACY LTD | 500 | 0.000% | 0 | 0.000% | Yes | | 04/06/05 | | |
| FOREST HOSPITAL | 500 | 0.000% | 0 | 0.000% | Yes | | 04/06/05 | | |
| JAKES DRUG & HLTH CR CTR | 500 | 0.000% | 0 | 0.000% | Yes | Yes | | | |
| L AND S DRUGS | 500 | 0.000% | 0 | 0.000% | | | | No longer at given phone # | |
| MEDICO DG CO INC | 500 | 0.000% | 0 | 0.000% | Yes | | 04/07/05 | | |
| PARK EAST PHARMACY | 500 | 0.000% | 0 | 0.000% | | | | Disconnected | |
| PINTA WARZECHA RX LAB | 500 | 0.000% | 0 | 0.000% | | | | No longer at given phone # | |
| SHIRK PHARMACY INC | 500 | 0.000% | 0 | 0.000% | Yes | | 04/08/05 | | |
| GEMMEL PHCY OF MONTCLAIR | 435 | 0.000% | 0 | 0.000% | | | | No Answer | |
| ATLANTIC COAST LTC SVCS | 400 | 0.000% | 0 | 0.000% | | | | No Answer | |
| GRAND RPDS MODERN PH INC | 400 | 0.000% | 0 | 0.000% | | | | Disconnected | |
| JB'S DESERT PHARMACY | 400 | 0.000% | 0 | 0.000% | Yes | Yes | | | |
| JEMCO MEDCIAL INTRNL INC | 400 | 0.000% | 0 | 0.000% | | | | Disconnected | |
| MORSES CLOSTER PHCY INC | 400 | 0.000% | 0 | 0.000% | | | | Phone # Listed is Fax # | |
| QUICK-CHEK PHARMACY DEPT | 400 | 0.000% | 0 | 0.000% | Yes | | 04/08/05 | | |
| S & H DRUG | 400 | 0.000% | 0 | 0.000% | | | | Disconnected | |

| Pharmacy | | | | | | | Status |
|---|---|---|---|---|---|---|---|
| SHORES PHCY INC | 400 | 0.000% | 0 | | | | |
| STAT-CARE PHARMACY LLC | 400 | 0.000% | 0 | Yes | | 04/07/05 | Disconnected |
| TRIO DRUGS CORP | 400 | 0.000% | 0 | | | | No longer at given phone # |
| WODLINGER DRUGS | 400 | 0.000% | 0 | Yes | | 04/07/05 | |
| UNIVERSITY PHARMACY | 350 | 0.000% | 0 | Yes | | 04/06/05 | |
| KEEFERS PHARMACY OF | 333 | 0.000% | 0 | Yes | | 04/06/05 | |
| BILLS FAMILY PHARMACY | 300 | 0.000% | 0 | Yes | | 04/07/05 | |
| CITY VIEW-GATEWAY PHCY | 300 | 0.000% | 0 | Yes | | 04/06/05 | |
| CURTIS DRUG | 300 | 0.000% | 0 | | | | Disconnected |
| FAMILY DRUG CENTER 4 | 300 | 0.000% | 0 | | | | Business Closed Down |
| KEY DRUG CO INC | 300 | 0.000% | 0 | | | | Disconnected |
| MERCY HEALTH PARTNERS | 300 | 0.000% | 0 | Yes | | 04/07/05 | |
| PRESCRIPTION SERVICES | 300 | 0.000% | 0 | | | | Disconnected |
| SCHARRINGHAUSEN PHARMACY | 300 | 0.000% | 0 | Yes | | 04/06/05 | |
| ST JOHN OF GOD HOSP | 300 | 0.000% | 0 | | | | Business Closed Down |
| TEXAS DRUG WAREHOUSE #12 | 300 | 0.000% | 0 | Yes | | 04/07/05 | |
| THOMSON DRUG INC | 300 | 0.000% | 0 | Yes | | 04/07/05 | |
| VITAS PHARMACY | 300 | 0.000% | 0 | | | | Disconnected |
| YES CLINIC PHARMACY | 300 | 0.000% | 0 | | | | Disconnected |
| BOHN PHARMACY | 285 | 0.000% | 0 | Yes | Yes | 04/07/05 | |
| KUBE VALU-RITE PHARMACY | 220 | 0.000% | 0 | Yes | | | |
| BEATON BOARDWALK PHCY | 219 | 0.000% | 0 | | | | No Answer |
| ADAMS PHARMACY | 200 | 0.000% | 0 | | | 04/06/05 | Business Closed Down |
| ALLENS PHARMA-SERV INC | 200 | 0.000% | 0 | Yes | | | |
| ALPINE DRUGS INC | 200 | 0.000% | 0 | Yes | Yes | 04/08/05 | |
| BLUE FRONT 2 | 200 | 0.000% | 0 | Yes | | 04/08/05 | |
| CAROLINA PHARMACY (SC) | 200 | 0.000% | 0 | Yes | | | |
| CITY DRUGS PORT ST JOE | 200 | 0.000% | 0 | Yes | Yes | | |
| CORNELIUS PHARMACY | 200 | 0.000% | 0 | | | | No longer at given phone # |
| CRAWFORD MED ARTS PH INC | 200 | 0.000% | 0 | | | | No longer at given phone # |
| CUNNINGHAM DRUG INC | 200 | 0.000% | 0 | Yes | Yes | | |
| DEXTER PARK PHARMACY | 200 | 0.000% | 0 | | | | No longer at given phone # |
| DRUG CITY | 200 | 0.000% | 0 | Yes | | 04/06/05 | |
| HATTON&ENRIGHT PHCY INC | 200 | 0.000% | 0 | Yes | | 04/07/05 | Disconnected |
| LONGVIEW PHCY | 200 | 0.000% | 0 | | | | Disconnected |
| MEDICO DISCOUNT DRUG CEN | 200 | 0.000% | 0 | | | | Left Message |
| MODERNE PHARMACY | 200 | 0.000% | 0 | | | 04/06/05 | |
| PFEIFFER DRUGS | 200 | 0.000% | 0 | Yes | | | Disconnected |
| PHARMACY AT FAIRMOUNT | 200 | 0.000% | 0 | | | 04/06/05 | |
| PHARMACY PLUS #5 | 200 | 0.000% | 0 | Yes | | | Disconnected |
| PROFESSIONAL BLDG PHCY | 200 | 0.000% | 0 | | | | No longer at given phone # |
| REID DRUG | 200 | 0.000% | 0 | | | 04/06/05 | |
| REYNOLDS PHARMACY | 200 | 0.000% | 0 | Yes | | 04/07/05 | |
| RIDGEFIELD PHCY INC | 200 | 0.000% | 0 | Yes | | 04/06/05 | |
| Scott & White | 200 | 0.000% | 0 | Yes | | | |
| SIXTY NOW PHARMACIES INC | 200 | 0.000% | 0 | Yes | | 04/07/05 | Disconnected |
| STALLKAMP DRUGS | 200 | 0.000% | 0 | | | | Business Closed Down |
| SUNNYLANE PHARMACY | 200 | 0.000% | 0 | | | | Disconnected |
| TOUR PHARMACY | 200 | 0.000% | 0 | | | | No longer at given phone # |
| VENCOR PHARMACY SVCS | 200 | 0.000% | 0 | Yes | Yes | | |
| VILLAGE DRUG | 200 | 0.000% | 0 | | | | No longer at given phone # |
| VN PHARMACY | 200 | 0.000% | 0 | Yes | Yes | | |
| WASHINGTON AVE PHARMACY | 200 | 0.000% | 0 | Yes | | | Disconnected |
| WILDEN PHARMACY INC | 200 | 0.000% | 0 | | | | |
| WOODROWS PHARMACY | 200 | 0.000% | 0 | Yes | | 04/08/05 | |
| RX SERVICES INC (MS) | 160 | 0.000% | 0 | | | | No Answer |
| WILSONS PHARMACY INC | 130 | 0.000% | 0 | | | | Disconnected |
| FISCHER COLONIAL PHCY | 125 | 0.000% | 0 | | | | No longer at given phone # |
| ST ANNE GENERAL HOSP | 125 | 0.000% | 0 | Yes | | 04/08/05 | |
| AMERICAN PHARMACY | 121 | 0.000% | 0 | Yes | | 04/08/05 | |
| APPLE TREE PHARMACY 736 | 100 | 0.000% | 0 | | | | Left Message |
| AVILA'S PHARMACY | 100 | 0.000% | 0 | Yes | | 04/06/05 | |
| BARNATO PHCY | 100 | 0.000% | 0 | | | | Disconnected |
| BARNEYS DRUG STORE INC | 100 | 0.000% | 0 | Yes | | 04/06/05 | |
| BAY HARBOR HOSPITAL | 100 | 0.000% | 0 | | | | Business Closed Down |
| BELLE-MONT PHARMACY INC | 100 | 0.000% | 0 | Yes | | 04/07/05 | No Answer |

