UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 99-MDL-1317-SEITZ/KLEIN

IN RE TERAZOSIN HYDROCHLORIDE
ANTITRUST LITIGATION
_____/

**This Document Relates to:**

*Louisiana Wholesale Drug Co., Inc.*        Case No. (S.D. Fla.) 98-3125
*v. Abbott Laboratories, et al.*

*Valley Drug Company v. Abbott*             Case No. (S.D. Fla.) 99-7143[1]
*Laboratories, et al.*
_____/

FILED by ___ D.C.
APR 19 2005
CLARENCE MADDOX
CLERK, U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## ORDER AND FINAL JUDGMENT

THIS MATTER is before the Court upon (1) the Sherman Act Class Plaintiffs' Motion for Final Approval of Settlement and Memorandum of Law in Support Thereof, along with the Settlement Agreement dated February 24, 2005 ("Settlement Agreement" or "Settlement") [DE-1548]; (2) Class Counsel's Joint Petition for Attorneys' Fees, Reimbursement of Expenses, and Incentive Payments to the two Class Representatives [DE-1550]; and (3) Class Plaintiffs' Motion for Approval of the Proposed Plan of Allocation (and the Allocation Plan and expert declaration submitted with that motion) [DE-1549]. The Court, having held a final fairness hearing on April 15, 2005, and having considered all of the submissions and arguments with respect thereto, and otherwise being fully informed in the premises, does hereby

ORDER, ADJUDGE AND DECREE that:

1. This Order and Final Judgment incorporates by reference the definitions in the Settlement Agreement, and all terms used herein shall have the same meanings set forth in the Settlement Agreement.

2. This Court has jurisdiction over the subject matter of the Class Action and over all parties to the Class Action, including all Class members.

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court has certified a Class as follows:

> All persons who purchased Hytrin, also known by the chemical name terazosin hydrochloride, directly from Abbott Laboratories at any time during the period commencing March 31, 1998 through and including June 30, 2001.
> *Excluded from the Class are:* (1) Defendants Abbott Laboratories, Geneva Pharmaceuticals, Inc. (now known as Sandoz Inc.), Zenith Goldline Pharmaceuticals, Inc. (now known as Ivax Pharmaceuticals, Inc.), their officers, directors, management, employees, subsidiaries, and affiliates; (2) each of the following entities, and any and all claims of each said entity that have been asserted, or could have been asserted, in *In re Terazosin Hydrochloride,* Case No. 99 MDL 1317 arising out of Hytrin or generic terazosin hydrochloride purchases by said entity: CVS Meridian, Inc., Rite Aid Corp., Walgreen Co., Eckerd Corp., The Kroger Co., Albertson's, Inc., The Stop & Shop Supermarket Co., and Hy-Vee, Inc.; and (3) Kaiser Foundation Health Plan, Inc. and the Kaiser entities on whose behalf it has asserted claims in paragraph 8 of its complaint in 99 MDL 1317 ("the Class").

3. The Claims Administrator appointed by the Court directed Notice of the Settlement ("Notice") to all members of the Class via first-class direct mail to the last known address of all Class members. The Claims Administrator obtained the names and addresses of Class members from the sales records of Abbott Laboratories during the relevant time period. Class Counsel also provided the approved form of notice to certain Class members who had been closely following the litigation. Moreover, the Claims Administrator and Class Counsel supplemented the mailed notice program in certain cases, where appropriate, with phone calls to Class members. Co-Lead Counsel for the Class also posted notice of the Settlement and other documents related to the Settlement on their respective firm websites. As approved by the Court by Order dated February 25, 2005 [DE-1528], the form of notice, *inter alia*: (a) informed Class members about the claims of the Plaintiffs and the denials and defenses of Defendants; (b) summarized the proposed Settlement; (c) described the Plan of Allocation; (d) described Class Counsel's request for attorneys' fees, reimbursement of costs and expenses, and application for incentive awards to the named Plaintiffs; and (e) notified Class members of their rights to object and appear at the fairness hearing or to exclude themselves from the Class, and described the manner in which those rights could be exercised. The

notice program was more than adequate and sufficient, constituting the best notice reasonably practicable, and complying in all respects with Rule 23 of the Federal Rules of Civil Procedure and due process.