| Name | | | | | | | Date | Comment |
|---|---|---|---|---|---|---|---|---|
| BELLEVILLE PLAZA CHEMIST | 100 | 0.000% | 0 | 0.000% | Yes | | 04/07/05 | |
| BELSAY SQUARE PHCY INC | 100 | 0.000% | 0 | 0.000% | Yes | | 04/06/05 | |
| BILTMORE CENTER PHCY | 100 | 0.000% | 0 | 0.000% | Yes | | | Disconnected |
| BLACK EARTH PHARMACY INC | 100 | 0.000% | 0 | 0.000% | Yes | | 04/07/05 | |
| BLUE VALLEY HEALTHMART | 100 | 0.000% | 0 | 0.000% | Yes | | 04/07/05 | |
| BOLERJACK DRUG INC | 100 | 0.000% | 0 | 0.000% | Yes | | 04/07/05 | |
| BOONE-TAYLOR PHARMACY | 100 | 0.000% | 0 | 0.000% | Yes | | 04/07/05 | |
| BRADLEY DRUG CO 2 | 100 | 0.000% | 0 | 0.000% | Yes | | 04/06/05 | |
| CARPENTER-FRANCIS PHCY#3 | 100 | 0.000% | 0 | 0.000% | | | | Disconnected |
| CENTRAL DRUG INC (OK) | 100 | 0.000% | 0 | 0.000% | Yes | | 04/07/05 | |
| CLARKSVILLE PHARMACY | 100 | 0.000% | 0 | 0.000% | | | | Disconnected |
| CLINIC PHARMACY (Murray KY) | 100 | 0.000% | 0 | 0.000% | | | | No longer at given phone # |
| CLINTON PHARMACY | 100 | 0.000% | 0 | 0.000% | | | | Disconnected |
| CONCORD DRUG CO INC | 100 | 0.000% | 0 | 0.000% | | | | No longer at given phone # |
| CORNWIN PHARMACY | 100 | 0.000% | 0 | 0.000% | Yes | | | No longer at given phone # |
| CRAFT LIBERTY DRUG | 100 | 0.000% | 0 | 0.000% | | | | No Phone # Provided |
| CRX PHARMACY #53 | 100 | 0.000% | 0 | 0.000% | | | | No longer at given phone # |
| DAVE DRUGS INC | 100 | 0.000% | 0 | 0.000% | | | | No longer at given phone # |
| DAVISVILLE PHARMACY INC | 100 | 0.000% | 0 | 0.000% | Yes | Yes | | |
| DINUBA DRUGS | 100 | 0.000% | 0 | 0.000% | Yes | Yes | | Not Interested |
| DOWNTOWN DG CO | 100 | 0.000% | 0 | 0.000% | | | | |
| EMERALD DRUG ST MARWIN | 100 | 0.000% | 0 | 0.000% | Yes | Yes | | |
| EMMERT DG CO | 100 | 0.000% | 0 | 0.000% | | | | No Answer |
| ERICS DISCOUNT PHCY | 100 | 0.000% | 0 | 0.000% | Yes | | 04/06/05 | |
| FAMILY DRUG | 100 | 0.000% | 0 | 0.000% | | | | Business Closed Down |
| FORT SCHUYLER CHEMIST INC | 100 | 0.000% | 0 | 0.000% | | | | Disconnected |
| GARCIA PHARMACY | 100 | 0.000% | 0 | 0.000% | Yes | | 04/07/05 | |
| GIBSONS PHARMACY 76 | 100 | 0.000% | 0 | 0.000% | Yes | | 04/07/05 | |
| GLINSKYS PHARMACY | 100 | 0.000% | 0 | 0.000% | | | | No Answer |
| GOOD SAMARITAN PHCY | 100 | 0.000% | 0 | 0.000% | Yes | | 04/07/05 | |
| GRAND SALINE PROFESSIONA | 100 | 0.000% | 0 | 0.000% | | | | Disconnected |
| GRESHAMS PHARMACY | 100 | 0.000% | 0 | 0.000% | | | | Disconnected |
| HASKELLS PRESC SHOP | 100 | 0.000% | 0 | 0.000% | Yes | | 04/07/05 | |
| HEALTH MAINTENANCE | 100 | 0.000% | 0 | 0.000% | | | | Left Message |
| HIGHLAND DRUGS | 100 | 0.000% | 0 | 0.000% | Yes | | 04/06/05 | |
| HLS PHARMACIES INC | 100 | 0.000% | 0 | 0.000% | Yes | Yes | | |
| HONSBRUCH DRUG | 100 | 0.000% | 0 | 0.000% | | | | No Answer |
| HOOPES PRESC PHCY | 100 | 0.000% | 0 | 0.000% | | | | No longer at given phone # |
| HOSPICE OF SE MI PHCY | 100 | 0.000% | 0 | 0.000% | | | | Disconnected |
| HUGH SNELL PRESC | 100 | 0.000% | 0 | 0.000% | | | | Disconnected |
| HUNT-RITCHIE PHCY & HLTH | 100 | 0.000% | 0 | 0.000% | | | | Disconnected |
| IMPERIAL HEALTH PRODUCTS | 100 | 0.000% | 0 | 0.000% | Yes | | 04/06/05 | |
| INTERBAY PHARMACY | 100 | 0.000% | 0 | 0.000% | | | | Disconnected |
| JENSEN PLAZA PHARMACY | 100 | 0.000% | 0 | 0.000% | Yes | | | Business Closed Down |
| JOHN HALSEY DRUG STORE | 100 | 0.000% | 0 | 0.000% | Yes | | 04/07/05 | |
| KINSEYS PHARMACY | 100 | 0.000% | 0 | 0.000% | Yes | | 04/07/05 | |
| LAKESIDE PHARMACY | 100 | 0.000% | 0 | 0.000% | Yes | | 04/07/05 | |
| LE WIL PHCY INC | 100 | 0.000% | 0 | 0.000% | | | | No longer at given phone # |
| LITCHFIELD DRUGS INC | 100 | 0.000% | 0 | 0.000% | Yes | | 04/07/05 | Business Closed Down |
| LONG TERM CARE | 100 | 0.000% | 0 | 0.000% | | | | |
| LOWRIE PRESCRIPTION DRUG | 100 | 0.000% | 0 | 0.000% | Yes | | | No longer at given phone # |
| MADISON DRUG | 100 | 0.000% | 0 | 0.000% | | | | |
| MAY PHARMACY | 100 | 0.000% | 0 | 0.000% | Yes | | 04/07/05 | |
| MCCARTHY PHARMACY INC | 100 | 0.000% | 0 | 0.000% | | | | No longer at given phone # |
| MEDIC PHARMACY | 100 | 0.000% | 0 | 0.000% | Yes | | 04/06/05 | No Phone # Provided |
| MEDIC PHARMACY INC #3 | 100 | 0.000% | 0 | 0.000% | | | | Disconnected |
| MEDICAL ARTS PHCY WEST | 100 | 0.000% | 0 | 0.000% | | | | Business Closed Down |
| MEDICAL CENTER PHARMACY (NC) | 100 | 0.000% | 0 | 0.000% | | | | Disconnected |
| MEDICO HEALTH MART #14 | 100 | 0.000% | 0 | 0.000% | | | | Business Closed Down |
| MEM HOSP AT EXETER | 100 | 0.000% | 0 | 0.000% | Yes | | 04/07/05 | |
| METCALF DRUG STORE | 100 | 0.000% | 0 | 0.000% | Yes | | 04/07/05 | |
| MHC PROFESSIONAL PHCY650 | 100 | 0.000% | 0 | 0.000% | | | | Disconnected |
| MHN RX MELROSE | 100 | 0.000% | 0 | 0.000% | | | | Disconnected |
| MONMOUTH PHARMACY | 100 | 0.000% | 0 | 0.000% | | | | Disconnected |
| MONSEY PHARMACY | 100 | 0.000% | 0 | 0.000% | | | | Disconnected |
| MOON LIGHT PHCY | 100 | 0.000% | 0 | 0.000% | Yes | | 04/06/05 | |
| MORRIS PARK PHARMACY | 100 | 0.000% | 0 | 0.000% | Yes | | 04/06/05 | |