4. No Class member has requested to be excluded from the Class in the form and manner provided in the Notice, or otherwise. Nor has any Class member objected to any aspect of the Settlement, the Plan of Allocation, the request for incentive awards for the named Plaintiffs, or to Class Counsel's request for attorneys' fees and reimbursement of costs and expenses in the form and manner provided in the Notice, or otherwise. Given that the Class includes many sophisticated business entities with large stakes in the outcome of the litigation, the absence of a single exclusion or objection is a strong indication that the Settlement is fair, reasonable, and adequate.

5. In evaluating the fairness, adequacy, and reasonableness of the Settlement, the Court considered the following six factors identified in *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984): (a) the likelihood of success at trial; (b) the range of possible recovery; (c) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (d) the complexity, expense and duration of the litigation; (e) the substance and amount of opposition to the Settlement; and (f) the stage of the proceedings at which the settlement was achieved. The Court also considered the judgment of experienced counsel, the terms of the settlement itself, and (as discussed above) the procedures afforded to notify the class members of the proposed settlement and to allow them to present their views. *See Warren v. City of Tampa*, 693 F.Supp. 1051, 1055 (M.D. Fla. 1988) (citing *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981)).

6. Considering the arguments and facts set forth in Sherman Act Class Plaintiffs' Motion for Final Approval of the Settlement and Memorandum of Law in Support Thereof, the Co-Lead Counsel Affidavit, the various Class Counsel Affidavits, this Court finds that all of the *Bennett* factors support the adequacy and fairness of the Settlement, including, *inter alia*, that the outcome of a trial on the merits was by no means certain; that considerable issues relating to causation and damages remained that could have,

despite the Court's finding that the agreement between the Defendants constituted a *per se* violation of the antitrust laws, resulted in a defense verdict at trial; that the case involved highly complex factual and legal issues; that the Settlement was achieved through the efforts of respected mediator Professor Eric Green on the eve of trial after more than six years of hard-fought, extensive and expensive litigation, including two appeals to the Eleventh Circuit Court of Appeals; that the Settlement amount reflects a substantial percentage of the Plaintiffs' claimed damages (an amount estimated by Plaintiffs' expert economist to be between 40% and 60% of the total amount of overcharges to the Class); and that there were no opt-outs or objections despite the presence in the Class of numerous sophisticated business entities.

7. Accordingly, the Sherman Act Class Plaintiffs' Motion for Final Approval of Settlement [DE-1548] is GRANTED. Pursuant to Rule 23, the Court hereby finally APPROVES in all respects the Settlement set forth in the Settlement Agreement and finds that the Settlement and the Settlement Agreement were achieved without collusion and are, in all respects, fair, reasonable and adequate, and in the best interests of the Class. The Parties are hereby directed to carry out the Settlement in accordance with its terms and provisions.

8. The Class Action is hereby DISMISSED WITH PREJUDICE against Plaintiffs, without costs to any party pursuant to the Settlement.

9. Upon the Settlement becoming final according to the provisions of paragraph 5 of the Settlement Agreement, Defendants and their past, present and future parents, subsidiaries, divisions, affiliates, stockholders, officers, directors, insurers, general or limited partners, employees, agents, attorneys and any of their legal representatives (and the predecessors, heirs, executors, administrators, successors and assigns of each of the foregoing) (the "Released Parties") are and shall be released and forever discharged from all manner of claims, demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, that Plaintiffs or any member or members of the Class who

has/have not timely excluded itself/themselves from the Class (including any of their past, present or future officers, directors, insurers, general or limited partners, divisions, stockholders, agents, attorneys, employees, legal representatives, trustees, parents, associates, affiliates, subsidiaries, partners, heirs, executors, administrators, purchasers, predecessors, successors and assigns, acting in their capacity as such), whether or not they objected to the Settlement and whether or not they make a claim upon or participate in the Settlement Fund, ever had, now has, or hereafter can, shall or may have, directly, representatively, derivatively or in any other capacity, arising out of any conduct alleged in the Actions or in any other complaint filed in any action consolidated or coordinated in 99-MDL-1317, or otherwise relating to any alleged delay in marketing or selling of generic equivalents of Hytrin prior to the date hereof, except as provided in paragraph 12 below (the "Released Claims").

10. No Class member shall, hereafter, seek to establish liability against any Released Party based, in whole or in part, on any of the Released Claims.