| Name | | | | | | Date | Status |
|---|---|---|---|---|---|---|---|
| MUTUAL OF OMAHA HLTH | 100 | 0.000% | 0 | | | | Disconnected |
| NORRIDS PHARMACY | 100 | 0.000% | 0 | | | | Not Interested |
| PASTORE PHARMACY | 100 | 0.000% | 0 | | | | |
| PELICAN DRUG INC | 100 | 0.000% | 0 | | Yes | 04/07/05 | |
| PHARMACY CORP OF AMERICA (CA) | 100 | 0.000% | 0 | | Yes | 04/06/05 | No longer at given phone # |
| PHARMACY PLUS | 100 | 0.000% | 0 | | | | Disconnected |
| PHCY ASSOC OF GLEN FALLS | 100 | 0.000% | 0 | | | | Disconnected |
| PLEASANT HILL PHCY | 100 | 0.000% | 0 | | Yes | 04/07/05 | Disconnected |
| POST DRUGS | 100 | 0.000% | 0 | | | | Disconnected |
| PRESCRIPTION MART | 100 | 0.000% | 0 | | | | Disconnected |
| RACEBROOK PHARMACY | 100 | 0.000% | 0 | | | | Business Closed Down |
| RICHLAND PHARMACY INC | 100 | 0.000% | 0 | | Yes | 04/07/05 | |
| SENUITY PRICE RITE DRUG | 100 | 0.000% | 0 | | | | No longer at given phone # |
| SOUTHERN RESIDENTIAL | 100 | 0.000% | 0 | | | | No longer at given phone # |
| SPECTRUM PHARMACY SVCS | 100 | 0.000% | 0 | | | | Disconnected |
| ST JOSEPHS HOSPITAL (IL) | 100 | 0.000% | 0 | | | | Disconnected |
| STADTLANDERS PHCY | 100 | 0.000% | 0 | | | | Disconnected |
| STAPLES REXALL DRUG | 100 | 0.000% | 0 | | Yes | 04/07/05 | |
| T ROY BARNES DRUGRY 2 | 100 | 0.000% | 0 | | Yes | 04/06/05 | |
| TEXAS DRUG WAREHOUSE | 100 | 0.000% | 0 | | Yes | 04/07/05 | |
| THE EWING PARK PHARMACY | 100 | 0.000% | 0 | | | | No longer at given phone # |
| THRIFT DRUGS (NY) | 100 | 0.000% | 0 | | | | Disconnected |
| TOWNE PHARMACY AND GIFTS | 100 | 0.000% | 0 | | Yes | 04/06/05 | |
| USA DRUG #14 | 100 | 0.000% | 0 | | Yes | 04/07/05 | |
| VALUE HEALTHCARE | 100 | 0.000% | 0 | | Yes | 04/06/05 | |
| VAN METER PHARMACY | 100 | 0.000% | 0 | | | | Disconnected |
| VOLLBRECHTS PHARMACY INC | 100 | 0.000% | 0 | | | | No longer at given phone # |
| W & W MED CTR PHCY | 100 | 0.000% | 0 | | | | Disconnected |
| W & W PHARMACY INC | 100 | 0.000% | 0 | | | | Disconnected |
| WALTER'S PHARMACY | 100 | 0.000% | 0 | | Yes | 04/06/05 | |
| WHITEHILL PHARMACY INC | 100 | 0.000% | 0 | | | | Disconnected |
| WINDSOR PHCY CO | 100 | 0.000% | 0 | | | | Business Closed Down |
| WOODWARD PHARMACY | 100 | 0.000% | 0 | | Yes | 04/06/05 | |
| DOLLAR SAVER PHARMACY | 96 | 0.000% | 0 | | Yes | 04/07/05 | Disconnected |
| TEXAS CONVALESCANT SERVS | 93 | 0.000% | 0 | | | | |
| WOODLAND HGTS MED CTR | 93 | 0.000% | 0 | | Yes | 04/07/05 | No Answer |
| CATHOLIC HLTH PRTNRS A/P | 87 | 0.000% | 0 | | | | |
| GENEVA WOODS MED CT PHCY | 85 | 0.000% | 0 | | Yes | 04/07/05 | Disconnected |
| MEDICO HEALTH MART #5 | 80 | 0.000% | 0 | | Yes | 04/07/05 | Disconnected |
| LEVINE'S PHARMACY | 75 | 0.000% | 0 | | | | Disconnected |
| WULF'S GOTHENBURG DRUG | 75 | 0.000% | 0 | | | | Disconnected |
| CENTRAL DRUGS | 70 | 0.000% | 0 | | | | Disconnected |
| CENTRALIA PHARMACY | 70 | 0.000% | 0 | | | | Disconnected |
| GREENSBURG DRUG CO INC | 70 | 0.000% | 0 | | | | |
| GAINESVILLE PHCY | 67 | 0.000% | 0 | | Yes | 04/07/05 | Disconnected |
| FEEHANS FAMILY PHCY #2 | 65 | 0.000% | 0 | | | | Disconnected |
| MAINE PHARMACY | 60 | 0.000% | 0 | | Yes | 04/07/05 | |
| BARTOW MEM HOSP PHCY | 50 | 0.000% | 0 | | Yes | 04/07/05 | |
| GLENVILLE PHARMACY | 50 | 0.000% | 0 | | | | Disconnected |
| I M S PHARMACY | 50 | 0.000% | 0 | | Yes | 04/06/05 | No Answer |
| SUN PHARMACY | 47 | 0.000% | 0 | | Yes | 04/06/05 | |
| CAREL'S DRUG MART #2 | 40 | 0.000% | 0 | | | | Left Message |
| ALASKA PHARMACY SVCS | 35 | 0.000% | 0 | | Yes | 04/06/05 | |
| THE PRESCRIPTION SHOPPE (Silverdale) | 30 | 0.000% | 0 | | Yes | 04/06/05 | |
| PICKENS PHCY INC | 30 | 0.000% | 0 | | | | No longer at given phone # |
| WAAS DRUG STORE | 22 | 0.000% | 0 | | Yes | 04/07/05 | |
| LOVE DRUG CO | 20 | 0.000% | 0 | | Yes | 04/07/05 | |
| MELMED PHARMACY EAST | 16 | 0.000% | 0 | | Yes | 04/06/05 | |
| ORLANDO REG S SEMINOL HO | 15 | 0.000% | 0 | | | | Disconnected |
| WORCESTER COUNTY HOUSE | 13 | 0.000% | 0 | | Yes | 04/06/05 | No longer at given phone # |
| CLANTON DRUG STORE | 11 | 0.000% | 0 | | Yes | 04/07/05 | |
| BLACKMAR DRUG COMPANY | 10 | 0.000% | 0 | | Yes | 04/06/05 | |
| WESTERN MASS HOSP | 8 | 0.000% | 0 | | Yes | 04/07/05 | |
| RANDOLPH CO HOSPITAL | 5 | 0.000% | 0 | | Yes | 04/07/05 | |
| KLEIN PHARMACY | 3 | 0.000% | 0 | | Yes | Yes | |
| HILLCREST MED CTR AT W | 3 | 0.000% | 0 | | | | |
| MEDICAL CLINIC PHARMACY | 3 | 0.000% | 0 | | | | |