11. In addition to the provisions of paragraphs 8 and 9, each Class member has waived and released any and all provisions, rights, or benefits conferred by § 1542 of the California Civil Code, which reads:

> Section 1542. <u>General Release; extent</u>. A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his settlement with the debtor;

or by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable or equivalent to § 1542 of the California Civil Code. Each Class member may hereafter discover facts other than or different from those which he, she or it knows or believes to be true with respect to the Released Claims, but each Class member has expressly waived and fully, finally and forever settled and released, any known or unknown, suspected or unsuspected, contingent or non-contingent claim with respect to the Released Claims whether or not concealed or hidden, without regard to the

subsequent discovery or existence of such different or additional facts. Each Class member also has expressly waived and fully, finally and forever settled and released any and all claims it may have against any Released Party under § 17200, *et seq*, of the California Business and Professions Code or any similar, comparable or equivalent provision of the law of any other state or territory of the U.S. or other jurisdiction, which claims are expressly incorporated into this paragraph.

12. The releases set forth in paragraphs 8 - 10 hereof shall not release any claims of any Class members arising in the ordinary course of business between Class members and the Released Parties concerning product liability, breach of warranty, breach of contract (other than breach of contract based in whole or in part on any conduct challenged by any plaintiff in 99-MDL-1317), or personal or bodily injury, or any claim of any sort that does not relate to Hytrin or terazosin hydrochloride. Released Claims also shall not include any claim asserted in 99-MDL-1317 by any of the following entities based upon an assignment to said entity arising out of Hytrin or generic terazosin hydrochloride purchases of said entity: CVS Meridian, Inc., Rite Aid Corp., Walgreen Co., Eckerd Corp., The Kroger Co., Albertson's, Inc., The Stop & Shop Supermarket Co., and Hy-Vee, Inc.; this Order and Final Judgment shall not disturb or affect any such assigned claim.

13. For a period of five years, the Clerk of the Court shall maintain the record of those members of the Class who have timely excluded themselves from the Class (if any) and shall provide a certified copy of such records to Defendants at Defendants' expense.

14. Nothing in the Settlement Agreement shall be construed as an admission or evidence of any violation of any statute or law, or of any liability or wrongdoing by Defendants in any action or proceeding of any kind whatsoever, civil, criminal or otherwise, before any court, administrative agency, regulatory body or any other body or authority, present or future, including, without limitation, that Defendants have engaged in any conduct or practices that violate any antitrust statute or other law.

15. This Court has also reviewed the proposed Plan of Allocation and the expert declaration of Jeffrey J. Leitzinger, Ph.D., in support of the Plan of Allocation. As with settlement agreements, courts consider whether allocation plans are fair, reasonable, and adequate. *See In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 381 (D. D.C. 2002). "A plan of distribution is [] sufficient where . . . there is 'a rough correlation' between the settlement distribution and the relative amounts of damages recoverable by Class Members." *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL No. 1290, Civ. No. 99-0790, 2003 U.S. Dist. LEXIS 12344, at *23 (D. D.C. June 16, 2003) (*quoting In re Chicken Antitrust Litig.*, 669 F.2d 228, 240 (5th Cir. 1982)). The Plan of Allocation describes: (a) the method of calculating each Class member's overcharge damages and *pro rata* share of the settlement proceeds (after deduction of Court-awarded attorneys' fees, expenses, and Plaintiff incentive awards); (b) the contents and method of disseminating a Claims Notice form; (c) the manner in which claims will be initially reviewed and processed; (d) the method of notifying Class members of the amount that each Class member will receive; and (e) the process for handling and resolving challenged claims.

16. The method for determining each Class member's share of the settlement proceeds involves a separate computation of each Class member's overcharges based upon individual purchase data available from Defendants' sales databases or provided by the Class members themselves. The Plan is designed to award each Class member its *pro rata* share of the Settlement proceeds based on the overcharges that the Class member paid.

17. Class Counsel have also advised the Court of their long-standing positive relationships with many of the Plaintiff class members in other pharmaceutical litigation, which relationships Class Counsel has committed to foster and preserve for the future.

18. Class Plaintiffs' Motion for Approval of the Proposed Plan of Allocation [DE-1549] is therefore GRANTED. The Court finally APPROVES the Plan of Allocation, and finds that the Plan of

Allocation is, in all respects, fair, adequate and reasonable and in the best interests of the Class. The Parties are hereby directed to carry out the Plan of Allocation in accordance with its terms and provisions.