| Name | Capsules | % Class | Generics Capsules | % Class | Confirmed | Date | Status |
|---|---|---|---|---|---|---|---|
| ALABAMA MENTAL HLTH DEPT | 0 | 0.000% | 0 | 0.000% | Yes | 04/07/05 | |
| BEACH DRUGS | 0 | 0.000% | 0 | 0.000% | Yes | 04/07/05 | |
| JOHNSON PHARMACY (IA) | 0 | 0.000% | 0 | 0.000% | Yes | 04/11/05 | |
| MCKEEVEE/BTER PHARMACY | 0 | 0.000% | 0 | 0.000% | Yes | 04/11/05 | |
| MEDICAL CENTER PHARMACY (ME) | 0 | 0.000% | 0 | 0.000% | Yes | 04/11/05 | No longer at given phone # |
| NURSING HOME PHARMACY | 0 | 0.000% | 0 | 0.000% | | | |
| PIKEVILLE DRUG CO INC | 0 | 0.000% | 0 | 0.000% | Yes | 04/07/05 | |
| PRESC CTR IN THE PARK | 0 | 0.000% | 0 | 0.000% | Yes | 04/11/05 | |
| PRICE MART PHARMACY | 0 | 0.000% | 0 | 0.000% | Yes | 04/08/05 | |
| RESOURCE PHARMCTL SVC | 0 | 0.000% | 0 | 0.000% | | | Disconnected |
| THE DRUG SHOP | 0 | 0.000% | 0 | 0.000% | | | Disconnected |
| THE WHITTIER PHARMACIST | 0 | 0.000% | 0 | 0.000% | Yes | 04/07/05 | |
| HILLS PHARMACY | (10) | 0.000% | 0 | 0.000% | | | Not yet called |
| BELMEDCO | (11) | 0.000% | 0 | 0.000% | | | Not yet called |
| ANAHEIM HILLS PLAZA PHAR | (20) | 0.000% | 0 | 0.000% | | | Not yet called |
| PLAZA UNITED PHCY | (25) | 0.000% | 0 | 0.000% | | | Not yet called |
| LEES PHARMACY | (31) | 0.000% | 0 | 0.000% | | | Not yet called |
| BANKSTON REXALL INC | (50) | 0.000% | 0 | 0.000% | | | Not yet called |
| CONSUMERS MARKETS INC | (70) | 0.000% | 0 | 0.000% | | | Not yet called |
| TWIN KNOLLS PHCY | (97) | 0.000% | 0 | 0.000% | | | Not yet called |
| GRAND RIVER PHARMACY | (98) | 0.000% | 0 | 0.000% | | | Not yet called |
| Eagle Pharmacy | (104) | 0.000% | 0 | 0.000% | | | Disconnected |
| GREENS DG STR INC | (110) | 0.000% | 0 | 0.000% | | | Not yet called |
| OLYMPUS SPECIALTY HOSP | (117) | 0.000% | 0 | 0.000% | | | Not yet called |
| PARK VIEW SPECIALTY HOSP | (123) | 0.000% | 0 | 0.000% | | | Not yet called |
| MCCORD SWEENEY DRUG INC | (220) | 0.000% | 0 | 0.000% | | | Not yet called |
| DUKE FAMILY MED CTR PHCY | (337) | 0.000% | 0 | 0.000% | | | Not yet called |
| US ONCOLOGY | (500) | 0.000% | 0 | 0.000% | | | Not yet called |

## Summary

| | | Purchases during Class Period | | | |
|---|---|---|---|---|---|
| | | Hytrin from Abbott | | Generics | |
| | | 09/31/98-06/30/01 | | 08/01/99-06/30/01 | |
| | Class Members | Capsules | % Class | Capsules | % Class |
| Found and confirmed correct address | 125 | 1,465,523 | 0.170% | 105,300 | 0.029% |
| Confirmed settlement participation | 2 | 1,330,520 | 0.154% | 105,300 | 0.029% |
| Remailed notice (04/06/05-04/11/05) | 108 | 131,015 | 0.015% | 0 | 0.000% |
| Bought by opt out (no remailing done) | 15 | 3,988 | 0.000% | 0 | 0.000% |
| No longer in business | 17 | 208,515 | 0.024% | 3,600 | 0.001% |
| Address not confirmed (04/11/05) | 147 | 67,952 | 0.008% | 0 | 0.000% |
| Number disconnected or reassigned | 104 | 54,485 | 0.006% | 0 | 0.000% |
| Not yet reached | 43 | 13,467 | 0.002% | 0 | 0.000% |
| All Unique RPOs | 289 | 1,741,990 | 0.202% | 108,900 | 0.030% |
| All Class Members | 2,052 | 862,362,450 | | 362,287,400 | |

## Notes

1) RPOs received from addresses listed in the Abbott sales dataset for 289 Class members were investigated. The remaining RPOs involved Class members with multiple listed addresses, to which one or more additional notices had been mailed (via another listed address(es)), and not returned by the United States Postal Service as undeliverable.

2) Class counsel faxed the settlement notice to these entities, and confirmed their participation in the settlement.

3) The Oklahoma State Board of Pharmacy reports that their license ended on 08/17/2001, and that they are "CLOSED" <http://lv.pharmacy.state ok.us/ostbpinquire/FacilityDetail.asp?CountyTypeLc=88%2DW%2D298>

4) The Oklahoma State Board of Pharmacy reports that their license ended on 08/18/2000, and that they are "CLOSED" <http://lv.pharmacy.state ok.us/ostbpinquire/FacilityDetail.asp?CountyTypeLc=88%2DW%2D953>.

5) The outgoing message for their former telephone number says "North Carolina Hazardous Waste Station."

# EXHIBIT D

# INDEPENDENT DRUG CO.

April 8, 2005

Dear Mr. Sorensen:

This is to confirm our conversation of today. I am authorized to state, on behalf of
Independent Drug ("Independent"), that Independent received the Notice of
Proposed Class Action Settlement and Hearing Regarding Settlement in the In re
Terazosin Hydrochloride Antitrust Litigation, No. 99-MDL-1317 (S.D. Fla.) (the
Notice), a copy of which is attached. Independent has elected to remain in the Class
as defined in the Notice, and has no objections to the proposed settlement, plan of
allocation, or application by Class Counsel for an award of fees and costs, and
incentive awards, all as described in the Notice.

Sincerely,

James S. Eden, Jr.
President, Independent Drug

Apr 11 05 01:53p        Fallon Clinic                508 793 0903            p.2



# Fallon Clinic

April 8, 2005

Mr. David Sorenson
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103-6365

Dear Mr. Sorenson:

This is to confirm our conversation of yesterday. I am authorized to state, on behalf of Fallon Clinic HMO Pharmacy ("Fallon"), that Fallon received the Notice of Proposed Class Action Settlement and Hearing Regarding Settlement in the In re Terazosin Hydrochloride Antitrust Litigation, No. 99-MDL-1317 (S.D. Fla.) (the "Notice"), a copy of which is attached hereto. Fallon has elected to remain in the Class as defined in the Notice, and has no objections to the proposed settlement, plan of allocation, or application by Class Counsel for an award of fees and costs, and for incentive awards, all as described in the Notice."