19. In determining the attorneys' fee award, the Court considered, *inter alia*, the factors identified in *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991). Considering the record, including the facts set forth in the Sherman Act Class Counsel's joint fee petition, and in the supporting Co-Lead Counsel affidavit and individual firm affidavits, the Court finds that Class Counsel have expended significant time and expense in the prosecution of this case for more than six years. The efforts undertaken included extensive investigation of the claims and defenses, substantial fact and expert discovery, significant motion practice and briefing including two appeals before the Eleventh Circuit, and vigorous settlement negotiations with a well-respected mediator. The many thousands of hours Class Counsel spent on this case necessarily precluded Class Counsel from working on other matters, and thus imposed substantial and significant opportunity costs.

20. The Court also finds that the claims and defenses in this litigation raised complex questions of law and fact, requiring an unusual and extraordinary amount of time, effort, and skill to litigate. The Court recognizes the extensive work that Class Counsel performed on behalf of the Class. Moreover, and despite the complexity of the issues involved, and the tenacity and skill of Defendants' counsel, Class Counsel obtained a settlement of $72.5 million in cash for the benefit of the Class. When added to an earlier achieved settlement on behalf of the Class for $2,072,327, the total settlement achieved is close to $75 million (an amount estimated by Plaintiffs' expert economist to fall between 40%-60% of the total amount of overcharge damages incurred by the Sherman Act Class). The fees requested are within the range of fees awarded in similar cases.

21. Class Counsel prosecuted this action on a wholly contingent basis, and thus Class Counsel have not been compensated for the substantial amount of time and expense involved in prosecuting this case over more than six years. Therefore, while the Eleventh Circuit has recognized that the majority of common

fund fee awards fall between 20-30% of the fund, with many courts applying a "benchmark" of 25%, the time value of money that has not been paid over the six years of this litigation justifies a slightly higher percentage of the fund in this case. *See Camden*, 946 F.2d at 774 (noting that 25% benchmark "may be adjusted in accordance with the individual circumstances of each case"). In addition, the Court notes that several courts in similar pharmaceutical antitrust cases have awarded fees falling between 30%-33 1/3% of the common fund. *See In re Relafen Antitrust Litig.*, No. 01-12239-WGY (D. Mass. Apr. 9, 2004) (awarding 33 1/3% of a $175 million settlement fund); *In re Buspirone Antitrust Litig.*, MDL No. 1413 (JKG) (S.D. N.Y. Apr. 11, 2003) (awarding 33 1/3% of a $120 million settlement fund); *In re Cardizem CD Antitrust Litig.*, No. 99-73259 (E.D. Mich. Nov. 25, 2002) (awarding 30% of a $110 million settlement fund).

22. The Court also notes that Class Counsel's requested fee award is fair and reasonable when analyzed in light of the lodestar crosscheck. *See Walters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999) (noting that while a lodestar calculation is not the proper method for awarding fees in common fund cases, the lodestar figure may be used to confirm the reasonableness of the percentage of the fund award, by way of comparison). As demonstrated by their affidavits, Class Counsel have collectively expended $19,030.686.70 in fees in the six years of this litigation. A 33 1/3% fee award would equate to a lodestar multiplier of 1.27, which is highly reasonable in a complex matter such as this one. Further, Class Counsel have demonstrated to the Court that they made significant efforts, such as holding weekly status meetings and preparing agendas assigning particular tasks to particular attorneys, to manage this litigation in an efficient, cost-effective manner, and to avoid duplication of efforts.

23. Finally, despite the presence of significant, sophisticated business entities in the Class, none has objected to or opted out of the Class or the Settlement, and there has been no objection to the requested fee award. Given the fact that the Class is composed of sophisticated business entities, many of whom have been parties to other pharmaceutical and antitrust cases of this nature, the absence of any objection to the

requested fee award is further indication of its reasonableness and of the Class members' appreciation of Class Counsel's extensive efforts in this litigation.