Yours truly,

Charlyn A. Feeney, R.N., J.D.
Associate Administrator

CAF/cc
Attachment

Apr 11 05 01:53p     Fallon Clinic          508 793 0903          p.3

04/08/05  15:02 FAX 2156755707      BERGER&MONTAGUE P.C.                    ☒002

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
**SOUTHERN DIVISION**

CASE NO. 99-MDL-1317-SEITZ/KLEIN

In re TERAZOSIN HYDROCHLORIDE
ANTITRUST LITIGATION
_____/

This Notice pertains to:

*Louisiana Wholesale Drug Co., Inc., et al.*
*v. Abbott Labs., et al.*                Civ. No. 98-3125-S/G (S.D. Fla.)

*Valley Drug Co., et al.*
*v. Abbott Labs., et al.*                Civ. No. 99-7143-S/G (S.D. Fla.)
_____/

### NOTICE OF PROPOSED CLASS ACTION SETTLEMENT AND HEARING REGARDING SETTLEMENT

*PLEASE READ THIS NOTICE FULLY AND CAREFULLY. A SETTLEMENT HAS BEEN PROPOSED IN PENDING CLASS ACTION LITIGATION THAT MAY AFFECT YOUR RIGHTS. IF YOU ARE A MEMBER OF THE CLASS DESCRIBED BELOW, YOU MAY BE ENTITLED TO SHARE IN THE SETTLEMENT FUND.*

**TO:** All persons who purchased Hytrin, also known by the chemical name terazosin hydrochloride, directly from Abbott Laboratories at any time during the period commencing March 31, 1998 through and including June 30, 2001.

EXCLUDED FROM THE CLASS ARE: (1) Defendants Abbott Laboratories, Geneva Pharmaceuticals, Inc. (now known as Sandoz Inc.), Zenith Goldline Pharmaceuticals, Inc. (now known as Ivax Pharmaceuticals, Inc.), their officers, directors, management, employees, subsidiaries, and affiliates; (2) each of the following entities, and any and all claims of each said entity that have been asserted, or could have been asserted, in *In re Terazosin Hydrochloride*, Case No. 99 MDL 1317 arising out of Hytrin or generic terazosin hydrochloride purchases by said entity: CVS Meridian, Inc., Rite Aid Corp., Walgreen Co., Eckerd Corp., The Kroger Co., Albertson's, Inc., The Stop & Shop Supermarket Co., and Hy-Vee, Inc.; and (3) Kaiser Foundation Health Plan, Inc. and the Kaiser entities on whose behalf it has asserted claims in paragraph 8 of its complaint in 99 MDL 1317.

**I.   PURPOSE OF NOTICE**

Pending in this Court are cases brought by Louisiana Wholesale Drug Co., Inc. ("Louisiana Wholesale") and Valley Drug Co. ("Valley Drug") (collectively, "Class Plaintiffs" or "Class Representatives") under the federal antitrust laws on behalf of themselves and a class of similarly situated persons, against defendants Abbott Laboratories ("Abbott"), and Geneva Pharmaceuticals, Inc. ("Geneva") (now known as Sandoz, Inc.), alleging a conspiracy to violate the federal antitrust laws. Abbott and Geneva will be referred to below collectively as "Defendants." Previously, notice (dated March 13, 2002) had been given of a settlement with another defendant, Zenith Goldline Pharmaceuticals, Inc. (now known as Ivax Pharmaceuticals, Inc. ("Ivax"). That settlement was finally approved by the Court on June 13, 2002.[1]

This Notice is given pursuant to Federal Rule of Civil Procedure 23 and by Order of the United States District Court for the Southern District of Florida (the "Court") for the purpose of informing you of your rights with regard to:

(a)  the Court's ruling that this lawsuit may be settled as a class action, with Louisiana Wholesale and Valley Drug as class representatives, on behalf of all persons who purchased Hytrin, also known by the chemical name terazosin hydrochloride directly from Abbott Laboratories at any time during the period commencing March 31, 1998 through and including June 30, 2001. Excluded from the Class are: (1) defendants Abbott Laboratories, Geneva Pharmaceuticals, Inc. (now known as Sandoz, Inc.), Zenith Goldline Pharmaceuticals, Inc. (now known as Ivax Pharmaceuticals, Inc.), their officers, directors, management, employees, subsidiaries, and affiliates; (2) each of the following entities, and any and all claims of each said entity that have been asserted, or could have been asserted, in *In re Terazosin*

---

[1] Under that settlement ("Zenith Settlement"), Zenith paid $2,072,327 into an escrow account. The payments by Zenith, plus all interest earned on such payments, will be used to reimburse costs and expenses of this litigation, thereby effectively increasing the amount of the Net Settlement Fund available to distribute to members of the Class (defined below). The Zenith Settlement provided Zenith with the right to terminate the settlement if certain specified conditions occurred. Should the settlement between the Class and Abbott and Geneva described in *this notice* become final, and provided that the Court in its final order of approval of the Abbott and Geneva settlement reaffirms that all of the terms of the Zenith Settlement, including class-wide releases and the other provisions of the Zenith Settlement incorporated into the June 13, 2002 final judgment remain in full force and effect (except for any obligation for Zenith to pay up to $25,000 in notice costs, which obligation Plaintiffs have excused), then, in that event, to the extent Zenith has retained any enforceable rights to terminate the Zenith Settlement (which Plaintiffs dispute), those rights are forever expunged. The Zenith Settlement funds may be used for the benefit of the Class as the Court may direct, and the Zenith Settlement and all of its terms, including releases given by members of the Class, remain in full force and effect.

*Hydrochloride*, Case No. 99 MDL 1317 arising out of Hytrin or generic terazosin hydrochloride purchases by said entity: CVS Meridian, Inc., Rite Aid Corp., Walgreen Co., Eckerd Corp., The Kroger Co., Albertson's, Inc., The Stop & Shop Supermarket Co., and Hy-Vee, Inc.; (3) Kaiser Foundation Health Plan, Inc. and the Kaiser entities on whose behalf it has asserted claims in paragraph 8 of its complaint in 99 MDL 1317 ("the Class" or "the Sherman Act Class");[2]

(b)  a proposed settlement (the "Settlement") as described below of the above-referenced litigation on behalf of the Sherman Act Class in exchange for a cash payment by defendant Abbott of $43.5 million and a cash payment by defendant Geneva of $29 million, for a total amount paid by these Defendants combined of $72.5 million in cash (the "Settlement Fund"); and,

(c)  a fairness hearing scheduled to be held on **April 15, 2005 at 10:00 a.m.**, before The Honorable Patricia A. Seitz, United States District Judge for the United States District Court for the Southern District of Florida, in the Fifth Floor Courtroom, United States Courthouse, 301 North Miami Avenue, Miami, Florida (the "Fairness Hearing").

The purpose of the Fairness Hearing will be to consider whether to approve: (1) the proposed settlement between the Sherman Act Class and defendants Abbott and Geneva as fair, reasonable, adequate, and in the best interests of the Sherman Act Class; (2) a proposed Plan of Allocation to allocate the settlement proceeds among Sherman Act Class members; and (3) the application by Class Counsel for an award of attorneys' fees and costs, and the application for incentive awards for the Class Representatives, as described below. The Court may continue or reschedule the hearing; if the Court does so, the Class Counsel will advise the Sherman Act Class by posting a conspicuous notice at the internet web sites www.bsfllp.com and www.garwingerstein.com.

(d)  Right to Object: Sherman Act Class members also are hereby advised of their right to object (by filing with the Clerk of the Court no later than April 8, 2005) and/or appear at the Fairness Hearing; or to elect to exclude themselves from the Sherman Act Class (by written notice received by the claims administrator no later than March 31, 2005), as explained further below. This Settlement is contingent upon Defendants not electing to terminate the Settlement in the event that the confidential threshold for exclusions from the Class is exceeded, or in the event other triggering events occur that are referenced in the Settlement Agreement. In the event any triggering event occurs that would permit Defendants to terminate the Settlement, Defendants must decide whether to terminate the Settlement at a date certain prior to the Fairness Hearing as provided for by the Settlement Agreement.