24. Given the findings set out above, and the positive results achieved for the benefit of the Class, Class Counsel's Joint Petition for Attorneys' Fees, Reimbursement of Expenses, and Incentive Payments to the two Class Representatives [DE-1550] is GRANTED. Class Counsel are hereby awarded 33 1/3% of the gross Settlement Fund (plus interest thereon), arising out of the Settlement, before deduction of any costs, expenses, or incentive awards, as their fee award. Interest is calculated from March 3, 2005 (the date Defendants placed the funds in escrow on behalf of the Class) to the date of payment, at the same net interest rate earned by the Settlement Fund. In addition, Class Counsel shall be reimbursed from the Settlement Fund for all reasonable costs and expenses incurred in the prosecution of the action that are not reimbursed from the proceeds of the Zenith Settlement.[1] The total amount of reimbursable costs and expenses to Class Counsel are $3,133,070.86, plus interest, which the Court finds to be fair and reasonable. The award of attorneys' fees totals $24,166,667.00 (plus interest). The reimbursable costs and attorneys' fee award shall be disbursed only to Co-Lead Counsel, Garwin Gerstein & Fisher LLP, and Boies, Schiller & Flexner LLP, for allocation among the various counsel to the Class that have participated in this litigation.

25. In accordance with the Zenith Settlement, this Court also hereby re-affirms that all of the terms of the Zenith Settlement, including class-wide releases and the other provisions of the Zenith Settlement incorporated into the June 13, 2002 final judgment, remain in full force and effect (except for any obligation for Zenith to pay up to $25,000 in notice costs). To the extent Zenith has retained any enforceable rights to terminate the Zenith Settlement, those rights are forever expunged, the Zenith Settlement funds may be used

---

[1] In addition to the Abbott/Geneva Settlement, Class Counsel have achieved a settlement with another defendant, Zenith Goldline Pharmaceuticals, Inc., now known as Ivax Pharmaceuticals, Inc. ("Zenith") for $2,072,327 plus interest ("Zenith Settlement"). The Zenith Settlement was finally approved by the Court on June 13, 2002. Thus, the total recovery in this case from all Defendants is $74,572,327.00 plus interest. As described in the Notice Of Proposed Class Action Settlement And Hearing Regarding Settlement, the proceeds of the Zenith Settlement are to be applied to the reimbursement of out-of-pocket expenses only; Class Counsel have sought no attorneys' fees from the Zenith Settlement proceeds.

for the benefit of the Class as the Court has directed above, and the Zenith Settlement and all of its terms, including releases given by members of the Class, remain in full force and effect.

26.  Without affecting the finality of this judgment, the Court retains exclusive jurisdiction over the Settlement and the Settlement Agreement, including the administration and consummation of the Settlement Agreement, and including determination of any issues relating to attorneys' fees and expenses and any distribution to members of the Class. In addition, without affecting the finality of this judgment, Defendants and each member of the Class hereby irrevocably submit to the exclusive jurisdiction of the United States District Court for the Southern District of Florida, for any suit, action, proceeding or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement, including, without limitation any suit, action, proceeding or dispute relating to the release provisions herein. All terms of this Settlement Agreement shall be governed and interpreted according to the substantive laws of the State of Florida without regard to its choice of law or conflict of laws principles. The Released Parties may, however, enforce or assert the Settlement Agreement or this Order and Final Judgment and releases contained therein, as a full and complete defense in any action, suit, or other proceeding that has been instituted, prosecuted or attempted with respect to any Released Claim.

27.  In light of their six years of service on behalf of the Class, involving, *inter alia*, submitting to depositions, production of numerous documents, and attendance at hearings and mediation sessions, Plaintiffs Louisiana Wholesale Drug Co., Inc. and Valley Drug Co. are hereby provided incentive awards for representing the Class of $75,000 in total, to be distributed as follows: $45,000 to Louisiana Wholesale and $30,000 to Valley Drug. This incentive award to Plaintiffs is in addition to whatever monies these Plaintiffs will receive from the Settlement Fund pursuant to the Plan of Allocation.

28.  In the event the Settlement does not become final in accordance with paragraph 5 of the Settlement Agreement, this Order and Final Judgment shall be rendered null and void as provided by the

Settlement Agreement, shall be vacated and all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Settlement Agreement.

29. This Final Judgment shall be entered by the Clerk forthwith.

DONE and ORDERED in Chambers, in Miami, Florida, on this 19th day of April, 2005.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:
U.S. Magistrate Judge Theodore Klein
All Counsel of Record