## II.  THE LITIGATION

### A.  Class Representatives' Claims

On December 18, 1998, plaintiff Louisiana Wholesale filed an action in the United States District Court for the Southern District of Florida alleging violations of the federal antitrust laws, specifically the Sherman Act and the Clayton Act, against defendants Abbott, Geneva and Zenith. Louisiana Wholesale alleged, among other things, that Abbott entered into an agreement with Geneva, pursuant to which Abbott agreed to pay Geneva millions of dollars in exchange for Geneva's agreement to refrain from marketing its generic version of Hytrin until Abbott's then-pending patent infringement suit against Geneva was resolved. Louisiana Wholesale alleged that the Abbott/Geneva Agreement, as well as a similar agreement between Abbott and Zenith (collectively "the Agreements"), were illegal under Section 1 of the Sherman Act, and caused direct purchasers of Hytrin to be overcharged for terazosin hydrochloride ("terazosin") because the agreements kept less expensive generic versions of Hytrin off the market.

On August 30, 1999, plaintiff Valley Drug filed a similar complaint challenging the Abbott/Geneva Agreement, alleging similar antitrust violations against Abbott and Geneva. The Louisiana Wholesale and Valley Drug cases were consolidated by the Court on October 22, 1999. Louisiana Wholesale and Valley Drug are hereafter referred to as the "Class Representatives" or "Class Plaintiffs."

### B.  Defendants' Denial of Liability

Defendants Abbott and Geneva vigorously dispute Class Plaintiffs' claims that the Agreements were illegal. Defendants also deny Class Plaintiffs' claims that the Agreements caused Class Plaintiffs and members of the Sherman Act Class any harm. For example, Defendants assert, among other defenses, that Geneva would not have come to market earlier with its cheaper generic product, even without the Abbott/Geneva Agreement, because of the risk of liability if Abbott won its then pending patent suit against Geneva relating to Geneva's proposed generic terazosin product. Defendants also assert that technical problems in manufacturing Geneva's terazosin product prevented it from bringing its product to market any earlier than August 1999, when it actually launched its product.

### C.  Status of the Litigation

On February 11, 2000, the Court appointed the law firms of Garwin Gerstein & Fisher LLP and Boies, Schiller & Flexner LLP as Co-Lead Counsel for the Sherman Act Class cases. Since that time, Co-Lead Counsel and lawyers working at their direction (collectively "Class Counsel") have prosecuted this lawsuit on behalf of the Sherman Act Class

---

[2] Other cases challenging the same conduct by Abbott, Geneva, and Zenith were filed on behalf of consumers and other persons who purchased Hytrin indirectly, i.e. from sources other than Abbott, and on behalf of persons that paid for all or part of such indirect purchases, including third-party payors such as insurance companies or health care plans. The proposed settlement described in this Notice relates only to the Class of direct purchasers of Hytrin from Abbott as defined above. NEITHER CONSUMERS NOR THIRD-PARTY PAYORS ARE PART OF THE CLASS TO WHOM THIS NOTICE IS DIRECTED.

### 1. Class Certification

On November 30, 1999, Class Counsel and the Class Plaintiffs moved for certification of the Sherman Act Class. On September 20, 2001, the Court certified the Sherman Act Class with Louisiana Wholesale and Valley Drug as Class Representatives. Defendants appealed the case for further certifying the Sherman Act Class.

On November 14, 2003, the Eleventh Circuit Court of Appeals vacated the Court's order certifying the Sherman Act Class, and remanded the case for further proceedings to determine, among other things, whether there were conflicts of interest between the Class Representatives and members of the Sherman Act Class in connection with the prosecution of this litigation.

In March 2004, the Class Representatives filed a renewed motion for class certification. On June 23 2004, the Court denied that motion, holding that, although ". . . the evidence indicates there is no class antagonism or conflict," the Sherman Act Class could not be certified at that time because of the possibility of potential unforeseen conflict in the future with regard to this litigation.[3]

On February 25, 2005, this Court certified the Sherman Act Class, holding, among other things, that because the proposed settlement would end the litigation, there was no longer any possibility of a future conflict of interest with regard to this litigation. Moreover, if any member of the Sherman Act Class does not believe that this Settlement is in its best interests, or for any other reason, such class member may exclude itself from the Sherman Act Class. See Section VII below. If for any reason any Class member, who does not timely exclude itself from the Class, believes that the Settlement is unfair, unreasonable, or inadequate, such Class member may submit an objection to the Settlement and be heard at the Fairness Hearing. See Section IX below.

### 2. Class Plaintiffs' Substantive Claims

On December 13, 2000, the Court found that the Abbott/Geneva Agreement was per se illegal under Section 1 of the Sherman Act. Defendants appealed the Court's decision. On September 15, 2003, the Eleventh Circuit Court of Appeals reversed the Court's December 13, 2000 order, and remanded for further proceedings. On January 5, 2005, upon consideration of additional briefing by the parties, the Court again held that the Abbott/Geneva Agreement was per se illegal. On January 21, 2005, the Court denied Defendants' request for permission to immediately appeal the Court's per se ruling to the Eleventh Circuit Court of Appeals. On February 9, 2005, Defendants filed a Writ of Mandamus, asking the Eleventh Circuit to review and vacate the Court's January 5, 2005 per se ruling or the Court's January 21, 2005 refusal to permit an immediate appeal of the per se ruling. That Writ of Mandamus is currently pending. Whether or not the Writ is granted, Defendants will have the right to appeal the Court's per se ruling after a final judgment in this case.

Although the Court has ruled (subject to Defendants' right to appeal) that the Abbott/Geneva Agreement is a per se violation of Section 1 of the Sherman Act, in order to recover monetary damages in this case, Class Plaintiffs still would have been required to prove that the Agreement caused them damage in a quantifiable amount. As described above, Defendants vigorously contend that the Agreement did not delay Geneva's (or any generic manufacturer's) entry into the market with a generic version of Hytrin, and thus did not cause plaintiffs or members of the Class to incur any damages.

At the time that the proposed settlement was reached, discovery in the case, which included the review of hundreds of thousands of pages of documents, and the depositions of dozens of fact and expert witnesses, had been completed. As a result, Class Counsel had conducted an intensive investigation, and obtained significant knowledge regarding the strengths and weaknesses of the claims and defenses in this case before entering into settlement negotiations with Defendants.

In the event Defendants elect to terminate this Settlement under the terms of the Settlement Agreement, or if the Settlement is otherwise not consummated, the parties' stipulation as to class certification would become null and void. In that event, the Court could order the trial scheduled for May 2005 to proceed on behalf of the Representative Plaintiffs only, and not on behalf of any other member of the Class.

OTHER THAN AS SPECIFICALLY INDICATED ABOVE REGARDING THE *PER SE* ILLEGALITY OF THE ABBOTT/GENEVA AGREEMENT, THE COURT HAS NOT RULED ON THE MERITS OF ANY OF THE CLAIMS OR DEFENSES ASSERTED BY THE PARTIES. THIS NOTICE IS NOT TO BE UNDERSTOOD AS AN EXPRESSION OF ANY OPINION BY THIS COURT AS TO THE MERITS OF ANY OF THE CLAIMS OR DEFENSES ASSERTED BY EITHER SIDE.

## III.  SUMMARY OF THE PROPOSED SETTLEMENT

Subject to the terms and conditions of the settlement agreement with Abbott and Geneva ("the Settlement Agreement"), which is on file with the Court as Exhibit "A" to the Sherman Act Class Plaintiffs' February 24, 2005 Motion for Preliminary Approval, a copy of which is also available at www.bsfllp.com or www.garwingerstein.com, Abbott has paid $43.5 million, and Geneva has paid $29 million (for a combined total of $72.5 million in cash) into an escrow account for the benefit of the Sherman Act Class. Defendants do not admit any wrongdoing or liability. The proposed settlement is a compromise of disputed claims and does not mean that any defendant in this action has been found liable for the claims made by the Class Plaintiffs.

The Settlement Agreement also provides that if Class members who validly exclude themselves from the Class pursuant to Section VII below collectively have aggregate potential damages (as calculated by Class Plaintiffs' expert economist, based on the amount of their purchases of Hytrin and/or generic versions of Hytrin reflected in the sales records of

---

[3] If this proposed settlement is terminated for any reason or is not approved by the Court, the Class Representatives have the right to appeal the Court's June 2004 Order denying their renewed motion for class certification at the conclusion of the litigation.

04/08/05  15:04 FAX 2158755707         BERGER&MONTAGUE P.C.                    ☒005

Abbott, Geneva, and non-party, Mylan Pharmaceuticals, Inc.) that exceed a confidential number agreed upon with Abbott and Geneva, then Abbott and Geneva may exercise their right to terminate the Settlement as provided for under the Settlement Agreement.[4]

If the Settlement is finally approved by the Court, Abbott and Geneva, and their past, present and future parents, subsidiaries, divisions, affiliates, stockholders, officers, directors, insurers, general or limited partners, employees, agents, attorneys and any of their legal representatives (and the predecessors, heirs, executors, administrators, successors and assigns of each of the foregoing) (the "Released Parties") are and shall be released and forever discharged from all manner of claims, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected in law or equity, that Plaintiffs or any member or members of the Class who has (have) not timely excluded itself (themselves) from the Class, whether or not they object to the Settlement and whether or not they make a claim upon or participate in the Settlement Fund, ever had, now has, or hereafter can, shall or may have, arising out of any conduct alleged in the Actions or in any other complaint filed in any action consolidated or coordinated in 99 MDL 1317, or otherwise relating to any alleged delay in marketing or selling of generic equivalents of Hytrin, prior to the date of the Settlement Agreement (the "Released Claims").[5] Plaintiffs and each member of the Class covenant and agree that each shall not sue or otherwise seek to establish or impose liability against any Released Party based, in whole or in part, on any of the Released Claims.

Any disputes arising under or relating to the Settlement Agreement, including, but not limited to, the releases in the Settlement Agreement, will be resolved in the United States District Court for the Southern District of Florida.

The foregoing text is only a summary of the Settlement with Abbott and Geneva. A full copy of the Settlement Agreement, including the release, is attached as Exhibit "A" to Sherman Act Class Plaintiffs' February 24, 2005 Motion for Preliminary Approval on public file with the United States District Court for the Southern District of Florida, 301 North Miami Avenue, Miami, Florida. Class counsel have made copies of the settlement agreement readily available at www.bsfllp.com or www.garwingerstein.com.

Certain individual direct purchasers (or purchasers suing based upon an assignment of rights from members of the Class) have brought their own lawsuits against Abbott and Geneva. These individual plaintiffs will not share in the proposed Settlement with the Sherman Act Class.

The Court preliminarily approved the proposed Settlement with Abbott and Geneva on February 25, 2005 after a hearing on February 24, 2005. The Court found the proposed settlement, upon preliminary review, to be within the range of reasonableness given the present posture of this case.

Accordingly, the Court has set a Fairness Hearing in order to determine whether the proposed settlement with Defendants should finally be approved as described in Section VIII, below.

## IV. PLAN OF ALLOCATION

In the event the proposed settlement is approved by the Court and becomes final, the Settlement Fund will be distributed in accordance with a proposed Plan of Allocation approved by the Court. Plaintiffs will file the Plan of Allocation with the Court on or before April 5, 2005. The Plan of Allocation will be based upon proofs of claim to be filed by class members at a later time. You may be required as a condition of participating in the recovery to present evidence of your purchases of brand name Hytrin and generic terazosin during the period March 31, 1998 through and including June 30, 2001 (the "Class Period"). In summary, the Settlement Fund totaling $72.5 million plus interest, less administrative expenses, taxes, attorneys' fees and expenses, and incentive payments to the two Class Representatives as may be allowed by the Court (the "Net Settlement Fund"),[6] will be allocated to Class members who choose not to exclude themselves from the Class (see Section VII below for an explanation of how to exclude yourself from the Class) as follows: The Net Settlement Fund will be allocated based on a pro rata share of the total estimated actual overcharge damages of all class members making valid claims (at a later date after the Settlement becomes final) allegedly incurred as a result of the Defendants' alleged restraint of trade. Class Representatives claim their damages are measured by an "overcharge," i.e., the amount by which Class members overpaid for terazosin as a result of the Defendants' conduct, which allegedly caused a delay in the entry into the market of less expensive generic versions of terazosin.

According to Class Plaintiffs, if generic entry had occurred earlier, direct purchasers would have realized significant savings by: (a) substituting Hytrin with less expensive generic versions of terazosin for some or all of their terazosin requirements; and/or (b) obtaining increased discounts, rebates, or lower prices on purchases of the brand name Hytrin

---

[4] Under the Settlement Agreement, Abbott and Geneva may also have the right to terminate this Settlement prior to the Fairness Hearing (described below) if certain other conditions set out in paragraph 13 of the Settlement Agreement are satisfied (see www.bsfllp.com and www.garwingerstein.com).

[5] The Settlement Agreement expressly provides that: "Released Claims shall not include claims arising in the ordinary course of business between Class members and the Released Parties concerning product liability, breach of warranty, breach of contract (other than breach of contract based in whole or in part on any conduct challenged by any plaintiff in 99 MDL 1317), personal or bodily injury, or any claim of any sort that does not relate to Hytrin or terazosin hydrochloride. Released Claims also shall not include any claim asserted in 99 MDL 1317 by any of the following entities based upon an assignment to said entity arising out of Hytrin or generic terazosin hydrochloride purchases of said entity: CVS Meridian, Rite Aid Corp., Walgreen Co., Eckerd Corp., The Kroger Co., Albertson's, Inc., The Stop & Shop Supermarket Co., and Hy-Vee, Inc.; this settlement shall not be construed to disturb or affect any such assigned claim."

[6] If the proposed Settlement with Abbott and Geneva is finally approved, the proceeds of the Zenith Settlement ($2,072,327), plus interest, upon authorization from the Court, will be applied to the costs and expenses incurred in this litigation, thereby reducing the amount that will be deducted from the settlement fund to reimburse Class Counsel for the outlay of such costs and expenses. Class Counsel will not seek any attorneys' fees from the proceeds of the Zenith Settlement.

after generic terazosin had entered the market; and/or (c) paying less for generic terazosin on or after October 1, 1999 (the date Plaintiffs believe that a second generic terazosin manufacturer would have entered the market had the alleged conduct in restraint of trade not occurred).

For purposes of allocation of the Net Settlement Fund, it is anticipated that damages will be estimated based on the following formulas (Class members have damages under any one or all of the formulas as may be applicable):

(1)   the quantity of generic teraxosin that each Class member purchased from any source from August 13, 1999 through June 30, 2001 as a substitute for buying brand-name Hytrin from Abbott, multiplied by the average differential in price between the brand and generic forms of terazosin (i.e., the price savings due to the ability to substitute with cheaper generics);

(2)   the quantity of generic terazosin that each Class member purchased from October 1, 1999 through June 30, 2001, multiplied by the price differential between the actual price paid for the generic and the price that allegedly would have been paid had there been no alleged delay in generic entry; and

(3)   the quantity of brand-name Hytrin that each Class member purchased from October 1, 1998 through June 30, 2001, multiplied by the price differential between the actual price paid and the price that allegedly would have been paid for Hytrin had there been no alleged delay in generic entry.

Based upon substantial analysis and investigation, Plaintiffs believe that in the absence of Defendants' alleged restraint of trade, it is unlikely that generic versions of terazosin would have been on the market prior to October 1, 1998. Thus, it is also very unlikely that more than nominal overcharge damages were incurred with respect to Hytrin purchases made before that date. Accordingly, for those Class members who, during the Class Period (a) purchased Hytrin directly from Abbott only from March 31, 1998 through September 30, 1998, and (b) who did not purchase any generic terazosin directly from any generic manufacturer from October 1, 1999 through June 30, 2001, nominal damages of a few cents per capsule will be awarded for each Hytrin capsule purchased.[7]

## V.   FEES, EXPENSES, AND INCENTIVE AWARDS

All costs and fees related to this litigation will be paid out of the proceeds of the Settlement Fund as the Court may order. Class Counsel intend to apply to the Court for attorneys' fees of up to thirty-three and one-third percent (33⅓%) of the gross Settlement Fund, including interest. In addition, Class Counsel intend to seek, from the Settlement Fund, reimbursement for any costs and expenses incurred in this litigation not otherwise reimbursed by the funds procured from the Zenith Settlement. Moreover, applications will also be made to the Court for incentive awards of $75,000, in total, for the two Class Representatives, to compensate them for their efforts in prosecuting this case on behalf of the Sherman Act Class, which efforts have included, among other things, submitting to depositions, producing hundreds of pages of documents, producing electronic purchase data, and providing written discovery. Class Counsel will file their Motion in Support of Final Approval of this Settlement, the Plan of Allocation, application for an award of attorneys' fees, reimbursement of costs and expenses, and request for incentive awards to the Class Representatives with the Clerk of the U.S. District Court for the Southern District of Florida, 301 North Miami Avenue, Miami, Florida on or before April 5, 2005. The application and other documents will be available for inspection during normal business hours at the office of the Clerk or on the website of www.bsfllp.com or www.garwingerstein.com.

## VI.   HOW TO PARTICIPATE IN THIS CLASS ACTION AND SETTLEMENT

If you wish to remain a member of the Class, you need not do anything at this time. All members of the Class will be entitled to share in the proceeds of this Settlement as described above and according to the terms of the Settlement Agreement if it is finally approved by the Court, and all members of the Class will be bound by the final judgment and release of claims against Abbott and Geneva entered by the Court. Class Counsel has been appointed by the Court to represent you as a member of the Class. All fees and expenses of Class Counsel will be paid out of any recovery by the Class. You will not have to pay Class Counsel any additional amounts, and in no event will you be obliged to pay any judgment, court costs, or lawyers' fees for participating in this class action. In addition, any Class member who does not request exclusion from the Class may also enter an appearance through their own counsel at their own expense. The pleadings and other public records in this litigation may be examined and copied at the cost of 50 cents per page at any time during regular business hours at the Office of the Clerk of Court, 301 North Miami Avenue, Miami, Florida.

## VII.   HOW TO BE EXCLUDED FROM THE CLASS

If you wish to be excluded from the Sherman Act Class you may do so by mailing a written request for exclusion which must be received by the Claims Administrator on or before March 31, 2005 at the following address: Terazosin Hydrochloride Antitrust Litigation, c/o Heffler, Radetich & Saitta L.L.P., P.O. Box 70, Philadelphia, PA 19105-0070. The request for exclusion must: (1) clearly state your name, address, and the name of the case (In re Terazosin Hydrochloride Litigation), and (2) clearly state that you wish to be excluded from the Sherman Act Class. You do not have to state the reason for this request.

---

[7] Combined Hytrin purchases by Class members who purchased only during this early part of the Class Period amount to only approximately 0.025% of the total terazosin purchases by all Class members during the entire Class Period.

04/08/05  15:08 FAX 2158755707        BERGER&MONTAGUE P.C.                    ☒007

If you exclude yourself from the Sherman Act Class in this way, you will NOT be entitled to appear at the Fairness Hearing, OR to share in the benefits of the Settlement, and you will NOT be bound by the release of Defendants summarized in this notice.

## VIII. FAIRNESS HEARING

Pursuant to an Order of the Court, a hearing will be held on **April 15, 2005 at 10 a.m.**, in the courtroom of the Honorable Patricia A. Seitz, Fifth Floor, United States District Court for the Southern District of Florida, 301 North Miami Avenue, Miami, Florida, for the purpose of determining whether the Court should approve: (1) the proposed settlement between the Sherman Act Class and defendants Abbott and Geneva as fair, reasonable, adequate, and in the best interests of the Sherman Act Class; (2) a proposed Plan of Allocation for distributing the net settlement proceeds to the members of the Sherman Act Class; and (3) the application of Class Counsel for an award of attorneys' fees and costs, and the application for incentive awards for the Sherman Act Class Representatives. You are entitled to appear and be heard at this hearing. The time and date of the hearing may be continued or rescheduled without further notice. If you have no objection to the Settlement with Abbott and Geneva, it is not necessary to appear at the hearing or to take any action at this time.

## IX. OBJECTIONS TO THE PROPOSED SETTLEMENT

Any member of the Sherman Act Class who does not exclude itself from the Class may appear at the Fairness Hearing in person or by duly authorized attorney and show cause why the Settlement should not be approved as fair, reasonable and adequate, or to oppose or comment on any other subject of the hearing (including, for example, the Plan of Allocation, and request for attorneys' fees), *provided* that the class member files with the Office of the Clerk, Southern District of Florida, 301 North Miami Avenue, Miami, Florida, a Notice of Intention to Appear and a Summary Statement of the position asserted and the grounds therefor, together with copies of any supporting papers or briefs, on or before **April 8, 2005, and causes a copy to be received by Co-Lead Counsel for the Class on the same day.**[*] The Court will not consider any paper or brief submitted after April 8, 2005. Unless a Class member files the *Notice* and *Summary* described above, it shall not be entitled to contest the terms and conditions of the proposed Settlement or to appear in person at the hearing, and may be deemed to have waived any such objections.

## X. ADDITIONAL INFORMATION

The pleadings and other records in this litigation may be examined and copied during regular hours at the Office of the Clerk, United States District Court for the Southern District of Florida, 301 North Miami Avenue, Miami, Florida. Copies of the Motion for Preliminary Approval of the Settlement, this Notice, and (when filed on April 5, 2005) the Proposed Plan of Allocation, Motion for Final Approval and Application for Attorneys' Fees and Incentive Awards for the Representative Plaintiffs will also be available at www.bsfllp.com or www.garwingerstein.com.

Any questions that you have concerning the matters contained in this Notice may be directed in writing to the Co-Lead Counsel for Sherman Act Class:

Richard B. Drubel
Kimberly Schultz
BOIES, SCHILLER
& FLEXNER, L.L.P.
26 South Main Street
Hanover, NH 03755
Telephone: (603) 643-9090
Email: rdrubel@bsfllp.com

Bruce E. Gerstein
Barry S. Taus
GARWIN GERSTEIN & FISHER LLP
1501 Broadway, Suite 1416
New York, NY 10036
Telephone: (212) 398-0055
Email: btaus@garwingerstein.com

### PLEASE DO NOT ADDRESS ANY INQUIRIES TO THE COURT.

Dated: March 1, 2005, in Miami, Florida

---

[*] You need not appear at the hearing in order to object. The Notice of Intention to Appear and Summary Statement, and any accompanying papers, must include in a prominent location the name of the case, "In re Terazosin Hydrochloride Litigation," the "MDL" case number (99-MDL-1317), and the Judge's name (the Honorable Patricia A. Seitz).

[THIS PAGE INTENTIONALLY LEFT BLANK]

Apr 11 05 01:55p     Fallon Clinic          508 793 0903          p.10

04/06/05  15:07 FAX 2158755707          BERGER&MONTAGUE P.C.                    @009

Hytrin Antitrust Litigation
c/o Heffler, Radetich & Saitta L.L.P.
P.O. Box 70
Philadelphia, PA 19105-0070

FIRST-CLASS MAIL
U.S. POSTAGE
PAID
PERMIT NO. 2323
PHILADELPHIA, PA